date the alleged discriminatory act happened or she will lose the ability to recover for it under federal law). The three positions which Plaintiff claims she was discriminatorily denied were filled in December 15, 1999 (Associate Director of Sales, Central National Sales Office), April 10, 2000 (Assistant Vice President of International Sales and Individual Travel), and December 2000 (Director of Sales, Central National Sales Office). Plaintiff never filed Charges of Discrimination with any state or federal agency within the applicable statute of limitations with regard to these positions, as she first filed a Complaint in or about the end of November 2001, and filed her first Charge of Discrimination with the EEOC on or about February 15, 2002, more than 300 days after the last allegedly discriminatory promotion occurred. (Complaint in Case No. C-1-02-464, ¶24).[19] Thus, she is precluded from bringing such claims under federal law. *See AMTRAK*, 536 U.S. 101, 122 S. Ct. at 2070-2071. Because Plaintiff also brings such claims under O.R.C. Chapter 4112, however, and federal law is used to interpret Ohio employment discrimination law, federal cases will be used in the analysis of Plaintiff's claims under O.R.C. Chapter 4112.

Plaintiff must prove the following to establish a *prima facie* case of discrimination with respect to promotional opportunities: (1) she was a member of a protected class (female or 40 years of age or older); (2) she applied for and was qualified for the position she sought; (3) she was considered for and denied the promotion; and (4) she was rejected in favor of another person with similar qualifications who was not a member of the protected class or who was younger. *See Roh*, 241 F.3d at 497(finding a plaintiff did not prove the *prima facie* case of discrimination based on gender because she was not qualified for the position she sought); *Pritchard v. Office Max, Inc.*, 2000 U.S. App. LEXIS 437 at *7 (6th Cir. January 6, 2000),[20] *citing McDonnell Douglas Corp.*, 411 U.S. at 802;

---

[19] Defendants are in no way conceding that Plaintiff's Complaint in Case No. C-1-02-464 is timely filed.

[20] A copy of this unreported case is attached hereto as Exhibit O.

Orlando 37921.1

*Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996); *Brown v. Tennessee*, 693 F.2d 600, 603 (6th Cir. 1982). *See also Hines v. The Ohio State University*, 3 F. Supp. 2d 859, 873-874 (S.D. Ohio 1998)(applying same elements of a *prima facie* case of failure to promote to claim of age discrimination).

      With regard to her three claims she was denied promotions, Plaintiff has not presented evidence that establishes a *prima facie* case because she cannot establish she applied for and was qualified for the positions in question; that she was considered for and denied the promotion(s); or that other employees of similar qualifications who were not members of the protected class received promotion(s). *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-1021 (6th Cir. 2000). These elements of a *prima facie* case have been slightly altered in the Sixth Circuit by the *Dews* rationale, but as will be demonstrated below, even if the *Dews* exception is applied, Plaintiff cannot establish a *prima facie* case for any promotional opportunity. In *Dews*, the employer had no formal application process; the employee expressed an interest in a promotion to his supervisor; and the supervisor dissuaded him from applying for the promotion. *See id.* at 1021. The court found when an employer fails to notify its employees of the available promotion or does not provide a formal mechanism for employees to express interest in the promotion, the plaintiff need not establish she applied for and was considered for the promotion. *See Dews*, 231 F.3d at 1022. The above exception does not apply, however, if the Plaintiff is notified of the vacancy, even if the employer does not provide a formal mechanism to express interest in the promotion. *See Donahoo v. Ohio Department of Youth Services*, 2002 U.S. Dist. LEXIS 23613 at *55-*56 (N.D. Ohio August 26, 2002)(in which the court declined to apply the exception when a twenty-plus year employee was informed that the position in question was vacant but did nothing to inform his supervisors of his interest; did not "apply for" the position; and failed

to meet the *prima facie* requirements of the claim)[21]; *Frazier v. Ford Motor Co.*, 176 F. Supp. 2d 719, 722-723 (W.D. Ky. 2001)(in which the court found that because the position in question had more subjective than objective criteria; that not every qualified employee would be expected to apply or express interest in such a position; and that the plaintiffs had opportunities to express their interest, but did not do so, the *Dews* exception was not applicable).

### 1)    THE ASSOCIATE DIRECTOR OF SALES POSITION.[22]

Plaintiff claims she was not promoted to the Associate Director of Sales position in or about December 1999, on the basis of her gender. (Pl. Depo. 122). Plaintiff's claim fails, however, because she cannot demonstrate all elements of the *prima facie* case, namely that she applied for and was qualified for, and was considered and rejected for the Associate Director of Sales for the Central National Sales Office, a position filled on or about December 15, 1999, by Mark Henry, a 50-year old male. (Pl. Depo. 122, 125; Charlson Aff. ¶7; Small Aff. ¶3; Patrick Aff. ¶5). The Associate Director of Sales position was located at Hyatt's main office in Chicago. (Small Aff. ¶4).

Although Plaintiff maintains she did not receive the Associate Director of Sales position because of her gender, her claim fails because Plaintiff was aware the position was vacated; she never expressed interest in the position; the decision-maker, Bruce Small, never discriminated against Plaintiff by her own admission; the position was located in Chicago, a city Plaintiff had no interest in moving to; and Plaintiff had stated to Small that she was not interested in leaving Cincinnati. (Pl. Depo. 72-73, 127-128, 130, 132; Small Depo. 44). Finally, Plaintiff has not established that her qualifications were similar to Henry's. In fact, Plaintiff has no direct evidence of gender animus; she bases her entire claim simply on the fact Henry is male. (Pl. Depo. 132). Plaintiff's conclusory

---

[21] A copy of this unreported case is attached hereto as Exhibit P.

[22] As noted above, Plaintiff's claims pursuant to Title VII and the ADEA with regard to this promotional opportunity are time-barred. *See AMTRAK*, 536 U.S. 101, 122 S. Ct. at 2070-2071.
Orlando 37921.1

statement in this regard – absent any evidence to support same – will not suffice to demonstrate that her gender was a determining factor in the alleged adverse employment action taken against her. *See Hedberg*, 47 F.3d at 932; *Ruth*, 1986 U.S. Dist. LEXIS 26531 at *10-*11.

### 2)    THE ASSISTANT VICE PRESIDENT FOR INTERNATIONAL AND INDIVIDUAL TRAVEL POSITION.[23]

As with the Associate Director of Sales position, Plaintiff cannot establish a *prima facie* case of gender discrimination for the Assistant Vice President for International and Individual Travel position, filled in or about April 10, 2000. Although she was aware of the position, and she eventually expressed interested in the position, another, more qualified applicant was selected over her <u>prior</u> to the expression of her interest. (Helms Aff. ¶¶4, 5, 7; Helms Depo. 82; Pl. Depo. 119-120). Ty Helms, the Vice President of Sales, was the decision-maker with respect to this position. (Helms Depo. 82). Rob Sarmiento was selected to fill the position only after Terri Benich, a 40 year old female, turned the position down. (Helms Depo. 82; Benich Aff. ¶6). Benich did not accept the position because she did not want to leave Scottsdale, Arizona and move to Chicago, which was a requirement of the position. (Benich Aff. ¶7; Helms Depo. 82). After Benich declined the position, Helms turned his attention to Sarmiento, a Divisional Director of Sales for Hyatt, who had responsibility for the sales functions of approximately 24 Hyatt hotels. (Helms Depo. 82). In addition, he speaks Spanish fluently and had an understanding of the international market Hyatt desired to attract. (Helms Depo. 82-83). Sarmiento met the position requirements of a person who had international experience, as well as multiple hotel experience in much the same way Benich was similarly qualified. (Helms Depo. 82-83). Plaintiff has none of this experience, having spent her entire career as a sales person at three of Hyatt's hotels. (Charlson Aff. ¶3-4).

---

[23] Again, Plaintiff's claims under Title VII and the ADEA with regard to this claim are barred. *See AMTRAK*, 536 U.S. 101, 122 S. Ct. at 2070-2071.
Orlando 37921.1

Plaintiff testified in her deposition that she expressed an interest in this position to Small and Mike Cheatham. (Pl. Depo. 111). Small and Cheatham referred Plaintiff to Helms, the decision-maker with respect to the position. When Plaintiff spoke with Helms, he informed her he had already selected someone to fill the position. (Pl. Depo. 111). Specifically, he chose Rob Sarmiento after initially selecting a 40 year old woman. (Patrick Aff. ¶5; Benich Aff. ¶3; Helms Depo. 82-83). Plaintiff nonetheless believes that Helms's selection of Sarmiento was a gender-based decision because he did not take her request for the position seriously. (Pl. Depo. 119-120). Surprisingly, Plaintiff maintains this theory even though Helms has never said or done anything to reflect an age or gender bias against her. (Pl. Depo. 118-119).

Plaintiff's claim of gender discrimination fails also because she cannot demonstrate that Sarmiento was selected over her or that she had similar or superior qualifications to Sarmiento. Significantly, Helms had offered the same position to a 40 year old female prior to Sarmiento's acceptance, which clearly shows Helms did not harbor any discriminatory animus toward females. Additionally, Sarmiento's qualifications for this position, in the eyes of the decisionmaker, were superior to Plaintiff's. (Helms Aff. ¶¶4; Pl. Depo. 117). Even from the standpoint of a neutral observer, Sarmiento's qualification were superior in light of his overall responsibility for the sales function at approximately 24 hotels. By contrast, Plaintiff never had managerial experience and never had responsibility for more than her own assigned accounts or sales territories. (Charlson Aff. ¶¶3-4). Thus, Plaintiff failed to establish a *prima facie* of gender discrimination. *See Brown*, 693 F.2d at 603.

3)    THE DIRECTOR OF SALES FOR THE CENTRAL NATIONAL
SALES OFFICE POSITION.

Finally, Plaintiff contends she was denied a promotional opportunity to the Director of

Sales for the Central Region position. (Pl. Depo. 108). Plaintiff cannot establish a *prima facie* case of

gender discrimination based on a failure to promote because she cannot show she applied for the

position. Small announced to Plaintiff and others in October 2000 he would be vacating the

position. (Small Depo. 45). Although Plaintiff was aware that the position for the Director of Sales

for the Central National Sales Force was open or would be open, at no time did she ever apply or

ask anyone to consider her for the position. (Pl. Depo. 132; Small Depo. 46; Horne Depo. 125). In

fact, the position was open for approximately two months as it was not filled until December 2000.

(Charlson Aff. ¶9; Small Depo. 45). Horne selected Brian Booth to replace Small as the Director of

Sales for the Central Region because he wanted to bring a "field perspective" to the NSF. (Horne

Depo. 106; Booth Depo. 60-61). Horne believed Booth was qualified for the position, as he had

experience in one of Hyatt's large convention hotels; he had a good understanding of national

accounts and the booking process; he was organized and administratively sound; and he came with a

positive recommendation from the General Manager of the hotel where Booth worked and Booth's

Divisional Director of Sales. (Horne Depo. 109-110).

Plaintiff has failed to show that she applied for the Director of Sales for the Central Region

position. Indeed, Plaintiff testified that she knew the position was open and did nothing to

affirmatively indicate her interest. (Pl. Depo. 209). Horne had no duty to consider Plaintiff for this

position because he had absolutely no knowledge she might reasonably be interested in this

position. Therefore, Plaintiff has failed to establish a prima facie case of discrimination based upon

her gender with respect to the Director of Sales for the Central Region position because she cannot

Orlando 37921.1

show she applied for the position and was subsequently considered and rejected for the position. *See Brown*, 693 F.2d at 603.

        c.      ***Plaintiff Cannot Establish A Prima Facie Case Of Age Or Gender Discrimination Based On The Elimination Of Her Position During Hyatt's Reduction In Force.***

Plaintiff also claims that her termination as a result of Hyatt's reduction in force was based on her age and gender. Because Plaintiff's position was eliminated as part of a work force reduction, the Court must also consider the law applicable to work force reductions when examining Plaintiff's *prima facie* evidence. *See Scott v. Goodyear Tire & Rubber Co.,* 160 F.3d 1121, 1126 (6th Cir. 1998). Generally, to establish a *prima facie* case of discrimination, a plaintiff must demonstrate (1) she is a member of a protected class; (2) that an adverse employment action was taken against her; (3) that she was qualified for the position; and (4) that she was replaced by an employee outside of the protected class. *See Irwin*, 107 F. Supp. 2d at 982 (setting forth the standards under the ADEA); *Evans*, 889 F. Supp. 307-308 (setting forth the standards for gender and race discrimination claims). In the event of a workforce reduction, however, to satisfy the fourth prong of a *prima facie* case, a plaintiff must proffer "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons." *Irwin*, 107 F. Supp. 2d at 982; *Barnes v. GenCorp Inc.,* 896 F. 2d 1457, 1465 (6th Cir. 1990). Absent such a requirement, every discharged person age 40 and over would be able to establish a *prima facie* case of discrimination in a work force reduction. *See Barnes*, 896 F.2d at 1465.

Plaintiff's position was eliminated as a result of Hyatt's reduction in force following September 11, 2001, which clearly qualifies as a work force reduction as defined by this Circuit for the purposes of determining Plaintiff's burden of proof. *See Herbst v. System One Information Management, L.L.C.,* 31 F. Supp. 2d 1025, 1033 (N.D. Ohio 1998)(stating that a workforce reduction

Orlando 37921.1

occurs when business considerations cause an employer to eliminate one or more positions within the company), *citing Barnes*, 896 F.2d at 1465. The court in *Herbst* distinguished between position elimination and replacement and noted that a person is replaced only when another employee is hired or reassigned to perform that person's duties, not when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other, existing employees already performing related work. *See id., citing Barnes*, 896 F.2d at 1465.

Following Plaintiff's position elimination, her customers were reassigned to several current Directors of National Accounts who were already performing related work. (Booth Depo. 37). The individuals assigned Plaintiff's accounts were both females and males, over 40 years of age and under 40 years of age. (Booth Depo. 25, 37). No one, however, was hired to replace Plaintiff. (Horne Aff. ¶11).

For the purposes of this Motion only, Defendants concede that at the time of the reduction in force, Plaintiff was both female and over the age of 40; her employment was terminated; and she was qualified for her position as Director of National Accounts. Because Plaintiff cannot set forth any additional direct, circumstantial or statistical evidence tending to indicate Hyatt singled her out for discharge based on her age or gender, her claims fail as a matter of law.

### 1)    PLAINTIFF CAN PRESENT NO DIRECT EVIDENCE OF AGE OR GENDER DISCRIMINATION.

In order to satisfy her burden to establish a *prima facie* case in a work force reduction, Plaintiff must set forth additional direct evidence of age or gender discrimination. Plaintiff, however, has failed to do so. As discussed in section II.B.1.a., above, "direct evidence" is proof that establishes discrimination on its own, without a need for the inference of discrimination. *See Terbovitz*, 825 F.2d at 115. In what appears to be Plaintiff's only possible attempt to point to "direct evidence," Plaintiff points to two comments by Booth as evidence of age and gender

Orlando 37921.1

discrimination.[24]  According to Plaintiff, during the mid-year review of July, 2001, Booth asked her if

she planned on "staying home and enjoying [being] married." (Pl. Depo. 27).  Plaintiff had recently

married, a matter known to her co-workers.  Plaintiff also took issue with Booth's gender-neutral

inquiry "if someone else could handle her accounts," in the event she left the Company  (Pl. Depo.

27).  Although Plaintiff believed the comments were "sexist and ageist," she did not regard them as

illegal harassment. (Pl. Depo. 57-58, 199-203).  Moreover, Plaintiff did not report the comments to

anyone in Hyatt's Human Resources Department and gave no indication she was offended. (Pl.

Depo. 199-203).  Booth testified he made the inquires because a colleague believed Plaintiff was

considering a career change. (Booth Depo. 171).  Booth denied any age-related or gender-related

intent or suggestion, but even assuming Plaintiff was reasonable in taking offense, these stray

remarks bear too tenuous a relationship to age or gender to establish unlawful discrimination.

(Booth Depo. 173).

Generally, remarks by individuals with no managerial authority over a personnel decision are

not indicative of discrimination. *See Creech*, 944 F. Supp. at 1358 (finding that comments referring to

plaintiffs as "girls" or "gals" and telling plaintiff at the time her position was terminated she could

go home and watch soap operas, did not constitute direct evidence of gender discrimination).

Further, isolated and ambiguous comments are too irrelevant, abstract, and prejudicial to support a

finding of discrimination. *See id.* at 1358.  *See also Bush v. Dictaphone Corp.,* 161 F.3d 363, 369 (6th Cir.

1998)(statements by nondecisionmakers or by decisionmakers unrelated to the decisionmaking

process cannot satisfy the plaintiff's burden).  *See also Byrnes v. LCI Communication Holdings Co.,* 77

Ohio St. 3d 125, 672 N.E.2d 145 (1996)(in which the court found there was insufficient direct

evidence of age-related hostility where the employer had made a number of comments over several

---

[24] In making this argument, Defendants in no way concede this evidence is "direct" for any purpose in this case, but in an attempt to anticipate Plaintiff's arguments, will address such comments.
Orlando 37921.1

years indicating a desire for younger employees in different positions and the only comment directed to the plaintiff was an inquiry by the CEO as to whether plaintiff was suffering from Alzheimer's disease).

Thus, because the comments set forth above are neither, on their face, ageist or sexist and because Plaintiff cannot show that Booth had a meaningful role in the decision to eliminate her position or the decisions with regard to the alleged denial of promotional opportunities, she cannot rely on same to support her case.    Accordingly, Plaintiff has failed to demonstrate any direct evidence of discrimination to support her claim that her position was eliminated on the basis of her age or gender.

2)    **PLAINTIFF CAN POINT TO NO CIRCUMSTANTIAL EVIDENCE DEMONSTRATING HER TERMINATION AS A RESULT OF THE REDUCTION IN FORCE WAS RELATED TO HER AGE OR GENDER.**

In cases involving reductions in force, an employee can also attempt to establish the fourth prong of her *prima facie* case by pointing to additional circumstantial evidence demonstrating the consideration of an impermissible factor.[25]    During her testimony, Plaintiff could point to nothing that demonstrated age or gender animus.    She did, however, point to various events she believed to be unfair. (Pl. Depo. 26, 30, 49-50, 157; Amended Complaint; Complaint Case No. C-1-02-003).

(a)    <u>ASSIGNMENT OF PLAINTIFF'S ACCOUNTS.</u>

Plaintiff believes the assignment of some of her accounts to younger employees is unfair. (Amended Complaint; Complaint in Case No. C-1-02-003).    This, however, does not constitute

---

[25] Although one case has stated a plaintiff can establish the fourth prong by demonstrating that a comparable non-protected person was treated more favorably, the case cited in support of this statement was unrelated to a reduction in workforce, and other cases in this Circuit do not seem to take the same approach. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 351 (6th Cir. 1998), *citing Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-583 (6th Cir. 1992).

evidence of a discriminatory animus on the part of Hyatt or its employees. *See Hooper v. Cargill, Inc.*, 1999 U.S. App. LEXIS 17969 at *13, *17 (6th Cir. July 23, 1999)(finding a plaintiff could not prove age discrimination in the context of a reduction in force "merely by showing that [the company] retained younger employees in jobs [the plaintiff] could have performed" and noting that an employer has no duty under the ADEA to permit an employee to transfer to another position or displace less senior workers when the employee's position is eliminated as part of a workforce reduction).[26]  When Plaintiff's position was eliminated during a reduction in force, other employees, over 40, under 40, male, and female, were given responsibility for Plaintiff's accounts. (Booth Depo. 53).  Of Plaintiff's approximately 47 accounts, 13 were given to Molly Crompton (age 33, female), 4 were given to Jennifer Roman, (age 32, female), 22 were given to Barbara Hale, (age 34, female), 5 were given to Inge Spindola, (age 43, female), and 2 were given to Fred Reichelt, (age 45, male). (Booth Depo. 53; Answers to Interrogatory No. 3). Thus, her accounts were distributed to men and women, both over and under the age of 40.   Plaintiff has pointed to nothing connecting these reassignments with age or gender, other than her own supposition and belief.  Hyatt had legitimate business reasons for implementing the reduction in force, and the individuals affected were selected according to legitimate, nondiscriminatory criteria. (Horne Depo. 19, 75-76).

Similarly, the accounts of the nine other individuals affected by the reduction in force also were re-distributed to various individuals of differing ages and genders. (Horne Aff. ¶¶8-10).  For example, in the case of Dean D'Anna, approximately 1 of his accounts was assigned to a 32 year old woman, 1 to a 43 year old woman, 4 to a 47 year old man, 6 to a 42 year old man, and 3 were assigned back "to the field." (Horne Aff. ¶8).  In the case of Mary Rocereto, approximately 1 of her accounts was assigned to a 43 year old woman, 13 to a 56 year old woman, 3 to a 32 year old

---

[26]  A copy of this unreported case is attached hereto as Exhibit Q.

Orlando 37921.1

36

woman, one to a 24 year old woman, and 3 to a 44 year old man. (Horne Aff. ¶9). In the case of Mary Patton, who was 37 at the time of the reduction in force, approximately 4 of her accounts were assigned to a 41 year old woman, 6 to another 41 year old woman, 3 to a 52 year old man, 12 to a 49 year old woman, and one to a 42 year old woman. (Horne Aff. ¶10). In sum, no record evidence demonstrates a connection between age or gender animus and the reassignment of the accounts of persons adversely affected by the reduction in force.

### (b)    THE MID-YEAR REVIEW.

Plaintiff also points to a "mid-year review" she received in July 2001 as evidence she was "singled-out" on the basis of her gender and age. (Pl. Depo. 53). However, Plaintiff admitted that each of her colleagues in the Central Region was similarly given a mid-year review by Brian Booth. (Pl. Depo. 53-54). Booth gave each subordinate a mid-year review, and employees of varying ages and genders received "meets expectations" and "exceeds expectations." (Booth Aff. ¶8; Booth Depo. 166). Plaintiff received a "meets expectations" rating, a perfectly acceptable rating both objectively and in the eyes of Booth. When asked during her deposition to identify the connection between her mid-year review and her age, Plaintiff stated, "[I]t was offensive to be told in May that we were going to be reviewed in June for six months and five months had already lapsed with criteria that we had never seen previously." (Pl. Depo. 56). This, in and of itself, does not establish discriminatory animus, and, in any event, the event occurred months before Hyatt's decision to reduce its workforce. In fact, as Plaintiff admits, the mid-year review was not a disciplinary action taken against her and was not a formal action placed in her employee file. (Pl. Depo. 148). *See Trepka v. The Board of Education for the Cleveland City School Dist.*, 28 Fed. Appx. 455, 2002 U.S. App. LEXIS 1357 at *15-*16 (6th Cir. January 24, 2002)(finding that an adverse employment action must constitute a "materially adverse change in the terms and conditions of employment" and that an

Orlando 37921.1

employee who received "good" or "excellent" evaluations and had not suffered a change in salary, promotion track, or responsibilities had not been subject to an adverse employment action).[27] Further, Booth had no role in the decision regarding which employees would be affected by the reduction in force, and, therefore, any connection is purely speculative. (Booth Depo. 7-8).

(c)    <u>PLAINTIFF'S SALES QUOTA.</u>

In her Complaint, Plaintiff also points to the increase of her "group sales" quota by Brian Booth in February 2001 as being "unfair." (Pl. Depo. 153-154).    As Booth explained in his deposition, however, the quotas of other individuals in the National Sales Force were increased as well. (Booth Depo. 160). Plaintiff testified that even if others, male and under 40, similarly had their quotas increased, this would not change her belief that the increase was unfair in her case. (Pl. Depo. 51).    As the quotas for Plaintiff's colleagues were also increased for the same period, regardless of their age or gender, such evidence does not support Plaintiff's claims for age and gender discrimination. Plaintiff's quota was increased from 4.1 million dollars for the first six months of 2001, based, in part, on her outstanding performance in 2000, which had been 136%, or 2 million dollars over her quota, and Plaintiff indicated in her 1999 evaluation she wished to increase her revenue in 2001 10% over her 2000 performance. (Booth Depo. 152-154).    Further, although Plaintiff was displeased with this quota, she did not believe it was age or sex-based. (Pl. Depo. 52).

Plaintiff can point to no other circumstantial evidence, other than her supposition, speculation, and belief, to support her claims that she was discriminated against by receiving a mid-year review.    Thus, her claims with regard to her termination fail as a matter of law.

---

[27]    A copy of this unreported case is attached hereto as Exhibit R.

Orlando 37921.1

3) **PLAINTIFF CAN POINT TO NO STATISTICAL EVIDENCE SUPPORTING HER CLAIMS.**

While statistical data showing an employer's pattern of conduct toward a protected class as a group can, if unrebutted, create an inference that a defendant discriminated against individual members of the class, Plaintiff cannot rely on such an inference in this case. *See Barnes,* 896 F.2d at 1466, *citing Laugesen v. Anaconda Co.,* 510 F.2d 307, 317 (6th Cir. 1975). Indeed, to rely on such data, the statistics must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity. *See id.*

Even if Plaintiff is permitted to use statistical data to prove a case of age discrimination, the statistical data in the instant case shows that prior to and following the reduction in force, the number of males and females in the NSF remained, as a percentage, essentially the same, and the individuals affected by the reduction in force reflected the composition of the NSF.[28] (See discussion, section I.L., above). Accordingly, before and after the reduction in force, the percentage of employees in each age category, as a percentage of the sales personnel in the NSF, essentially remained the same. (Patrick Aff. ¶5). In fact, the percentage of employees in the age 50 and over category **increased** after the reduction in force occurred. Hyatt did not eliminate the position of a single person aged 50 or over, of which there were 9 in the NSF, which is incredible if the Defendants were intent on age discrimination. (Patrick Aff. ¶5; Answers and Supplemental Answers to Interrogatories No. 4). Clearly, Plaintiff cannot rely on statistical data to support her claim of age discrimination.

Similarly, prior to the reduction in force, the sales personnel in the NSF included 56 (73%) females and 21 (27%) males. After the reduction in force, the sales personnel in the NSF included

---

[28] It is important to note that, as implied by the United States Supreme Court in denying review of *Adams v. Florida Power Corp.,* 255 F.3d 1322 (11th Cir. 2001), disparate impact claims are not appropriate under the ADEA.
Orlando 37921.1

48 (72%) females and 19 (28%) males. (Patrick Aff. ¶5). Thus, both before and after the reduction in force, approximately three-quarters of Plaintiff's colleagues were female. As is the case with the age statistics, Plaintiff cannot create an inference of gender discrimination from a statistical review of the reduction in force. Further, Company-wide, before and after the reduction in force, the number of men and women and employees under 40 and 40 and over, remained the same as a percentage of the total workforce. Thus, Plaintiff cannot point to any statistical evidence of gender or age animus. (Patrick Aff. ¶5).

Based on the above reasons, Plaintiff has failed to establish each of the elements of a *prima facie* case for age or gender discrimination, and her claims fail as a matter of law.

**2.    Even if Plaintiff Establishes A *Prima Facie* Case For Age And/Or Gender Discrimination, She Cannot Establish That Hyatt's Legitimate, Nondiscriminatory Reasons For Her Discharge Or Allegedly Denied Promotions Were Pretext For Discrimination.**

Even assuming, *arguendo,* that Plaintiff could establish a *prima facie* case of age or gender discrimination, which she cannot, her claims would fail in any event, because Defendants have presented legitimate, nondiscriminatory reasons for each promotion and for the reduction in force, and Plaintiff cannot present evidence of a pretext. A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to motivate the challenged conduct. *See Manzer,* 29 F.3d at 1084. If a plaintiff can show that the defendant's proffered, non-discriminatory reason is pretextual, the trier of fact may infer discrimination. *See Roh,* 241 F.3d at 497-498. Nevertheless, the ultimate burden of proof to show discrimination remains on the plaintiff at all times. *See Herbst,* 31 F. Supp. 2d at 1034.

In determining whether pretext exists, courts generally will not second-guess legitimate business decisions of employers. *See id.* at 1035[29]; *Ruth*, 1986 U.S. Dist. LEXIS 26531 at *9-*11(stating that it is not the function of the court to second-guess the business decisions made by employers or to judge whether the employee's position should have been eliminated or whether the employer treated him fairly by not offering him another position, but instead exclusively to judge whether he was discriminated against on the basis of his age). Further, in a pretext analysis, statements by nondecisionmakers or statements by decisionmakers unrelated to the decisional process itself cannot satisfy the plaintiff's burden to establish discriminatory animus. *See Bush*, 161 F.3d at 369. Additionally, even decisions which appear to be made for reasons other than merit are not *per se* violative of federal law. *See Betkerur*, 78 F.3d at 1096. In *Betkerur*, the court recognized:

> [T]he district court correctly found that charges of nepotism, even if proven, do not constitute evidence of impermissible discrimination . . . . While we share . . . distaste for a decision which appears to have been made for reasons other than merit, we do not believe that Title VII authorizes courts to declare unlawful every arbitrary and unfair employment decision. To hold that favoritism toward friends and relatives is *per se* violative of Title VII would be, in effect, to rewrite federal law. The list of impermissible considerations within the context of employment practice is both limited and specific: "race, color, religion, sex, or national origin." We are not free to add our own considerations to the list.

*Id.* at 1096 (citations omitted).[30]

---

[29] In *Herbst*, the plaintiff attempted to rely on the employer's "cursory, unstructured, undocumented and subjective manner in which the defendant made its decision" and that the defendant failed to follow its own reduction in force policy. *Id.* The court rejected this argument and found there was a lack of contemporaneous documentation with regard to all employees affected by the reduction in force. *See id.* Moreover, the individual making the decision to eliminate jobs was familiar with job duties and performance and thus it was unnecessary to officially evaluate the affected employees prior to making his decision. *See id.*

[30] In the present case, based on the questions posed to Horne during his deposition, Plaintiff seems to believe that Horne exhibited favoritism towards other members of the NSF, which he did not. (Horne Depo. 56-58, 60, 62-63). Even in the event he did, which is unsupported by the facts, he exhibited no preference on the basis of age or gender, and, thus, his actions could not be considered unlawful. *See Betkerur*, 78 F.3d at 1096.

Orlando 37921.1

a.    *There Is No Evidence Of Pretext In The Context Of Plaintiff's Allegations That She Was Not Promoted To Certain Positions.*

Plaintiff claims she was not promoted based on her gender. First, Plaintiff is unable to establish a *prima facie* case of discrimination based on her gender with regard to promotions she allegedly was denied. Even if she could establish such a case, however, her claims fail because she cannot establish that Hyatt's legitimate, nondiscriminatory reasons for hiring other individuals were pretext for discrimination.

### 1)    THE ASSOCIATE DIRECTOR OF SALES POSITION.

Plaintiff has stated that Bruce Small, her immediate supervisor prior to Brian Booth, had not engaged in any type of discrimination while she was employed with Hyatt. (Pl. Depo. 113). It is undisputed that Small made the decision with regard to hiring Mark Henry for the Associate Director of Sales position, located in Chicago. (Small Aff. ¶3). Plaintiff did not express interest in this position and had communicated to Small she was not interested in moving from Cincinnati, a factor which would disqualify her from the job in Chicago. (Pl. Depo. 128-129; Small Depo. 44). Plaintiff has presented no evidence demonstrating that Small's legitimate, nondiscriminatory reason for failing to consider or hire her for this position, his lack of knowledge that she was interested, and his feeling that Henry was qualified for the position, are somehow motivated by discriminatory animus on the basis of her age or her gender. Thus, she cannot establish any pretext on the part of Hyatt or the individual Defendants.

### 2)    THE ASSISTANT VICE PRESIDENT FOR INTERNATIONAL AND INDIVIDUAL SALES POSITION.

Ty Helms hired Rob Sarmiento for the position of Assistant Vice President for International and Individual Sales in or about April 2000. Helms stated that he hired Sarmiento based on his experience and unique knowledge of the international market. (Helms. Depo. 82-83; Helms Aff.

Orlando 37921.1

42

¶5). Further, Helms had first considered a 40 year old female for the position, but she declined his offer. (Helms Depo. 82). Plaintiff did not express interest in this position to Helms until after Helms had offered the job first to the 40 year-old female, Terri Benich, and then later to Sarmiento. (Pl. Depo. 117; Helms Depo. 238-239). Further, Helms believed Sarmiento was more qualified for the position than Plaintiff, primarily because of his experience managing the sales efforts of approximately 24 hotels, a form of experience Plaintiff clearly does not have. (Helms Depo. 241; Helms Aff. ¶4; Charlson Aff. ¶¶3-4). Plaintiff has pointed to no reason, other than her belief, speculation, and supposition, that indicate Helms's legitimate, nondiscriminatory reasons for hiring Sarmiento were pretext for discrimination. Plaintiff stated in her deposition she has met Helms on only a few occasions, and she knows of no inappropriate or unlawful behavior in which Helms has engaged on the basis of age or gender. (Pl. Depo. 119). Thus, she has presented no evidence of pretext and her claims fail as a matter of law.

### 3) THE DIRECTOR OF SALES FOR THE CENTRAL NATIONAL SALES OFFICE POSITION.

Plaintiff also alleges the failure to hire her for the Director of Sales for the Central National Sales Office was discriminatory. This position had previously been occupied by Bruce Small, the person who acted as Plaintiff's immediate supervisor for approximately five years. (Small Depo. 49). Plaintiff was aware that Bruce Small would be leaving his position, that it would be open, but Plaintiff did not express interest in or apply for the position. (Pl. Depo. 134). Additionally, the position was located in Chicago, Illinois, and Plaintiff had stated to Bruce Small that she did not wish to leave Cincinnati, Ohio. (Pl. Depo. 128-129). Jack Horne was responsible for filling this position, and Plaintiff pointed to no evidence that he exhibited age or gender animus in selecting Booth for the position, especially as she expressed no interest. Additionally, Plaintiff has pointed to no alleged comments, actions, or other facts that could possibly demonstrate pretext on the part of

Orlando 37921.1

Horne. In fact, Plaintiff conceded she does not know Horne very well and he has never made age or sex based comments to her knowledge. (Pl. Depo. 60).

> **b.** ***There Is No Evidence Of Pretext In The Context Of The Elimination Of Plaintiff's Position.***

Hyatt has articulated a legitimate, non-discriminatory reason for Plaintiff's position elimination, namely, a reduction in force necessitated by well-known economic considerations. The reduction in force occurred for legitimate business reasons and was not implemented for any discriminatory purpose. Thus, even if Plaintiff is able to establish the *prima facie* elements of age or gender discrimination in connection with the elimination of her position, she cannot establish that Hyatt's legitimate, nondiscriminatory reasons for her discharge, namely a reduction in force based on economic considerations, are pretext for discrimination. (See discussion sections I.F, I.I., and I.J, above).

Hyatt began to experience financial difficulties in late 2000 and in early 2001. In fact, in May 2001, Hyatt implemented a number of cost-saving measures designed to avoid reductions in hours or jobs for its personnel. (Horne Depo. 83; Helms Aff. ¶¶16-18). Due to these aggressive cost-cutting measures, the Company was able to avoid layoffs. (Helms Depo. 8-9). This Court can take judicial notice of the fact that after the tragedy of September 11, 2001, the hotel, lodging, and airline industries were financially devastated. Hyatt's hotels experienced extremely low occupancy rates during this time. (Helms Aff. ¶13). Indeed, in the days following September 11, Hyatt hotels lost over $44,000,000.00 in business from immediate cancellations. (Helms Depo. 9). Hyatt's business had dropped by $415,000,000.00 from the previous year. (Helms Depo. 9). After facing such enormous loses, Hyatt was forced to make difficult decisions to insure the good health and continued vitality of the Company. (Helms Depo. 9-10). Hyatt's President, Scott Miller, informed his direct reports that unfortunately, it made good business sense to consider additional cost-cutting

Orlando 37921.1

measures that would affect employees. (Helms Depo. 9-10). As a result, for the legitimate business reasons discussed in sections I.F, I.I., and I.J, above, Horne selected Plaintiff for position elimination because he believed Hyatt, in the long run, would not lose any production or revenue from the customers Plaintiff handled. (Horne Depo. 8).

Plaintiff has not presented evidence that the elimination of her position or the positions of others in the NSF, or Company-wide for that matter, was pretext for discrimination. Courts agree that "[w]hen a business is in a process of deliberately downsizing for legitimate financial reasons, economies of scale, an inference of discrimination does not automatically arise simply because one's job is terminated and the job duties redistributed among the reduced work force, even when that person is a member of a distinct age group or gender." *Frantz v. Beechmont Pet Hosp.,* 117 Ohio App. 3d 351, 358, 690 N.E.2d 897, 902 (1996). Plaintiff's position was eliminated during a workforce reduction, a business decision made by Defendants due to well-known and understandable economic factors, and Plaintiff has not presented any evidence to the contrary, other than her own belief and speculation. *See Herbst,* 31 F. Supp. 2d at 1035 (holding that courts will not second-guess employer's business decisions).

Because Plaintiff cannot offer any evidence sufficient to allow a reasonable fact-finder to believe Hyatt or the individual Defendants acted with a discriminatory animus in eliminating her position, she fails to show Hyatt's proffered reasons for her position elimination were pretextual.

C.    **Plaintiff's Claims Against The Individual Defendants For Age and Gender Discrimination Fail As A Matter Of Law.**

Plaintiff claims she was subject to discrimination at the hands of Ty Helms, Brian Booth, and Jack Horne, as individuals. Because she has absolutely no evidence of discrimination with regard to these individuals, her claims fail as a matter of law. O.R.C. § 4112.02, provides that "[I]t shall be an unlawful discriminatory practice: (A) [f]or any employer, because of the race, color,

Orlando 37921.1

45

religion, sex, national origin, handicap, age, or ancestry of any person, ... to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." O.R.C. § 4112.01(A)(2) defines "employer" as "any person employing four or more persons within the state . . . and **any person acting directly or indirectly in the interest of an employer.**" (Emphasis added). In *Genaro,* 84 Ohio St. 3d at 300, 703 N.E.2d at 787-788, the Ohio Supreme Court held that supervisors and managers can be held personally liable for unlawful discriminatory acts committed by such persons in violation of the provisions of O.R.C. Chapter 4112. In subsequent cases, however, courts have made clear that supervisors and managers who take no adverse employment action cannot be held individually liable under O.R.C. Chapter 4112. *See Williams v. General Electric Co.,* 269 F. Supp. 2d 958, 970 (S.D. Ohio 2003)(in which the court indicated that only supervisors who play a direct role in making an employment decision can be individually liable under O.R.C. Chapter 4112); *Jones v. Kilbourne Medical Laboratories,* 162 F. Supp. 2d 813, 830 (S.D. Ohio 2000). Further, Chapter 4112 "does not provide a cause of action against supervisors who are, at worst, rude and unsympathetic to employees. . . ." *Brown v. Worthington Steel, Inc.,* 211 F.R.D. 320, 327 (S.D. Ohio 2002)(citations omitted). The individual Defendants are entitled to summary judgment because Plaintiff cannot make out her *prima facie* case as analyzed above, and she lacks any direct evidence of discrimination.

### 1.    Booth Is Entitled To Summary Judgment Because He Never Took Adverse Employment Action Against Plaintiff.

Booth is entitled to summary judgment on Plaintiff's claims against him pursuant to O.R.C. Chapter 4112 because he never took adverse employment action against Plaintiff. It is undisputed that he never made a hiring decision with regard to Plaintiff's employment, he did not make the decision to eliminate Plaintiff's position, and he did not take any other adverse action with regard to

Plaintiff's employment. Thus, Plaintiff's claims against him fail as a matter of law. *See Williams*, 269 F. Supp. 2d at 970.

### 2. Horne Is Entitled To Summary Judgment Because Plaintiff's Claims For Which He Was The Decisionmaker Fail As A Matter Of Law.

Plaintiff's claims against Horne also fail as a matter of law because she cannot establish claims of age or gender discrimination based on the elimination of her position. (See discussion in Section II.B.I.c., above). Further, Horne made no other decision adverse to Plaintiff during her employment with Hyatt. In fact, Plaintiff concedes that she hardly knew Horne, she had never really spoken to him, and she did not know of any comments or actions indicating he had an age or gender animus towards her. (Pl. Depo. 58-60).

### 3. Helms Is Entitled To Summary Judgment Because Plaintiff's Claims For Which He Was The Decisionmaker Fail As A Matter Of Law.

Plaintiff's claims against Helms also fail as a matter of law because, although he approved the decision with regard to the elimination of her position, he relied on the judgment of Horne, who made the determination regarding the positions in the NSF to be eliminated. *See Williams*, 269 F. Supp. 2d at 970. Further, even if he could be considered the decisionmaker, which he cannot, Plaintiff has not established claims of age or gender discrimination based on the elimination of her position, and her claims therefore fail as a matter of law. Further, with regard to the one position for which Helms hired Sarmiento, it is clear that Plaintiff expressed no interest in the position until after Helms made the decision to hire Sarmiento, and Helms believed Sarmiento was more qualified for the position than Plaintiff. (Helms Aff. ¶7). Further, Plaintiff can point to no age or gender animus Helms exhibited during her employment with Hyatt and acknowledged she has no evidence that he acted towards her with such an animus. (Pl. Depo. 58-59). Thus, her claims against Helms fail as a matter of law.

Orlando 37921.1

**D.    Plaintiff's Claims Against Defendants For Discharge Based On A Violation of Public Policy Should Be Dismissed As A Matter Of Law.**

Plaintiff also claims that her discharge violates Ohio public policy. As a threshold matter, Ohio law no longer recognizes a cause of action for wrongful discharge in violation of public policy where the public policy is premised upon a statute which provides comprehensive, make-whole remedies. *See Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 773 N.E.2d 526 (2002).[31] The same reasoning applies in the instant case, as the OCRA provides a full range of remedies for an aggrieved employee who believes he or she was subject to discrimination at the hands of an employer. *See id.* 244-245; O.R.C. §4112.99 (stating "[w]hoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief."). Thus, under O.R.C. Chapter 4112, an employee can potentially recover damages, reinstatement, attorneys' fees, and punitive damages. *See* O.R.C. §4112.99; *Rice v. CertainTeed Corp.*, 84 Ohio St. 3d 417, 418, 704 N.E.2d 1217, 1218 (1999)(allowing the recovery of punitive damages under O.R.C. § 4112.99).[32] These substantial remedies are even more comprehensive than those available under the FMLA. *See Wiles*, 96 Ohio St. 3d at 245. As such, based upon the authority of *Wiles*, there is no need to recognize a cause of action for wrongful discharge in violation of public policy based on O.R.C. Chapter 4112, as the statute provides an adequate remedy to Plaintiff. *See Barlowe v. AAAA Int'l Driving*, 2003 Ohio 5748 at P28-P39, 2003 Ohio App. LEXIS 5097 at *13-*25 (October 24, 2003)(upholding summary judgment in favor of employer for public policy discharge based on O.R.C. Chapter 4112 because

---

[31] In *Wiles*, the Ohio Supreme Court held that Ohio does not recognize a cause of action for wrongful discharge in violation of public policy where the cause of action is premised upon a violation of the Family and Medical Leave Act ("FMLA"), reasoning there was no need to recognize a common-law cause of action for wrongful discharge where the employee has an alternative means of vindicating his or her statutory rights, in part, because under the FMLA, an employee can seek damages including reinstatement, back wages, attorney's fees and costs of litigation. *Id.* at 245-246.

[32] By arguing such remedies could be available to a plaintiff, Defendants in no way concede Plaintiff is entitled to any relief whatsoever.

Orlando 37921.1

the "jeopardy" element was not satisfied, as Chapter 4112 provided adequate remedies).[33] Accordingly, for these reasons alone, Plaintiff has failed to state claims upon which relief can be granted.

Even if such a claim is congnizable under Ohio law, however, because the evidence fails to establish the elements of such a claim, summary judgment in favor of Defendants is appropriate. In order to establish a claim for wrongful discharge in violation of public policy, a plaintiff must demonstrate that (1) a clear public policy exists ("clarity" element), (2) the circumstances surrounding the employee's dismissal jeopardize that public policy ("jeopardy" element), (3) the dismissal was motivated by conduct related to the public policy ("causation" element), and (4) the employer lacked overriding, legitimate business justification for the dismissal ("overriding justification" element). *See Kittle*, 232 F. Supp. 2d at 873-874, *citing Wiles*, 96 Ohio St. 3d 241, 773 N.E.2d at 529.[34]

As an initial matter, as Plaintiff has failed to withstand summary judgment on any of her other claims against Defendants, her claim for public policy discharge fails as a matter of law. *See Jones*, 162 F. Supp. 2d at 830-831(finding that when summary judgment in favor of the employer was appropriate with regard to the underlying claims of race discrimination pursuant to Title VII and the OCRA, it was also appropriate with regard to the employee's public policy discharge claim); *Kittle*, 232 F. Supp. 2d at 875-877 (likening proof regarding the second two elements of a public policy discharge claim to proof in an employment discrimination case).

---

[33] A copy of this decision is attached as Exhibit S.

[34] In *Kittle*, the court analyzed a public policy discharge claim using the method to analyze a discrimination claim, and it never addressed whether such a claim is cognizable in light of *Wiles*. *See id.*

Orlando 37921.1

Because Plaintiff cannot establish the last three elements of this cause of action, her wrongful discharge claim fails as a matter of law.[35] As stated above, Plaintiff cannot establish a *prima facie* case of age or gender discrimination as a result of her termination in connection with the reduction in force. Additionally, even if she could establish these elements, Plaintiff's position was eliminated pursuant to a legitimate reduction in force due to legitimate business reasons, namely economic considerations connected with a decline in the economy, exacerbated by the events of September 11, 2001. In addition, Plaintiff has not set forth any evidence showing that her dismissal for legitimate business reasons was in any way pretext for age or gender discrimination. Thus, the facts surrounding Plaintiff's position elimination clearly do not prove the elements necessary successfully to establish a claim for wrongful discharge contrary to public policy. Accordingly, because Plaintiff has not presented evidence establishing the elements of a claim of wrongful discharge in violation of public policy, if such a claim is cognizable, Defendants are entitled to summary judgment in its favor on Plaintiff's claim.

## III. CONCLUSION

For the foregoing reasons, entry of summary judgment in favor of Defendants on all of Plaintiff's claims is proper.

---

[35] This discussion assumes without concession by Defendants that, if the Court recognizes this as a cognizable cause of action under Ohio law, the first element of the claim has been satisfied. Further, as discussed above, Plaintiff cannot establish the jeopardy element, as O.R.C. Chapter 4112 provides adequate remedies for her claims. *See Barlowe*, 2003 Ohio 5748 at P39, 2003 Ohio App. LEXIS 5097 at *24-*25.

Orlando 37921.1

DATED this 1st day of March 2004.

Respectfully submitted,

FISHER & PHILLIPS LLP
1250 Lincoln Plaza
300 South Orange Avenue
Orlando, Florida 32801
Telephone:    (407) 541-0888
Facsimile:    (407) 541-0887

By:    s/Theresa M. Gallion by
       s/Jeffrey J. Harmon per telephone
       authorization of 3/1/04
       Theresa M. Gallion, Esq.
       Florida Bar No. 726801
       TGallion@LaborLawyers.com

       Natalie J. Storch, Esq.
       Florida Bar No. 0269920
       NStorch@LaborLawyers.com


       s/Jeffrey J. Harmon
       Jeffrey J. Harmon
       Ohio Bar No. 0032848
       CORS & BASSETT
       1881 Dixie Highway, Suite 350
       Ft. Wright, Kentucky 41011
       Telephone:    859-331-6440
       Facsimile:    859-331-5337

       ATTORNEYS FOR DEFENDANTS


CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that on March 1, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Stanley M. Chesley and Robert Steinberg, Waite, Schneider, Bayless, & Chesley Co., L.P.A., 1513 Central Trust Tower, Cincinnati, Ohio, 45202.

                              s/Jeffrey J. Harmon
                              Jeffrey J. Harmon

Orlando 37921.1