LEXSEE 40 fep cases 1227

**ROBERT J. RUTH, Plaintiff v. ALLIS-CHALMERS CORPORATION d/b/a AMERICAN AIR FILTER COMPANY, Defendant**

No. C 83-0360-L(B)

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

*1986 U.S. Dist. LEXIS 26531; 40 Fair Empl. Prac. Cas. (BNA) 1227; 40 Empl. Prac. Dec. (CCH) P36,349*

April 18, 1986, Decided and Entered

**OPINIONBY:**
[*1]
 BALLANTINE, JR.

**OPINION:**

MEMORANDUM

THOMAS A. BALLANTINE, JR., UNITED STATES DISTRICT JUDGE

This case is before the Court on motion of the defendant, Allis-Chalmers Corporation, d/b/a American Air Filter Company (AAF), for summary judgment. The complaint against defendant was brought pursuant to the Age Discrimination in Employment Act of 1967 (ADEA), as amended, *29 U.S.C. § 621* et seq., and the Kentucky Civil Rights laws, Ky.Rev.Stat. 344.010, et seq.

A summary of the background of plaintiff's employment history with the defendant is set out in the Court's memorandum and order of February 11, 1985. The thrust of plaintiff's complaints about AAF is that after his position was eliminated in November of 1981, defendant should have considered him for a position as a Regional Sales Manager. In addition to requiring the duties performed by plaintiff in his position as Manager of Field Office Administration, the Regional Sales Manager positions required recent familiarity with the product line of the company.

Defendant's position is that plaintiff was not considered for one of the positions as Regional Sales Manager because of lack of recent product familiarity and because [*2] the company did not want to bear the expense of his relocation from Louisville to assume the position. It is undisputed that plaintiff's job was eliminated in the two major reorganizations occurring in 1980 and 1981 and that at that time plaintiff did not protest the elimination of his job or request consideration as a candidate for a Regional Sales Manager position. Plaintiff, did, however, indicate on a form which was part of a progress review, a career goal as Sales Manager or Marketing Manager of a Division.

Defendant alleges in its motion for summary judgment that plaintiff has failed to produce any evidence whatsoever of any discrimination by American Air Filter on the basis of age. The major issue before the Court at this time is whether plaintiff has presented a prima facie case sufficient to withstand defendant's motion for summary judgment.

The ADEA provides that "[i]t shall be unlawful for an employer ... to discharge any individual ... because of [his] age ...." *29 U.S.C. § 623*(a)(1). The statute was enacted for the purpose of protecting the older worker, for whom no protection was offered under Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e* [*3] et seq. The ADEA prohibits discrimination against those employees who are between the ages of forty and seventy. Its purpose is not to guarantee a job to the older worker or to secure his employment at the expense of younger workers, but only to assure that his age is afforded a neutral status in the decision whether to retain or terminate him. Because of the inevitability of the aging process and the frequency with which discharged employees will be replaced by others younger than they, an age discrimination analysis does not lend itself to automatic assumptions based upon the replacement of a



Case 1:02-cv-00003-SSB-TSB   Document 63-16   Filed 03/01/2004   Page 2 of 7

1986 U.S. Dist. LEXIS 26531, *; 40 Fair Empl. Prac. Cas. (BNA) 1227;
40 Empl. Prac. Dec. (CCH) P36,349

worker by one who is younger. *Laugesen v. Anaconda Company, 510 F.2d 307, 313 n. 4 (6th Cir. 1975).*

Nevertheless, the case of *McDonnell Douglas v. Green, 411 U.S. 792 (1973),* is often used as a point of departure for establishing the elements of age discrimination. *McDonnell Douglas* outlined the elements of racial discrimination which, when modified to fit age discrimination cases, would require a plaintiff to prove that: (1) he was a member of the protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person. *Ackerman* [*4] *v. Diamond Shamrock Corp., 670 F.2d 66, 69 (6th Cir. 1982).*

However, when applied to a reduction in forces within a company or to a corporate reorganization, the Ackerman guidelines will not allow the plaintiff to establish a prima facie case. In the instance of a corporate reorganization, a plaintiff is generally not able to show that he was replaced by a younger person, and he is unable to satisfy the elements of a prima facie case without this showing. *LaGrant v. Gulf & Western Mfg. Co., Inc., 748 F.2d 1087, 1090 (6th Cir. 1984); Sahadi v. Reynolds Chemical, 636 F.2d 1116 (6th Cir. 1980).* In a reorganization case, where the plaintiff was not directly replaced by a younger employee, the plaintiff is required to come forward with additional direct, circumstantial, or statistical evidence that age was a factor in his termination. *LaGrant, 748 F.2d at 1091; Williams v. General Motos Corp., 656 F.2d 120 (5th Cir. 1981),* cert. denied, *455 U.S. 943 (1982).*

Whether in the typical discrimination case or in one involving a corporate reorganization, this circuit has espoused a case-by-case approach for analysis. *Sahadi, 636 F.2d at 1118 n.* [*5] 3. The ultimate issue is whether age was a determining factor in an employee's discharge. Use of the McDonnell Douglas criteria is neither required nor prohibited, but the criteria are not to be automatically applied. See, e.g., *Blackwell v. Sun Electric Corporation, 696 F.2d 1176, 1179 (6th Cir. 1983).*

In addition to the McDonnell Douglas guidelines, further proof of a prima facie case in an age discrimination action was required in *Rose v. National Cash Register Corp., 703 F.2d 225 (6th Cir. 1983).* In that case the Court stated that plaintiff had failed to present a prima facie case if there were no reasonable inference to suggest that he was discriminated against because of his age. *Id.* at 227, citing *Sahadi, 636 F.2d at 1117.* Hence, a prima facie case is established only when plaintiff presents some evidence that age was a factor in his discharge. A prima facie age discrimination case is one sufficient to withstand a motion for summary judgment or a motion for directed verdict. *Rose, 703 F.2d at 227; LaGrant, 748 F.2d at 1090.*

With the McDonnell Douglas formula as a general guideline, we find that insufficient evidence [*6] in this case has been presented to establish a prima facie case of age discrimination. Mr. Ruth was a member of the protected class, being 62 years old at the time his employment with the defendant was terminated. He was discharged from his position. However, we find that he has not been able to demonstrate that he was qualified for the new position which he sought to fill, that of Regional Manager or Branch Manager. In addition, we find that plaintiff has presented insufficient direct or circumstantial evidence which would indicate that age was a factor in his discharge.

The primary area of disagreement between the parties concerns plaintiff's ability to fill the Regional Manager or Branch Manager positions which were filled by other employees. In arguing the point that he was qualified for these positions, plaintiff stated that in his own opinion the product line of American Air Filter had not substantially changed over the decades and that he could easily update himself to assume the responsibilities of a Regional Manager. The testimony of Frank Carroll established that in his opinion plaintiff with a six-month refresher course could become competent for any job within the [*7] company, and he believed plaintiff would have been qualified as a Branch Manager in 1980 to 1982.

Despite the contentions of plaintiff and Mr. Carroll that only a limited training period would render plaintiff able to assume a Regional Manager position, it is admitted by all parties that at least some period of training would have been required before plaintiff could handle the new position. Plaintiff's belief is undoubtedly true, also, that $ 10,000 would be a small price to pay to relocate him when considering his years of service with the company. However, the company's lack of willingness to expend money to train him has no bearing in his age discrimination claim. These two circumstances do not in themselves give rise to the necessary inference that age discrimination was a determining factor in plaintiff's discharge. Instead, they go to the business decisions exercised by the company during its two major reorganizations.

In Ackerman, the Court stated that the ADEA "was not intended as a vehicle for judicial review of business decisions." *Id., 670 F.2d at 70,* citing *Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir. 1980).* Although Ackerman [*8] involved the voluntary retirement of an employee who later brought a claim under the ADEA, its holding is nonetheless applicable here. There is no question that plaintiff's job was

Case 1:02-cv-00003-SSB-TSB   Document 63-16   Filed 03/01/2004   Page 3 of 3

1986 U.S. Dist. LEXIS 26531, *; 40 Fair Empl. Prac. Cas. (BNA) 1227;
40 Empl. Prac. Dec. (CCH) P36,349

eliminated, as he himself states in his deposition. The plaintiff may have arrived at personal suspicions and conclusions concerning the company's motivation to eliminate him from his position, but no evidence has been produced that would lead a reasonable jury to find that he was discharged, or that he was not offered a Regional Manager or Branch Manager position, because of his age. *Rose, 703 F.2d at 227.*

On a motion for summary judgment, the movant has the burden of showing conclusively that no genuine issue of material fact exists. *Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598 (1970); Fitzke v. Shappell, 468 F.2d 1072, 1077 (6th Cir. 1972).* Generally, a case involving elements of motive or intent is not suited to disposition on summary judgment. *Smith v. Hudson, 600 F.2d 60, 66 (6th Cir. 1979).* However, this principle is not unvarying, and a summary judgment is sometimes appropriate even in motive or intent cases. In Ackerman, the court said, "While summary judgment [*9] often is inappropriate to dispose of cases involving issues of intent and motive, the moving party has a right to judgment without the expense of a trial where there are no issues of fact left for the trier of fact to determine." *Id., 670 F.2d at 69.*

We find that there are no genuine issues of fact remaining in this case which would preclude the granting of summary judgment. Plaintiff alleges material issues of fact concerning the qualifications for the Regional Manager or Branch Manager positions and the length of time it would take to train plaintiff for one of these positions. As stated above, there is no dispute that some training for these positions would be required. The amount of time required would go toward the soundness of the business judgment of defendant in retaining or eliminating its employees rather than being a material issue of fact tending to prove the existence of age discrimination.

The record is replete with testimony that plaintiff was thought well of by his co-workers and was efficient in handling his duties. It is not the function of the Court to second-guess the business decisions made by defendant or to judge whether plaintiff's position should [*10] have been eliminated or whether the company treated him fairly by not offering him another position. The question is not whether plaintiff was treated fairly, but whether he was discriminated against on the basis of his age. *Sahadi, 636 F.2d at 1117.* Considering all the information contained in the record, we find that plaintiff has presented no reasonable inference that can be drawn, without engaging in speculation, that his job was eliminated because of his age or that he was not considered for another position on the basis of his age.

Plaintiff also brought this action under the Kentucky Civil Rights laws, Ky.Rev.Stat. 344.010 et seq. The Kentucky age discrimination statute is modeled after the federal age discrimination statute, and plaintiff is held to the same standard of proof under state law as under federal law. *Harker v. Federal Land Bank of Louisville, 679 S.W.2d 226, 229 (Ky. 1984).* To prevail under Kentucky law against a motion for summary judgment, plaintiff must prove "cold hard facts creating an inference showing age discrimination was a determining factor" in his discharge. Id. Because plaintiff did not meet this standard of proof, defendant is entitled [*11] to summary judgment under the Kentucky statute as well.

There being no issue of material fact, the motion of defendant for summary judgment will be granted, and an appropriate order has been entered this 18th day of April, 1986.

ORDER

For the reasons set forth in the memorandum filed this date,

IT IS ORDERED that the motion of the defendant, Allis-Chalmers Corporation, d/b/a American Air Filter Company, for summary judgment on the claim of the plaintiff, Robert J. Ruth, against it be and it is hereby granted, and this action is hereby dismissed with prejudice.

It is further ORDERED that the motion of plaintiff to compel discovery of documents is denied, as the Court is of the opinion the documents sought could produce no facts supportive of plaintiff's age discrimination claim which would change the results of the summary judgment.

It is further ORDERED that plaintiff's motion to amend the complaint under Rule 15(b) is denied, as it seeks to assert causes of action occurring after plaintiff's termination by the defendant.

There is no just reason for delay, and this is a final and appealable order.

This 18th day of April, 1986.

1 of 2 DOCUMENTS

CHERYL C. PRITCHARD, Plaintiff-Appellant, v. OFFICE MAX, INC., Defendant-Appellee.

No. 98-4567

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

2000 U.S. App. LEXIS 437

January 6, 2000, Filed

**NOTICE:**
[*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:**
Reported in Table Case Format at: *2000 U.S. App. LEXIS 3940.*

**PRIOR HISTORY:**
ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO. 97-01127. White. 11-20-98.

**DISPOSITION:**
AFFIRMED.

**COUNSEL:**
For CHERYL C. PRITCHARD, Plaintiff - Appellant: Steven B. Chesler, Kirschenbaum Law Office, Dan G. Kirschenbaum, Kirschenbaum Law Offices Co., L.P.A., Cleveland, OH.

For OFFICE MAX, INC., Defendant - Appellee: Marcia E. Marsteller, Thomas A. King, Jr., Baker & Hostetler, Cleveland, OH.

**JUDGES:**
Before: RYAN and COLE, Circuit Judges; WILHOIT, District Judge *.

* The Honorable Henry R. Wilhoit, Jr., Chief Judge of the United States District Court for the Eastern District of Kentucky, sitting by designation.

**OPINIONBY:**
R. GUY COLE, JR.

**OPINION:**

R. GUY COLE, JR., Circuit Judge. The plaintiff, Cheryl C. Pritchard, appeals the district court's grant of summary judgment to the defendant, Office Max, Inc., in a Title VII case [*2] alleging sex discrimination. Pritchard alleged that Office Max failed to promote her to a manager position in her department. Office Max argued that Pritchard did not apply for the position. The district court dismissed Pritchard's case for failing to show the existence of a material fact as to whether she applied for the promotion.

For the following reasons, we AFFIRM the district court's grant of summary judgment for Office Max.

I.

On January 30, 1995, Pritchard, an African-American female, began work as a furniture assembler in the Cleveland Office Max delivery center, which assembled and delivered furniture for Office Max customers. In September 1995, Barry DiJulius assumed the operations manager position in the delivery center. DiJulius placed a job posting for a supervisor in the furniture assembly department. Pritchard applied in writing for the posted supervisor position and was chosen by DiJulius to fill the position. As a supervisor in the furniture assembly department, Pritchard reported to DiJulius.

EXHIBIT O

In October 1995, Dave Miller assumed the position as manager of the assembly department under DiJulius, and **Pritchard** began reporting to Miller. Miller, an African-American [*3] male, was assigned to the manager position at the same time that DiJulius was assigned the operations manager position. Miller had been delayed in transferring to the delivery center from his previous position as an assistant store manager at an **Office Max** retail location. Miller's managerial duties overlapped somewhat with **Pritchard's** supervisory duties. The manager position, however, included oversight of employee performance and behavior, and writing employee evaluations.

Pritchard maintained that during DiJulius's tenure as operations manager, she repeatedly asked him and Jim LaFontaine, the former operations manager, to be promoted to the manager position held by Miller. Pritchard's co-worker, Nicole Rood, also recalled that both she and Pritchard asked DiJulius and LaFontaine for the promotion to the manager position during the same time period.

On November 24, 1995, **Pritchard** injured her back and was placed on medical disability leave. **Pritchard's** disability leave ended and she returned to work on January 16, 1996. Prior to **Pritchard's** return from disability in January, Miller left the delivery center manager position and returned to an **Office Max** retail store. Fred Aponte [*4] replaced Miller as manager of the furniture assembly department. Aponte, formerly the manager of the production department within the delivery center, was hired by DiJulius in consultation with **Office Max's** human resources department and vice-president Ken Kohler. Aponte was apparently chosen prior to Miller's January departure.

Pritchard returned to work on January 16, 1996, and Aponte was introduced on January 22, 1996 as the new manager of Pritchard's department. After the introduction of Aponte as manager of furniture assembly, friction immediately developed between Aponte and Pritchard. DiJulius met with both Aponte and Pritchard concerning their interaction. At this meeting, Pritchard complained to DiJulius that she was overlooked for the manager position and that she was being asked to train new managers for a position that she deserved. Pritchard also stated that she would rather work in customer service. After discussion with the manager of customer service and human resources, DiJulius transferred Pritchard to customer service on January 31, 1996. Fred Cook, an African-American male, received the assembly supervisor position previously held by Pritchard.

In February 1996, [*5] **Office Max** changed its delivery center procedures and increased the use of automation equipment. These systematic changes reduced the required work force. **Office Max** initiated a reduction-in-force ("RIF") plan beginning in February 1996 which would eliminate positions based upon seniority within each department. On April 12, 1996, the RIF was announced to the employees and **Pritchard** was one of forty employees laid off within the delivery center.

In May 1996, **Pritchard** filed a charge with the Equal Employment Opportunities Commission ("EEOC") claiming sex, race and disability discrimination by **Office Max**. On February 25, 1997, the EEOC determined that no violation of the statute could be established and issued a notice of right to sue. **Pritchard** instituted this action on April 25, 1997, claiming sex and race discrimination in violation of Title VII, *42 U.S.C. § 2000e et seq.*, and disability discrimination in violation of the Americans With Disabilities Act ("ADA"), *42 U.S.C. § 12112 et seq.*.

**Pritchard** offered no evidence to the district court in support of her ADA or Title VII race discrimination claims. Accordingly, the district [*6] court dismissed **Pritchard's** ADA and race discrimination claims. **Pritchard's** remaining charge of sex discrimination relied on **Office Max's** failure to promote her to the manager position. On November 18, 1998, the district court granted summary judgment on the failure-to-promote based sex-discrimination claim, finding that **Pritchard** failed to demonstrate that she applied for the manager position.

Pritchard filed a timely notice of appeal on December 16, 1998.

II.

We review *de novo* the district court's grant of summary judgment. *See, e.g., Smith v. Ameritech, 129 F.3d 857, 863 (6th Cir. 1997)*. Summary judgment is appropriate when the case presents no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See Fed.R.Civ.P. 56(c)*. In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. The judge is not "to weigh the evidence and determine the truth of the matter but to determine [*7] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. A genuine issue for trial is presented when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. "The 'mere possibility' of a dispute is not enough" for a party to prevail. *Mitchell v. Toledo Hosp., 964 F.2d*

*577, 582 (6th Cir. 1992)* (quoting *Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir. 1986)*).

### III.

**Pritchard** must establish four elements to set out a prima facie case of sex discrimination against **Office Max** based on a failure to promote: (1) she was a member of a protected class; (2) she applied for and was qualified for the promotion; (3) she was considered for and denied the promotion; and (4) she was rejected in favor of another person with similar qualifications who was not a member of the protected class. *See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973); Betkerur v. Aultman Hosp. Ass'n, 78 F.3d 1079, 1095 (6th Cir. 1996); Brown v. Tennessee, 693 F.2d 600, 603 (6th Cir. 1982).* [*8]

**Pritchard** is part of a protected class under Title VII, meeting the first prong of the prima facie case. The second prong of the prima facie case requires **Pritchard** to show that she applied for and was qualified for the promotion. *See McDonnell Douglas Corp., 411 U.S. at 802.* The district court found that **Pritchard** failed to dispute that she ever applied for the position. The evidence in the record, however, established that there were no formal procedures for posting the manager's position within **Office Max** and that DiJulius in consultation with human resources controlled the hiring decision. Indeed, **Office Max** has provided no evidence of what constituted an application for the manager position **Pritchard**, however, asserted on several occasions that she asked DiJulius and LaFontaine for the position and produced a witness, Rood, who corroborated her request for the promotion. Thus, it is clear that an issue of material fact exists with respect to **Pritchard's** request for the promotion. Construing the evidence in the light most favorable to the nonmovant, *see Matsushita Elec. Indus. Co., Ltd., 475 U.S. at 587,* **Pritchard's** claim that she verbally applied [*9] to DiJulius for the manager position presents a genuine issue of material fact for trial. n1

---

n1 As a threshold argument, **Office Max** asserts that **Pritchard's** failure to argue and brief this issue before the district court is fatal to her case before this court. It is clearly established that the nonmoving party bears the burden of setting forth facts demonstrating that there is a genuine issue of material fact. *See Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992).* In this case, **Pritchard**, the nonmoving party, placed evidence before the district court showing the existence of a genuine issue of material fact, yet failed to point to the evidence with specificity in the proper portions of her memorandum to the district court. This court can hear these arguments based on the factual record available to the district court. Regardless of the factual issues presented to the lower court in support of summary judgment, this court must critically examine the context and accuracy of the evidence offered by the moving party in support of summary judgment. *See id. at 407.* Accordingly, this court must consider inferences that are apparent from the evidence and favorable to the non-moving party. *See id.*

---

[*10]

Although **Pritchard** presented sufficient evidence that she verbally applied for the manager position, **Office Max** contends that she failed to ask or apply for the position when it was available. **Pritchard** asked DiJulius to promote her to the manager position after DiJulius assumed the operations manager position in September 1995. DiJulius testified in his deposition that the manager position was filled when he was transferred to the operations manager position to replace LaFontaine. Thus, **Office Max** produced uncontradicted evidence that the manager position was filled from the time period before DiJulius started in September, until the time Miller left the position in January 1996. Moreover, DiJulius testified at his deposition that he did not hire Miller to fill the manager's position and had no choice in Miller's appointment.

**Pritchard** also testified in her deposition that she asked LaFontaine, the former operations manager, for the promotion. **Pritchard** has not produced any evidence that asking LaFontaine, who was then no longer the operations manager, constituted applying for the position. Indeed, Pritchard testified that she requested the manager position only after DiJulius arrived [*11] at the delivery center and promoted her to supervisor. Thus, **Pritchard's** request for the promotion to either DiJulius or LaFontaine would have clearly occurred after the position was already filled by Miller.

Finally, **Office Max** alleges that **Pritchard's** disability leave -- which ran from November 24, 1995 until January 16, 1996 -- made it impossible for her to have verbally applied for the position when it became open due to Miller's departure in January 1996. Miller held the manager position from September 1995 until January 1996 when he transferred to another **Office Max** facility. During **Pritchard's** disability leave and shortly before her return to work, DiJulius promoted Aponte to the manager position. Thus, **Pritchard** was on disability leave during Aponte's hiring.

In sum, Pritchard could have only verbally applied for the position between September 1995, when DiJulius

was appointed operations manager, and November 24, 1995, when Pritchard took disability leave. If Pritchard applied for the position after her return from disability leave, it would have occurred after she returned to work on January 16, 1996 and thus, after the position was filled by Aponte Pritchard offered no [*12] evidence, and the record does not reflect, that she communicated any interest in the manager position to DiJulius while she was on disability leave. Thus, Pritchard has failed to allege facts showing she formally or informally applied for the position when it was available.

Rood, Pritchard's co-worker, does not contradict Pritchard's timing of the verbal requests for the manager position. Although Rood recalls that she and Pritchard verbally asked DiJulius to promote them to the manager position, Rood's testimony places the timing of the requests between DiJulius's assumption of the operations manager position in September 1995 and shortly before Miller took over the manager position in October 1995. Miller had been placed at the delivery center at the same time as DiJulius but was delayed in transferring from his previous position. Moreover, Rood recalled that either DiJulius or LaFontaine informed her that the manager position was already filled by Miller when she asked for the promotion.

Pritchard's failure to apply for the position when it was available is fatal to her prima facie case. *See, e.g., Allen v. Michigan Dept. of Corrections, 165 F.3d 405, 410 (6th Cir. 1999)* [*13] (finding that a plaintiff failed to state a prima facie case for racial discrimination under Title VII for failure to promote when the plaintiff did not interview for the position). Pritchard has failed to provide any evidence showing that she sought the position when it was open, or in the alternative, that Office Max was on continuous notice that she wanted the manager position and had an obligation to consider her when the position reopened. n2 Office Max's lack of procedures for determining candidates for the manager position creates an ambiguity, potentially turning any employee request for the promotion into an applicant for the position. Despite this ambiguity in the hiring process and Pritchard's showing that she verbally applied for the manager position with Office Max, we find in this case that Pritchard failed to set forth a genuine issue of material fact that she applied for the position when it was available. Thus, Pritchard failed to establish a prima facie case of discrimination. Because we find that Pritchard has failed to satisfy the second prong of the prima facie case of sex discrimination, we need not reach the third and fourth prong of the prima facie case.

n2 This circuit has addressed an employee's failure to apply for a position when it was open in a Title VII action and found no continuing duty to hold the position for the employee on leave during the promotion. *See Asher v. Riser, 991 F.2d 794, 1993 WL 94305 at *3 (6th Cir. 1993)* (per curiam) (finding that although the female employee was verbally told that she would be promoted to the next available full-time position and repeatedly asked to be promoted to such a position, a failure-to-promote claim failed where the plaintiff could not show that the full-time position was open when the she requested the promotion and was on maternity leave during the time it was filled).

[*14]

IV.

For the forgoing reasons, we AFFIRM the judgment of the district court granting summary judgment to Office Max.