FISHER & PHILLIPS LLP
ATTORNEYS AT LAW

www.laborlawyers.com

**Orlando**
1250 Lincoln Plaza
300 South Orange Avenue
Orlando, FL 32801
(407) 541-0888 Tel
(407) 541-0887 Fax

May 2, 2002

**VIA FACSIMILE AND U.S. MAIL**
Robert A. Steinberg, Esq.
Waite, Schneider, Bayless,
& Chesley Co., L.P.A.
1513 Central Trust Tower
Cincinnati, OH 45202

Re: *Barbara Loder Hildebrandt v. Hyatt Hotels Corporation, et al.*
Case No. C-1-02 0003

Dear Bob:

Thank you for your recent e-mail regarding your willingness to reschedule the depositions we had talked about for the first week in June. I am happy to make these depositions first priority, after the trial we referenced in our correspondence. Unfortunately, we have been placed on a trial docket beginning June 10, 2002, and, at this point in time, we have no way of knowing a date certain for trial. I propose waiting until I return from vacation to schedule further depositions, as it would be disruptive to you to schedule something, only to find out that our trial will held be that week. I will be back in the office on May 21, 2002. Please let me know your thoughts regarding this issue.

I also wanted to follow up with you on an issue we discussed during our conversations in Chicago in mid-April. As you may recall, we talked about dismissing Brian Booth as a Defendant in this lawsuit, in light of the deposition testimony of Mr. Booth, Jack Horne, and Ty Helms, which clearly revealed that Mr. Booth had no responsibility whatsoever for the decisions regarding the Reduction in Force affecting the National Sales Force. Additionally, during Plaintiff's employment, Mr. Booth took no adverse action against Plaintiff for any reason. He simply communicated to her the decision that had been made with regard to the Reduction in Force. As we also discussed, if Brian Booth remains a named Defendant in this lawsuit, we will seek our fees and costs related to his representation, as his role, or lack thereof, became clear in the depositions taken in mid-March 2002. Certainly, we would like to avoid such an unnecessary controversy, especially as you expressed doubt about any facts which would support his continued participation in the case as a party.

EXHIBIT
tabbies
A

Thank you for your consideration of these matters. Should you have any questions, please let me know. My last day in the office is Friday, May 3, 2002, and I will return to the office on May 21, 2002.

Very truly yours,

Theresa M. Gallion
FOR FISHER & PHILLIPS LLP

TMG/jsl

cc: Natalie J. Storch, Esq.

# FISHER & PHILLIPS LLP

(A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS)

ATLANTA
1500 RESURGENS PLAZA
945 EAST PACES FERRY ROAD
ATLANTA, GEORGIA 30326-1125

300 S. Orange Avenue
1250 Lincoln Plaza
Orlando, Florida 32801
Telephone (407) 541-0888
Facsimile (407) 541-0887

IRVINE
SUITE 400
18400 VON KARMAN AVENUE
IRVINE, CALIFORNIA 92612

CHICAGO
420 MARQUETTE BUILDING
140 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS 60603

LAS VEGAS
RICCIARDI LAW GROUP
A PARTNER IN FISHER & PHILLIPS LLP
2300 WEST SAHARA AVENUE, SUITE 680
LAS VEGAS, NEVADA 89102

NEW ORLEANS
SUITE 3710
201 ST. CHARLES AVENUE
NEW ORLEANS, LOUISIANA 70170-3710

ORLANDO
1250 LINCOLN PLAZA
300 SOUTH ORANGE AVENUE
ORLANDO, FLORIDA 32801

FT. LAUDERDALE
2300 NATIONSBANK TOWER
ONE FINANCIAL PLAZA
FT. LAUDERDALE, FLORIDA 33394-0005

SAN FRANCISCO
CITY CENTER
502 FOURTEENTH STREET, SUITE 200
OAKLAND, CALIFORNIA 94612

## FACSIMILE COVER PAGE

***ATTORNEY CLIENT COMMUNICATION***
***PRIVILEGED AND CONFIDENTIAL***

**DATE/TIME:** May 2, 2002

**SENT TO:** Robert A. Steinberg, Esq.

**COMPANY:** Waite, Schneider, Bayless & Chesley Co., L.P.A.

**FAX NO.:** 513-381-2375

**SENT BY:** Natalie J. Storch

**SUBJECT:** Barbara Loder Hildebrandt v. Hyatt Hotels Corporation, et al.

**CLIENT/MATTER:** 13292.0007

**PAGES:** 3 (Including Cover Sheet)

**MESSAGE:** Please see attached.

Please contact Jacki if there are any problems with this transmission.

**The information contained in this transmission is attorney-client privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (407) 541-0888 collect, and return the original message to us at the above address via U.S. Mail. We will reimburse you for postage. Thank you.**

LAW OFFICES
FISHER & PHILLIPS P

(A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS)

300 S. Orange Avenue
1250 Lincoln Plaza
Orlando, Florida 32801
Telephone (407) 541-0888
Facsimile (407) 541-0887

ATLANTA
1500 Resurgens Plaza
945 East Paces Ferry Road
Atlanta, Georgia 30326-1125

IRVINE
Suite 400
18400 Von Karman Avenue
Irvine, California 92612

CHICAGO
420 Marquette Building
140 South Dearborn Street
Chicago, Illinois 60603

LAS VEGAS
Ricciardi Law Group
A Partner in Fisher & Phillips LLP
3800 West Sahara Avenue, Suite 480
Las Vegas, Nevada 89102

NEW ORLEANS
Suite 3710
201 St. Charles Avenue
New Orleans, Louisiana 70170-3710

ORLANDO
1250 Lincoln Plaza
300 South Orange Avenue
Orlando, Florida 32801

FT. LAUDERDALE
2300 NationsBank Tower
One Financial Plaza
Ft. Lauderdale, Florida 33394-0005

SAN FRANCISCO
City Center
802 Fourteenth Street, Suite 200
Oakland, California 94612

## FACSIMILE COVER PAGE

**ATTORNEY CLIENT COMMUNICATION**
**PRIVILEGED AND CONFIDENTIAL**

| | |
|---|---|
| DATE/TIME: | May 2, 2002 |
| SENT TO: | Robert A. Steinberg, Esq. |
| COMPANY: | Waite, Schneider, Bayless & Chesley Co., L.P.A. |
| FAX NO.: | 513-381-2375 |
| SENT BY: | Natalie J. Storch |
| SUBJECT: | Barbara Loder Hildebrandt v. Hyatt Hotels Corporation, et al. |
| CLIENT/MATTER: | 13292.0007 |
| PAGES: | 3 (Including Cover Sheet) |
| MESSAGE: | Please see attached. |

Please contact Jacki if there are any problems with this transmission.

The information contained in this transmission is attorney-client privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (407) 541-0888 collect, and return the original message to us at the above address via U.S. Mail. We will reimburse you for postage. Thank you.

P. 1

* * * COMMUNICATION RESULT REPORT ( MAY. 2. 2002 4:38PM ) * * *

FAX HEADER: FISHER AND PHILLIPS

TRANSMITTED/STORED : MAY. 2. 2002 4:36PM

| FILE | MODE | OPTION | ADDRESS | RESULT | PAGE |
|---|---|---|---|---|---|
| 556 | MEMORY TX | | 915133812375#13292007 | OK | 3/3 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL
E-2) BUSY
E-3) NO ANSWER
E-4) NO FACSIMILE CONNECTION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

---

BARBARA LODER HILDEBRANDT,
Plaintiff,
vs.
HYATT HOTELS CORPORATION, et al.
Defendants.

CASE NO. C-1-02-003

---

DEPOSITION OF: DAWN BEAGLE

Pursuant to Agreement

DATE: September 25, 2002

TIME: Commencing at 9:00 a.m.

PLACE: Offices of Cors & Bassett, 537 East Pete Rose Way, Suite 400, Cincinnati, Ohio 45202

BEFORE: Nancy A. Burns, Notary Public - State of Ohio

APPEARANCES:

On behalf of the plaintiff:

Robert A. Steinberg, Esq.
of
Waite, Schneider, Bayless & Chesley
1513 Central Trust Tower
Cincinnati, Ohio 45202

On behalf of the defendants:

Theresa M. Gallion, Esq.
of
Fisher & Phillips
1250 Lincoln Plaza
300 South Orange Avenue
Orlando, Florida 32801

. . .

ORIGINAL

DAWN BEAGLE

of lawful age, a witness herein, being first duly sworn as hereinafter certified, was examined and deposed as follows:

CROSS-EXAMINATION

BY MS. GALLION:

Q. Good morning. How are you?

A. Fine thanks.

Q. I introduced myself a few minutes ago. I'm Theresa Gallion representing Hyatt and the individual defendants in a lawsuit that Barb Loder Hildebrandt has brought against those persons and I'd like to ask you some questions today not only about your employment history and record with Hyatt but also about your knowledge of Miss Hildebrandt's claims and her employment history if you have any.

If there's anything about my questions that's unclear I trust you'll let me know. I do talk rapidly. If I cut you off or you feel you weren't finished all you have to do is just let me know and I'll stop and you can say whatever you want. There's, you know, again, you can put on the record anything you want. I wouldn't have any objection to that, all I ask is that you just answer my questions unless you're not able to.

If you need breaks we'll take them, whatever,

whatever housekeeping things we need to do to make you comfortable.

A. Thanks.

Q. Is there anything about your physical or emotional condition this morning that might in any way impair your ability to testify?

A. No.

Q. Hopefully you got enough sleep. I know it's burdensome being on West Coast time. Could you tell me where you reside, ma'am?

A. Rancho Santa Margarita, California.

Q. And what is the street address there, please?

A. 55 Tierra Seguro, T-i-e-r-r-a, S-e-g-u-r-o.

Q. And that's in Rancho --

A. Rancho Santa Margarita, California 92688.

Q. Is that in the greater Los Angeles area?

A. No, it's in Orange County.

Q. How long have you resided there?

A. Six years.

Q. Do you reside there with anyone?

A. No.

Q. Are you married?

A. No.

Q. Are you working anywhere at the current time?

EXHIBIT
tabbies
B

A. I don't remember.

Q. Do you have any records that might help you establish this?

A. Not with me.

Q. What about the 102.85 percent of achievement? Does that seem like the right percentage?

A. I know there was one year that I was just, just over 100 percent. I cannot tell you categorically it was 1999.

Q. You know, instead of wasting time we'll look at your reviews because I bet you they'll have all these numbers and that will be where we can get the accurate information. Now, are you saying your quota was ever adjusted in such a way that was unfair to you because of your age or your sex?

A. I, I am claiming that these quota numbers are not correct.

Q. My question was were you treated unfairly? Maybe I was unclear. My question was are you saying in connection with your charge that you were treated unfairly because of your sex or age in the establishment of your quota?

A. Karen Gray actually was the one who established quotas and I'm not accusing her --

Q. Okay.

A. -- of making my quota unfair to me because of my sex or my age.

Q. Okay. Look at paragraph five on our charge, if you will. We're going to go back to our charge. Do you know of anything that Jack Horne has done to treat older workers less favorably than younger workers?

A. Well, I would have to go, my major one with that would be I'd have to go back with a conversation I had with Jack when Brian Cassidy resigned from the company after many, many years, and I had just, I was on the phone with Jack and had mentioned that, you know, after so long I was surprised that Brian had actually left. And Jack's response to me was there were other dinosaurs in the national sales force that he wouldn't mind seeing go, also, that they had just been around too long.

Q. So he said not that they were too old but that they were around too long?

A. No. He called them dinosaurs.

Q. Okay, dinosaurs, which would be a species of creature that was destroyed according to the big bang theory a number of millions of years ago, is that correct, is that right, what a dinosaur is?

A. Yes.

Q. He said they'd been around too long, correct?

A. Unless you're using it, the term dinosaurs as a derogatory term referring to somebody who is older and been around too long.

Q. Have you ever used it in terms of somebody with outdated philosophies and outdated thoughts, not modern, not sophisticated?

A. Again, I go back to --

Q. I'm asking you have you heard it used that way?

A. Yes, with regard to older workers.

Q. Have you heard it used about outdated ideas?

A. I have not used it referring to a younger worker who has old-fashioned ideas.

Q. Okay. Let's go back to Jack. Anything else that Jack ever did to treat older workers less favorably than younger workers?

A. Jack made a habit of visiting younger workers in their accounts much more often. He actually never came to southern California and saw any of my customers.

Q. Did you invite him to?

A. Yes.

Q. What did he say?

A. That he had other commitments over different dates and --

Q. Do you know who in your group he did visit with?

A. Trina and --

Q. Jim Davis?

A. I don't know if he ever went to Seattle. Karina, I don't believe he ever visited either Jane Jordan or Jane Johnson.

Q. What about Julie or Kim?

A. I don't think he ever visited Julie and when he was up seeing Trina's he might have seen some of Kim's, they were both in the Bay area.

Q. So you really don't know, is that correct?

MR. STEINBERG: Objection.

A. For Kim?

Q. Yes, for Kim.

A. I don't know if he saw any of Kim's customers when he was up visiting Trina's customers.

Q. Did he see Kim herself?

A. I don't know.

Q. Do you know if he saw Harumi Yoshiike?

A. I don't believe he did.

Q. Do you know?

A. No, he did not.

Q. How do you know this?

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BARBARA LODER HILDEBRANDT,

Plaintiff,

vs.

HYATT CORPORATION, et al.

Defendants.

Case No. C-1-02 0003

Judge Sandra Beckwith

**AFFIDAVIT OF DOUGLAS PATRICK**

STATE OF ILLINOIS }
}ss:
COUNTY OF LAKE }

BEFORE ME, the undersigned authority, personally appeared, DOUGLAS PATRICK, who, after first being duly sworn, deposes and states that he is an adult person, over 18 years of age, competent to testify as to the following matters as to which he has personal knowledge or which he believes to be true:

1. I have been employed with Hyatt Hotels Corporation ("Hyatt") since 1986. I am currently the Vice President of Human Resources for Hyatt. I have held this position since May 1, 2003. In this position, I am responsible for overseeing Human Resources for Hyatt's Corporate Office and all of Hyatt's hotels in the United States, Canada and the Caribbean.

2. Prior to this position, I occupied the position of Assistant Vice President of Human Resources for Hyatt, and my duties included overseeing all of the staffing, labor and employee relations work.

EXHIBIT
C

3. In my position, I am familiar with Hyatt's corporate structure and the employment of individuals in the National Sales Force, including Barbara Loder Hildebrandt.

4. In my capacities as Vice President of Human Resources and as Assistant Vice President of Human Resources, I have and had access to employee information, including information regarding employees employed in the National Sales Force. This information includes personnel files, personnel information, dates of employment, and dates of birth for Hyatt employees.

5. I am aware that sales personnel of various ages and genders work in the National Sales Force.

6. I am also am familiar with the Reduction in Force that occurred at Hyatt in or about the end of September 2001.

7. Hyatt has in place policies and forms relating to Reductions in Force.

8. I am familiar with those policies and forms and am aware that one such form used in reductions in force is the Business Process Review Form, a copy of which is attached as Exhibit 1 to this Affidavit.

9. The Business Process Review Form is meant for use in the field, or in the hotel level, to communicate from the hotel to Hyatt's Corporate Office the reasons supporting the recommended termination of employees during a reduction in force.

10. Because the decisions regarding the Reduction in Force in September 2001 that affected the National Sales Force were taking place at a corporate level, and the directive to respond to the September 11, 2001, crisis came from the corporate office, the "bottom up" method of communicating contemplated on the Business Process Review Form was unnecessary.

11. I am aware that ten individuals in the National Sales Force were affected by the Reduction in Force in or around September 2001.

12. The individuals who were affected and who were unaffected were of varying ages and had varying lengths of service with Hyatt.

13. I am also aware that a few of the individuals who were not affected by the Reduction in Force had been hired into the National Sales Force in the one to two years prior to the Reduction in Force. Many of these individuals, however, had worked for Hyatt for many years prior to being hired as sales personnel with the National Sales Force.

14. For example, Donna Bongiovanni began working for Hyatt in 1983 and in the National Sales Force in January 2001, when she was 40 years of age; Joann Rumsey began working for Hyatt in 1989 and in the National Sales Force in August 2000; Carolyn Montrose began working for Hyatt in 1988 and for the National Sales Force in May 2001; Judy Lee-Kirchman began working for Hyatt in 1982 and the National Sales Force in June 2001, when she was 41 years of age; Theresa O'Connor began working for Hyatt in 1989, and in the National Sales Force in December 2000, when she was 49 years of age; and Diane Smith began working for Hyatt in 1987 and in the National Sales Force in March 2001, when she was 40 years of age. Gracie Anzaldo Moore, Richard Wood, Ellen Gerchick, hired in the year or two prior to the Reduction in Force, were 40 years of age or older when they were hired to work in the National Sales Force.

15. I am also aware that many individuals over the age of 40 were not affected by the Reduction in Force. For example, individuals of the following ages were retained during the Reduction in Force: In the Central National Sales Force, where Ms. Hildebrandt worked, sales personnel who were 41, 42, 43, 45, 49, and 52 were retained; in the Eastern National Sales Office, sales personnel who were 41, 42, 44, and 52 were retained; in the Western National Sales Office, sales personnel who were 40, 41, 48, and 57 were retained; in the Northeastern National Sales Office, individuals who were 41, 43, 47, 50, 51, and 56 were retained; and in the Omaha National Sales Office, sales personnel who were 42, 43, 57, 50, and 50 were retained.

16. I am also familiar with the employment of Brian Cassidy, who worked as a sales person in the National Sales Force. Mr. Cassidy voluntarily resigned his employment with Hyatt in or about April 2001, and he was not subject to any adverse treatment during his employment due to his age or any other unlawful reason.

FURTHER AFFIANT SAYETH NAUGHT.

DOUGLAS PATRICK

SWORN TO and SUBSCRIBED before me this 24th day of May, 2004, by DOUGLAS PATRICK, Vice President of Human Resources for HYATT HOTELS CORPORATION, who is personally known to me ~~or has produced~~ ____________ ~~as identification.~~

OFFICIAL SEAL
LINDA G PRICE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/20/06

**Staff Reduction Analysis**

**Hotel:** ____________________

**Date:** ____________________

**Process Redesign Overview and Objectives** (Outline proposed changes including how tasks will be eliminated, streamlined or reassigned. Summarize key objectives)

**Organizational Changes** (Detail staff reductions, how will they be handled and changes in reporting relationships)

**Method for determining staff reduction:**

Departmental Seniority

Incumbent performance (completion of Employee Data Sheet –Staff Reduction part B required)

Other: Describe:

CONFIDENTIAL

32295

EXHIBIT
tabbies
1

S:\HUMAN\ER-LR\ER\2001 Layoffs\BPR_Redesign_Preanalysis.doc

<u>Cost/Benefit Analysis Summary</u> (Provide projected costs and benefits including labor savings, training costs, severance pay, etc.)

<u>Training Needs and Plan</u> (Summarize key training needs and approach including materials, instructors, time frame and costs)

<u>Communications Approach</u> (Highlight key steps you plan to take in communicating changes to employees)

GM Signature ____________________

DDHR Signature ________________

DVP Signature ____________________

Please submit to Corporate Employee/Labor Relations
Fax: 312-920-2350

ER-LR Review ______________________________

CONFIDENTIAL

32296

**Staff Reduction Analysis**

**Hotel:** ____________________

**Date:** ____________________

**Process Redesign Overview and Objectives** (Outline proposed changes including how tasks will be eliminated, streamlined or reassigned. Summarize key objectives)

**Organizational Changes** (Detail staff reductions, how will they be handled and changes in reporting relationships)

**Method for determining staff reduction:**

Departmental Seniority

Incumbent performance (completion of Employee Data Sheet –Staff Reduction part B required)

Other: Describe:

CONFIDENTIAL 32297

**Cost/Benefit Analysis Summary** (Provide projected costs and benefits including labor savings, training costs, severance pay, etc.)

**Training Needs and Plan** (Summarize key training needs and approach including materials, instructors, time frame and costs)

**Communications Approach** (Highlight key steps you plan to take in communicating changes to employees)

**GM Signature** ____________________

**DDHR Signature** ________________

**DVP Signature** ____________________

Please submit to Corporate Employee/Labor Relations
Fax: 312-920-2350

**ER-LR Review** ______________________________

CONFIDENTIAL

Fax to Hyatt Hotels, Employee - Labor Relations: (312) 920-2350

# Employee Data Sheet--Staff Reduction

Confidential Privileged

Hotel Name: ____________________

Department or Division: ____________________

Part A: List each employee being separated as a result of the staff reduction or elimination of position.

| Name | Position | Transferable Skills | Hourly (H) or Salaried (S) | Original Hire Date | Sex | Age | EEOC Code | ADA Status | Weekly Rate | Hourly Rate | Avg. hour Wrk/Wk | Years Service | Last two Prof. Ratings | Earned Vacation Days $ | Accrued Vacation Days $ | Severance (weeks) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Part B: List similarly situated employees being retained within the effected managers division or employees department.
*(Completion necessary for performance-based staff reduction.)*

| Name | Position | Transferable Skills | Hourly (H) or Salaried (S) | Original Hire Date | Sex | Age | EEOC Code | ADA Status | Weekly Rate | Hourly Rate | Avg. hour Wrk/Wk | Years Service | Last two Prof. Ratings |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

CONFIDENTIAL

Form completed by: ____________________

Signature: ____________________

EEO Code:
0: Caucasian
1: Black
2: Asian
3: American Indian
4: Hispanic

32299

For the attention of Associate General Counsel.
PRIVILEGED AND CONFIDENTIAL Information prepared in anticipation of litigation, NOT be distributed to any other persons

RIF_Worksheet.xlsStaff Reduction List

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BARBARA LODER HILDEBRANDT, )
Plaintiff, )
vs. ) Case No. C-1-02-0003
HYATT CORPORATION, et al., )
Defendants. )

Videotaped Deposition of EDWARD W. RABIN, taken before JANYCE W. BOOTH, CSR, RMR, CRR, and Notary Public, pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, at 140 South Dearborn Street, Suite 420, Chicago, Illinois, commencing at 2:07 p.m. on the 21st day of April, A.D., 2004.

EXHIBIT D

02:30:51 A That would have been certainly on the
02:30:57 list where possible. Again, there's no universal
02:31:02 rule that necessarily applies.
02:31:08 Q Do you recall anything specific that was
02:31:11 done or any statements that were issued that
02:31:13 related to restricting new hiring?
02:31:18 A I think we -- we would have had I'm sure
02:31:23 any number of communications, both verbal and
02:31:28 written, that said no new hiring during this
02:31:34 period or new hiring should be kept to a minimum.
02:31:38 Q Would that go out to your management
02:31:39 employees?
02:31:41 A I'm -- absolutely.
02:31:46 Q Including the national sales force?
02:31:49 A It would -- I would think it may be a
02:31:51 little different there because they don't -- it's
02:31:54 not like new hiring. It's not a -- it's not a
02:31:56 function that is subject to a lot of open
02:32:00 positions. I think this is not -- it's a little
02:32:06 unique in that regard.
02:32:08 Q All right. I want to ask you a couple
02:32:10 questions about Mr. Schnitz who's sitting here.
02:32:17 A Should we excuse him?
02:32:18 Q No. It's fine with me.

02:32:21 Were you involved in hiring Mr. Schnitz?

02:32:24 A I believe I was part of the interview process at some point. The answer is yes. I was.

02:32:35 Q Okay. Do you recall what his role was to be when he joined the company?

02:32:40 A His position was to fill a need in our labor relations and principally in that area as a key need of the company. But his overall acumen and understanding of the law invites him to participate in a lot of other areas also. So...

02:33:14 Q And he had been a member of the Fisher & Phillips law firm before he came with?

02:33:21 A I -- I did not know that, no.

02:33:23 Q So you don't know that today?

02:33:24 A I know that now, yes.

02:33:26 Q Okay. Was part of Mr. Schnitz's role to help develop a plan for eliminating positions at Hyatt?

02:33:40 A Upon joining the organization or in conjunction with joining the organization?

02:33:44 Q Yes.

02:33:44 A If it were, it was only coincidental that that was his first assignment. And, again, I don't know timing wise.