UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BARBARA LODER HILDEBRANDT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. C-1-02 0003 |
| ) | |
| HYATT CORPORATION, et al. ) | Judge Sandra Beckwith |
| ) | Magistrate Judge Timothy S. Black |
| Defendants. ) | |

### DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EXPERT OPINION AND REPORT OF HARVEY S. ROSEN

Defendants Hyatt Corporation ("Hyatt"), Ty Helms, Brian J. Booth and Jack Horne (collectively "Defendants"), by and through their undersigned counsel, and pursuant to Rules 702 and 403 of the Federal Rules of Evidence, move this Court to exclude the report and testimony of Harvey S. Rosen, Ph. D., on the subject of Plaintiff's lost earnings. Rosen's report and anticipated testimony are inadmissible under Rule 702 because they rest upon invalid and unsupported assumptions about Plaintiff's post-termination earning capacity and about her efforts to mitigate her damages. Those assumptions render Rosen's calculations fatally unreliable. Furthermore, the probative value of Rosen's testimony, if any, is far outweighed by the potential for unfair prejudice, confusion of the issues, and misleading the jury.

In support of this Motion, Defendants submit a Memorandum of Law, with accompanying exhibits, filed contemporaneously herewith.

WHEREFORE, for the reasons set forth above and in Defendants' accompanying Memorandum of Law, Defendants seek entry of an Order in <u>limine</u> prohibiting Plaintiff or her counsel from offering or referring to Rosen's report or anticipated testimony, either directly or

indirectly, including during <u>voir</u> <u>dire</u>, opening statements, questions to or testimony by witnesses, and closing arguments.

DATED this 8th day of June 2004.    Respectfully submitted,

                         FISHER & PHILLIPS LLP
                         1250 Lincoln Plaza
                         300 South Orange Avenue
                         Orlando, Florida 32801
                         Telephone:    (407) 541-0888
                         Facsimile:    (407) 541-0887

By:    s/Theresa M. Gallion by
      s/Jeffrey J. Harmon per telephone
      <u>authorization of 6/8/04</u>
      Theresa M. Gallion, Esq.
      Florida Bar No. 726801
      E-mail: TGallion@LaborLawyers.com

Natalie J. Storch, Esq.
Florida Bar No. 0269920
E-mail: <u>NStorch@LaborLawyers.com</u>

Nadine C. Abrahams. Esq.
Illinois Bar No. 6209382
FISHER & PHILLIPS LLP
140 S. Dearborn, Suite 420
Chicago, Illinois 60603
Telephone:    (312) 580-7811
Facsímile:    (312) 346-3179
E-mail: nabrahams@LaborLawyers.com

<u>s/Jeffrey J. Harmon</u>
Jeffrey J. Harmon
Ohio Bar No. 0032848
CORS & BASSETT, LLC
537 E. Pete Rose Way, Suite 400
Cincinnati, Ohio 45202-3578
Telephone:    (513) 852-8201
Facsimile:    (513) 852-8222
E-mail: jjh@corsbassett.com

TRIAL ATTORNEYS FOR
DEFENDANTS

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
## EXPERT OPINION AND REPORT OF HARVEY S. ROSEN

Defendants Hyatt Corporation ("Hyatt"), Ty Helms, Brian J. Booth and Jack Horne (collectively "Defendants"), by and through their undersigned counsel, submit this Memorandum of Law in Support of Defendants' Motion in Limine to Exclude the Expert Opinion and Report of Harvey S. Rosen, and state as follows:

### I. INTRODUCTION

This lawsuit arises out of Plaintiff Barbara Loder Hildebrandt's ("Hildebrandt") lay-off from her position as Director, National Accounts, for Hyatt, in October 2001 in the wake of the tragic events of September 11. At the time of her lay-off from Hyatt, and for a period of several years prior thereto, Hildebrandt had been earning close to, or in excess of, $100,000 a year. Hildebrandt, who was 49 years of age when she was laid off, alleges that Defendants discriminated against her on the basis of her age and gender in violation of the Ohio Civil Rights Act, Ohio public policy, Title VII of the Civil Rights Act, and the federal Age Discrimination in Employment Act.[1] Hildebrandt seeks various forms of relief including, inter alia, "current and future economic...losses." Amended Complaint and Jury Demand ("Am. Complt."), p. 11.

Hildebrandt has retained an economist, Harvey S. Rosen, to testify concerning her current and future economic losses purportedly attributable to her October 2001 lay-off from Hyatt. Based on a number of background assumptions, Rosen has estimated that Hildebrandt's economic damages range from a low of $973,712 to as much as $2,232,796. As demonstrated below, Rosen's report and anticipated testimony should be excluded as unreliable because they rest upon assumptions about Hildebrandt's post-termination earning capacity that are

3

unreasonable and insupportable. Alternatively, Rosen's testimony should be barred because its minimal probative value, if any, is far outweighed by the dangers of unfair prejudice, confusion of the issues and misleading the jury.

## II. ARGUMENT

### A. Rosen's Report and Testimony Are Inadmissible Under F.R.E. 702 Because They Ignore Highly Relevant Facts And Data And Are, Hence, Unreliable.

Rule 702 of the Federal Rules of Evidence sets forth the basic standards for the admissibility of expert testimony. Under Rule 702, Rosen's testimony is only admissible if it will aid the trier of fact in understanding the evidence and issues in the case. To that end, Rule 702 has two basic requirements: First, the witness whose testimony is being proffered must be qualified by background and education as an expert.[2] Second, the witness's testimony must be reliable. Specifically, (1) the testimony must be based upon sufficient facts or data, (2) the testimony must be the product of reliable principles and methods, and (3) the witness must have applied the principles and methods reliably to the facts of the case. Rule 702, F.R.E. Under Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), this Court is to act as a gate-keeper to exclude an expert's testimony if it fails to satisfy the foregoing requirements of Rule 702. In particular, this Court must ensure that the proffered testimony is based on the "methods and procedures of science," and not on "subjective belief or unsupported speculation." Daubert, 509 U.S. at 590.

Courts have found expert testimony on future earnings loss to be unreliable and inadmissible where it lacked a proper evidentiary foundation. In Benjamin v. Peter's Farm

---

[1] Hildebrandt's recent response to Defendants' motion for summary judgment concedes that she is no longer pursuing the gender discrimination claim with respect to her October 2001 lay-off, although she is continuing to pursue such claim with regard to certain purported promotional opportunities.

Condominium Assoc., 820 F.2d 640 (3rd Cir. 1987), the Third Circuit reversed the trial court's refusal to strike the testimony of plaintiff's economic expert as to future earnings loss. In reversing the trial court and finding the economist's testimony inadmissible, the Third Circuit found that the expert's testimony "lacked the proper foundation and sufficient factual predicates to support the future earnings loss calculation." Benjamin, 820 F.2d at 642. In particular, the expert's reliance upon speculative information provided by the plaintiff concerning his future capabilities, and the expert's admitted lack of "professional knowledge as to [plaintiff's] capacity to continue working a particular job" rendered his calculation of future earnings loss a "castle made of sand." Id. at 643. Similarly, in Henry v. Hess Oil Virgin Islands Corp., 163 F.R.D. 237, 245 (D. V.I. 1995), the court ordered a new trial on damages where the plaintiff's economic expert based his testimony on future earnings loss upon a vocational report that was "overly speculative" and filled with "unsubstantiated conclusions." Because the economics expert had "built his wage loss edifice" on unfounded conclusions about plaintiff's future earnings capacity, his testimony was unreliable under Rule 702 and, therefore, inadmissible. Henry, 163 F.R.D. at 247.[3]

Here, as in the foregoing cases, Rosen's report and testimony should be excluded because they are unreliable. Rosen's report, dated March 4, 2003, is attached hereto as Exhibit A (minus appendices). In his report, Rosen estimates Hildebrandt's lost earnings under two scenarios. In the first scenario, Rosen assumes Hildebrandt would have stayed in her existing position with

---

[2] For purposes of this motion, Defendants do not dispute that Rosen is a qualified expert in his field of economics.

[3] It is also noteworthy that the Sixth Circuit has reversed an award of front pay to a plaintiff in an employment discrimination case where she accepted part-time hours instead of seeking "alternative or supplemental employment in order to make up for this reduction in her income." Roush v. KFC National Management Co., 10 F.3d 392, 400 (6th Cir. 1994). The Court found that plaintiff's "intentional limitation of her income…terminate[d] any entitlement to front pay which she may otherwise have had." Roush, 10 F.3d at 400.

Hyatt. In the second scenario, Rosen assumes Hildebrandt would have been promoted to the Director of Sales position for the Central National Sales Office to which individual Defendant Booth had been previously promoted. Under both scenarios, Rosen projected Hildebrandt's lost earnings through approximately age 60 (her statistical work life expectancy), through age 65, and through age 66 (the age she would be eligible for full Social Security benefits). According to Rosen, "the loss was determined by computing the differences in the <u>reasonable amounts of earnings Mrs. Hildebrandt would have been expected to earn</u> over the remainder of her work life expectancy between her pre-and-post termination jobs." Exh. A (emphasis added). Critically, in addressing the impact of Hildebrandt's mitigation efforts, Rosen assumed that for the remainder of her work life Hildebrandt will earn the approximately $30,000 annually she presently earns in her position with the Cincinnati Horticultural Society, a non-profit organization with which she has been employed since June 2002. Deposition of Barbara Loder Hildebrandt ("Hildebrandt Dep."), pp. 287-88, 306 (pertinent excerpts from Hildebrandt's deposition are attached hereto as Exhibit B).

  Rosen's report and anticipated testimony are unreliable because they rest upon the fallacious assumption that Hildebrandt's current income stream represents her <u>reasonable earning capacity</u> for the remainder of her expected work life. Deposition of Harvey S. Rosen ("Rosen Dep."), p. 33 (pertinent excerpts from Rosen's deposition are attached as Exhibit C hereto). As Rosen's deposition testimony establishes, there is no evidentiary basis for his assumption. Rosen concedes that he has no knowledge of Hildebrandt's skills, job duties or responsibilities in her former position as Director, National Accounts, for Hyatt. Rosen Dep., p. 23. Nor does Rosen have any knowledge concerning Hildebrandt's current job duties and responsibilities in her much lower-paying position with the Cincinnati Horticultural Society. <u>Id.</u>, p. 41. Rosen conducted no

analysis of the job market in the hospitality industry in the Cincinnati area, or of whether Hildebrandt had conducted a good faith search for other positions in the hospitality industry in which she had been employed for over 20 years. Id., pp. 32, 45-46 and 50. Rosen concedes he did not attempt to ascertain whether Hildebrandt is willfully underemployed, but rather he simply used the current earnings information provided to him. Id., p. 31. He further concedes that Hildebrandt may well be qualified for positions earning considerably more than she is presently earning with the non-profit organization. Id., pp. 42-43.

Rosen's failure to apply his statistical methodology to the available "facts or data" in the case (F.R.E. Rule 702) renders it fatally unreliable. This is a classic instance of an expert engaging in number crunching that has the patina of "science," but in fact reflects the old adage, "garbage in, garbage out." Rosen's analysis concedes that as Director, National Accounts, for a large, national company, Hildebrandt earned anywhere from a low of $94,152 in 1997 to a high of $111,101 in 2000. See Exh. A. At the time of her lay-off, Hildebrandt was only 49 years old, with over 20 years of experience and contacts in her industry. Yet eight months after her lay-off, Hildebrandt elected to take a position with a small, local non-profit organization, earning less than one-third of what she had earned at Hyatt. Hildebrandt Dep., pp. 287-88, 306. In her recent supplemental deposition on damages, Hildebrandt concedes that, pursuant to her employment agreement with the Cincinnati Horticultural Society, she has not actively looked elsewhere for other employment. Hildebrandt Dep., pp. 292, 309. To the limited extent Hildebrandt has even considered other employment since her hiring with the Cincinnati Horticultural Society, the positions have been, for the most part, with other non-profit organizations. Id., pp. 294-96. It should also be noted that, in May 2001, just a few months before her lay-off from Hyatt, Hildebrandt married a local judge. Id., pp. 5, 300. Because of her husband's position,

7

Hildebrandt has expressed a strong preference for remaining in Cincinnati, and has made no affirmative efforts to look for positions in the hospitality industry outside of Cincinnati. Id., pp. 256-57. Furthermore, Hildebrandt has expressed satisfaction with her current, low-paying position. Id., p. 299. In sum, had Rosen examined the facts or data available to him, he could have come to but one conclusion: Hildebrandt's current earnings are a product of her choice to be underemployed, and do not reflect her reasonable earning capacity. This oversight on Rosen's part does not just go to the weight to be accorded his testimony, but rather to the very heart of its admissibility, rendering it nothing more than a "castle made of sand."

Rosen's report and anticipated testimony are likewise unreliable and should be excluded to the extent they rest upon the assumption that Hildebrandt would have been promoted to Booth's position as Director of Sales (the "second scenario"). See Exh. A. Rosen admits he did not compare Booth's background and qualifications with those of Hildebrandt. Rosen Dep., pp. 29-30. He simply accepted as a given the relevance of the numbers he was provided concerning Booth's compensation. In fact, Booth's compensation is utterly irrelevant to a computation of Hildebrandt's damages. The undisputed facts of the case belie Hildebrandt's claim that she should have been awarded Booth's position. Hildebrandt admits she was aware of the vacancy in the Director of Sales position, but she never applied for it and never asked anyone to consider her for it; nor did she otherwise express any affirmative interest in the position. See Defendants' Mem. of Law in Support of Summary Judgment, pp. 8-9. Moreover, Booth, unlike Hildebrandt, had past experience as a Director of Sales for other hotel chains, and had "field sales" experience that Hildebrandt lacked. Id. In sum, Rosen's reliance upon Booth's earnings in a quite different position as the basis for an estimate of Hildebrandt's future lost earnings renders his opinion under the "second scenario" completely unreliable and inadmissible for that reason alone.

B. **Rosen's Report And Testimony Are Inadmissible Under Rule 403 Because They Are Unfairly Prejudicial And Will Be Likely To Confuse And Mislead The Jury.**

Even assuming, arguendo, that Rosen's testimony satisfies the dictates of Rule 702, it should be excluded under Rule 403 if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." F.R.E. 403. Because expert evidence is often more misleading then other evidence, Rule 403 gives judges more power over experts than over lay witnesses. Daubert, 509 U.S. at 595. Courts and commentators recognize that testimony with an "aura of scientific infallibility" should be excluded where it has a strong potential to confuse and mislead the jury. Weinstein's Evidence, ¶ 403[04], at 403-68 through 403-70; Martincic v. Urban Redevelopment Authority, 844 F.Supp. 1073 (W.D. Pa. 1994). See also, Turner v. Allstate Ins. Co., 902 F.2d 1208, 1213-15 (6th Cir. 1990) (court defers to trial court's assessment that statistical data had a serious potential for confusing the jury and being misinterpreted).

Rosen's estimate of Hildebrandt's future earnings loss is of minimal, if any, probative value given that it rests upon the unwarranted assumption that Hildebrandt's current, modest earnings represent a reasonable attempt on her part to mitigate her damages. There is even less probative value to Rosen's damages estimate under "the second scenario," which assumes, without any evidentiary foundation, that Hildebrandt would have occupied Booth's position with Hyatt. The minimal, if any, probative value of Rosen's testimony is far outweighed by the potential for unfair prejudice if he is permitted to parade before the jury damages estimates of up to $2.2 million dollars that are, in fact, nothing more than "castles made of sand." To permit Rosen to testify to future earnings loss based upon such an inadequate evidentiary foundation, all

the while cloaked in the aura of mathematical or scientific expertise, would only serve to mislead and invite juror confusion.

Defendants' objection to Rosen's unfairly prejudicial testimony goes to its admissibility, not to its weight. Once the jury has been exposed to Rosen's calculations, or references to such calculations, in voir dire or opening statement, the damage cannot be undone. There is no remedial action or instruction by this Court that could "unring the bell."

## III.   CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court grant their Motion in Limine to Exclude Expert Opinion and Report of Harvey S. Rosen.

DATED this 8th day of June 2004.

Respectfully submitted,

FISHER & PHILLIPS LLP
1250 Lincoln Plaza
300 South Orange Avenue
Orlando, Florida 32801
Telephone:   (407) 541-0888
Facsimile:    (407) 541-0887

By:   s/Theresa M. Gallion by
s/Jeffrey J. Harmon per telephone
authorization of 6/8/04
Theresa M. Gallion, Esq.
Florida Bar No. 726801
E-mail: TGallion@LaborLawyers.com

Natalie J. Storch, Esq.
Florida Bar No. 0269920
E-mail: NStorch@LaborLawyers.com

Nadine C. Abrahams. Esq.
Illinois Bar No. 6209382
FISHER & PHILLIPS LLP
140 S. Dearborn, Suite 420
Chicago, Illinois 60603
Telephone:   (312) 580-7811
Facsimile:    (312) 346-3179
E-mail: nabrahams@LaborLawyers.com

s/Jeffrey J. Harmon
Jeffrey J. Harmon
Ohio Bar No. 0032848
CORS & BASSETT, LLC
537 E. Pete Rose Way, Suite 400
Cincinnati, Ohio 45202-3578
Telephone:   (513) 852-8201
Facsimile:    (513) 852-8222
E-mail: jjh@corsbassett.com

TRIAL ATTORNEYS FOR
DEFENDANTS

## CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that on June 8, 2004, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to Stanley M. Chesley, Esq. and Robert Steinberg, Esq., Waite, Schneider, Bayless, & Chesley Co., L.P.A., 1513 Central Trust Tower, Cincinnati, Ohio, 45202, Michael J. O'Hara, Esq., O'Hara, Ruberg, Taylor, Sloan & Sergent, 209 Thomas More Park, Suite C, P.O. Box 17411, Covington, Kentucky 41017-0411, and John S. Marshall, Esq. and Edward R. Forman, Esq., Marshall and Morrow LLC, 111 West Rich Street, Suite 430, Columbus, Ohio 43215-5296.

                                                       s/Jeffrey J. Harmon
                                                       Jeffrey J. Harmon