## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| BARBARA LODER HILDEBRANDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. C-1-02 0003 |
| | ) | |
| HYATT CORPORATION, et al., | ) | Judge Sandra Beckwith |
| | ) | Magistrate Judge Timothy S. Black |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S VOCATIONAL EXPERT WITNESS' TESTIMONY AND REPORT OR, IN THE ALTERNATIVE, TO LIMIT EXPERT WITNESS' TESTIMONY AND REPORT

Defendants HYATT CORPORATION ("Hyatt"), TY HELMS ("Helms"), BRIAN J. BOOTH ("Booth") and JACK HORNE ("Horne") ("Defendants"), by and through their undersigned counsel, and pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence, specifically Fed. R. Evid. 104, 402, 403, 702 and 702, move to exclude Plaintiff's vocational expert witness' testimony and report or in the alternative to limit the vocational expert's testimony and report. In support of this Motion Defendants state as follows:

1)      Plaintiff Barbara Loder Hildebrandt ("Plaintiff"), is alleging that Hyatt and individual Defendants Helms, Booth and Horne, discriminated against her on the basis of her gender and age in violation of the Ohio Civil Rights Act ("OCRA"), Ohio Revised Code ("O.R.C.") Chapter 4112, Ohio Public Policy, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.,* ("ADEA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII").[1]

---

[1]   On March 1, 2004, Defendants filed a Motion for Summary Judgment in this action. The Motion is fully briefed.

2)      As a component of the damages sought by Plaintiff, Plaintiff is seeking relief "for all current and future economic and non economic losses, diminished employability . . ." *See* Complaint and Jury Demand at p. 17.

3)      In support of her claim for damages, Plaintiff has retained George Parsons, an "occupational specialist," to opine on the issue of purported loss of employment opportunity.

4)      Dr. Parsons' report and testimony should be barred on the following grounds: a) Dr. Parsons' experience and qualifications do not qualify him to be an expert in his professed field of expertise; b) he does not identify any reasonable methodology or standards used to reach his opinions; c) his testimony will not assist the trier of fact; d) his report and testimony is inherently unreliable; and e) any probative value contained within the report is outweighed by the prejudicial effect of his conclusions and the likelihood of confusing or misleading the jury.

5)      In the alternative, if Dr. Parsons' report or testimony is permitted in this case, the scope of such testimony should be limited and the report should be redacted.

6)      Defendants have submitted a Memorandum of Law in Support of this Motion.

7)      Due to the inherent unreliability and prejudicial affect of Dr. Parsons' proffered opinion, Defendants respectfully move for an evidentiary hearing in advance of trial on the subject of admissibility of Dr. Parsons' report and testimony.

## CONCLUSION

For the foregoing reasons and as stated in Defendants' Memorandum of Law in Support of this Motion, Defendants respectfully requests this Court bar Dr. Parsons as a witness in this case and strike his expert report or, in the alternative, limit the scope of his testimony and report.

DATED this 8th day of June 2004.                    Respectfully submitted,

                                                    FISHER & PHILLIPS LLP
                                                    1250 Lincoln Plaza
                                                    300 South Orange Avenue
                                                    Orlando, Florida 32801
                                                    Telephone:    (407) 541-0888
                                                    Facsimile:    (407) 541-0887

                                            By:     s/Theresa M. Gallion by
                                                    s/Jeffrey J. Harmon per telephone
                                                    authorization of 6/8/04
                                                    Theresa M. Gallion, Esq.
                                                    Florida Bar No. 726801
                                                    E-mail: TGallion@LaborLawyers.com

                                                    Natalie J. Storch, Esq.
                                                    Florida Bar No. 0269920
                                                    E-mail: NStorch@LaborLawyers.com

                                                    Nadine C. Abrahams. Esq.
                                                    Illinois Bar No. 6209382
                                                    FISHER & PHILLIPS LLP
                                                    140 S. Dearborn, Suite 420
                                                    Chicago, Illinois 60603
                                                    Telephone:    (312) 580-7811
                                                    Facsimile:    (312) 346-3179
                                                    E-mail: nabrahams@LaborLawyers.com

                                                    s/Jeffrey J. Harmon
                                                    Jeffrey J. Harmon
                                                    Ohio Bar No. 0032848
                                                    CORS & BASSETT, LLC
                                                    537 E. Pete Rose Way, Suite 400
                                                    Cincinnati, Ohio 45202-3578
                                                    Telephone:    (513) 852-8201
                                                    Facsimile:    (513) 852-8222
                                                    E-mail: jjh@corsbassett.com

                                                    TRIAL ATTORNEYS FOR
                                                    DEFENDANTS

## MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S VOCATIONAL EXPERT WITNESS' TESTIMONY AND REPORT OR, IN THE ALTERNATIVE, TO LIMIT EXPERT WITNESS' TESTIMONY AND REPORT

Defendants HYATT CORPORATION ("Hyatt"), TY HELMS ("Helms"), BRIAN J. BOOTH ("Booth") and JACK HORNE ("Horne"), by and through their undersigned counsel, and pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence, specifically Fed. R. Evid. 104, 402, 403, 702 and 702, file this Memorandum of Law in Support of Motion in Limine to Exclude Plaintiff's Vocational Expert Witness' Testimony and Report or in the Alternative to Limit Expert Witness' Testimony and Report and in support of their Motion state as follows:

### INTRODUCTION

Plaintiff Barbara Loder Hildebrandt ("Plaintiff"), is alleging that Hyatt and individual Defendants Helms, Booth and Horne, discriminated against her on the basis of her gender[2] and age in violation of the Ohio Civil Rights Act ("OCRA"), Ohio Revised Code ("O.R.C.") Chapter 4112, Ohio Public Policy, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.,* ("ADEA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"). At the time that she was laid-off from her employment with Hyatt, Plaintiff was working in Hyatt's National Sales Force which sells hospitality services to large companies or organizations undertaking business in multiple cities. *See* Defendants' Motion for Summary Judgment at p. 3. As a component of the damages sought by Plaintiff, Plaintiff is seeking relief "for all current and future economic and non economic losses, diminished employability . . ." *See* Complaint and Jury Demand at p. 17.

---

[2] On March 1, 2004, Defendants filed a Motion for Summary Judgment in this action. In Plaintiff's Response to Defendants' Motion for Summary Judgment, she concedes that she is no longer pursuing a gender discrimination claim with regard to her lay-off, although she is continuing to pursue such a claim with regard to certain promotional opportunities.

In support of her claim for damages, Plaintiff has retained George Parsons, an "occupational specialist," to opine on the issue of purported loss of employment opportunity. For the reasons discussed below, Dr. Parsons' report and testimony should be barred. In the alternative, if Dr. Parsons' report or testimony is permitted in this case, the scope of such testimony should be limited and the report should be redacted as discussed below.

**ARGUMENT**

A.    **Admissibility of Expert Report and Testimony**

The rules governing the admissibility of expert testimony are found in the Federal Rules of Evidence at Rules 702-705. Rule 702 of the Federal Rules of Evidence sets forth the basic standards required for the admissibility of expert testimony.[3] Of course, expert testimony is admissible only to the extent that such testimony is reliable and would assist the trier of fact in analyzing evidence and issues relevant to the case.

The United States Supreme Court has determined that the trial court acts as gatekeeper to exclude an expert witness' testimony if the expert's methodology fails to satisfy Rule 702's reliability requirement. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In general, the reliability-related factors mandated by *Daubert* include:

1.    Testability of the expert's theories;
2.    Whether the expert's theory has been the subject of peer review or publication;
3.    The theory's known or potential rate of error; and
4.    The theory's degree of acceptance within the relevant scientific community.

*Daubert*, 509 U.S. at 592-595. The expert's opinion must be grounded in procedures and methods of science and cannot merely consist of unsupported speculation or subjective belief. *Id.* at 590. Subsequently, the United States Supreme Court has held that the *Daubert* analysis

---

[3] Rule 702 states that: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

applies equally to all expert testimony not just "scientific" experts. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

In *Kumho Tire*, the Court noted with approval the District Court's initial inquiry which resulted in the exclusion of the expert's testimony. Expert testimony in *Kumho Tire* related to possible tire defects in a tort case. The Court stated:

> For one thing, and contrary to respondents' suggestion, the specific issue before the Court was not the reasonableness *in general* of a tire expert's use of a visual and tactile inspection to determine whether over-deflection had caused the tire's tread to separate from its steel-belted carcass. Rather, it was the reasonableness of using such an approach, along with [plaintiff's expert's] particular method of analyzing the data thereby obtained, to draw a conclusion regarding *the particular matter to which the expert testimony was directly relevant.*

*Kumho Tire*, 526 U.S. at 153-54 (emphasis in original). The Supreme Court approved the District Court's analysis of the expert testimony, as well as its decision to exclude the testimony in that case.

> The district court did not doubt [the expert's] qualifications, which included a master's degree in chemical engineering, ten years' work at Michelin America, Inc., and testimony of the tire failure consultant in other court cases. Rather, it excluded the testimony because, despite those qualifications it initially doubted, and then found unreliable, the methodology employed by the expert in analyzing the data obtained in visual inspection, and the scientific basis, if any, for such an analysis. [The testimony] fell outside the range where experts might reasonably differ....

*Id.* at 153.

The role of a district court judge, pursuant to Federal Rule of Evidence 702, is to scrutinize whether the "principles and methods" employed by an expert "have been properly applied to the facts of the case." *Kumho Tire*, 526 U.S. at 157 (quoting Advisory Committee's Note on Proposed Fed. Rule Evid. 702, Preliminary Draft of Proposed Amendment to the Federal Rules of Civil Procedure and Evidence: Request for Comment 126 (1998)). Nothing in

either *Daubert,* or in the text of the Federal Rules of Evidence, requires a district court "to admit opinion evidence that is connected to system data only by the *ipse dixit* of the expert." *Kumho Tire*, 526 U.S. at 157.

Here, Dr. Parsons' report and testimony should be barred because: 1) Dr. Parsons' experience and qualifications do not qualify him to be an expert in his professed field of expertise; 2) he does not identify any reasonable methodology or standards used to reach his opinions; 3) his testimony will not assist the trier of fact; and 4) any probative value contained within the report is outweighed by the prejudicial effect of his conclusions and the likelihood of confusing or misleading the jury. In sum, Plaintiff will be unable to show that Dr. Parsons' testimony is reliable and relevant as required by the Supreme Court in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) or that the methodology as set forth in Dr. Parsons' report satisfies the requirements of Federal Rule of Evidence 702.

### B.    Synopsis of Dr. Parsons' Report and Testimony

Dr. Parsons' report claims to address Plaintiff's purported "loss of employment opportunity" related to her October 2001 lay-off from Hyatt. A copy of the report is attached hereto as Exhibit A. In his report, Dr. Parsons renders the following opinions: 1) Plaintiff "has and will suffer wage and fringe benefit losses between her current and past employment in a negative direction;" 2) "[Plaintiff's] participation and employment prior to her termination was one hundred percent and will now be reflective of the average P & E of 79%;" and 3) Plaintiff's "work life has been reduced from eleven to eight years." *See* Exhibit A at p. 3.

### C.    Dr. Parsons' Experience and Qualifications Do Not Render Him an Expert to Render the Opinions in His Report.

Dr. Parsons' education and experience does not qualify him to render the opinions he seeks to introduce in this case. The doctorate received by Dr. Parsons was in counseling

psychology. Such field encompasses counseling individuals who are suffering from some type of temporary adjustment disorder. *See* Portions of Dr. Parsons' Deposition (hereinafter "Parsons' Deposition at p. __") at p. 32 (attached hereto as Exhibit B), and Dr. Parsons' curriculum vitae (attached hereto as Exhibit C). Dr. Parsons admits that his opinions in this case are not related to his doctorate degree in counseling psychology and that he was not retained as a treating psychologist in this case. *See* Exhibit B at p. 33.

Based on Dr. Parsons' own admissions, none of his current or prior employment or academic pursuits are related to the substance of his opinions in this matter. Currently, Dr. Parsons is employed as a transitional coach and in such capacity consults with individuals who are approaching retirement or making a transition from one occupation to another. *See* Exhibit B at p. 23. He also acts as a consultant to large businesses with regard to employee relations issues and hiring practices. *Id.* at p. 30. Prior to his current consulting practice, Dr. Parsons was the Director of Behavioral Medicine for the University of Cincinnati Pain Physicians for fifteen years during which he was involved in the assessment and treatment of pain. *Id.* at pp. 34-35. He admits that such pursuits are unrelated to the opinions he is tendering in this case. *Id.* at pp. 23, 30-31, 34-35.

Additionally, Dr. Parsons' academic and teaching experience does not render him qualified to render the opinions he reaches in this matter. Currently, Dr. Parsons teaches courses in human relations and psychology at Cincinnati State College which he admits are unrelated to his opinions in this matter. *Id.* at p. 29. He admits that he has not published or been involved in the publication of any articles dealing with the issues facing individuals who have been dislocated from their jobs because of gender or age discrimination. *Id.* at p. 35. Moreover, Dr. Parsons concedes that his "expertise" does not extend to the availability of jobs in the hospitality industry in Southern Ohio and that he is not an expert in the hospitality industry. *Id.* at pp. 8-9,

10. His familiarity with the hospitality industry is limited to his review of documents produced by the U.S. Department of Labor.[4] *Id.* at p. 9.

It appears that the only arguably relevant experience Dr. Parsons has related to the areas contained within his report is his work as a "vocational expert" for the Office of Hearings and Appeals in social security cases or as an expert in worker's compensation matters. *Id.* at pp. 15-16, p. 17. In his work for the Office of Hearings and Appeals, Dr. Parsons responds to hypothetical questions that are posed by administrative law judges in Social Security Administration cases. *Id.* at pp. 15-16. Such work does not render Dr. Parsons an expert qualified to opine on Plaintiff's purported loss of employment opportunity.

In sum, Dr. Parsons' qualifications and experience fail to qualify him to render any opinions regarding potential loss of employment opportunity purportedly suffered by Plaintiff. He has failed to identify any other cases or matters for which he has provided a similar analysis or rendered similar opinions. For these reasons alone, Dr. Parsons' report and testimony should be barred.

### D.    Dr. Parsons' Testimony and Report is Neither Reliable Nor Relevant.

The conclusions reached in Dr. Parsons' report are based on unsupported speculation and assumptions which have no basis in fact. Additionally, Dr. Parsons did not use any reasonable methodology to arrive at his opinions so as to tender his testimony and report reliable.

As a preliminary matter, Dr. Parsons' sole source of information related to Plaintiff's employment situation comes from a two and half hour interview with Plaintiff on January 23, 2003. *See* Exhibit B at pp. 6-7. During the interview, Plaintiff told Dr. Parsons that she had "attempted" five or six job interviews primarily for jobs parallel to what she had in the hotel

---

[4] When Dr. Parsons was asked to produce such documents, the only documents he produced were news releases from the Department of Labor dated September 11, 2001 and December 10, 2002 regarding the average annual pay of all workers regardless of age, gender or industry. *See* Bureau of Labor Statistics News Releases attached hereto as Exhibit D. He has produced no documents related specifically to the hospitality industry.

industry, and also in the banking industry. *Id*. Dr. Parsons "thinks" that Plaintiff contacted people she knew in her industry. However, such statements are based on his assumptions and not on information or documentation provided by Plaintiff. *Id*. at p. 26. He has no knowledge regarding how many people she contacted or who they are. *Id*. at p. 27. Other than statements made by Plaintiff regarding her job search when she first began looking for employment, Dr. Parsons has no knowledge regarding what, if anything Plaintiff has done within the past 18 months to attempt to obtain employment in the hospitality industry in Cincinnati or to obtain employment with a salary comparable to the salary she was receiving when she was laid-off from Hyatt. *Id*. at p. 26. He conducted no independent verification of the statements made to him by Plaintiff and reviewed no documents related to her attempts to secure employment or the status of her current employment. Therefore, the basic assumptions which form the foundation for his opinions are flawed and unsupported.

The first opinion reached by Dr. Parsons is that Plaintiff "has and will suffer wage and fringe benefit losses between her current and past employment in a negative direction." *See* Exhibit A at p. 3. Such conclusion is so self-evident that it certainly does not encompass an area where an expert's opinion would be necessary or even helpful. It is axiomatic based on Plaintiff's current employment income that her employment income has decreased since she was laid-off from Hyatt and that should Plaintiff remain employed in her current position through her remaining working years, her income will continue to be negatively effected. Such conclusions can be argued by Plaintiff's counsel based on the objective evidence in the record and do not fall within the realm of an expert opinion.[5] A proffered expert must "bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir. 1992).

---

[5] Additionally, in the event that this case proceeds to trial, the parties will most likely stipulate to the differential between what Plaintiff is currently earning and what she would have earned had she continued to be employed by Hyatt. Moreover, the issue of front pay will not be submitted to the jury for determination. The cut-off

Likewise, Dr. Parsons' conclusion that Plaintiff's "participation and employment prior to her termination was one hundred percent and will now be reflective of the average P & E of 79%" should be barred for several reasons. *See* Exhibit A at p. 3. Such opinion is unsupported by any reliable empirical data or reports. In *Daubert*, the Court advised that the word "knowledge" as it appears in Rule 702 "connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. The Court also stated that the "[p]roposed testimony must be supported by appropriate validation-i.e., 'good grounds,' based on what is known." *Id.*

Dr. Parsons was unable to explain how he reached the conclusion that Plaintiff's "participation and employment ("P & E")" would be reduced to 79% and instead rests on his *ipse dixit* statement that there would be a 21% reduction in her participation and employment. *See* Exhibit B at pp. 46-47. He bases his belief that she is now going to reflect the average person in the employment world on the fact that it took Plaintiff eight months after her lay-off to secure employment. *Id.* at pp. 47-48. The 79% figure is purportedly obtained from a Bureau of Labor Statistics table and represents the average P & E for an average American worker.[6] *Id.* at pp. 40, 55-56. When questioned regarding why Plaintiff should be compared to the average worker, Dr. Parsons stated that he has not identified any characteristics that showed him that she would be better than 79%. *Id.* at p. 57. He further indicated that Plaintiff has demonstrated a willingness to return to the workforce. However, he admitted that he did not test her credibility regarding her efforts to return to the workforce and instead relied exclusively on her self-report. *Id.* at pp.

---

date for the award of front-pay is within the discretion of the district court. *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1160 (6th Cir. 1985). *See e.g., Bailey v. Container Corp. of America*, 660 F. Supp. 1048, 1054 (S.D. Ohio 1986) (holding that front-pay relief was inappropriate where plaintiff was 41 years old at the time of his discharge and had secured new employment).

[6] When requested to produce the "BLS, Statistical Report, Nov. 2001," from which he obtained the 79% figure, Dr. Parsons instead produced a September 11, 2001 Bureau of Labor Statistics News Release and two charts as well as a December 2002 News Release and charts. The documents are attached hereto as Exhibit D. It is not apparent from the documents produced from where Dr. Parsons derived the 79% figure.

57-58. He also had no evidence to dispute that Plaintiff may have voluntarily chosen to work for less money in a less stressful job. *Id.* at pp. 46-47.

Most significantly, the 79% figure quoted by Dr. Parsons applies to all employees regardless of education, industry, geographic location or years of employment. It also applies equally to skilled and unskilled workers as well as workers who were fired for misconduct or laid-off due to a workforce reduction. It is obvious that multiple factors would impact on Plaintiff's "participation and employment" figure and that her situation cannot be equated to an unskilled laborer without a high school education residing in a rural area who was terminated for misconduct.

In short, Dr. Parsons' overly simplistic and unsupported conclusion regarding Plaintiff's "participation and employment" figure lacks the independent reliability necessary to permit its admissibility. Not only was Dr. Parsons unable to articulate where he obtained the 79% figure, and how he determined Plaintiff should fall in the 79% category, he was unable to explain what the 79% figure means in practical terms. He made no attempt whatsoever to review the literature in the field regarding the characteristics of individuals who were re-employed including such individuals' salary information. Dr. Parson should not be permitted to testify regarding issues which are not, at their core, dependent on special knowledge or training to ascertain. There is no indication that Dr. Parsons' approach has been tested or accepted within the relevant field. Moreover, the opinion provides no probative information which would be helpful to the jury and instead has the potential to mislead or confuse the jury.

The third opinion reached by Dr. Parsons is that Plaintiff's work life has been reduced from eleven to eight years. He again bases such a statement on a Department of Labor work life expectancy table and Plaintiff's self-serving statement that she would continue working well

beyond age 65.[7]  *Id.* at p. 58, p. 61.  Again, Dr. Parsons does not identify where he obtained the eight year figure or the basis for his conclusion that merely because Plaintiff was looking for work for several months, her work life would now be reduced by three years.  Such a conclusion is illogical and inherently unreliable.  Moreover, such an opinion should not be submitted to the jury because issues of front pay are governed by the sound discretion of the trial court and may not be appropriate in all cases.  *Roush v. KFC National Management Co.*, 10 F.3d 392, 398 (6th Cir. 1993); *Polk v. Yellow Fright System, Inc.*, 801 F.2d 190, 193 (6th Cir. 1986) (jury instructed to determine back pay award and court determined award of reinstatement and front-pay); *Davis v. Combustion Engineering, Inc.*, 742 F.2d 916, 923 (6th Cir. 1984); *Bailey v. Container Corp. of America*, 660 F. Supp. 1048, 1053 (S.D. Ohio 1986).

Finally, the opinions rendered by Dr. Parsons are redundant.  Plaintiff has retained Dr. Harvey Rosen, an economics expert, to opine on the issue of the actual claimed economic loss created by Plaintiff's termination from Hyatt.  Dr. Parsons' speculative and unreliable opinions are rendered irrelevant by virtue of the fact that Dr. Rosen has articulated specific economic losses.  Permitting both Dr. Rosen and Dr. Parsons' opinions to be introduced to the jury would unduly prejudice Defendants.

### E.    Even if the Court Finds Dr. Parsons' Analysis Marginally Relevant, the Analysis Should be Excluded Because it is Likely to Confuse and Mislead the Jury.

In the event that Plaintiff's counsel is permitted to place Dr. Parsons' conclusions before the jury, there is a high probability that the jury will accord the conclusions too much weight and will be misled.  *See* Fed. R. Civ. P. 403. *See e.g., Turner v. Allstate Ins. Co.*, 902 F.2d 1208, 1213-15 (6th Cir. 1990)(Court defers to trial court's assessment that statistical data had a serious potential for confusing the jury and being misinterpreted).  The danger of confusion to the jury

---

[7] It is unclear from the work life expectancy table produced by Dr. Parsons where he obtained the eight and eleven year figures.

and the prejudicial effect of Dr. Parsons' opinions outweighs any probative value that such an opinions may have.

**F.    In the Alternative, Dr. Parsons' Report Should be Redacted and His Testimony Limited.**

Dr. Parsons' deposition testimony goes far beyond the issues which he analyzed and described in his Expert Witness Report. Therefore, Defendants respectfully requests this Court limit the testimony by Dr. Parsons as discussed below.

Although Dr. Parsons admits that his opinions in this case are not related to his experience in counseling psychology and that he was not retained as a treating psychologist in this case, his report and testimony make reference to Plaintiff's psychological well-being. *See* Exhibit B at p. 33; Exhibit A at p. 3. Specifically, the following paragraph must be deleted from Dr. Parsons' report:

> Certainly, a number of intangible losses were reported by Ms. Hilderbrandt including loss of contribution, pride of independence in work, and possible advancement and promotion. Although these factors come without an economic number, they strongly impact a person's job satisfaction and feelings of worth, ultimately leading to a reduced quality of life.

Dr. Parsons is not Plaintiff's treating psychologist and was not retained to proffer any opinions related to emotional distress damages. Any proposed testimony by Dr. Parsons related to Plaintiff's purported emotional distress or the psychological effects of her lay-off should be barred.

Likewise, Dr. Parsons admitted that his "expertise" does not extend to the availability of jobs in the hospitality industry in southern Ohio and that he is not an expert in the hospitality industry. *Exhibit B* at pp. 8-9, 10. He agreed that will not be testifying regarding matters related to the hospitality industry and tourism generally. *Id.* at p. 14. Moreover, despite being requested to do so, Dr. Parsons failed to produce any statistics or documents related to the hospitality industry in general or specifically to the hospitality market in Southern Ohio. *See* March 30,

2004 letter from Natalie Storch attached hereto as Exhibit E.   His statements about the hospitality market in the Cincinnati area are based merely on speculation and conjecture and not onany statistics or verifiable data.[8]   *See* Exhibit B at pp. 11-12.  Any attempt by Dr. Parsons to opine regarding the availability of jobs with the hospitality industry; the state of the tourism industry in Ohio; or  the appropriateness or necessity for a reduction in force within such industry should be barred.[9]

Additionally, Dr. Parsons should be barred from testifying regarding Plaintiffs' attempts to secure employment after her lay-off from Hyatt.  Such testimony is based on conjecture, speculation and hearsay, and is inherently unreliable.  *Id*. at pp. 26-27.  He admits that other than Plaintiff's comment to him that she contacted people who she had worked with over the years, he has no specific knowledge regarding what she did to secure employment. *Id*. at p. 58. Therefore, any attempt by Plaintiff's counsel to adduce evidence or testimony from Dr. Parsons in rebuttal to  Defendants' failure to mitigate damages defense should be barred.

### CONCLUSION

For the foregoing reasons, Defendants respectfully requests this Court bar Dr. Parsons as a witness in this case and strike his expert report or, in the alternative, limit the testimony and report as discussed above.

---

[8] Dr. Parsons testified that "I could not report, though, on the actual numbers or statistics, because I don't have them here sitting in front of me, but if we used the national trend, it would be different *perhaps, maybe,* than what we saw here in Cincinnati." *See* Exhibit B at p. 12.

[9] Likewise, Dr. Parsons is not an expert on hiring practices or employee relations. *Id*. at p. 30.  Therefore, any testimony in this regard should be barred.

DATED this 8th day of June 2004.                Respectfully submitted,

FISHER & PHILLIPS LLP
1250 Lincoln Plaza
300 South Orange Avenue
Orlando, Florida 32801
Telephone:    (407) 541-0888
Facsimile:    (407) 541-0887

By:    s/Theresa M. Gallion by
       s/Jeffrey J. Harmon per telephone
       authorization of 6/8/04_____
       Theresa M. Gallion, Esq.
       Florida Bar No. 726801
       E-mail: TGallion@LaborLawyers.com

       Natalie J. Storch, Esq.
       Florida Bar No. 0269920
       E-mail: NStorch@LaborLawyers.com

       Nadine C. Abrahams. Esq.
       Illinois Bar No. 6209382
       FISHER & PHILLIPS LLP
       140 S. Dearborn, Suite 420
       Chicago, Illinois 60603
       Telephone:    (312) 580-7811
       Facsímile:    (312) 346-3179
       E-mail: nabrahams@LaborLawyers.com

       s/Jeffrey J. Harmon_____
       Jeffrey J. Harmon
       Ohio Bar No. 0032848
       CORS & BASSETT, LLC
       537 E. Pete Rose Way, Suite 400
       Cincinnati, Ohio 45202-3578
       Telephone:    (513) 852-8201
       Facsimile:    (513) 852-8222
       E-mail: jjh@corsbassett.com

       TRIAL ATTORNEYS FOR
       DEFENDANTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 8, 2004, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to Stanley M. Chesley, Esq. and Robert Steinberg, Esq., Waite, Schneider, Bayless, & Chesley Co., L.P.A., 1513 Central Trust Tower, Cincinnati, Ohio, 45202, Michael J. O'Hara, Esq., O'Hara, Ruberg, Taylor, Sloan & Sergent, 209 Thomas More Park, Suite C, P.O. Box 17411, Covington, Kentucky 41017-0411, and John S. Marshall, Esq. and Edward R. Forman, Esq., Marshall and Morrow LLC, 111 West Rich Street, Suite 430, Columbus, Ohio 43215-5296.

s/Jeffrey J. Harmon
Jeffrey J. Harmon