**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Barbara Loder Hildebrandt,       )
                                 )
              Plaintiff,          ) Case No. 1:02-CV-0003
                                 )
      vs.                        )
                                 )
Hyatt Corporation, <u>et al.</u>,      )
                                 )
              Defendants.         )

O R D E R

        This matter is before the Court on a motion for summary
judgment (Doc. No. 63) filed by Defendants Hyatt Corporation, Ty
Helms, Jack Horne, and Brian Booth.  For the reasons set forth
below, Defendants' motion is **GRANTED IN PART AND DENIED IN PART.**

I. Background

        Plaintiff Barbara Loder Hildebrandt contends in this
case that Defendant Hyatt Corporation, and some of its individual
executives, Defendants Helms, Horne, and Booth, used an economic
recession and the terrorist attacks of September 11, 2001 as a
pretext to divest itself of older employees.  Plaintiff also
claims that during her employment with Hyatt Corporation, she was
denied promotional opportunities because of her age and gender.

        Plaintiff was born on September 23, 1952 and was within
the protected age group under state and federal law during the
relevant times of this case.  Complaint ¶ 4.  Plaintiff began
working for Hyatt Corporation in 1979 as a sales manager at the
Hyatt Regency in Phoenix, Arizona.  Plaintiff's career advanced
over the years while working in Hyatt hotels in Tampa, Florida

and Savannah, Georgia.  In 1986, Plaintiff was transferred to the Hyatt Regency in Cincinnati in the position of director sales. Charlson Aff. ¶ 3.

In February 1996, Plaintiff was promoted to Director of National Accounts in the Hyatt's Central National Office. Charlson Aff. ¶ 6.  Although the Central National Office itself was located in Chicago, Plaintiff's physical location remained at the Hyatt Regency in Cincinnati in what Hyatt termed a satellite office/home office.  At the relevant times in this case, Plaintiff reported to Defendant Brian Booth, who was the Director of the Central National Sales Office.  Booth in turn reported to Defendant Jack Horne, who was the Assistant Vice President of National Sales.  Horne then reported to Defendant Ty Helms, who was the Vice President of Sales.

As a Director of National Accounts, Plaintiff was responsible for arranging group and individual hotel accommodations for her clients at Hyatt hotels across the country.  Complaint ¶ 6.  Plaintiff was unquestionably excellent at her job.  In depositions, Plaintiff's superiors referred to her as a "top performer" and a "great performer."  Horne Dep. at 105, 118; see also Horne Dep. at 172 ("She was unequivocally one of the top performers in national sales."); Booth Dep. at 172. In 2000, Plaintiff achieved 136% of her sales quota and was nominated for the Annual Director of National Accounts Award. Horne Dep. at 172.

2

Although the year 2000 was also a good year for Hyatt Corporation, by early 2001 Hyatt had determined that the economy was slowing down and perhaps heading into a recession.  Rabin Dep. at 14; Helms Aff. ¶ 13.  In order to offset the decline in revenue, Hyatt in general and the National Sales Division specifically initiated certain cost-saving measures.  In the National Sales Division, Helms reduced the budget for travel and promotions and tried to bring in new hires at lower salaries, if possible.  Helms Aff. ¶ 17.  It was hoped that with these cuts, Hyatt would not be forced to eliminate jobs, although that possibility remained if the financial picture did not improve. Helms Dep. at 14-17.

According to Hyatt, in May 2001, Booth, with Horne's approval, developed a new evaluation form with which to grade the performance of the sales directors.  Because it was a new format, Booth received permission to conduct non-binding mid-year reviews of his staff, both as a way to introduce them to the new form and to apprise them of his own expectations.  Booth Dep. at 158.[1] Plaintiff received an overall evaluation of "meets expectations" which she believed was unfair, even though this review had no formal consequences.  In years past, Plaintiff had primarily received annual reviews of "exceeds expectations."  Plaintiff

---

[1]    Booth was named director of the Central Office in December 2000, and thus had not previously had the opportunity to review the performance of his staff.

3

also claims that Booth discriminated against her by setting her sales quota unfairly high for 2001.

In any event, the September 11, 2001 terrorist attacks dramatically altered Hyatt's financial situation.  Within days after the attacks, Hyatt incurred over $44 million in cancellations and sales ultimately dropped over $415 million from the previous year.  Helms Dep. at 9.  The revenue losses caused Hyatt to consider actually implementing more drastic cost-saving measures, including eliminating positions.  After a series of higher level management meetings, Helms instructed his direct reports, including Horne, to examine their divisions to make recommendations where cuts could be made.  The stated goal was to save as much money as possible with the least amount of production loss, while affecting as few people as possible.  Id. at 10.  Helms did not instruct his managers, nor was he himself instructed, that a certain number of jobs would have to be eliminated to achieve the needed savings.  Id. at 32, 37.

Horne recommended to Helms that ten positions be eliminated from the National Sales Force.  In determining which sales managers to terminate, Horne ranked or placed the managers in three categories, A, B, and C.[2]  Employees in Category A were considered to be critical to Hyatt's core operations and would

---

[2]    The record is not clear whose idea it was to categorize employees in this manner.  Helms testified that it was Horne's idea.  Helms Dep. at 153.  Horne testified that it was Helms' idea to rank employees this way, but left it to Horne to develop the classification criteria.  Horne Dep. at 85.

not be terminated.  Helms Dep. at 154.  Persons in Category C
would be terminated immediately.  See generally Plaintiff's Ex.
38.  Persons in Category B presumably were safe from termination
for the time being but would be eliminated in the event further
cuts were needed.

Despite her impressive record with Hyatt, Horne placed
Plaintiff in Category C.  Horne testified that he recommended
that Plaintiff's position be eliminated because "I felt that the
accounts she handled in Ohio could be covered by a person we had
in Michigan as well as anybody back in Chicago."  Horne Dep. at
9-10.  Horne admitted, however, that the converse was also true -
Plaintiff could have handled the accounts of other sales managers
in any geographic location.  Id. at 10-11.  In recommending whose
position to eliminate, Horne did not consider the employee's
production, previous performance, seniority, or current salary.
Id. at 52-53, 84, 100, 105-06; see also Helms Dep. at 38.  Horne
forwarded his recommendations to Helms and around September 22,
2001 met with Booth to inform him that there was a possibility
that these terminations would take place.  Id. at 14-15.

Helms took Horne's recommendations to Hyatt's managing
committee with his own recommendation that Horne's plan be
approved.  Helms Dep. at 33-35.  The managing committee approved
Horne's plan to terminate ten sales managers, including
Plaintiff, from the National Sales Force.  Id. at 35.  On
September 27, 2001, Horne told Booth that the reductions or
terminations described in his plan were going to take place.

Horne Dep. at 14-15.  Horne then left it to Booth to inform
Plaintiff and the others affected by the reduction-in-force that
their positions were being eliminated.  Booth Dep. at 16-17.  On
September 28, 2001, Booth informed Plaintiff that her position
was being eliminated and her employment terminated effective
October 1, 2001.  Id. at 17; Complaint ¶ 11.  Booth then
distributed Plaintiff's accounts among the remaining sales
managers.  Although when asked Booth told Horne that his plan was
"workable," the record is uncontroverted that Booth played no
part in deciding which sales managers would be terminated in the
reduction-in-force.  Id. at 8-10.

        The other sales managers terminated in the reduction-
in-force were Mary Rocereto, age 44, Dawn Beagle, age 41, Jane
Johnson, age 46, Mary Patton, age 37, Dean D'Anna, age 41, Wendy
Jensen, age 42, Carella Gillis, age 44, Herve Roussel, age 47,
and Gayle Smith, age 39.  See Patrick Aff. ¶ 5.  In addition,
Horne had initially selected Loretta Venezia, age 42, for
termination, but she voluntarily resigned on the day the
terminations were to take place due to perceived lack of
opportunities for advancement.  See Plaint. Ex. 38e; Venezia Aff.
¶ 6.  Horne had also selected Joe Koch, age 37, for termination.
Plaint. Ex. 38i.  Helms, however, did not follow this
recommendation because, according to him, the market that Koch
handled had not been affected as much as Hyatt's other markets.
Helms Dep. at 209-10.

In addition to claiming that her employment with Hyatt was terminated because of her age, Plaintiff also asserted in her complaint that she was denied promotional opportunities with Hyatt because of her age and gender.  Plaintiff complains specifically about three positions.

The first promotion Plaintiff claims she was discriminatorily denied was the position of Assistant Vice President for International Sales, which was open in early 2000. Plaint. Aff. ¶ 8.  This position was not formally posted, but Plaintiff states, and Helms agreed, that she told Helms that she was interested in this position.  Id.; Helms Dep. at 238. Plaintiff claims, however, that Helms had already pre-selected or positioned Rob Sarmiento for this promotion.  Plaint Dep. 117-18. Loretta Venezia also expressed interest in this position, but claims that Helms "laughed me out of his office."  Venezia Aff. ¶ 5.  Hyatt states, however, that before promoting Sarmiento, Helms actually offered the position to Terri Benich, who declined because she was not able to move from Scottsdale, Arizona to Chicago.  Helms Dep. at 82-83; Benich Aff. ¶¶ 5-7.

Plaintiff also claims that she was passed over for a promotion to the position of Assistant Director of Sales in 1999. Mark Henry, age 50 at the time, was selected for this position. Small Aff. ¶ 3; Patrick Aff. 5.  Plaintiff also contends that she was denied a promotion to Director of Sales for the Central National Sales Office in Chicago in December 2000.  Plaint. Dep. at 133.  Instead, Horne promoted Booth, age 38 at the time, to

7

this position.  Plaintiff alleges that both Henry and Booth were preselected or positioned for these promotions and that she did not have any opportunity to file a formal application for these positions.  Plaintiff is particularly aggrieved about Booth's promotion because his performance record while Director of Sales at the Hyatt Regency in Dallas-Ft. Worth allegedly was poor.

On February 15, 2002, Plaintiff filed a complaint of discrimination with the EEOC which alleged that Hyatt terminated her employment and denied her promotional opportunities because of her age and gender.  See Case No. C-1-02-464, Complaint ¶ 24. Plaintiff received a right to sue letter from the EEOC on March 28, 2002.  Id.

In the interim, on November 29, 2001, Plaintiff filed suit against Hyatt, Ty Helms, and Brian Booth in the Hamilton County, Ohio Court of Common Pleas.  This complaint asserted claims of age and gender discrimination regarding her termination pursuant to the Ohio Civil Rights Act, Ohio Rev. Code § 4112.01, et seq.  The complaint also asserted that Hyatt discharged her in violation of Ohio public policy.  On January 2, 2002, Defendants removed Plaintiff's complaint to this Court pursuant to 28 U.S.C. §§ 1441 & 1446.  See Doc. No. 1.  The basis for this Court's subject matter jurisdiction is diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy is excess of $75,000.

After receiving her right-to-sue letter from the EEOC, on June 25, 2002, Plaintiff filed a new lawsuit versus Hyatt

8

Corporation and Jack Horne in federal court. This complaint was given case number C-1-02-464 and assigned to Judge Weber. The complaint in this case asserted claims against Hyatt for age and gender discrimination with respect to Plaintiff's termination and denial of promotions pursuant to the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., respectively. The complaint also asserted claims for age and gender discrimination versus Defendant Horne pursuant to the Ohio Civil Rights Act. Plaintiff also filed a claim for violation of Ohio public policy because of age and gender discrimination against Defendant Horne. On motion of the Plaintiff, the Court consolidated the two cases.

On March 1, 2004, Defendants moved for summary judgment on each of Plaintiff's claims. See Doc. No. 63. In response, Plaintiff clarified her complaints as follows. Plaintiff does not assert ADEA and Title VII claims versus Hyatt for denial of promotions. Plaintiff concedes that she did not file a timely complaint of discrimination with the EEOC with regard to these acts. Doc. No. 74, at 61. In addition, Plaintiff does not claim that Defendants terminated her employment on the basis of gender. Id. Thus clarified, Plaintiff has the following claims in this case: 1) an ADEA claim versus Hyatt regarding the termination of her employment; 2) state law age discrimination claims versus Hyatt, Helms, Horne, and Booth regarding the termination of her

employment; 3)[3] state law age and gender discrimination claims versus Hyatt, Helms, Horne, and Booth regarding denial of promotions; and 4) breach of public policy claims versus Hyatt, Helms, Horne, and Booth for age and gender discrimination.

Defendants argue that summary judgment is appropriate on each of Plaintiff's remaining claims. Defendants argue that Plaintiff cannot establish a prima facie case of age discrimination with regard to her termination in the reduction of force. Defendants contend that Plaintiff has not adduced additional direct, circumstantial, or statistical evidence which shows that she was singled out for termination for impermissible reasons. In any event, Defendants argue, no evidence rebuts the legitimate, non-discriminatory reason for terminating Plaintiff in the reduction-in-force - that Hyatt would not lose any revenue by terminating her. Defendants further contend that summary judgment on Plaintiff's age-based failure to promote claims is appropriate because she denied the existence of age bias in her deposition. Defendants then argue that summary judgment is appropriate on Plaintiff's gender-based failure to promote claims because she failed to apply for the positions, and in fact, expressed unwillingness to move to Chicago, where the opportunities were located. Finally, Defendants argue that dismissal of Plaintiff's breach of public policy claims is

---

[3]     Under Ohio law, Helms, Horne, and Booth, as managers and supervisors, may be held individually liable for their own acts of discrimination. Genaro v. Central Transport, Inc., 703 N.E.2d 752, 785 (Ohio 1999).

appropriate because Ohio no longer recognizes this cause of action where the policy at issue is based on a statute which provides comprehensive, make-whole remedies.

In response, Plaintiff first argues that she is not limited to the familiar McDonnell Douglas burden-shifting framework in establishing a prima facie case of discrimination. Plaintiff contends the record contains overwhelming proof that age was a factor in her termination. Plaintiff claims that in her case Hyatt deviated from its standard procedures which she alleges controls reductions-in-force. Plaintiff also contends that her statistical evidence shows that the reduction-in-force disproportionately affected older sales managers within the National Sales Force. She further notes that in contrast, at the time the reduction-in-force was implemented, Hyatt failed to employ an expert in statistics to determine whether the terminations had a discriminatory impact on older workers. Plaintiff also argues that discrimination is shown by the fact that the criteria for termination was totally subjective and not based on the typical criteria, such as performance history, seniority, salary, skills, etc. Plaintiff also contends that discrimination is shown because after her termination her accounts were distributed primarily to younger employees. With regard to her failure to promote claims, Plaintiff claims that Hyatt had a practice of pre-selecting or positioning younger males for promotions and advancement. Plaintiff further contends that Defendants violated Hyatt policy by not posting notices of

11

the promotions she desired.  Therefore, Plaintiff argues, for all of these reasons, summary judgment on her claims would not be appropriate.

## II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom.  United States v. Diebold, Inc., 369 U.S. 654 (1962).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original).  The Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson, 477 U.S. at 250.  There is no issue for trial

12

unless there is sufficient evidence favoring the non-moving party
for a jury to return a verdict for that party.  Id.

The fact that the weight of the evidence favors the
moving party does not authorize a court to grant summary
judgment.  Poller v. Columbia Broadcasting System, Inc., 368 U.S.
464, 472 (1962).  "[T]he issue of material fact required by Rule
56(c) . . . to entitle a party to proceed to trial is not
required to be resolved conclusively in favor of the party
asserting its existence; rather, all that is required is that
sufficient evidence supporting the claimed factual dispute be
shown to require a jury or a judge to resolve the parties'
differing versions of the truth at trial."  First National Bank
v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with
extreme caution since it operates to deny a litigant his day in
court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert.
dismissed, 444 U.S. 986 (1979), the United States Supreme Court
has stated that the "[s]ummary judgment procedure is properly
regarded not as a disfavored procedural shortcut, but rather as
an integral part of the Federal Rules as a whole, which are
designed to 'secure the just, speedy and inexpensive
determination of every action.'"  Celotex Corp. v. Catrett, 477
U.S. 317, 327 (1986).  According to the Supreme Court, the
standard for granting summary judgment mirrors the standard for a

directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based

14

solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. <u>Analysis</u>

Before delving into the heart of Defendants' motion for summary judgment, the Court will address and dispose of several matters preliminarily.

First, the record demonstrates without contradiction that Defendant Booth played no decisionmaking role in any of the alleged adverse employment actions about which Plaintiff complains.  There is no evidence that Booth played any role whatever in promoting candidates into the positions Plaintiff claims she was discriminatorily denied.  Although Booth reviewed Horne's plan for reducing the National Sales Force and said it would work, the record is uncontroverted that Horne presented his plan and the persons to be terminated to Booth as a <u>fait accompli</u> rather than as a solicitation for recommendations.  <u>See</u> Booth Dep. at 9 (Q. "[D]id you have any input in any way as to which people would be terminated?" A. "No I did not.").[4]

---

[4]    Plaintiff also claims that Booth made discriminatory remarks to her which offended her.  On one occasion shortly after her marriage, Booth ask Plaintiff if she had any plans to stay at home and enjoy being married.  Plaint. Dep. at 27.  Booth also ask Plaintiff if anyone else could handle her accounts.  <u>Id.</u> Plaintiff interpreted these comments to mean that Booth thought she was old and should stay home.  <u>Id.</u> at 57.  Assuming for the moment that these comments are discriminatory, because Booth was not a decisionmaker with regard to Plaintiff's termination or lost promotions, they do not demonstrate actionable animus toward the Plaintiff.  <u>See</u> <u>Bush v. Dictaphone Corp.</u>, 161 F.3d 363, 369 (6th Cir. 1998).

While Plaintiff believes that the rating for her mid-year review was too low and that Booth set her quota for the year unfairly high, these actions are not actionable because they did not result in any tangible adverse consequences.  See Morris v. Oldham County Fiscal Court, 201 F.3d 784, 789-90 (6th Cir. 2000)(employer's downgrading plaintiff's performance from "excellent" to "very good" not actionable because an employer is not likely to fire, demote, or transfer an employee with "very good" performance).  In this case, a rating of "meets expectations" instead of "exceeds expectations" is entirely satisfactory and would not likely result in any adverse consequence to an employee.  Moreover, the record demonstrates without contradiction that the mid-year review was informal and was not intended to be included in Plaintiff's official employment file.  See Booth Dep. at 166-67.  Therefore, the mid-year review is not an adverse employment action as a matter of law.  The Court supposes that setting an employee's sales quota at an unfair or unattainable level could in some instances be a tangible employment action.  For example, an unscrupulous employer could use an unattainable or unreasonable quota as a pretext to terminate an employee for performance reasons.  In this case, however, the record demonstrates that whatever the reason for Plaintiff's termination, it was not because of her performance.  Consequently, even if Booth did establish an unreasonable sales quota for Plaintiff, it did not result in any adverse employment consequence to Plaintiff.

16

In summary, Plaintiff has failed to adduce any evidence which shows that Booth treated her in any actionable discriminatory manner.  Accordingly, Defendants' motion for summary judgment as to Plaintiff's claims versus Defendant Booth is well-taken and is **GRANTED.**  Plaintiff's claims against Defendant Booth are **DISMISSED WITH PREJUDICE.**

Second, Defendants move for summary judgment on Plaintiff's breach of public policy claims on the grounds that a recent decision by the Supreme Court of Ohio has established that a plaintiff may not maintain a common law cause of action where the public policy at issue is found in a statute which otherwise provides remedies which effectively vindicate the public policy. See Wiles v. Medina Auto Parts, 773 N.E.2d 526, 535 (Ohio 2002). Defendants contend that as a result of the decision in Wiles, Plaintiff may not maintain a breach of public policy claim because the Ohio Civil Rights Act provides a full range of remedies which protects the public policy.  The Court agrees with Defendants.

Although the statutory provision in Wiles was the federal Family and Medical Leave Act, which the Court determined contained sufficient remedies to protect the public policy, thus obviating the need for a separate common law claim, courts have since viewed Wiles as establishing a general principle which is applicable to other statutes, including the Ohio Civil Rights Act.  See, e.g., Schmauch v. Honda of Am. Mfg., Inc., 311 F. Supp.2d 631, 634-35 (S.D.Ohio 2003)(applying Wiles to federal

17

Uniformed Services Employment & Reemployment Rights Act; adequate remedies of USERRA foreclosed breach of public policy claim); Dolan v. St. Mary's Memorial Home, 794 N.E.2d 716, 719-21 (Ohio Ct. App. 2003)(applying Wiles to find that remedies in anti-retaliation provisions of nursing home patients bill of rights, Ohio Rev. Code § 3721, et seq., obviated need for separate breach of public policy claim).  Moreover, in the wake of Wiles, courts are now finding that the remedies provided by the Ohio Civil Rights Act are sufficient to eliminate the need for a separate breach of public policy claim.  See Lewis v. Fairfield Hosp., 806 N.E.2d 185, 188-89 (Ohio Ct. App. 2004); Bicudo v. Lexford Prop., Inc., No. 03 MA 59, 2004 WL 1376241, at *13 (Ohio Ct. App. June 15, 2004); Barlowe v. AAAA Int'l Driving Sch., No. 19794, 2003 WL 22429543, at *8 (Ohio Ct. App. Oct. 24, 2003).  Indeed, on an earlier occasion this Court questioned the need for a breach of public policy claim because of the comprehensive remedies available under the Ohio Civil Rights Act.  See Rogers v. AK Steel Corp., No. C-1-96-987, 1998 WL 1753590, at *6 (S.D. Ohio Apr. 16, 1998)(Beckwith, J.).

        This Court concurs with the judgment of those courts holding that the remedies provided by the Ohio Civil Rights Act are sufficient to protect the public policy behind the anti-discrimination laws.  Section 4112.99 provides: "Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief."  Ohio Rev. Code § 4112.99.  This section authorizes awards of back pay, front pay,

18

and compensatory and punitive damages.  This section also permits
the trial court to order reinstatement in lieu of front pay.
Rice v. CertainTeed Corp., 704 N.E.2d 1217, 1218 (Ohio 1999);
Helmick v. Cincinnati Word Processing, Inc., 543 N.E.2d 1212,
1215 & 1215 n.3 (Ohio 1989); Potocnik v. Sifco Ind., Inc., 660
N.E.2d 510, 520 (Ohio Ct. App. 1995).  In short, § 4112.99
provides a comprehensive array of remedies to employment
discrimination plaintiffs.  Because this is so, as explained by
the Court in Wiles, there is no jeopardy to the public interest
behind the discrimination statute and consequently no need for a
supplemental common law cause of action.  See Wiles, 773 N.E.2d
at 531.

Accordingly, Defendants' motion for summary judgment on
Plaintiff's state law breach of public policy claims is well-
taken and is **GRANTED.**  These claims are **DISMISSED WITH PREJUDICE.**

A. Plaintiff's Termination

Initially the Court notes that claims of employment
discrimination under Ohio law are subject to the same evidentiary
standards as federal employment discrimination claims.
Therefore, the Court may analyze Plaintiff's federal and state
law claims simultaneously.  Fisher v. Lincoln Electric Co., 285
F.3d 456, 469 (6th Cir. 2002).

As indicated, Plaintiff claims that Defendants
terminated her employment in the reduction-in-force because of
her age.  Defendants argue that summary judgment on this claim is
required because there is no direct evidence of discrimination

19

and Plaintiff cannot establish a prima facie case of age

discrimination under the traditional McDonnell Douglas framework

for circumstantial evidence cases.  Specifically, Defendants

argue that Plaintiff has failed to adduce the additional direct,

circumstantial or statistical evidence required to create an

inference of discrimination in reduction-in-force cases.  In any

event, Defendants argue, Plaintiff does not have any evidence

which shows that its reasons for terminating her employment are

pretextual.  In opposition, Plaintiff contends that she is not

required to satisfy the McDonnell Douglas elements in order to

withstand summary judgment so long as the evidence she has

presented creates an inference that age was a motivating factor

in her employer's decision.  Under this standard, Plaintiff

argues that summary judgment in Defendants' favor would be

inappropriate.  The Court need not resolve this dispute over the

evidentiary standard Plaintiff must meet at this time because

under the peculiar circumstances of this case, the Court finds

that Plaintiff has established a submissible case pursuant to

McDonnell Douglas.

    A plaintiff may establish a prima facie case of age

discrimination either through direct evidence or circumstantial

evidence.  Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078,

1081 (6th Cir. 1994).  If the plaintiff presents direct evidence

that the employer discriminated against her on the basis of age,

the burden of production shifts to the employer who then must

show that it would have taken the same action even without the discriminatory motivation.  Id.

In the absence of direct evidence of discrimination, the plaintiff may establish a prima facie case of age discrimination through the familiar McDonnell Douglas burden shifting framework.  Id.  Under this method, the plaintiff establishes a prima facie case of discrimination by showing: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the job lost or not gained; and 4) that a person substantially younger than the plaintiff replaced or was selected over him or her, or that the position remained open while the employer sought other applicants.  O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996); Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1186 n.12 (6th Cir. 1996); Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1329 (6th Cir. 1994).  A plaintiff may also satisfy the last part of the McDonnell Douglas test by showing that the defendant treated similarly situated non-protected persons more favorably than the plaintiff.  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995). Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to proffer legitimate non-discriminatory reasons for its actions. Manzer, 29 F.3d at 1082.

21

The <u>McDonnell Douglas</u> format is altered, however, when
the case involves a reduction-in-force.  A reduction-in-force
occurs when:

> business considerations cause an employer to eliminate
> one or more positions within the company.  An employee
> is not eliminated as part of a work force reduction
> when he or she is replaced after his or her discharge.
> However, a person is not replaced when another employee
> is assigned to perform the plaintiff's duties in
> addition to other duties, or when the work is
> redistributed among other existing employees already
> performing related work.  A person is replaced only
> when another employee is hired or reassigned to perform
> the plaintiff's duties.

<u>Barnes v. GenCorp, Inc.</u>, 896 F.2d 1457, 1465 (6th Cir. 1990).
In the reduction-in-force context, establishing the <u>McDonnell
Douglas</u> elements alone does not give rise to an inference of
discrimination.  <u>Id.</u>  Therefore, the plaintiff must produce
additional direct, circumstantial, or statistical evidence which
indicates that the employer terminated the plaintiff for
impermissible reasons.  <u>Id.</u>  In a reduction-in-force situation a
plaintiff will not be able to show that she was replaced by
someone outside of the protected class.  Therefore, the showing
of additional evidence of discrimination substitutes for the
final step.  <u>Gault v. Zellerbach</u>, 981 F. Supp. 533, 537 (N.D.Ohio
1997).

If the defendant meets its burden of production, the
burden shifts back to the plaintiff to show that the reasons
proffered by the defendant are pretextual.  <u>Id.</u>  However, the

burden of persuasion remains with the plaintiff at all times.
St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

The plaintiff may prove pretext in three ways:  1) by
showing that the defendant's reasons had no basis in fact; 2) by
showing that the reasons did not actually motivate the defendant;
or, 3) by showing that the proffered reasons were not sufficient
to warrant the action taken.  Kline v. Tennessee Valley
Authority, 128 F.3d 337, 346 (6th Cir. 1997).  When the plaintiff
proves pretext by the first or third methods, the fact finder may
infer discrimination and the plaintiff need not produce any
additional evidence of discrimination.  Id.  In the second
situation, the factual basis for the discharge is not challenged;
therefore, the plaintiff must adduce additional evidence of
discrimination in order to prevail.  Id. at 346-47.

In this case, Defendants concede that Plaintiff can
establish the first three elements of a prima facie case of age
discrimination with regard to her termination: Plaintiff was over
age forty, her employment was terminated, and she was qualified
for her job.  See Doc. No. 63, at 33.  Defendants argue, however,
that Plaintiff has no additional direct, circumstantial, or
statistical evidence which satisfies the fourth element of the
prima facie case.  The Court, however, disagrees.  Although
Plaintiff cites other evidence which she claims shows the

23

decision to terminate her employment was because of her age,[5] for purposes of summary judgment the Court finds that it is sufficient that Plaintiff has adduced evidence from which a juror could find that Defendants' reason for terminating Plaintiff in the reduction-in-force is false.  See Reeves v. Sanderson

---

[5]    For instance, Plaintiff claims that after her departure, her accounts were distributed to primarily younger sales managers.  Plaintiff also contends that Hyatt showed a pattern of favoring younger sales managers by accommodating them with transfers for reasons of personal convenience.  Plaintiff also claims that her statistical evidence shows that the reduction-in-force disproportionately impacted sales managers within the protected age group.  Plaintiff further claims that Hyatt deviated from its regular procedures on staff reductions and this is also evidence of discrimination.  All of this evidence may ultimately have relevance in this case.  However, for present purposes it is not necessary to address these contentions.  Plaintiff also appears to contend that it was not necessary for Hyatt to reduce the sales staff in order to achieve the cost savings it desired.  However, the decision to eliminate personnel instead of implementing other measures is a business decision which the Court is not entitled to second-guess.  The issue, as the Court views it, is not whether Hyatt instituted the reduction-in-force to rid itself of older employees.  Rather, the question is, once Horne and Helms decided that a reduction-in-force was necessary, whether they chose to terminate Plaintiff in it the because of her age.

Along the same lines, Hyatt argues that its statistics show that older employees were not disproportionately affected by the reduction-in-force.  Hyatt's statistics, however, are for the corporation as a whole, see Patrick Aff. ¶ 6, and therefore are not dispositive of the issue.  See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 204 (2nd Cir. 1995)("A claim that the employer has subjected the plaintiff as an individual to unlawfully discriminatory treatment does not require the plaintiff to prove that the reorganization as a whole was pretextual."); Walther v. Lone Star Gas Co., 952 F.2d 119, 124 (5th Cir. 1992) ("Although Lone Star made a convincing showing that the reduction in force did not target older employees if the company as a whole is considered, it does not follow that discrimination did not occur in a particular region or division."); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1218 (3d Cir. 1988) ("Statistics are often unreliable because company-wide data may mask discrimination on a smaller scale.").

Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination[.]").  Moreover, because a juror could find that Defendants' reason for terminating Plaintiff is false, there is sufficient evidence on the issue of pretext to withstand Defendants' motion for summary judgment.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 255 n.10 (1981)(stating that evidence supporting prima facie case may also be used to show pretext).

The conceivable falsity of Defendants' reason for terminating Plaintiff in the reduction-in-force lies in the fact that seemingly there was no measurable or identifiable criterion or eliminator which separated Plaintiff from the sales managers who were not terminated.  As the record shows, in deciding to eliminate Plaintiff's position, Horne did not consider any of factors one would expect a manager to assess in an ordinary reduction-in-force case - performance, productivity, seniority, skills set, or current salary.  Id. at 52-53, 84, 100, 105-06; see also Helms Dep. at 38.  There was no analysis of the cost savings that would be achieved by closing Plaintiff's office. Helms Dep. at 37.  Horne did testify that he chose to eliminate Plaintiff's job because production and customer relationships would not be affected.  Horne Dep. at 8-9.  This reason, however, is only a repetition of the overall goal of the reduction-in-

force.  What Horne did not and apparently could not explain is
how terminating the Plaintiff, as opposed to any other sales
manager, furthered the goals of the reduction-in-force.  Id. at
10-11.  In fact, Plaintiff's termination had quite the opposite
effect - the majority of her customers were very upset by her
termination.  Booth Dep. at 12-14.  Horne also stated that he
considered market segments and geographic locations, but again
did not explain how Plaintiff's market segment or geographic
location affected his decision.  Id. at 9.  Horne could only
state that he believed that Plaintiff's accounts could be handled
by someone else.  Id. at 10-11.  Horne admitted, though, that
Plaintiff could have handled another sales manager's accounts
from her region.  Id. at 10-11.  The interchangeability of the
sales managers, particularly when coupled with an apparently
standardless decision-making process, can reasonably lead to a
conclusion that age played a part in the decision to terminate
Plaintiff.  See Huff v. UARCO, Inc., 122 F.3d 374, 386-87 (7th
Cir. 1997).

　　　As the Sixth Circuit recognized in Wexler v. White's
Fine Furniture, Inc., 317 F.3d 564 (6th Cir. 2003), the more
idiosyncratic or questionable the employer's reason, the easier
it will be to shown to be pretextual.  Id. at 577 (quoting Loeb
v. Textron, Inc., 600 F.2d 1003, 1012 n.6 (1st Cir. 1979)).  In
this particular case, the reason proffered by Defendants for
terminating Plaintiff is not only idiosyncratic, it makes no
sense.  According to Defendants, they decided to terminate a

long-term employee with an admittedly stellar performance record
for no better reason than someone else could handle her accounts.
This is a shallow reason and further loses persuasiveness when
considered in light of the fact that not long before her
termination, Horne and Booth claim to have been concerned that
Plaintiff was going to leave Hyatt on her own volition.  Booth
Dep. at 171-73.  If Defendants truly wanted to retain Plaintiff
as employee, why would they have terminated her employment at the
next opportunity?  Defendants' words are completely contradicted
by their actions and their behavior at a minimum exhibits an
ambivalence toward Plaintiff which could reasonably be
interpreted as discriminatory animus.  In the absence of more
compelling or specific reasons for terminating Plaintiff's
employment, a reasonable juror could certainly conclude that
Defendants' explanation for terminating Plaintiff is false and
that the real reason is discrimination.  Although one could argue
that the inference of discrimination to be drawn here is weak,
the evidence is neither abundant nor uncontroverted that
discrimination did not occur.  Reeves, 530 U.S. at 148.
Therefore, summary judgment against Plaintiff on these claims
would not be appropriate.

Accordingly, Defendants' motion for summary judgment on
Plaintiff's age discrimination claims regarding her termination
in the reduction-in-force is not well-taken and is **DENIED.**

B. Failure to Promote

27

Remaining are Plaintiff's state law discrimination claims for failure to promote. The <u>McDonnell Douglas</u> standards enunciated above would be altered slightly. Plaintiff can satisfy the fourth element by showing, in the case of age discrimination, that Defendants promoted someone substantially younger than Plaintiff or that the position remained open while Defendants sought other applicants. In the case of gender discrimination, Plaintiff can show that a man was promoted or that the position remained open while Defendants sought other applicants.

Additionally, a plaintiff normally has to establish that she applied for the position or promotion. This requirement is abandoned, however, when the employer does not notify its employees of the available promotion or has no formal mechanism for expressing interest in the promotion. <u>Dews v. A.B. Dick Co.</u>, 231 F.3d 1016, 1022 (6th Cir. 2000). In that case, the employer has a duty to consider all employees who might reasonably be interested in the promotion. <u>Id.</u> In this case, although Hyatt had formal job posting procedures, none of the promotions Plaintiff claims she was interested in was posted. Plaintiff Dep. at 109-11. The record also shows that Hyatt managers had a practice of foregoing any application process and directly approaching or "reaching out to" the candidates they were interested in promoting into an available position. Benich Aff. ¶ 5; Booth Dep. at 60-62; Helms Dep. at 81-83, 238-39; Horne Dep. at 138-41. Finally, the record shows that Plaintiff informally

28

expressed interest in the promotions for which she was
overlooked.  Plaint. Dep. 109-134; Helms Dep. at 238-41.
Therefore, under the circumstances of this case, the Court finds
that Plaintiff is not required to demonstrate that she applied
for the promotions in which she was interested in order to
establish a prima facie case of discrimination.

　　　　The first promotion Plaintiff claims she was
discriminatorily denied was the position of Assistant Vice
President of International Sales, which was ultimately filled by
Rob Sarmiento.  In her deposition, Plaintiff conceded that she
believes that gender, not age, played a part in this decision.
Plaint. Dep. at 117-18.  Plaintiff further stated that she is
accusing only Defendant Helms of gender discrimination with
respect to this promotion.  Accordingly, because of these
concessions, Defendants' motion for summary judgment on
Plaintiff's age discrimination claim concerning this promotion is
well-taken and is **GRANTED**.  Furthermore, there is no evidence
that Defendant Horne had a decisionmaking role with respect to
this promotion, a fact which Plaintiff implicitly conceded in her
deposition.  See id.  Accordingly, to the extent that Plaintiff
asserts a claim of gender discrimination against Defendant Horne
in his individual capacity with respect to this promotion,
Defendant's motion for summary judgment is well-taken and is
**GRANTED**.

　　　　In any event, although Plaintiff claims that Defendants
had a practice of pre-positioning male employees for advancement,

the undisputed evidence in the record is that Helms' first selection for the promotion to Assistant Vice President of International Sales was Terri Benich, who turned it down for personal reasons.  Benich Aff. ¶ 7.  Under these circumstances, the Court believes that the same actor inference (or a slight variation of it) would apply.  The same actor inference holds that if the hirer and firer are the same person, and the two events occur reasonably close to each other, it is unlikely that discrimination was the reason for the adverse action.  Buhrmaster v. Overnite Trans. Co., 61 F.3d 461, 463 (6th Cir. 1995).  In this case, the variation on the same actor inference would be that if the hirer's first choice for the job was a woman, it is unlikely that the reason the plaintiff was rejected for the position was because of her gender.  Therefore, because it is uncontroverted that Helms' first choice for this promotion was a woman, it is implausible to find that Plaintiff was rejected because of her gender.  Although there is evidence that Helms side-stepped Hyatt's normal procedures when he promoted Sarmiento, the record also shows that he did the same thing when he offered the position to Benich.  In short, the Court finds no evidence which supports a conclusion that Plaintiff was denied this promotion because of her gender.  Accordingly, Defendants' motion for summary judgment with respect to this claim is well-taken and is **GRANTED**.

The next promotion Plaintiff claims she was discriminatorily denied is Assistant Director of Sales for the

Central National Office in 1999.  The record is clear, however, that age did not play a part in this decision because the person who got the job, Mark Henry, was actually older than Plaintiff. See infra.  Therefore, to the extent that Plaintiff claim's she was denied this promotion because of her age, Defendants' motion for summary judgment is well-taken and is **GRANTED.**  In addition, to the extent that Plaintiff asserts a gender discrimination claim against Defendants Helm and Horne in their individual capacities over the denial of this promotion, the record is uncontroverted that Bruce Small, not Helms or Horne, was the decisionmaker.  Small Aff. ¶ 3.  Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's gender discrimination claim on the denial of this promotion against Defendants Helms and Horne in their individual capacities is well-taken and is **GRANTED.**  In any event, summary judgment on this claim in Defendants' favor is appropriate because, as explained further below, Plaintiff was eliminated from consideration because she had stated earlier that she did not want to move to Chicago.

The last promotion Plaintiff claims she was wrongfully denied is Director of Sales for the Central National Office, which went to Brian Booth in December 2000.  Defendants argue that Plaintiff was not qualified for this position because she had earlier expressed an unwillingness to relocate from Cincinnati to Chicago, where this position was located.  The Court is compelled to agree with Defendants on this point.

31

Plaintiff's deposition testimony makes clear that she had informed her manager that she wanted to remain in Cincinnati. Plaint. Dep. at 128, 131.  Plaintiff tried avoid the impact of this admission by adding that she was never asked if she wanted to move to Chicago to take a promotion.  See id. at 128. Although Plaintiff claims that she was open to moving to Chicago for a promotion, by the same token she never informed anyone of this apparent change of heart either.  Id. at 131.  On the other hand, Booth moved from Texas to Chicago to take this job.  Booth Dep. at 63-64.  The Court finds no evidence in the record which rebuts Defendants' contention that Plaintiff's expressed unwillingness to relocate to Chicago disqualified her from consideration for the above two positions.  Accordingly, Defendants' motion for summary judgment with respect to the alleged discriminatory denial of the last two promotions is well-taken and is **GRANTED.**

In conclusion, Defendants' motion for summary judgment is granted as to each of Plaintiff's failure to promote claims.

<u>Conclusion</u>

In conclusion, Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.  The record demonstrates that Defendant Booth played no decisionmaking role in any of the alleged adverse actions taken against Plaintiff.  Therefore, Defendant's motion for summary judgment as to Plaintiff's claims versus Defendant Booth is well-taken and is **GRANTED**.  The claims against Defendant Booth are **DISMISSED WITH PREJUDICE.**  The

Court finds that Plaintiff may not maintain a breach of public policy claim because the Ohio Civil Rights Act affords Plaintiff sufficient remedies to vindicate the public interest against employment discrimination.  Therefore, Defendants' motion for summary judgment on Plaintiff's breach of public policy claim is well-taken and is **GRANTED**.  This claim is **DISMISSED WITH PREJUDICE**.  Defendants' motion for summary judgment on Plaintiff's age discrimination claims regarding her termination in the reduction-in-force is not well-taken and is **DENIED.** Plaintiff's age discrimination claims remain against Defendants Hyatt Corporation and Helms and Horne in their individual capacities.  Finally, Defendants' motion for summary judgment on Plaintiff's failure to promote claims is well-taken and is **GRANTED**.  These claims are **DISMISSED WITH PREJUDICE.**

        **IT IS SO ORDERED**

Date _June 28, 2004_          ___s/Sandra S. Beckwith___
                            Sandra S. Beckwith
                        United States District Judge