IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BARBARA LODER HILDEBRANDT, | : |
| Plaintiff, | : |
| vs. | : Case No. C1-02-0003 |
| HYATT CORPORATION, *et al.*, | : JUDGE BECKWITH |
| Defendants. | : MAGISTRATE JUDGE SHERMAN |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
EXPERT OPINION AND REPORT OF HARVEY S. ROSEN[1]**

Defendants seek to persuade the Court to exclude Dr. Rosen's expert economic analysis of Ms. Hildebrandt's lost wages and benefits based on a factual issue about which Dr. Rosen has not offered an opinion: whether Ms. Hildebrandt mitigated her economic damages.[2] Defendants have not raised a Daubert issue capable of being decided upon a motion in limine. Instead they make a speculative factual argument that, by eventually accepting a marketing-type job at a lower salary, Ms. Hildebrandt is "willfully underemployed"[3] (Defendants' memorandum in support of their motion in limine, p. 7);

---

[1] Plaintiff previously informed the Court that she withdrew Dr. George Parsons as an expert witness because he was not available for trial.

[2] Hyatt's argument that Ms. Hildebrandt failed to mitigate her damages is remarkable in light of her deposition testimony, which is filed with the court. In her March 2002 deposition, taken about six months after Defendants terminated her, Ms. Hildebrandt, a woman in her 50's, searching for a replacement to a job that took her many years and a series of promotions to reach, was working very hard to find a good job: "Almost every day that I'm talking to people, I'm answering adds in the newspaper. I was at Lee Hecht Harrison [outplacement counselors] everyday for three months, and continued on with luncheon networking." (Hildebrandt Deposition, Line 1, Page 6). She also placed her resume with "several head hunters" including the prominent Angus Group, had interviews with Fifth Third Bank and First Star Bank, and had applied at hotels such the Westin. (Hildebrandt, Vol. I, Page 7). In her December 18, 2003 deposition, Ms. Hildebrandt testified that she began working as the Development Director at the Cincinnati Horticultural Society in June of 2002 (Hildebrandt, Vol. II, 290-91).

[3] This statement distorts the record regarding Ms. Hildebrandt's current employment. In addition to a base salary of $30,000.00, the job provides for annual incentive pay of up to $50,000.00 based on revenue earned

1

therefore, by calculating Ms. Hildebrandt's loss based on her current employment, the data on which Dr. Rosen relied was "unreliable". (Defendants' Memorandum, pg. 7). The truth is, Dr. Rosen relied upon the only reliable data extant - data he is required to rely upon under professional standards, rather than the speculation of Defendants.

Plaintiff concedes that Dr. Rosen's analysis of her damages as a result of lost promotions, in either oral or written form, will not be offered at trial due to the Court's ruling dismissing that claim. The only issue before the Court is Dr. Rosen's opinion and calculations about Ms. Hildebrandt's lost wage and benefits damages resulting from her termination. On this issue, Defendants argue that Dr. Rosen was required to make a factual determination that her current earnings do not reflect her reasonable earnings capacity (Defendants' memorandum, p. 8). They ignore the fact that, as an economist, Dr. Rosen is not qualified to render an opinion on a purely factual issue, nor is he qualified to speculate about what jobs Ms. Hildebrandt might have obtained. He can only deal with the facts of this case.

Failure to mitigate damages is an affirmative defense. *State ex rel. Martin v. City of Columbus*, *Department of Health, et al.* 58 Ohio St.2d 261, 265 (1979). Whether Ms. Hildebrandt failed to mitigate her economic damages is a purely factual issue, upon which Defendants have the burden of proof. *Rasimus v. Michigan Department of Mental Health*, 714 F.2d 614, 623 (6th Cir.1983). Defendants may offer evidence at trial regarding her efforts to mitigate her damages, an issue on which they have the burden of proof. Though

---

beyond certain goals. (Hildebrandt, Vol. II, 288-289) Ms. Hildebrandt signed a one-year employment contract with the Cincinnati Horticultural Society in June 2002 and another one in June 2003. (Hildebrandt, Volume 2, Page 290-291). She earned a modest bonus her first year; her second year bonus has not yet been calculated. (Hildebrandt, Vol. II, 290-291). Defendant's premise that a woman in her mid-50's who must tell prospective employers that she is not working because she has been fired can readily find a job comparable to

Ms. Hildebrandt's persistent efforts to find a good job are a far cry from "shaky" mitigation evidence (*see* fn.1, *supra*), the Supreme Court noted in *Daubert* that even shaky evidence is *admissible* evidence: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (*Daubert. et al. v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596 (1993). Ms. Hildebrandt's mitigation efforts have nothing to do with the following matters upon which Dr. Rosen was called to give expert testimony: expert economic analysis as to the value of Ms. Hildebrandt's Hyatt fringe benefits package; comparison of Hyatt wages and benefits to wages and benefits Ms. Hildebrandt presently earns; determination of losses due to forced cash-out of her retirement savings plan; determination of future losses; and reduction of future losses to present value. All of these matters are issues upon which Dr. Rosen's testimony will aid the jury in reaching its decision. *Daubert*, 509 U.S. at 591; *see also* F.R.E. 702.

Defendants do not take issue with Dr. Rosen's qualifications as an expert and did not question him on *Daubert* factors during his deposition. ("For purposes of this motion, Defendants do not dispute that Rosen is a qualified expert in his field of economics." - Defendants' Memorandum, p. 5, fn. 2). Many courts have accepted Dr. Rosen as an expert. (*See Rio Hair Naturalizer Products Liability Litigation*, No. MDL1055; Westlaw 780512, (E.D.M.I .1996); *In re Telectronics Pacing Systems, Inc.* 199 F.R.D. 459 (S.D. Ohio 1999), and cases therein. ("Noting Dr. Rosen's curriculum vitae, as well as his extensive

---

the one she spent years in moving locations and receiving promotions to achieve is an obviously fallacious argument the jury will undoubtedly reject.

background in cases similar to the one before the court, we find that Dr. Rosen is qualified to testify as an expert in this litigation.")  (*Id.,* Pg. 471).

In support of its argument that Dr. Rosen's testimony should be excluded, Defendants offer two cases:  *Benjamin vs. Peter's Farm Condominium Owner's Association*, 820 F.2d 640 (3rd Cir. 1987,) and *Henry vs. Hess Oil Virgin Islands Corp*. 163 F.R.D. 237 (D.C. V.I., 1995).  That authority is unavailing.  In *Benjamin*, the testimony was excluded because the plaintiff attempted to do what Defendants suggest Dr. Rosen should do in this case.  The expert in *Benjamin* based his testimony on his assumption that the employee could expect to earn only $10,000 per year as a result of his injuries.  However, the expert had neither "...training and vocational rehabilitation nor professional knowledge as to Benjamin's capacity to continue working a particular job." 820 F.2d at 42.  The expert also relied on  ".....Benjamin's personal belief as to his capabilities, which the court found "...improper because Benjamin's belief was merely speculative."  (*Id*)  Here, Dr. Rosen is not relying on speculation, but on undisputed facts:  Ms. Hildebrandt is working at a job that pays a certain amount annually and provides certain benefits.  That data is not in any way "unreliable;" rather, it is factually accurate and not in dispute.  Whether Ms. Hildebrandt's acceptance of a job at a lower rate of pay than she earned at Hyatt is a failure to mitigate damages is a factual issue that Defendant is required to prove to the jury.  Based on the statements in their memorandum, Defendants have no evidence to present on this issue, either through an expert or otherwise, but rely on rhetoric.  As regards Dr. Rosen, Defendants do not dispute his qualifications as an economist; they do not dispute his methodology; and they cannot dispute the fact that the data that he relies upon is factually accurate.

Similarly unavailing is *Henry vs. Hess Oil Virgin Islands Corp.*, in which the expert's estimate of the employee's future earning capacity was found to be flawed because it was based upon the rejected testimony of another expert: "Professor Roberts' estimate of Plaintiff's future earning capacity was based entirely on Dr. Copemann's testimony and conclusions. [FN10] Yet, Dr. Copemann's report was methodologically unreliable." (*Id* 163 F.R.D. 246). In the case at bar, Dr. Rosen does not base his testimony upon that of another expert, and there is nothing unreliable, methodologically or otherwise, about the undisputed facts that Ms. Hildebrandt works for the Cincinnati Horticultural Society, earns a certain salary, and receives certain benefits.

Defendants' argument that the prejudicial nature of Dr. Rosen's testimony outweighs its probative value is likewise unavailing. To support its argument, Defendants cite the evidence rule that sets forth the test (F.R.E.403) and two cases that have no application to the instant case. Neither case involves the rejection of an expert's damages calculation, nor do they involve an expert's calculation based on undisputed facts. *Martin v. Urban Redevelopment Authority*, 844 F.Supp. 1073 (W.D. Pa. 1994) involves a defective statistical analysis of company promotions made by a purported expert witness who did not have any education or background in the field of statistical analysis. *Turner v. Allstate Ins. Co.*, 902 F.2d 1208, 1213-15 (6th Cir. 1990) involves statistical survey analyses offered by the defendant offered to prove that the plaintiff falsified company documents (the alleged reason for his termination). The court of appeals approved the trial court's conclusion that the defendant offered this evidence on an issue that was immaterial to the case, that the statistical analysis had little probative value, and that the small value it had depended on too many inferences and assumptions, some of which were proven to be false; thus it

would confuse the jury. Defendants have presented no authority to support their claim that Dr. Rosen's testimony is prejudicial or that its prejudicial nature outweighs its probative value. Dr. Rosen's analysis of future earnings loss is the type of analysis usually offered and admitted in employment discrimination cases. It is the same type of analysis that has been accepted by this District Court in cases where Dr. Rosen has given similar testimony. *See Simpson v. Ernst & Young*, 100 F.3d 466, 444 (6th Cir. 1997). In that case, the plaintiff recovered over $4 million dollars in an age discrimination action, based upon an economic analysis of front pay carried out to retirement age. *See Simpson v. Ernst & Young*, Case No. C-I-91-196 (S.D. Ohio 1994).

For these reasons, Defendants' Motion *in Limine* should be denied.

Respectfully submitted,

s/Robert A. Steinberg
Stanley M. Chesley (0000852)
(*stanchesley@wsbclaw.cc*)
Robert A. Steinberg (0032932)
(*bobsteinberg@wsbclaw.cc*)
Trial Attorneys for Plaintiff
WAITE, SCHNEIDER, BAYLESS
& CHESLEY CO., L.P.A.
1513 Central Trust Tower
Cincinnati, OH 45202
(513) 621-0267

>Michael J. O'Hara (0014966)
>(*mohara@ortlaw.com*)
>Co-Counsel for Plaintiff
>O'HARA RUBERG TAYLOR SLOAN & SERGENT
>25 Crestview Hills Mall Road, Suite 201
>Crestview Hills, Kentucky  41017-0411
>(859) 331-2000
>Fax (859) 578-3365
>
>John S. Marshall (0015160)
>(*marshall@ee.net*)
>Co-Counsel for Plaintiff
>MARSHALL AND MORROW LLC
>111 West Rich Street, Suite 430
>Columbus, Ohio  43215-5296
>(614) 463-9790
>Fax (614) 463-9780

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon the following by ECF / regular U.S. Mail this 2nd day of July, 2004:

Jeffrey Joseph Harmon
Cors & Bassett
1881 Dixie Highway, Suite 350
Ft. Wright, KY  41011-2660

Nadine C. Abrahams
Fisher & Phillips LLP
140 South Dearborn Street, Suite 420
Chicago, IL  60603

Theresa M. Gallion
Natalie J. Storch
Fisher & Phillips LLP
Lincoln Plaza, Suite 1250
300 South Orange Avenue
Orlando, FL  32801-3392

>s/Robert A. Steinberg
>Robert A. Steinberg

b0629hildebrandt.wpd