# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **BARBARA LODER HILDEBRANDT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. C-1-02 0003** |
| | ) | |
| **HYATT CORPORATION, et al.** | ) | **Judge Sandra Beckwith** |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## FINAL PRETRIAL STATEMENT

This action came before the Court at a final pretrial conference held on July 23, 2004 at 9:00 a.m., pursuant to Rule 16, Federal Rules of Civil Procedure.

I.    **APPEARANCES:**

      For Plaintiff(s):     Robert Alan Steinberg
                                 Michael Jay O'Hara

      For Defendant(s):    Theresa M. Gallion
                                 Nadine C. Abrahams
                                 Jeffrey Joseph Harmon

II.    **NATURE OF ACTION AND JURISDICTION:**

    A.    This is an action for discrimination on the basis of age in violation of the Ohio Civil Rights Act ("OCRA"), Ohio Revised Code ("O.R.C.") Chapter 4112, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.,* ("ADEA").

    B.    The jurisdiction of the Court is invoked under 28 U.S.C §1331, 1332, 1343 (3) and (4), and 1367.

    C.    The jurisdiction of the Court is not disputed.

III.    **TRIAL INFORMATION:**

    A.    The estimated length of trial is five days.

    B.    Trial by jury has been set for August 9, 2004 at 1:00 p.m., pursuant to the General Notice on Trial Assignment.

IV.    **AGREED STATEMENTS AND LISTS:**

    A.    <u>General Nature of the Claims of the Parties</u>

        1)    PLAINTIFF'S CLAIMS:

Plaintiff claims that she was subjected to age discrimination when Defendants terminated her employment effective October 1, 2004.

Plaintiff claims that she is entitled to reinstatement, back pay, front pay in lieu of reinstatement, compensatory damages, liquidated damages and punitive damages.

        2)    DEFENDANTS' DEFENSES:

Defendants deny liability for the following reasons:

Defendants had a legitimate, non-discriminatory reason for selecting Plaintiff's position for elimination.

Defendants assert the following affirmative defenses:

    a)    Plaintiff's claims are barred, in whole or in part, to the extent she has elected to pursue an administrative remedy under the Ohio Civil Rights Act.

    b)    Even if any decision concerning Plaintiff were based, in part, on her age, which it was not, Defendants would have reached the same age-neutral decision in any event.

    c)    Plaintiff's claims fail, in whole or in part, because Plaintiff has not mitigated her damages.

    B.    <u>Uncontroverted Facts</u>

The following facts are established by admissions in the pleadings, or by stipulations of counsel, or by ruling of the Court:

1) Plaintiff, Barbara Loder Hildebrandt, born September 23, 1952, was 49 years of age when Defendants notified her that her position was eliminated and her employment terminated effective October 1, 2001.

2) Defendant Hyatt Corporation (Hyatt) is an international corporation in the business of managing and operating Hyatt hotel and resort properties throughout the United States and Caribbean.

3) Defendant Ty Helms, born June 13, 1957, was Hyatt's Vice President of Sales in September 2001.

4) Defendant Jack Horne, born September 23, 1961, was Hyatt's Assistant Vice President of National Sales in September 2001.

5) During 2001, Hyatt had in place specific policies prohibiting discrimination and harassment on the basis of all protected categories, including age.

6) Hyatt's policies, which state that Hyatt does not tolerate discrimination or harassment of any kind, are distributed to all employees, including the Plaintiff and Defendants Helms and Horne.

7) On September 28, 2001, Plaintiff was informed that her position was being eliminated.

8) Hyatt employs over 36,000 individuals in its hotels and its corporate office and various divisions, including its marketing, finance, operations, human resources, legal and sales divisions.

9) Plaintiff routinely received a rating of "exceeds expectations" on her yearly evaluation.

10) The Parties stipulate the authenticity of all contemporaneous Hyatt documents produced in discovery (i.e., documents that were not created for litigation).

11) The Parties have stipulated to the accuracy of the dates of birth, ages and salary of all individuals in the National Sales Force as contained in their personnel files.

C.    Contested Issues of Fact

Plaintiff's Statement of Contested Issues of Fact

1) At the time Plaintiff's employment was terminated, she was then and currently is a resident and citizen of the State of Ohio. At the time of her termination, Ms. Hildebrandt had been a loyal Hyatt sales employee with an excellent record for 22 years.

2)    At the time of her termination, Plaintiff held the position of Director of National Accounts for Central National Sales for Hyatt in Hyatt's National Sales Force (NSF), to which she was appointed on or about February 1996. From 1995 to 2001, her headquarters was the Hyatt Regency Hotel in Cincinnati, Hamilton County, Ohio.

3)    Defendant Helms is five years younger than Plaintiff. Defendant Helms approved Jack Horne's decision to terminate Plaintiff and other Directors of National Accounts.

4)    Defendant Horne is nine years younger than Plaintiff. Horne made the decision to terminate Plaintiff's employment and the employment of other Directors of National Accounts.

5)    Hyatt's policies state that age cannot be a motivating factor in adverse job actions, including termination of employees.

6)    Hyatt operates a National Sales Force (NSF) and a Divisional Sales Force (DSF). The DSF members are employed in Hyatt hotels and arrange accommodations in their respective hotels. The NSF members handle large national accounts, which book business such as conventions in various Hyatt hotels, usually on a periodic basis. DSF personnel aspire to join the NSF; it is considered a move upward, and it is very rare that people voluntarily leave the NSF. At the time her employment was terminated, Plaintiff worked in the NSF.

7)    Barbara Hildebrandt's duties as a Director of National Accounts included arranging group and individual hotel accommodations for her clients at Hyatt hotels throughout the country, recruiting new clients, and maintaining approximately 40 accounts in Ohio, Kentucky, and Tennessee through personal services.

8)    Barbara Hildebrandt was an excellent employee. Her accounts produced approximately 10 million dollars in sales for Defendants during calendar year 2000, the year before she was terminated. She received excellent annual performance evaluations ("Exceeds Expectations" or "Role Model") each year that she was Director of National Accounts, including her most recent annual evaluation of February 1, 2001. She received annual Outstanding Production Achievement Awards in 1994, 1996, 1997, 1998, 1999, and 2000; and met or exceeded all her annual sales goals, with one exception in 1995 when she achieved 92.3% of her goal and received an "Exceeds Expectations" rating. In 2000, she was nominated for the prestigious Annual Director of National Accounts award. She was ranked among the highest performers in the company for the year prior to her termination (2000). She achieved 136% of her group quota for that year.

She exceeded her quota by two million dollars. She exceeded her quota for the previous five years. Her supervisor, Brian Booth, characterized her as "very dedicated and tireless in her efforts to gain business for Hyatt."

9)    During late 2000, it became apparent to Hyatt officials that the economy was in a downturn and heading for a recession. Hyatt understood that an economic recession existed in the United States since late 2000/early 2001. As early as July 2000, a highly respected hotel industry research group forecasted a decline in room revenue for 2001. In January 2001, this research group issued a forecast alert stating there would be a decrease in lodging demand during the first half of 2001. Well before September 11, 2001, the U.S. lodging industry room revenue was headed downhill. This trend was even more pronounced among upscale hotels, such as those Hyatt operates. Starting in February 2001, the room revenue in upper upscale hotels started to fall precipitously. Well before September 2001, the room revenue in these hotels was declining dramatically. The severity of the lodging demand downturn was a reflection of the current corporate profits recession in the U.S. Following the terrorist events of September 11, 2001, the lodging segment of the economy experienced a further rapid and deep decline. As of February 2004, the lodging segment of the economy had not recovered from the weakened economy and travel cutbacks.

10)   During the first half of 2001, Hyatt's Chief Operating Officer, Ed Rabin, and other top executives initiated alerts to take steps to cut costs, which clearly included eliminating positions. Hyatt eliminated some positions prior to September 11, 2001.

11)   Hyatt's official policy in economically tough times was to try to retain the jobs of loyal, long-term employees. Insofar as Hyatt's Chief Operating Officer, Ed Rabin knew, "we were doing everything to protect, I believe, our employees, both long term and loyal and hard working [employees] and all of the above." In April 2001, initial cost savings steps attempted to avoid eliminating employees. One of the methods of cutting costs was to restrict new hiring. Hyatt's top executives had numerous communications, both verbal and written, that said no new hiring during this period or new hiring should be kept to a minimum.

12)   Defendants Horne and Helms hired individuals into the National Sales Force during 2001. Horne, with Helms' approval, hired ten sales managers into the National Sales Force during 2001 or early 2002: Jennifer Roman (DOB: 9/30/68, Faye Memoli (DOB: 6/20/71), Donna Bongiovanni (DOB: 9/11/60); Richard Wood (DOB: 1/7/60), JoAnn Rumsey (DOB: 6/5/68), Erin Moriarity (DOB 4/21/77), Carolyn Montrose (DOB: 5/5/64), Judy Lee-Kirchman (DOB: 12/10/58), Gracie Anzaldo-Moore (DOB: 6/26/59) (hired in 2002), and Karen Kelly (DOB: ?) (hired

in late 2001 or early 2002). In addition, in March 2001, Horne transferred and promoted Molly Crompton, a 33-year-old National Accounts Manager with less than one year's experience in the NSF, into the position of Director of National Accounts in the Central Region, the same region where Barbara Hildebrandt was located.

13) In mid-May 2001, Hyatt officials hired 38-year-old attorney Rob Schnitz of the Fisher & Phillips LLP law firm, as Vice President and Associate General Counsel to help plan the termination of employees. Schnitz was represented to C.O.O. Ed Rabin as having expertise in the area of law dealing with elimination of jobs. He had no previous experience with Hyatt. Schnitz ultimately provided legal supervision for the September 2001 reduction in force.

14) Hyatt enjoyed a substantial net profit during 2001.

15) Hyatt's top executives met to discuss cost savings measures after September 11, 2001. They did not determine it was necessary to terminate any individual in the NSF, which made up a small portion of Hyatt's workforce. The managing committee did not determine that a specific number of individuals in the NSF had to be terminated, nor did they determine that any specific cost savings in the NSF had to be made.

16) The entire expense of the NSF was funded by third-party hotel owners as a "chain allocation."

17) Helms did not instruct Horne that he was required to terminate anyone in the NSF; Helms did instruct Horne that he had to identify any person to be terminated; Helms did not instruct Horne that any specific number of people had to be terminated; and Helms did not instruct Horne that any particular cost savings had to be achieved. Helms did not even require Horne to complete a cost-benefit analysis or provide specific information about people he wished to discharge. No specific criteria were developed to determine how many NSF employees were to be discharged, and no specific criteria were developed to determine the selection of employees to be discharged. Helms simply gave Horne unbridled discretion to terminate employees and then approved Horne's recommendations, except one. Helms reversed one of Horne's termination recommendations to save the job of a male employee, Joe Koch, who was 37 years of age.

18) Horne did not consider the following criteria when making the decision to terminated sales managers: their seniority; their history with the company; their current pay and benefits; their production; their skills compared to those not discharged; their long-term performance; their short-term performance; the amount Hyatt had spent on schooling and training them; their awards and achievements; their annual performance reviews;

whether they operated from a satellite office; whether they could be accommodated with transfers to other positions; or the financial effect termination would have on a long-time employee's savings plan and income tax liability. Horne did not look at their performance reviews or their sales achievements.

19)    Eighty percent of those affected by the reduction in force were in the protected age group.

20)    Molly Crompton received the following accounts of Barbara Hildebrandt after Mrs. Hildebrandt was terminated: National Cotton Council, American Contract Bridge League, Universal Tech Corp, Smith & Nephew Healthcare, Longaberger, Brown-Forman, Self Storage Association, United Commercial Travelers of America, Remember Data Services, Society of Food Service Management, Spectra Precision Incorporated, Thomas Associates, Travel Link, and Western-Southern Life Insurance Corporation. Ms. Crompton received over one million dollars in credit for 2001 from just one of these accounts, American Contract Bridge League. Ms. Crompton was given a lower sales goal than the goal that had been given to Mrs. Hildebrandt. Ms. Crompton exceeded her sales goal for 2001 by 165% and thus received a bonus of $13,500.

21)    Barbara Hale received the following accounts of Barbara Hildebrandt after Mrs. Hildebrandt was terminated: AEC Management Resources, Inc., American Association of Lab Animal Science, American Board of Family Practice, American Board of Veterinary Practitioners, American Ceramic Society, Association Management Resources, Bank One Corporation, Chief Officers State Library Association, Council of State Government, F&W Publishing Corp., GE Aircraft Engines, International Anesthesia Research Society, Lenscrafters, National Association of Government Deferred, National Association of State Information Resource Executives, National Association of State Purchasing Offices, National Middle School Association, Procter & Gamble Headquarters, Procter & Gamble Corporate Sales, Procter & Gamble Group Travel, U.S. Cutting Tool Institute, and Wendy's International.

22)    Jennifer Roman received the following accounts of Barbara Hildebrandt after Mrs. Hildebrandt was terminated: International Association of Culinary Professionals, Foodservice Associates, Foodservice Consultants International, and Inflight Foodservice Association. In addition, Ms. Roman received Mary Rocereto's largest account, TIMCO, after Ms. Rocereto was terminated in the RIF.

23)    The employees in the NSF Central Region whose jobs Horne completely protected from termination were all substantially younger than Barbara Hildebrandt. Hale, Crompton, and Melissa Daniels were in their early

30's, while Donna Bongiovanni and Inga Spindola were 41 and 43 years old, respectively.  Barbara Hildebrandt was 49 years old when she was terminated.

24)    The following statistical information regarding the employment decisions made by Jack Horne on the documents he created (Plaintiff's Exhibits 37f - 37j) is accurate:

a)    Defendant Horne divided 66 sales manager into three categories: A, B, and C.  The A group were completely protected from termination.  The C group were designated for termination.  The B group were not designated for termination, but were not completely protected.

b)    There is a 7.5-year difference between the average age of the employees in Group A, who were completely protected from termination (35.5 years) and the average age of the employees in Group C, who were actually terminated (43.0 years).

Average age of those in Group A (protected):          35.5

Average age of those in Group C (designated):         42.8

Average age of those actually separated[1]:           43.0

Sales managers 40 & over before 9/28/01:              56%
(43 of 66)

Sales managers 40 & over protected from RIF:          23%
(Group A) (4 of 17)

Sales managers 40 & over designated for termination:  77%
(Group C) ((10 of 13)

Sales managers 40 & over unprotected and separated:   81%
(9 of 11)[2]

d)    81% of the separated sales managers  (9 of the 11) were in the protected age group.[3]

e)     80% of the terminated sales managers  (8 of the 10) were in the protected age group.

---

[1]    This figure is comprised of 11 of the 13 that Horne placed in Group C who were actually separated.  It excludes Neubauer and Koch, who were not actually separated, but includes Venezia, who was earmarked for termination but resigned on the day the terminations were announced.

[2]    Id.

[3]    Ex. 199

25)     Plaintiff filed a timely discrimination charge with the Equal Employment
        Opportunity Commission (EEOC) on or about February 15, 2002.
        Because the EEOC could not resolve her charge within 180 days, it
        provided her a right-to-sue notice on or about March 28, 2002.

26)     Age was a motivating factor in Defendants' decision to terminate Plaintiff.

Defendants' Statement of Contested Issues of Fact

1)      Although Hyatt does not own all of the approximately 122 Hyatt hotel and
        resort properties, it has management agreements with property owners
        whereby Hyatt provides management services to the 122 Hyatt properties
        within the United States.

2)      At the time that her position was eliminated, Plaintiff worked in Hyatt's
        National Sales Force ("NSF") which sells hospitality services to large
        companies or organizations undertaking business in multiple cities, and
        consequently, offers business opportunities with multiple Hyatt hotels.

3)      In addition to the NSF, each Hyatt hotel property has a "field sales office"
        which is made up of salespersons who are responsible for generating
        business for that particular Hyatt property.    A typical field (individual
        hotel) sales account is a company based in a particular city that conducts
        most of its business in the city of origin.    The field salespersons are
        employed by the Hyatt property; work solely for that hotel property; and
        have no ability to schedule conferences, commit room nights or other hotel
        services beyond the reach of their singular property.

4)      The NSF sales staff is ordinarily responsible for approximately 40% of
        Hyatt's annual business.

5)      In Spring 2001, Hyatt implemented a number of cost-saving measures
        Company-wide due to the failing economy and financial difficulties.   In
        the Sales Department, Hyatt reduced travel and related expenses. In May
        2001, based on the recommendations of his staff, Helms implemented
        numerous cost-savings measures in the Sales Department, which impacted
        the NSF, including cutbacks in sales administration travel and expenses;
        eliminating the Divisional Director of Sales meeting; reducing sales
        administration promotional expenses; reducing each NSF office budget;
        and hiring employees for lesser starting compensation, if possible.  Unlike
        its competitors, Hyatt was able to avoid layoffs during this time.

6)      Hyatt realized a decline in its total income of over $400,000,000.00 from
        the previous year, and Hyatt's hotel owners realized profits almost
        $200,000,000.00 less than the previous year.   This downturn necessitated

many workplace cutbacks, because of lack of work and, as a result, Defendant Helms began to examine numerous options for reducing the expenses in Hyatt's Sales Department.

7)    In the days following September 11, Hyatt hotels lost over $44,000,000.00 in business from immediate cancellations.  In fact, Hyatt's business had dropped by $415,000,000.00 from the previous year, resulting in lack of work for thousands of employees.

8)    Hyatt's two most senior officers, Scott Miller and Ed Rabin, informed their direct reports, including Defendant Helms, that they must immediately undertake more aggressive cost-cutting measures.

9)    Defendant Horne made the decision to eliminate 10 of the approximately 77 NSF sales positions, after consultation with Defendant Helms and other senior managers.

10)    The 10 persons affected by the reduction in force included 8 individuals over 40 and 2 under the age of 40.

11)    At all relevant times, the NSF was composed of approximately 77 persons, 43, or 56% of whom were over the age of 40.

12)    Mr. Horne concluded that neither performance nor seniority was an appropriate factor in any of the job eliminations because of the national scope of the NSF and the needs of customers.

13)    Following the elimination of Plaintiff's position, a decision was made to assign Plaintiff's accounts to several current Directors of National Accounts who were already performing related work, with the instruction to assess the accounts.

14)    Plaintiff's accounts were distributed to a diverse group of individuals for reassessment.   The ages of the individuals who were assigned Plaintiff's former accounts at the time of the reduction in force are as follows: Barbara Hale, 34; Molly Crompton, 33; Fred Reichelt, 45; Melissa Daniels, 35; Inge Spindola, 43; and Jennifer Roman, 32.   Four of this group were in their 30's, and two were in their 40's.

15)    Prior to the reduction in force, the sales personnel in the NSF included six (9%) employees between the ages of 20 and 29; 28 (36%) employees between the ages of 30 and 39; 34 (44%) employees between the ages of 40 and 49; and 9 (12%) employees age 50 or over.   A total of 56% (43 employees) in the NSF were 40 years of age or more at all relevant times.

16)     After the reduction in force, of the same group of employees, six (9%) employees were between the ages of 20 and 29; 26 (39%) were between the ages of 30 and 39; 26 (39%) were between the ages of 40 and 49; and 9 (13%) were age 50 or over.

17)     After the reduction in force, 52% of the NSF sales staff was still over the age of 40.

18)     Not a single person 50 and older was adversely affected by the staff reduction.

19)     In each of the five National Sales Offices in the National Sales Force, numerous employees older than the individuals affected by the reduction in force were retained.

D.      <u>Issues of Law</u>

1)      Contested Issues of Law:  The contested issues of law in addition to those implicit in the foregoing issues of fact, are:

    a)      whether Plaintiff has discharged her burden of proof in establishing a prima facie case of age discrimination (Plaintiff contends that this issue has already been resolved by the Court in Plaintiff's favor in the Court's ruling denying summary judgment; Defendants contend that this issue has not yet been resolved);

    b)      whether Plaintiff has established direct or circumstantial evidence of age discrimination (Plaintiff contends that this issue has already been resolved by the Court in Plaintiff's favor in the Court's ruling denying summary judgment; Defendants contend that this issue has not yet been resolved);

    c)      whether Plaintiff has established that  Hyatt violated the ADEA by discriminating against her based on her age;

    d)      whether Plaintiff has established that Defendants Hyatt, Helms, or Horne violated Ohio state law by discriminating against her based on her age;

    e)      whether Defendants have discharged their burden of production by proffering legitimate, non-discriminatory reasons for Plaintiff's job elimination; and

    f)      whether Plaintiff can demonstrate that the reasons offered by Defendants are pretextual, either by demonstrating that the reasons

have no basis in fact; that they did not actually motivate the Defendants; or that the reasons are insufficient; and

g)      whether Plaintiff has established that she is entitled to back pay;

h)      whether Defendants have established that Plaintiff failed to mitigate her damages;

i)      whether Plaintiff has established that she suffered damages, including emotional distress, liquidated damages, and punitive damages;

j)      whether Plaintiff has demonstrated an entitlement to reinstatement or front pay;  and

D.    <u>Witnesses</u>

1)      Plaintiff will call:

      1.      Lee Hildebrandt
      2.      Barbara Loder Hildebrandt
      3.      David Berins[4]
      4.      Edward Rabin
      5:      Ty Helms
      6.      Jack Horne
      7.      Douglas Patrick
      8.      Robert Schnitz
      9.      Molly Crompton
    10.     Harvey Rosen, PhD
    11.     Brian Booth

Plaintiff may call:

      1.      Wendy Aylward
      2.      Mary Rocereto
      3.      Dawn Beagle[5]

Possible Plaintiff's Rebuttal Witnesses:[6]

      1.      Kent Friel
      2.      Terri Madden

---

[4]      Defendants object to their expert being called in Plaintiff's case in chief.

[5]      Defendants will be moving in limine to limit the testimony of these three witnesses.

[6]      Defendants will be moving in limine  to exclude Plaintiff's rebuttal witnesses on the ground that they were never disclosed during discovery.

3.    Account representatives from Plaintiff's former accounts, including Bill Haire, Bruce Kramer, John Addington, Martha Morrison, Wendy Bowling.

Based upon Defendants' statements as to the claims they will make in their case in chief, Plaintiff has notified Defendants that she anticipates calling the above rebuttal/impeachment witnesses.  Plaintiff reserves the right to call additional rebuttal witnesses, depending on the testimony offered by Defendants.  Plaintiff cannot further anticipate rebuttal witnesses at this time.

Plaintiff reserves the right to call witnesses identified on Defendants' witness list.

2)    Defendants will call or will have available at trial:

1.  Barbara Loder Hildebrandt
2.  Ty Helms
3.  Jack Horne
4.  Doug Patrick
5.  Rob Schnitz
6.  David Berins

Defendants may call: [7]

1.    Brian Booth
2.    Randa Saleh
3.    Mark Henry
4.    Bruce Small
5.    Carol Buseman Roper
6.    Fred Reichelt
7.    Barbara Hale
8.    Rob Sarmiento
9.    Inge Spindola
10.   Melissa Daniels
11.   Donna Bongiovanni
12.   Denise Cmiel
13.   Jan Bansfield
14.   Debra Rodriguez
15.   Ellen Gerchick
16.   Marilyn Brumbaugh
17.   Pat Trammell and Scott Allen of Hyatt Regency Cincinnati
18.   Jeanne Ellworth, or another representative from the Cincinnati Horticultural Society
19.   Ed Rabin
20.   Molly Crompton

---

[7]    Plaintiff will be moving in limine to exclude the testimony of Defendants' case in chief witnesses who have not been disclosed during discovery.

21.    Jennifer Roman
22.    Faye Memoli
23.    Frank Borg
24.    Diane Smith
25.    Michael Williamson

Defendants reserve the right to call rebuttal and impeachment witnesses whose testimony cannot reasonably be anticipated.  Defendants further reserve the right to call witnesses identified on Plaintiff's witness list.

E.    Expert Witnesses

The parties are limited to the following number of expert witnesses, whose names have been disclosed and reports furnished to opposing counsel:

Plaintiff:     Dr. Harvey Rosen
Defendants:   David Berins

Counsel have attached a resume of each expert's qualifications as a part of Appendix A, herein.

F.    Exhibits

Exhibit lists are attached as follows:

Appendix B        Joint Exhibits
Appendix C        Plaintiff Exhibits
Appendix D        Defendant Exhibits

The parties intend to use summary charts and demonstrative evidence exhibits in addition to the exhibits noted above.   The parties agree that any exhibit or information contained in an exhibit is capable of being used in a demonstrative exhibit or trial aid.  They have agreed to exchange these exhibits no later than August 2, 2004.  The exhibit lists will be updated to reflect these exhibits.

Pursuant to Plaintiff's counsel's conversation with this Court's Courtroom Deputy, the parties will submit their objections to exhibits one week before the trial.

G.    Depositions

Testimony of the following witnesses will be offered by deposition:

The testimony of Catherine Petz, Wendy Aylward, Mary Rocereto, and Dawn Beagle may be offered by deposition if these witnesses are unavailable. Defendants will be filing a Motion in Limine to limit the testimony of these witnesses.

Plaintiff reserves the right to use deposition testimony in the event of the unavailability of a witness, or in rebuttal to Defendants' case in chief, or for impeachment purposes

Defendants do not anticipate utilizing deposition testimony of any person in their case in chief, but reserve the right and privilege to do so in the event of unanticipated illness or emergency, or in rebuttal to Plaintiff's case in chief, or for impeachment purposes.

The parties have agreed to exchange any deposition designations that involve objections which require a ruling, and to submit this information to the Court one week prior to trial.

H.     Discovery

Defendants contend that discovery has been completed.

Plaintiff contends that discovery has not been completed, because Defendants have not supplemented certain discovery requests and refuse to do so.  This consists of employee data forms reflecting bonuses received by Defendants Horne and Helms and sales managers during 2002 that were earned during 2001. Defendant has answered an interrogatory regarding bonuses received by sales managers only, but has not submitted the underlying supplemental data sheets for the sales managers.  The data sheets produced in discovery to date only cover the period up to May 2001, for the most part.  Defendant has not produced the date of birth of, Karen Kelly, who was identified as having been hired into the NSF in early 2002.  Nor have they produced the region to which she was assigned.

Defendants strenuously object to the above statement, noting Defendants' compliance with the Federal Rules of Civil Procedure and the absence of a timely Motion to Compel addressing this subject.

I.     Pending Motions

The following motions are pending at this time:

1)     Defendants' Motion in Limine to Exclude Expert Opinion and Report of Harvey S. Rosen;

2)     On or before July 30, 2004, Plaintiff expects to file a motion in limine to exclude any evidence offered by Defendants on subjects upon which Defendants' counsel instructed its witnesses not to answer deposition questions.

3)    On or before July 30, 2004, the deadline established by this Court, the Defendants anticipate filing numerous other Motions in Limine on a variety of subjects, including limitation of "other acts" evidence; bifurcation of issues of liability from issues of damages; anticipated testimony from customers with no personal knowledge of the issues in this case; anticipated testimony concerning years of service, as opposed to age; anticipated testimony of matters disposed of by the Court's ruling on the Motion for Summary Judgment; and other important matters.

J.    Miscellaneous Orders

1)    Judge Beckwith's Order on Defendants' Motion for Summary Judgment.

2)    The foregoing stipulations and statements were amended at the final pretrial conference as follows: _____

V.    Modification

This Final Pretrial Statement may be modified at the trial of this action, or prior thereto, to prevent manifest injustice. Such modification may be made by application of counsel of on motion of the Court.

VI.    Jury Instructions and Trial Briefs

Proposed jury instructions and trial briefs will be filed with the Clerk of Court five days prior to the commencement of trial.

VII.    Settlement Efforts

The parties have exchanged figures but have not otherwise engaged in settlement negotiations. Current settlement positions are due to be exchanged on July 21, 2004.

VIII.    Additional Action Taken

Date:   July 19, 2004


s/Robert A. Steinberg
Counsel for Plaintiff


s/Theresa M. Gallion
Counsel for Defendants



**CERTIFICATE OF SERVICE**

   I hereby certify that a copy of the foregoing has been served upon the following by ECF this 19th day of July, 2004:

Jeffrey Joseph Harmon
Cors & Bassett
1881 Dixie Highway, Suite 350
Ft. Wright, KY  41011-2660

Nadine C. Abrahams
Fisher & Phillips LLP
140 South Dearborn Street, Suite 420
Chicago, IL  60603

Theresa M. Gallion
Natalie J. Storch
Fisher & Phillips LLP
Lincoln Plaza, Suite 1250
300 South Orange Avenue
Orlando, FL  32801-3392


       s/Robert A. Steinberg

## APPENDIX A

## Qualifications of Expert Witness

# Plaintiff's Expert

**Name:**          Harvey S. Rosen, Ph.D.

**Address:**       Burke, Rosen & Associates
                   2800 Euclid Avenue, Suite 300
                   Cleveland, OH  44115

**Present Title:** Economist

**Duties:**        Dr. Rosen received his Ph.D. in economics from Case Western Reserve University in 1969 following his undergraduate preparation at Western Reserve University and the University of California at Berkeley, California.  He was an Associate Professor at Cleveland State University in Cleveland, Ohio where he began his teaching career in 1966.  He accepted early retirement and left the Ohio system with 31 years of service to the State of Ohio.  He holds the rank of Associate Professor Emeritus from that institution.  He currently holds the rank of Adjunct Associate Professor at John Carroll University where he is engaged in part-time teaching of economics.

Dr. Rosen has been engaged in private economic consulting for more that 35 years, primarily for courts and attorneys, involving the determination of economic damages that have arisen from a legal dispute.  He is a principal in the firm of Burke Rosen and Associates in Cleveland, Ohio.  Dr. Rosen has determined damages in thousands of cases during his professional career.  His opinions on the determination of front or future pay and back pay have been accepted by courts in many states throughout the country.

Dr. Rosen has been appointed by a number of courts as the courts' economic expert.  He has been appointed by six state courts as an economic expert and as a special master.  In two of those appointments, in addition to determining damages, he was appointed as Special Master in charge of determining distribution of a fund.  He has also been appointed by three federal courts as the courts' expert.  He has been retained by the Ohio attorney general's office on economic matters concerning the determination of economic damages.

| | | | |
|---|---|---|---|
| **Education/Degrees:** | B.B.A. | Western Reserve University    1964 | |
| | M.A. | Western Reserve University | |
| | | University of California Berkeley | 1966 |
| | Ph.D. | Case Western Reserve University | 1969 |

**Job Experience:**    Present: Vice-President/Treasurer of Burke, Rosen & Associates (30 yrs)
Lecturer, Western Reserve University (1966)
Lecturer, Cleveland State University (1966)
Instructor, Cleveland State University (1967-1969)
Economic Research Consultant, Central National
Bank of Cleveland (1968-69)
Assistant Professor, Cleveland State University (1969-1973)
Associate Professor, Cleveland State University (1974-1993)
Retired Associate Professor (1993-1994)
Associate Professor Emeritus (11/94 - )
Reviewer,  <u>Financial Practice and Education</u>, Raj Aggarwal, John Carroll
University, Editor (1995)
Adjunct Associate Professor, John Carroll University (1999-Present)

**Appeared and qualified/deposed as expert witness in the states of:**

Ohio, Michigan, Kentucky, West Virginia, Massachusetts, Maryland, District of Columbia, Pennsylvania, Louisiana, California, Rhode Island, Texas, New York, Nevada, Colorado, New Jersey, Illinois, Virginia, Tennessee, and Puerto Rico.

**Associations & Societies:**

American Economic Association
National Association of Business Economists
Ohio Association of Economists and Political Scientists
- At Large Representative to the Executive Board (1995-96)
National Academy of Economic Arbitrators

**Publications:**    Dr. Rosen is the author of numerous publications, which covers two full pages of text.

## Qualifications of Expert Witness

**Defendants' Expert**

| | |
|---|---|
| **Name:** | David A. Berins |
| **Address:** | 1402 Exeter Court, South Lake, Texas 76092 |
| **Present Title:** | President, Berins & Company, LLC. |

**Duties:** Mr. Berins has thirty-eight years of experience in the hospitality industry including eight years of operations management and thirty years as a consultant. He currently provides senior-level advisory services to hotel owners, investors, and operators on strategic issues. Services include development planning, operational consulting, marketing consulting, strategic planning and financial analysis.

**Education & Degrees:** Bachelor of Science – Hotel Administration, Cornell University (1966)

**Job Experience:**
- President, Berins & Co. (1999-present)(provides senior-level advisory services to hotel owners, investors, and operators on strategic issues)
- Senior Vice President, Strategic Hotel Capital Incorporated (1998-1999)(consulting company on acquisition of 25 luxury and upscale hotels)
- President, Berins Consulting Incorporated (1993-1998)(provided market research, operational consulting to hotel chains)
- Senior Principal & Worldwide Director, Hospitality Industry Consulting Services-Arthur Anderson & Co. (1989-1993)(led a team of specialists providing consulting services in the hospitality industry in the U.S. and worldwide)
- Managing Partner, Berins & Co. (1983-1989)(provided advisory services to hotel operators, owners, lenders and investors)

**Associations & Societies:**
- Chairman of the Board of International Society of Hospitality Consultants (1993-1994)
- President of International Society of Hospitality Consultants (1992-1993)
- American Hotel & Motel Association
  Urban Land Institute

**Publications:**
- Editor and principal author, The HOST Report, a semi-annual statistical report on the U.S. hotel industry
- Urban Land magazine
- The Cornell Quarterly
- Lodging magazine
- Columnist, Hotel & Motel Management magazine

# APPENDIX B

## JOINT EXHIBITS OF PLAINTIFF AND DEFENDANT*

| Ex. No. | Bates Number | Designation/Description | Identified | A |
|---|---|---|---|---|
| I | BH 000004 | Letter from Petz to BLH re "Separated thru no fault of her own" | | |
| II | BH 000001 | Letter from Petz to BLH re vacation pay, COBRA, outplacement, and ten weeks salary | | |
| III | 10674 | Memo from Helms to Miller & Rabin re labor and general expense reductions | | |
| IV | 10675 | Sales Administration chart | | |
| V | 10676 | Assumptions list | | |
| VI | 10677 | International & Individual Travel Sales chart | | |
| VII | 10678 | Assumptions list | | |
| VIII | 10679 | IT Restructure Plan and Total National Sales Force Savings | | |
| IX | 10680 | Eastern National Sales Office chart | | |
| X | 10681 | Western National Sales Office chart | | |
| XI | 10682 | Central National Sales Office chart | | |
| XII | 10683 | Northeastern National Sales Office chart | | |
| XIII | 10684 | Omaha National Sales Office chart | | |
| XIV | 10685 | Budget Reductions Corporate Billback Project Summary Sales Consolidated chart | | |
| XV | 10686 | Budget Reductions Corporate Miscellaneous Promotions Summary Sales Consolidated chart | | |
| XVI | 10687 | Memo from Helms to Miller and Rabin re labor and general expenses reductions | | |
| XVII | 10688 | Sales Administration chart | | |
| XVIII | 10689 | Assumptions list | | |
| XIX | 10690 | International & Individual Travel Sales chart | | |
| XX | 10691 | Assumptions list | | |
| XXI | 10692 | IT Restructure Plan and Total National Sales Force Savings | | |
| XXII | 10693 | Central National Sales Office chart | | |
| XXIII | 10694 | Northeastern National Sales Office chart | | |
| XXIV | 10695 | Omaha National Sales Office chart | | |
| XXV | 10696 | Western National Sales Office chart | | |
| XXVI | 10697 | Eastern National Sales Office chart | | |
| XXVII | 10698 | List of jobs eliminated in Sales department | | |
| XXVIII | 10700-01 | Chart showing persons to whom BLH's accounts were assigned | | |
| XXIX | 10642-665 | Hyatt Hotels & Resorts Employee Handbook | | |
| XXX | 32343, 32348, 32349, and 32350 | Charts prepared by Jack Horne regarding account redeployments for Aylward, Beagle, Rocereto, and Hildebrandt | | |
| XXXI | 34107-34129 | NSF Group and Individual Travel PRIDE Payout Scales | | |
| XXXII | Small Aff't, | Charts prepared by Bruce Small regarding accounts and revenue | | |

| | | | | |
|---|---|---|---|---|
| | p. 4, chart portion on top of page 7 | | | |
| XXXIII | 32499-33512 | *Plaintiff's accounts with organizational profiles | | |
| XXXIV | | Plaintiff's W-2 forms, tax returns and payroll records | | |
| XXXV | | Affidavit of Barbara Loder Hildebrandt dated May 8, 2004 | | |
| XXXVI | 10058 | Plaintiff's acknowledgment of discrimination policy | | |
| XXXVII | 10061 | Plaintiff's acknowledgment of discrimination policy | | |
| XXXVIII | 10062 | Employee handbook acknowledgment signed by plaintiff | | |
| XXXIX | 10064 | Plaintiff's acknowledgment of discrimination policy | | |
| XXXX | 10236 | Handbook and non-discrimination in employment policy acknowledgment signed by plaintiff | | |
| XXXXI | 10238 | Handbook and non-discrimination in employment policy acknowledgment signed by plaintiff | | |
| XXXXII | | Payroll records from plaintiff's personnel file reflecting final rate of pay | | |

*Plaintiff understands that Joint Exhibits are exhibits that both sides may attempt to  introduce.  While Plaintiff may use any or all of the Joint Exhibits during the trial for a relevant purpose, Plaintiff does not stipulate the accuracy of the information contained in exhibits prepared by Defendants.  Plaintiff reserves the right to introduce a Joint Exhibit in order to demonstrate that the information contained therein is not accurate.

## APPENDIX C
## EXHIBITS OF PLAINTIFF BARBARA LODER HILDEBRANDT*

| Ex. No. | Bates No. | Designation/Description | Identified | A |
|---------|-----------|-------------------------|------------|---|
| 6 | BH 000039-40 | E-mail from Horne to NSOs showing production of 644 mil on quota of 544 mil. Wendy Jensen 96%, Barbara Hale 137%, Barbara Loder 125%, Loretta Venezia 113%. | | |
| 7 | BH 000026 | MTD Net Production Report (shows Bansfield, Hale, Crompton much lower than BLH) | | |
| 8 | BH 000033-34 | Sales award nominees for 2001 for sales manager of year. NSF nominees include BLH. | | |
| 9 | BH 000035 | E-mail from Helms telling BLH she deserved the NSF nomination for her hard work. | | |
| 11 | BH 000036 BH 000041 | BLH anticipated revenue and e-mail from Booth that her anticipated revenue is great and he will help her close the business | | |
| 12 | BH 000044 | BLH production projections for July | | |
| 13 | BH 000045 | BLH production projections for August | | |
| 14 | BH 000046 | BLH production projections for September (over 1mil) | | |
| 15 | BH 000048 | BLH Employee Data Sheet (job action data) | | |
| 16 | BH 000104-106 | BLH Performance Review – Role Model | | |
| 17 | BH 000118-120 | BLH Performance Review – EE | | |
| 18 | BH 000121-123 | BLH accomplishments for 1999 and goals for 2000 | | |
| 19 | BH 000124-125 | BLH Performance Review – EE | | |
| 20 | BH 000126-128 | BLH accomplishments for 1998 and goals for 1999 | | |
| 21 | BH 000129-130 | BLH Performance Review – EE | | |
| 22 | BH 000131-136 | BLH accomplishments for 1997 and goals for 1998 | | |
| 23 | BH 000137-138 | BLH Performance Review – EE | | |
| 24 | BH 000139-140 | BLH accomplishments for 1996 and goals for 1997 | | |
| 25 | BH 000141-144 | BLH Performance Review – EE | | |

| Ex. No. | Bates No. | Designation/Description | Identified | A |
|---|---|---|---|---|
| 26 | BH 000112-114 | BLH Performance Review and Goal Setting Program | | |
| 27 | BH 000109-111 | BLH 2001 Mid-Year Evaluation | | |
| 27a | 10671-73 | BLH 2001 Mid-Year Evaluation produced by defendant | | |
| 28 | BH 000027-28 | BLH Booking Report | | |
| 29 | BH 000037-38 | E-mail from Horne to NSO's | | |
| 30a | 10347-48 | 2001 Booth Performance Review | | |
| 30b | 10354 | Booth file memo re interpersonal skills | | |
| 30c | 10355 | Booth file memo re inappropriate behavior | | |
| 30d | 10356-61 | 1999 Booth Performance Review – ME | | |
| 30e | 10368-71 | Booth Management Self –Assessment | | |
| 36 | 10642-70 | Hyatt Hotels & Resorts Employee Handbook | | |
| 56 | | Job Elimination Comparison Chart prepared by Hyatt for the October 1, 2004 Reduction In Force | | |
| 73 | 10503 | Crompton's Employee Performance Appraisal 90 Day Adjustment Period (DNA/CNSO) | | |
| 77 | 10508-09 (27625-26) | Crompton's application | | |
| 79 | 10515 | Crompton's resume | | |
| 86 | 27534 | Crompton's Employee Data Sheet | | |
| 87 | 27535 | Personal Requisition/Status Change showing Crompton's promotion to DNA/CNSO | | |
| 88 | 27536 | Personal Requisition/Status Change showing Crompton receiving $3k pay raise | | |
| 89 | 27537-38 | Personnel Requisition/Status Change showing Crompton's promotion to NAM/ENSO | | |
| 92 | 27542-43 | Offer letter to Crompton for NAM/ENSO position | | |
| 93 | 27544-46 | Letter to Crompton re relocation expenses for move to Chicago (should be Washington DC?) | | |
| 95 | 27562 | Memo to Crompton re eligibility for Qualified Matching Contribution (150%) | | |
| 96 | 27572 | Relocation Summary for Crompton | | |
| 97 | 27575 | Relocation Expenses for Crompton paid by California Hyatt Corp. | | |
| 98 | 27576 | Relocation Expenses for Park Hyatt Washington paid by California Hyatt Corp. | | |
| 102 | 27583 | Relocation Expenses for North American Van Lines | | |
| 104 | 27586-87 | Crompton's 2002 Review (DNA/CNSO)– EE | | |
| 110 | 27623 | Crompton's resume | | |
| 116 | 27684 | Crompton's Voluntary Quit Form | | |
| 118 | 27690 | Crompton's resignation letter from HR McCormick | | |
| 144 | HRPM 35-38 | Reduction in Staff Corporate Policy | | |
| 145 | HRPM 9 | Employment Corporate Policy | | |
| 146 | HRPM | Request for Employee Discharge form | | |

| Ex. No. | Bates No. | Designation/Description | Identified | A |
|---|---|---|---|---|
| | 489-90 | | | |
| 147 | 18254 | Jennifer Roman's offer letter | | |
| 148 | 18256-57 | Roman's job application | | |
| 153 | 18279-87 | Memo and purchase orders re Roman's SOHO package | | |
| 154 | 10622-24 | Hale's resumes | | |
| 155 | 28399 | Hale's Employee Data Sheet | | |
| 156 | 26039 | Daniels' Employee Data Sheet | | |
| 157 | 26040 | Personal Requisition/Status Change form showing Daniels receiving $10,000 increase authorized by Horne and Helms | | |
| 158 | 26044 | E-mail from Daniels stating she will be working out of her home beginning 1/12/01. | | |
| 159 | 26105-06 | Daniels' 2001 Performance Review | | |
| 160 | 26110-12 | Daniels 1999 Performance Review | | |
| 162 | 27052 | Camacho-London's Employee Data Sheet | | |
| 163 | 27055 | E-mail from Camacho-London re her moving into her home office in June 2000 | | |
| 164 | 27090 | Camacho-London's 2001 Manager's Assessment by Karen Gray | | |
| 165 | 27091-92 | Camacho-London's 2001 Self-Assessment | | |
| 166 | 27093-94 | Camacho-London's 2001 performance review | | |
| 175 | 32006, 23008, 32009 | Roman's Weekly Calendar pages | | |
| 181 | 32339 | Revised list of Wendy Jensen Aylward's account redeployments | | |
| 184a - 184mmm m | 34703 - 35599 | Hyatt computer database document - activity on Plaintiff's Accounts by Other Salespeople October 2001-December 2002 | | |
| 185 | HRPM 000039-43 | Separation/Exit Interviews Policy | | |
| 199 | | Summary of Information Contained in Exhibits 38f, 38g, 38h, 38i, and 38j Based on the Contents of the Personnel Files of Named Individuals | | |
| 200 | BH 001852, 1854, 1857-62 | Awards Received by Barbara Hildebrandt | | |
| 201 | HRPM 000081-82 | Severance Pay Policy | | |
| 202 | JH000316 | John Horne's Employee Data Sheet | | |
| 203 | TH 000119 | Tyson Helms's Employee Data Sheet | | |
| 206 | | Defendant's Responses to Plaintiff's Discovery Requests | | |
| 222 | | Plaintiff's personnel file | | |
| 223 | | Selected records of Cincinnati Horticulture Society | | |

*Plaintiff has retained the same exhibit numbers as those used for deposition exhibits in order to avoid having two different numbers on the same exhibit. Because not all deposition exhibits are being used at trial, and because some deposition exhibits are Joint Exhibits, there are gaps in the Plaintiff's exhibit numbers.

Plaintiff reserves the right to use all exhibits identified by Defendants in Appendix D.

Plaintiff reserves the right to offer exhibits taken from National Sales Force employee personnel records and other Hyatt documents produced in discovery proceedings if necessary during Plaintiff's case in rebuttal.

# APPENDIX D

## EXHIBITS OF DEFENDANTS

| **DESIGNATION DESCRIPTION** | **BATES NO.** | **IDENTIFIED/ADMIT** |
|---|---|---|
| 1. Employee handbook acknowledgment | 10250-10254 | |
| 2. Retirement Savings Plan withdrawal form | 10256-10258 | |
| 3. Letter detailing separation package to plaintiff | 10262 | |
| 4. Notice of group life insurance conversion | 10268 | |
| 5. Various conversion/distribution/insurance change forms and documents | 10268-10281 | |
| 6. Portions of personnel file of Jack Horne, including Bates Nos. 10441-10443 | 10441-10443 | |
| 7. Portions of personnel file of Ty Helms, including Bates Nos. 10456-10481 | 10456-10481 | |
| 8. Selected documents from personnel file of Molly Crompton as may be needed for rebuttal | 10494-10527 | |
| 9. Selected documents from personnel file of Barbara Hale as may be needed for rebuttal | 10528-10536 | |
| 10. Production numbers | 10702-10707 | |
| 11. Documents from employment file of Wendy Jensen Aylward as may be needed for rebuttal | 10708-11147 | |
| 12. Documents from employment file of Dawn Beagle as may be needed for rebuttal | 11148-11568 | |
| 13. Documents from employment file of Dean D'Anna as may be needed for rebuttal | 11569-11691 | |
| 14. Documents from employment file of Jane Johnson as may be needed for rebuttal | 11692-12288 | |
| 15. Documents from employment file of Mary Patton as may be needed for rebuttal | 12289-12386 | |
| 16. Documents from employment file of Mary Rocereto as may be needed for rebuttal | 12387-12885 | |
| 17. *Lists of employees | 14139 | |
| 18. *Mid-year reviews as may be needed for rebuttal | 14162-14176, 14190-14202 | |
| 19. Reduction in staff meeting materials | 14177-14189 | |
| 20. Documents from employment file of Maria Andriola-Pigg as may be needed for rebuttal | 18828-19158 | |
| 21. Documents from employment file of Donna Bongiovanni as may be needed for rebuttal | 19267-19493 | |
| 22. Documents from employment file of Michelle Bondanelli as may be needed for rebuttal | 19494-19552 | |
| 23. Documents from employment file of Marilyn Brumbaugh as may be needed for rebuttal | 19553-19836 | |
| 24. Documents from employment file of Jan Bansfield as may be needed for rebuttal | 19837-20466 | |

| 25. | Documents from employment file of Ingeborg Spindola as may be needed for rebuttal | 21635-21722 | |
|-----|-----|-----|-----|
| 26. | Documents from employment file of Loretta Venezia as may be needed for rebuttal | 27123-21923 | |
| 27. | Documents from employment file of Rob Sarmiento as may be needed for rebuttal | 22178-22268 | |
| 28. | Documents from employment file of Wanda Wallace as may be needed for rebuttal | 22269-22367 | |
| 29. | Documents from employment file of Fred Reichelt as may be needed for rebuttal | 24091-24521 | |
| 30. | Documents from employment file of Melissa Daniels as may be needed for rebuttal | 26038-26612 | |
| 31. | Documents from employment file of Carol Buseman as may be needed for rebuttal | 26613-27050 | |
| 32. | Documents from employment file of Molly Crompton as may be needed for rebuttal | 27533-27814 | |
| 33. | Documents from employment file of Barbara Hale as may be needed for rebuttal | 28398-28485 | |
| 34. | Documents from employment file of Denise Cmiel as may be needed for rebuttal | 28486-28785 | |
| 35. | Documents from employment file of Mark Henry as may be needed for rebuttal | 28203-29295 | |
| 36. | Documents from employment file of Faye Memoli as may be needed for rebuttal | 29296-29426 | |
| 37. | Salaried employees' benefits program | 31992-31998 | |
| 38. | *Hyatt policies | 32257-32294 | |
| 39. | *Staff reduction employee data sheet | 32295-32299 | |
| 40. | *Open sales position listings | 32300-32324 | |
| 41. | *Ty Helms May 17, 2001 memo re sales chain expense savings and all attachments | 32325-32331 | |
| 42. | *Corporate sales-revenue generation tactics and highlights | 32332-32333 | |
| 43. | *Luxury market sales position and budget | 32334-32336 | |
| 44. | *Assignment of accounts documents from Jack Horne | 32337-32340 | |
| 45. | *Staff reduction list | 32353 | |
| 46. | *ABC list for reduction in force | 32354-32379 | |
| 47. | *Policy on promotions, new hires and transfers | 32481-32489 | |
| 48. | *Forecast of expenses-total company | 32490 | |
| 49. | *RevPAR document for 12 months | 32491 | |
| 50. | *Revised year end forecast | 32492-32495 | |
| 51. | *2001 performance comparison to 2000 | 32496 | |
| 52. | *Occupancy since Sept. 11 attack | 32497 | |
| 53. | *ADR since Sept. 11 attack | 32498 | |
| 54. | *Revenue from Jan 1, 2001 through Sept 30, 2001 | 32571-32586 | |
| 55. | *2001- 2002 W-2s of Molly Crompton, Barbara Hale, Jennifer Roman, Ingeborg Spindola, Fred Reichelt and Melissa Daniels-Andros | 33513-33524 | |
| 56. | *RECC tactics with actual greater than Plan 2001 and $2,500 | 33525-33551 | |
| 57. | *Daily activity by all Spirit sources- domestic | 33552-33557 | |

| | | | |
|---|---|---|---|
| 58. | *John Orr divisional meeting- financial results & analysis - 7/30/01 | 33558-33567 | |
| 59. | *Lindgren divisional meeting- financial results & analysis- 4/23/01 | 33568-33580 | |
| 60. | *2001 performance summary | 33581-33595 | |
| 61. | *Lewin divisional meeting financial results & analysis- 4/24/01 | 33596-33608 | |
| 62. | *Daily activity for all Spirit sources prior to & following 9/11/01 | 33609-33617 | |
| 63. | *90 day forecasts for total properties & comparable properties- 4/01 – 12/01 | 33618-33631 | |
| 64. | *Hyatt domestic group cancellations- 2001 & 2002 lost following 9/11/01 | 33632 | |
| 65. | *Day by day performance statistics & percent change | 33633-33685 | |
| 66. | *Monthly financial statements- total company & total company-comparable | 33686-33703 | |
| 67. | *2001 quarterly & year end financial results (2000 v 2001) | 33704-33708 | |
| 68. | *Financial statements 1/01 – 12/01 | 33709-33721 | |
| 69. | *Letters to hotel managers re reductions in corporate directed programs | 33721-34102 | |
| 70. | 90 day forecasts | 34103-34106 | |
| 71. | Definite referral production reports 1/1/01 – 12/31/02 | 34130- | |
| 72. | Selected portions of the Classified section of The Cincinnati Enquirer from Sunday, November 4, 2001 through Sunday, November 2, 2003; July 6-12, 2004 Career Builder Weekly of the Enquirer & Post; July 5-July 12, 2004 Queen City Jobs | | |
| 73. | "Our Employee Relations Policy" from Hyatt manual (produced in its entirety) | | |
| 74. | Open Door Policy from Hyatt manual (produced in its entirety) | | |
| 75. | Policy Against Harassment from Hyatt manual (produced in its entirety) | | |
| 76. | Policy Against Harassment from Hyatt Hotels policy manual, last revised May 1999 | 010632-010633 | |
| 77. | Corporate Ethics Statement | 010634-010639 | |
| 78. | Hyatt Hotels Corporation Policy Against Harassment | 010640 | |
| 79. | Acknowledgment of Policy Against Harassment | 010641 | |
| 80. | Corporate office employee handbook | 010642-010665 | |
| 81. | *Expert report of David Berins and attachments | | |
| 82. | Spreadsheet showing percent of achievement to yearly quota 01/07/02-01/07/07 | 010705 | |
| 83. | *Summary listing of employees in Central National Sales Force, with indications of age, dates of hire, compensation range | | |
| 84. | *Summary listing of information contained in Affidavits of Doug Patrick, indicating age breakdown and identities of persons affected by reduction in force, both in corporate office, company-wide, and in the National Sales Force, based on NSF personnel files | | |

| | | | |
|---|---|---|---|
| 85. | *Summary listing/graphic demonstration of financial data contained in documents identified as Bates Nos. 33552-33721 | 33552-33721 | |
| 86. | *Summary listing of plaintiff's accounts and their re-deployment | | |
| 87. | *Summary listing of members of Central National Sales Force, with comparison of age, years of service, compensation, and other factors based on NSF personnel files | | |
| 88. | *Summary document requesting verbiage in Hyatt's harassment, equal employment opportunity, open door, and ethics policy | | |
| 89. | All Interrogatory responses from Plaintiff | | |
| 90. | May 7, 2002 letter from Jack Horne to Barb Loder regarding an opening in Dearborn, Michigan | | |
| 112. | May 9, 2002 letter from Theresa Gallion to Robert Steinberg regarding job openings within National Sales | | |
| 113. | April 30, 2002 letter from Theresa Gallion to Robert Steinberg regarding openings in the National Sales Force | | |
| 114. | April 15, 2002 letter from Jack Horne to Barb Loder regarding an opening within National Sales | | |
| 115. | April 15, 2002 letter from Jack Horne to Wendy Jensen regarding an opening within National Sales | | |
| 116. | April 10, 2002 letter from Jack Horne to Barb Loder regarding an opening within National Sales | | |
| 117. | April 10, 2002 letter from Jack Horne to Wendy Jensen regarding an opening within National Sales | | |
| 118. | April 12, 2002 letter from Theresa Gallion to Robert Steinberg regarding an opening in National Sales Force | | |
| 119. | April 17, 2002 letter from Theresa Gallion to Robert Steinberg regarding openings within National Sales | | |
| 120. | May 7, 2002 letter from Jack Horne to Wendy Jensen regarding an opening in Dearborn, Michigan | | |
| 121. | May 7, 2002 letter from Jack Horne to Mary Rocerto regarding an opening in Dearborn, Michigan | | |
| 122. | May 7, 2002 letter from Jack Horne to Dawn Beagle regarding an opening in Dearborn, Michigan | | |
| 123. | May 23, 2002 letter from Theresa Gallion to Robert Steinberg regarding National Sales Force job openings | | |
| 124. | Trial aid representing business mix of each person in the Central National Sales Force | | |
| 125. | NSF account re-deployment | Plaintiff's discovery exhibit | |

| | | | |
|---|---|---|---|
| | | 183 | |
| 126. | Memo and charts from J. Horne re account redployments for D'Anna, Aylward, Roussel, Smith, Gills, Roman, Beagle, Rocereto, Hildebrandt, Patton, and Johnson | 32341 - 52 | |
| 127. | Bruce Small affidavit of Feb. 10, 2003 and attachments | | |

*Denotes an exhibit that may be used as a trial aid or from which information may be extracted for use in a demonstrative exhibit, pursuant to the agreement of the parties.

Defendant reserves the right to use and introduce all exhibits listed by Plaintiff on her exhibit list.