UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BARBARA LODER HILDEBRANDT,    )
)
    Plaintiff,    )
)
vs.    )    Case No. C-1-02 0003
)
HYATT CORPORATION, et al.,    )    Judge Sandra Beckwith
)
)
    Defendants.    )
)

## DEFENDANTS' TRIAL BRIEF

        Defendants HYATT CORPORATION ("Hyatt"), TY HELMS ("Helms") and JACK HORNE ("Horne"), by and through their undersigned counsel, submit the following trial brief:

## I.    INTRODUCTION

        Plaintiff Barbara Loder Hildebrandt ("Plaintiff") claims that Hyatt and individual Defendants Helms, and Horne, discriminated against her on the basis of her age in violation of the Ohio Civil Rights Act ("OCRA"), Ohio Revised Code ("O.R.C.") Chapter 4112, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.,* ("ADEA") when her position was eliminated. Plaintiff will be unable to prove that she was subject to age discrimination.

        Plaintiff, who was born on September 23, 1952, was employed at Hyatt for approximately 22 years. On February 1, 1996, Plaintiff joined Hyatt's National Sales Force ("NSF") in the position of Director of National Accounts. Hyatt's NSF sells hospitality services to large companies or organizations undertaking business in multiple cities, and consequently, offering business

opportunities with multiple Hyatt hotels. The NSF sales staff is ordinarily responsible for approximately 40% of Hyatt's annual business. As the Director of National Accounts, Plaintiff was responsible for securing business with companies or entities requiring hospitality services from a number of Hyatt's properties in different geographic locations.

### A.     The Economic Downturn In 2001 and Impact of September 11th Tragedy.

The evidence will show that in early 2001, the economy had begun to slow and the country was headed into a recession. Indeed, the nation was in financial turmoil with many businesses, including Hyatt's competitors, faced with a number of reductions and forced layoffs. Due to the ailing economy, Hyatt was experiencing financial difficulties as well. In fact, the evidence will show that in 2001, Hyatt realized a decline in its total income of over $400,000,000.00 from the previous year, and Hyatt's hotel owners realized profits almost $200,000,000.00 less than the previous year. As a result, all departments and hotels within Hyatt were asked to examine and implement various methods by which costs could be reduced. In May 2001, Hyatt implemented a number of cost-saving measures Company-wide. In the Sales Department, Hyatt narrowed each office down by 3% to save money on travel and related expenses. In May 2001, based on the recommendations of his staff, Helms implemented numerous cost-savings measures in the Sales Department, which impacted the NSF, including cutbacks in sales administration travel and expenses; eliminating the Divisional Director of Sales meeting; reducing sales administration promotional expenses; reducing each NSF office budget; and hiring employees for lesser starting compensation, if possible. Unlike its competitors, Hyatt was able to avoid layoffs during this time. Plaintiff has acknowledged that she was aware of the financial turmoil during this period.

After the tragedies of September 11, 2001, Hyatt experienced extremely low occupancy rates. The evidence will show that in the days following September 11, Hyatt hotels lost over

Chicago 47413.1

2

$44,000,000.00 in business from immediate cancellations. In fact, Hyatt's business had dropped by $415,000,000.00 from the previous year, resulting in lack of work for thousands of employees. Not unlike other companies in the hospitality industry, Hyatt was forced to make difficult decisions to insure the continuing good health of the Company. Hyatt's two most senior officers, Scott Miller, and Ed Rabin, informed his direct reports, including Helms, that they must immediately undertake more aggressive cost-cutting measures.

### B.    The Reduction In Force In September 2001.

The evidence will show that Helms held a meeting with his direct reports, Jack Horne, Fred Shea, the Vice President of Field Sales Operations, Rob Sarmiento, the Assistant Vice President of International and Individual Travel, and Steve Enselein, the Assistant Vice President of Catering and Convention Services, and requested that each examine the business environment from three perspectives: (1) costs savings opportunities; (2) minimizing lost production to the Company; and (3) impacting the fewest employees. Horne then evaluated the employees in the NSF and ranked them in three categories, A, B, and C, according to how essential their continued employment was to the Company's survival. Specifically, Horne analyzed each NSF position from the standpoints of impact on production, make-up of client accounts and customer relationships. He focused on maintaining excellent service for the customer, the geographic locations of all NSF salespeople, their respective mixes of business, and whether the customer base was individual versus group travel, or national versus international travel. He also considered other factors such as special service to the Company.

Ultimately, Horne made the decision to eliminate 10 of the approximately 77 NSF sales positions, after consultation with Helms and other senior managers. The ten persons affected by the reduction in force were: Mary Rocereto, Dawn Beagle, Jane Johnson, Barbara Loder

Chicago 47413.1

3

Hildebrandt, Mary Patton, Dean D'Anna, Wendy Jensen Aylward, Cardella Gills, Herve Roussel, and Gayle Smith. The group was composed of 8 individuals age 40 or older and 2 under the age of 40.

A statistical analysis of the National Sales Force fails to demonstrate any animus against employees age 40 and over. Prior to the reduction in force, the sales personnel in the NSF included only approximately six (9%) employees between the ages of 20 and 29; 28 (36%) employees between the ages of 30 and 39; 34 (44%) employees between the ages of 40 and 49; and 9 (12%) employees age 50 or over. A total of 56% (43 employees) in the NSF were 40 years of age or more at all relevant times. After the reduction in force, of the same group of employees, six (9%) employees were between the ages of 20 and 29; 26 (39%) were between the ages of 30 and 39; 26 (39%) were between the ages of 40 and 49; and 9 (13%) were age 50 or over. In other words, 52% of the NSF sales staff was still over the age of 40. Accordingly, before and after the reduction in force, the percentage of employees in each age category essentially remained the same. In fact, the percentage of employees in the age 50 and over category **increased** after the reduction in force occurred. Not a single person 50 and older was adversely affected by the staff reduction. Also, in each of the five National Sales Offices in the National Sales Force, numerous employees older than the individuals affected by the reduction in force were retained.

Horne will testify that he selected Plaintiff's position for elimination exclusively for business reasons, specifically his belief Hyatt would not lose production or revenue from the customers Plaintiff handled. Indeed, many of Plaintiff's clients did not meet the minimum criteria for inclusion in the NSF. Horne will further explain that neither performance nor seniority was a consideration in any of the job eliminations. Although there were new hires in the year 2001, those individuals

replaced other Directors of National Accounts or National Account Managers who had left their positions during that time.

On September 28, 2001, Plaintiff was informed that her position was being eliminated. The evidence will show that Plaintiff's position has not been replaced.

### C.    The Reassignment Of Plaintiff's Accounts.

Following the elimination of Plaintiff's position, a decision was made to assign Plaintiff's accounts to several current Directors of National Accounts who were already performing related work, with an instruction to assess the accounts. The evidence will show that Plaintiff's accounts were distributed to a diverse group of individuals for reassessment including individuals both over and under the age of 40. The ages of the individuals who were assigned Plaintiff's former accounts at the time of the reduction in force are as follows: Barbara Hale, 34; Molly Crompton, 33; Fred Reichelt, 45; Melissa Daniels, 35; Inga Spindola, 43; and Jennifer Roman, 32. Four of this group were in their 30's, and two were in their 40's. It will be evident based on the evidence to be introduced at trial that age had nothing to do with the reassignments of Plaintiff's accounts.

### II.    LEGAL ANALYSIS AND ARGUMENT

The ADEA prohibits employers from discriminating against "any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age." Title 29 U.S.C. § 623 (a)(1). Similarly, O.R.C. Chapter 4112 provides that employers may not discriminate against employees because of age. O.R.C. § 4112.14(A). Ohio courts apply the same analysis used in federal anti-discrimination case law when evaluating claims brought under O.R.C. Chapter 4112, and, thus, Defendants' analysis under federal and state law will be treated together for the purposes of this memorandum. *See Irwin v Marquette Medical Systems, Inc.*, 107 F. Supp. 2d 974,

Chicago 47413.1

5

981-982 (S.D. Ohio 2000), *citing Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196, 421 N.E.2d 128, 131-132 (1981).[1]

### 1.    Plaintiff Cannot Establish A *Prima Facie* Case Of Age Discrimination Against Hyatt.

Plaintiff will be unable to prove that her job was eliminated due to her age. Because Plaintiff will be unable to present any direct evidence of age discrimination such as comments or actions by any of the Defendants indicating an age-based decision or animus, the case will proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] *See Sublett v. Edgewood Universal Cabling Sys.*, 194 F. Supp. 2d 692, 702 (S.D. Ohio 2001). Under *McDonnell Douglas Corp.*, although the burden of production may shift from the plaintiff to the defendant, the burden of persuasion remains with the plaintiff throughout the analysis. *See Irwin*, 107 F. Supp. 2d at 982. Using the *McDonnell Douglas* burden shifting analysis, a plaintiff must first establish a *prima facie* case of discrimination. *See Rob v. Lakeshore Estates, Inc.*, 241 F.3d 491, 497 (6th Cir. 2001).

Generally, to establish a *prima facie* case of discrimination, a plaintiff must demonstrate (1) she is a member of a protected class; (2) that an adverse employment action was taken against her; (3) that she was qualified for the position; and (4) that she was replaced by an employee outside of the protected class. *See Irwin*, 107 F. Supp. 2d at 982. In the event of a workforce reduction,

---

[1] A significant difference in the analysis of federal and Ohio anti-discrimination laws is that individual supervisors can be held jointly and severally liable under O.R.C. Chapter 4112, unlike under Title VII and the ADEA. *See Genaro v. Central Transport, Inc.*, 84 Ohio St. 3d 293, 300, 703 N.E.2d 782, 787-788 (1999).

[2] The only alleged "direct evidence" to which Plaintiff points is the purported "dinosaur" comment by Horne, which is a stray remark and, on its face is unrelated to age and cannot under the direct evidence standards in this Circuit, establish discrimination on its own. Defendants have filed a Motion in Limine to exclude any reference to Horne's alleged comment. Moreover, even if Horne did utter this comment, which he did not, it was not heard by Plaintiff nor was it related to the reduction in force in September 2001 which affected individuals both under and over 40 years of age. Clearly, this alleged comment by Horne is not age-specific, and was made in connection with a male employee's voluntary resignation in or about April 2001. Mr. Horne specifically was focused on years of service, which is analytically distinct from consideration of age. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993).

Chicago 47413.1

however, to satisfy the fourth prong of a *prima facie* case, a plaintiff must proffer "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons." *Irwin*, 107 F. Supp. 2d at 982; *Barnes v. GenCorp Inc.,* 896 F. 2d 1457, 1465 (6th Cir. 1990).  Absent such a requirement, every discharged person age 40 and over would be able to establish a *prima facie* case of discrimination in a work force reduction. *See Barnes*, 896 F.2d at 1465.   Plaintiff will be unable to present any "additional direct, circumstantial, or statistical evidence tending to indicate that [Hyatt] singled out [Plaintiff] for discharge for impermissible reasons."   There is no evidence whatsoever linking Plaintiff's age to the decision made to terminate her employment in connection with the reduction in force. *Irwin*, 107 F. Supp. 2d at 982.

Once a plaintiff has established a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Barnhart v. Pickrel, Schaeffer Ebeling Co., L.P.A*, 12 F.3d 1382, 1390 (6th Cir. 1993).  If the employer produces evidence of a legitimate, non-discriminatory reason, a determination of which can involve no credibility assessment, the burden of persuasion shifts back to the plaintiff to show that the employer's reason is a pretext for intentional age or gender discrimination. *See Roh*, 241 F.3d at 498. Pretext may be demonstrated by showing (1) the stated reasons had no basis in fact; (2) the stated reasons were not the actual reasons; and (3) the stated reasons were insufficient to explain the discharge. *See Barnhart*, 12 F.3d at 1390; *Kline v. Tennessee Valley Auth.,* 128 F. 3d 337, 342-343 (6th Cir. 1997)(stating pretext may be demonstrated with a "direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible.")

Plaintiff cannot present any evidence permitting the jury to reach a finding that she was subjected to age discrimination. Even if she could set forth sufficient evidence to establish a *prima facie* case, Plaintiff cannot show that Defendants' articulated legitimate, non-discriminatory reasons for eliminating her position pursuant to a legitimate workforce reduction were pretextual.

> ### a.    Allegations That Defendants Hired "Young People" Into the NSF During 2001 And Planned To Reduce Hyatt's Workforce Fail to Prove Age Discrimination.

Defendants anticipate that Plaintiff will attempt to introduce evidence regarding employees hired into NSF in 2001. Any evidence offered by Plaintiff regarding the alleged "hiring of young people" into the NSF during 2001 has no relation to the Reduction in Force that occurred in September 2001. Simply because the economy was experiencing a downturn in 2000 and 2001, did not somehow restrict Horne and Helms from hiring sales personnel into the NSF. There is no evidence whatsoever that Horne and Helms hired individuals into the NSF contrary to a Company directive restricting hiring. Moreover, the evidence will show that some of the individuals hired into the NSF in 2000 and 2001 such as Donna Bongiovanni, Richard Wood, Ron Keith, Dan Jones, Jim Williamson, Debbie Rodriguez, Eller Gerchick were over 40 years of age when they were hired. Regardless, the ages of these individuals are irrelevant to Plaintiff's claims with regard to her termination, as they were hired prior to Hyatt's decision to reduce its workforce.

> ### b.    Rationale Supporting Hyatt's Reduction In Force In No Way Demonstrates Age Animus.

Plaintiff will attempt to argue that because Hyatt's managing committee did not directly instruct Helms to terminate anyone in the NSF; because no specific cost savings goals were assigned to the NSF; because Horne was not given specific instructions regarding the reduction of the NSF;

Chicago 47413.1

and because Defendants did not complete the Business Process Review forms in a way Plaintiff believed was appropriate, such evidence established that the reductions in the workforce were based on the ages of the NSF employees affected. These assertions will be unsupported by any evidence, and simply constitute Plaintiff's disagreement with the nondiscriminatory processes used by Defendants when making extremely difficult decisions after the tragic events of September 11, 2001.

The evidence will show that the Business Process Review Form, which is part of Hyatt's Policy Manual, sets forth certain guidelines to utilize in a reduction in force. In examining these forms, however, it is evident that they are meant to be used in the field, or at the hotel level, as the wording on such forms shows a request flowing from a hotel general manager to a corporate office representative. Because the decisions regarding the NSF were taking place at the corporate level, and the directive to respond to the September 11 crisis came from the corporate office, the "bottom up" method of communicating contemplated on the Business Process Review form was unnecessary. In any event, persons under and over the age of 40 were adversely affected by the Reduction in Force, and nothing in Plaintiff's argument explains how the failure to use the same form for persons under 40 suggests age animus.

Further, simply because Home was not given specific direction and did not use the criteria Plaintiff would have selected, does not prove that the decisions were made on the basis of the age of the sales personnel. To the contrary, Home will testify regarding the criteria he considered; and will articulate his reasons for choosing the individuals who were eventually terminated. He made his decisions based neither on seniority nor performance but based on legitimate, nondiscriminatory business reasons. Simply because Plaintiff disagrees with Home's decisions and believes he should have considered production, long-term performance, history with the Company and other factors she would have chosen does not indicate such decisions were made on the basis of Plaintiff's age or

the age of any other member of the NSF. *See Hedrick v. Western Reserve Care System*, 355 F.3d 444, 462 (6th Cir. 2004).

>        c.    *Distributing Plaintiff's Accounts, In Part, To Molly Crompton*
>              *And Barbara Hale Does Not Evidence Age Discrimination.*

Defendants expect that Plaintiff will introduce evidence regarding the re-assignment of some of her accounts after the elimination of her position. Even if some of Plaintiff's accounts were given to younger employees, this, however, does not constitute evidence of a discriminatory animus on the part of Hyatt or its employees. *See Hooper v. Cargill, Inc.*, 1999 U.S. App. LEXIS 17969 at *13, *17 (6th Cir. July 23, 1999)(finding a plaintiff could not prove age discrimination in the context of a reduction in force "merely by showing that [the company] retained younger employees in jobs [the plaintiff] could have performed" and noting that an employer has no duty under the ADEA to permit an employee to transfer to another position or displace less senior workers when the employee's position is eliminated as part of a workforce reduction) (a copy of this unpublished case is attached hereto as Exhibit A).

The evidence will show that after the elimination of Plaintiff's position, other Directors of National Accounts, both under and over 40, who were already performing related work, were assigned the accounts with the instruction to assess the accounts. Of Plaintiff's approximately 47 accounts, 13 were given to Molly Crompton, (age 33, female), 4 were given to Jennifer Roman, (age 32, female), 22 were given to Barbara Hale, (age 34, female), 5 were given to Inge Spindola, (age 43, female), and 2 were given to Fred Reichelt, (age 45, male). Thus, her accounts were distributed to employees both over and under the age of 40.

>        d.    *Plaintiff's Focus On Other NSF Employees Affected By The*
>              *Reduction In Force Fails to Prove Age Discrimination.*

Chicago 47413.1

Plaintiff will seek to introduce evidence regarding other employees laid off in the NSF. Such evidence, even if permitted to be introduced by this Court, fails to prove that she was subject to age discrimination. The evidence will show that Hyatt retained numerous individuals who were older than or not substantially younger than Plaintiff and the other NSF sales personnel terminated during the reduction in force. In fact, individuals of the following ages were retained following the Reduction in Force: 40, 41, 42, 43, 44, 45, 47, 48, 49, 50, 51, 52, 56, and 57. Before and after the reduction in force, the percentage of employees in each age category, as a percentage of the sales personnel in the NSF, essentially remained the same. In fact, the percentage of employees in the age 50 and over category **increased** after the reduction in force occurred. Hyatt did not eliminate the position of a single person aged 50 or over, of which there were 9 in the NSF, which is incredible if the Defendants were intent on age discrimination. Clearly, Plaintiff cannot rely on statistical data to support her claim of age discrimination.

Plaintiff also will present evidence emphasizing the performance and length of service of the individuals who were terminated during the Reduction in Force. However, this ignores Horne's clear testimony that with regard to Plaintiff and her co-workers, performance and length of service were not considered when he made his decisions.

Based on the above reasons, Plaintiff has failed to establish each of the elements of a *prima facie* case for age or gender discrimination, and her claims fail as a matter of law.

> **2.    Even if Plaintiff Could Establish A *Prima Facie* Case For Age Discrimination, She Cannot Establish That Hyatt's Legitimate, Nondiscriminatory Reasons For Her Discharge Were Pretext For Discrimination.**

Even assuming, *arguendo*, that Plaintiff could present evidence sufficient to establish age discrimination, which she cannot, her claims will fail in any event, because Defendants will present evidence demonstrating legitimate, nondiscriminatory reasons for the elimination of Plaintiff's

Chicago 47413.1

position and Plaintiff cannot present evidence of a pretext. A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to motivate the challenged conduct. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). If a plaintiff can show that the defendant's proffered, non-discriminatory reason is pretextual, the trier of fact may infer discrimination. *See Roh*, 241 F.3d at 497-498. Nevertheless, the ultimate burden of proof to show discrimination remains on the plaintiff at all times. *See Herbst v. System One Info. Mgmt.*, 31 F. Supp. 2d 1025, 1034 (N.D. Ohio 1998).

In determining whether pretext exists, courts generally will not second-guess legitimate business decisions of employers. *See id.* at 1035[3]; *Ruth v. Allis-Chalmers Corp.*, 1986 U.S. Dist. LEXIS 26531 at *9-*11(stating that it is not the function of the court to second-guess the business decisions made by employers or to judge whether the employee's position should have been eliminated or whether the employer treated him fairly by not offering him another position, but instead exclusively to judge whether he was discriminated against on the basis of his age) (a copy of this unpublished case is attached hereto as Exhibit B). Further, in a pretext analysis, statements by nondecisionmakers or statements by decisionmakers unrelated to the decisional process itself cannot satisfy the plaintiff's burden to establish discriminatory animus. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998). Additionally, even decisions which appear to be made for reasons other than merit are not *per se* violative of federal law. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1096 (6th Cir. 1996). In *Betkerur*, the court recognized:

---

[3] In *Herbst*, the plaintiff attempted to rely on the employer's "cursory, unstructured, undocumented and subjective manner in which the defendant made its decision" and that the defendant failed to follow its own reduction in force policy. *Id.* The court rejected this argument and found there was a lack of contemporaneous documentation with regard to all employees affected by the reduction in force. *See id.* Moreover, the individual making the decision to eliminate jobs was familiar with job duties and performance and thus it was unnecessary to officially evaluate the affected employees prior to making his decision. *See id.*

> [T]he district court correctly found that charges of nepotism, even if proven, do not constitute evidence of impermissible discrimination . . . . While we share . . . distaste for a decision which appears to have been made for reasons other than merit, we do not believe that Title VII authorizes courts to declare unlawful every arbitrary and unfair employment decision. To hold that favoritism toward friends and relatives is *per se* violative of Title VII would be, in effect, to rewrite federal law. The list of impermissible considerations within the context of employment practice is both limited and specific: "race, color, religion, sex, or national origin." We are not free to add our own considerations to the list.

*Id.* at 1096 (citations omitted).

Hyatt will articulate a legitimate, non-discriminatory reason for Plaintiff's position elimination, namely, a reduction in force necessitated by well-known economic considerations. The reduction in force occurred for legitimate business reasons and was not implemented for any discriminatory purpose. Thus, even if Plaintiff is able to establish the *prima facie* elements of age discrimination in connection with the elimination of her position, she cannot establish that Hyatt's legitimate, nondiscriminatory reasons for her discharge, namely a reduction in force based on economic considerations, are pretext for discrimination.

Plaintiff will not be able to present any evidence that the elimination of her position was pretext for discrimination. Courts agree that "[w]hen a business is in a process of deliberately downsizing for legitimate financial reasons, economies of scale, an inference of discrimination does not automatically arise simply because one's job is terminated and the job duties redistributed among the reduced work force, even when that person is a member of a distinct age group or gender." *Frantz v. Beechmont Pet Hosp.,* 117 Ohio App. 3d 351, 358, 690 N.E.2d 897, 902 (1996). Plaintiff's position was eliminated during a workforce reduction, a business decision made by Defendants due to well-known and understandable economic factors, and Plaintiff will be unable to

present any evidence to the contrary, other than her own belief and speculation. *See Herbst,* 31 F. Supp. 2d at 1035 (holding that courts will not second-guess employer's business decisions).

Because Plaintiff cannot offer any evidence sufficient to allow a reasonable fact-finder to believe Hyatt or the individual Defendants acted with a discriminatory animus in eliminating her position, she fails to show Hyatt's proffered reasons for her position elimination were pretextual.

### III.    DAMAGES ISSUES

#### A.    Back Pay And Plaintiff's Failure To Mitigate Damages

Plaintiff claims entitlement to back pay in this case. Plaintiff has a duty to mitigate her damages by making reasonable efforts to find comparable alternative employment. *Ford Motor Co. v. EEOC,* 458 U.S. 219 (1982); *Katch v. Speidel, Div. Of Textron,* 746 F.2d 1136 (6th Cir. 1984); *see also Lathem v. Dept. of Children and Youth Services,* 172 F.3d 786, 794 (11th Cir. 1999) (Title VII requires former employees to mitigate their damages through reasonably diligent efforts to seek employment that is substantially equivalent).

Here, Plaintiff was not reasonably diligent in seeking other employment. At the time of her lay-off, Plaintiff was only 49 years old, with over 20 years of experience and contacts in the hospitality industry. Yet eight months after her lay-off, Plaintiff elected to take a position with a small, local non-profit organization, the Cincinnati Horticultural Society, earning approximately $30,000 a year, or less than one-third of what she had earned at Hyatt. Pursuant to Plaintiff's employment agreement with the Cincinnati Horticultural Society, she has not actively looked elsewhere for other employment. To the limited extent that Plaintiff has considered other

employment opportunities since her hiring with the Cincinnati Horticultural Society, the positions have been, for the most part, with other non-profit organizations. Furthermore, in May 2001, just a few months before her lay-off from Hyatt, Plaintiff married a local judge. Because of her husband's position, Plaintiff has expressed a strong preference for remaining in Cincinnati, and has made no affirmative efforts to look for positions in the hospitality industry outside of Cincinnati. Defendants should not be required to subsidize Plaintiff's deliberate decision to remain underemployed. *See Johnson v. Memphis Police Dept.,* 713 F.Supp. 244, 249 (W.D. Tenn. 1989) (defendant should not be required to finance in retrospect a plaintiff who took himself off the type of employment for which he was trained and undertook to leave and develop a different means of livelihood).

Accordingly, Plaintiff's damages, if any, must be reduced by the amount she could have earned through the exercise of reasonable diligence.

### B.    Front Pay Issues

Plaintiff also seeks entitlement to front pay. The determination of whether to award front pay is within the discretion of the trial court. *Suggs v. Servicemaster Education Food Management,* 72 F.3d 1228, 1234 (6th Cir. 1996). In determining whether front pay is awardable, the court should consider the employee's duty to mitigate; the availability of employment opportunities; the period within which, through reasonable efforts, the plaintiff might have secured substitute employment; the employee's work and life expectancy; and other pertinent factors. *Roush v. KFC Nat'l Mgmt. Co.,* 10 F.3d 392, 398 (6th Cir. 1993). The purpose of front pay is to temporarily compensate the employee while she seeks comparable employment and not to give long-term compensation from the date of the verdict to retirement. *See O.J.I.,* § 266.27[2].

This Court should exercise its discretion to deny Plaintiff any entitlement to front pay in this case, or, alternatively, any such award should be greatly reduced from the amount Plaintiff seeks.

Chicago 47413.1

Plaintiff is only in her early 50's, and there is no reason to believe that, through the exercise of reasonable diligence, she could not have found comparable employment by now, or certainly by some point well before retirement age. A front pay award to Plaintiff until age 65 or beyond – a period of over a decade – would be unduly speculative. *See Stafford v Electronic Data Systems Corp.*, 749 F. Supp. 781, 791 (E.D. Mich. 1990) (42 year old plaintiff does not have the right "to have his former employer fund his retirement while he pursues avocational interests… off into an unlimited future," as this would amount to a windfall for the plaintiff). Here, as discussed above in connection with her back pay claim, Plaintiff has made a conscious decision to remain under-employed, rather than to engage in a diligent search for comparable jobs in the hospitality industry. The Sixth Circuit has reversed an award of front pay to a plaintiff in an employment discrimination case where her "intentional limitation of her income… terminate[d] any entitlement to front pay which she may otherwise have had." *Roush*, 10 F.3d at 400.

### C.     Liquidated And Punitive Damages

Plaintiff seeks liquidated damages under the ADEA. To recover such damages, Plaintiff must prove that Defendants acted "willfully," which requires more than simply a showing that age was a determining factor in the decision to eliminate Plaintiff's position. 29 U.S.C. § 626(b). Rather, Plaintiff must show that Defendants knew that the elimination of her position was a violation of the law, or that they acted in reckless disregard for the requirements of the ADEA in doing so. *See Schrand v Federal Pacific Electric Co.*, 851 F.2d 152 (6th Cir. 1988). Here, even if Plaintiff were able to establish a violation of the ADEA in connection with the elimination of her position, there is no evidence that Defendants acted "willfully," within the meaning of the ADEA.

Plaintiff also seeks recovery of punitive damages under the Ohio Civil Rights Act. To prove entitlement to punitive damages under the OCRA, Plaintiff will have to show that Defendants acted

with actual malice. *See Sutherland v. Nationwide Gen. Ins. Co.*, 96 Ohio App. 3d 793, 810 (1994),

*discretionary appeal den'd*, 73 Ohio St. 3d 1426 (1995). Actual malice is (1) a state of mind

characterized by hatred, ill will or a spirit of revenge; or (2) a conscious disregard for the rights and

safety of other persons that has a great probability of causing substantial harm. *Preston v. Marty*, 32

Ohio St. 3d 334, 512 N.E. 2d 1174 (1987). Plaintiff must establish actual malice by clear and

convincing evidence. Plaintiff will not be able to show, by clear and convincing evidence, that

Defendants acted with actual malice so as to support an award of punitive damages under the

OCRA. There is no evidence to support the conclusion that, in selecting Plaintiff's position for

elimination as part of a reduction-in-force, Defendants were motivated by "hatred, ill will or a spirit

of revenge," or that they acted in "conscious disregard" for Plaintiff's rights.[4]

## III.    CONCLUSION

For the foregoing reasons, judgment should be entered in favor of Defendants.

DATED this 30th day of July 2004.              Respectfully submitted,

                                                FISHER & PHILLIPS LLP
                                                1250 Lincoln Plaza
                                                300 South Orange Avenue
                                                Orlando, Florida 32801
                                                Telephone:    (407) 541-0888
                                                Facsimile:     (407) 541-0887

                              By:    s/Theresa M. Gallion by
                                      s/Jeffrey J. Harmon per telephone
                                      authorization of 7/30/04
                                      Theresa M. Gallion, Esq.
                                      Florida Bar No. 726801
                                      TGallion@LaborLawyers.com

                                      s/Jeffrey J. Harmon

---

[4] Plaintiff also seeks compensatory damages for alleged "emotional distress." She is not entitled to recovery of such damages either. Plaintiff's distress or mental anguish, if any, is no more than what any employee would experience upon the elimination of his or her position.
Chicago 47413.1

Jeffrey J. Harmon
Ohio Bar No. 0032848
CORS & BASSETT
1881 Dixie Highway, Suite 350
Ft. Wright, Kentucky 41011
Telephone:      859-331-6440
Facsimile:      859-331-5337

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 30, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Stanley M. Chesley, Esq. and Robert Steinberg, Esq., Waite, Schneider, Bayless, & Chesley Co., L.P.A., 1513 Central Trust Tower, Cincinnati, Ohio, 45202, Michael J. O'Hara, Esq., O'Hara, Ruberg, Taylor, Sloan & Sergent, 209 Thomas More Park, Suite C, P.O. Box 17411, Covington, Kentucky 41017-0411.

s/Jeffrey J. Harmon
Jeffrey J. Harmon

Chicago 47413.1

18