LEXSEE 1999 US APP LEXIS 17969

**GARY L. HOOPER, Plaintiff-Appellant, v. CARGILL, INCORPORATED, Defendant-Appellee.**

**No. 98-5870**

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

*1999 U.S. App. LEXIS 17969*

**July 23, 1999, Filed**

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 206 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 206 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:**

Reported in Table Case Format at: *1999 U.S. App. LEXIS 27679.*

Certiorari Denied February 22, 2000, Reported at: *2000 U.S. LEXIS 1097.*

**PRIOR HISTORY:** On Appeal from the United States District Court for the Middle District of Tennessee. 97-00650. Nixon. 6-16-98.

**DISPOSITION:** AFFIRMED.

**LexisNexis(R) Headnotes**

**COUNSEL:** For GARY L. HOOPER, Plaintiff-Appellant: Frank Steiner, Ann Buntin Steiner, Steiner & Steiner, Nashville, TN.

For CARGILL, INCORPORATED, Defendant-Appellee: Paul E. Prather, J. Edward Wise, Steven W. Likens, Kiesewetter, Wise, Kaplan, Schwimmer & Prather, Memphis, TN.

**JUDGES:** Before: BOGGS, NORRIS, and BATCHELDER, Circuit Judges.

**OPINION:**

PER CURIAM. After Cargill, Inc. discharged Gary Hooper in a reduction in force, Hooper alleged age discrimination in violation of Tennessee and federal law. Hooper appeals from the district court's grant of summary judgment to Cargill, Inc. We affirm.

I

Born on November 1, 1949, Gary Lee Hooper began working for Mitchell Steel, Inc. in Nashville in 1972. In 1983, Cargill, Inc. ("Cargill") acquired [*2] Mitchell Steel's Nashville plant. Beginning (at the latest) in 1986, Hooper worked as a "Production Supervisor" for one of the three production shifts. Hooper consistently received performance evaluations of "good" and "very good." The Nashville plant's March 1996 loss of its largest customer forced the plant's General Manager to restructure and restaff the plant. As a result, in June 1996 Cargill fired Hooper (along with seven other employees) in a reduction in force.

On August 26, 1996, Hooper filed a complaint with the Tennessee Human Rights Commission and with the EEOC, alleging age discrimination. On June 17, 1997, Hooper filed a complaint in federal court alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA), *29 U.S.C. § § 621-634*, and the Tennessee Human Rights Act, *TENN. CODE ANN. § § 4-21-101 & 4-21-407 (1998)*. On June 12, 1998, the court granted Cargill's motion for summary judgment, and dismissed the case. It found that Hooper did not state a prima facie case of age discrimination and



EXHIBIT
A

1999 U.S. App. LEXIS 17969, *

that "there is absolutely no evidence linking the termination to Plaintiff's age."

II

Hooper argues on appeal that the [*3] district court erred by finding that he failed to satisfy the prima facie burdens of an ADEA age discrimination claim. First, he believes that "a reasonable juror could easily conclude that Hooper was replaced by [Robert] Tigg," a younger employee. Second, Hooper contends that, even if Tigg did not replace him, the record supports an inference that Cargill fired Hooper because of his age. Courts analyze claims under the Tennessee Human Rights Act under the same standards as federal discrimination law, *see, e.g., Bruce v. Western Auto Supply Co., 669 S.W.2d 95, 97 (Tenn. Ct. App. 1984)*, so we refer only to the ADEA claim.

A. Whether Cargill Replaced Hooper

A plaintiff may state a prima facie case of age discrimination by showing that (1) he belongs to the protected class; (2) he had the qualifications to perform the job; (3) he suffered an adverse employment action; and (4) his employer replaced him with a younger employee. *See, e.g., Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1081 (6th Cir. 1994)*. In a workforce reduction, however, a plaintiff faces a more significant burden. If his employer did not replace him, the plaintiff cannot state [*4] a prima facie case without presenting "evidence sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Barnes v. GenCorp Inc., 896 F.2d 1457, 1466 (6th Cir.), cert. denied, 498 U.S. 878, 112 L. Ed. 2d 171, 111 S. Ct. 211 (1990)*. "The mere termination of a competent employee when an employer is making cutbacks due to economic insufficiency is insufficient to establish a prima facie case of age discrimination." *LaGrant v. Gulf & Western Mfg. Co., 748 F.2d 1087, 1090 (6th Cir. 1984)*. "The plaintiff in such reorganization cases must come forward with additional direct, circumstantial, or statistical evidence that age was a factor in his termination in order to establish a prima facie case." *Id. at 1091*. Cargill concedes that Hooper satisfied the first three elements of the prima facie test, but it contends (and the district court agreed) that it did not replace Hooper with a younger employee.

Hooper argues that Robert Tigg, then 34 years old, replaced him, and that he thus stated a prima facie case even if he did not present evidence [*5] suggesting that Cargill intentionally discriminated. In our opinion in *Barnes*, we discussed the meaning of "replaced":

> [A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes, 896 F.2d at 1465*. The evidence shows that there is no dispute as to the material fact that Tigg did not replace Hooper; rather, Bob Pittard, the Plant Manager, placed Tigg in a new position that combined Tigg's old duties and many of Hooper's old duties. The "Statement of Undisputed Facts in Support of Cargill's Motion for Summary Judgment" contains four undisputed paragraphs that prove that Tigg did not replace Hooper:

> 56. Following the plant realignment and reduction in force, Tigg did not replace Hooper. Tigg continues to perform his former duties supervising the shipping and scheduling departments and also supervised [sic] the first shift production employees formerly supervised by Hooper. [*6]

> RESPONSE. Admitted only for purposes of this motion.

> . . . .

> 59. After the reduction in force, Tigg began performing Hooper's former supervisory duties **in addition to his own** and that Hooper's remaining duties were distributed among other existing employees who remained after the reduction in force.

> RESPONSE: Admitted only for purpose of this motion. However, Plaintiff would state that it was his understanding that Robert Tigg assumed the majority of his job duties.

> 60. Tigg did not receive a pay raise at the time he took over these additional duties.

> RESPONSE: Admitted only for purposes of this motion.

> 61. Hooper also formerly performed certain administrative duties (purchasing of plant supplies, handling employee records and time cards) that Tigg did not pick up and that are now being performed by other employees who were employed

prior to the reduction in force. These employees perform these duties in addition to their own duties.

RESPONSE: Admitted only for purposes of this motion.

(emphasis in original) (citations to record omitted).

Hooper argues on appeal that Tigg replaced him, but he does not address the admissions reprinted above. He seems to use "replacement" [*7] in its informal sense, rather than conforming his usage to the definition in the *Barnes* opinion. For example, he argues that, "In this case plaintiff agrees there was no replacement in the sense of new employees being hired, however there was a direct replacement of older employees by substantially younger, less qualified employees in the production supervisor position." True, where Gary Hooper (46) and Carl Allen (54) once supervised production shifts, now Robert Tigg (34) and John Patterson (30) supervise production shifts. Applying the *Barnes* interpretation of "replace," however, shows that Tigg did not replace Hooper: Tigg shouldered some of Hooper's duties (production supervisor) in addition to Tigg's duties (shipping and scheduling supervisor); Cargill distributed Hooper's remaining duties among existing employees performing related work. As for Hooper's assertion that "the same job title was retained with only a minor change in duties," Hooper produces no evidence to support his statement, and the evidence in the record belies his claim. n1

n1 Suggesting the existence of a prima facie burden more lax than the one we describe above, Hooper cites many cases from other circuits. For example, he filed as supplemental authority the opinion in *Miller v. Borden, Inc., 168 F.3d 308 (7th Cir. 1999),* and he claimed that the *Miller* opinion established burdens less onerous than those required of Hooper by the district court. Even if this court's opinion in *Barnes* did not control, we would not apply the reasoning in *Miller* to this appeal: *Miller* considers the burdens attending a case of a single discharge, not a reduction in force, and the opinion distinguishes reduction-in-force from single-discharge cases. *See Miller, 168 F.3d at 313 & n.1.*

[*8]

B. Whether the Evidence Permits an Inference of Age Discrimination

"The plaintiff in [cases of corporate reorganization or of a reduction in force] must come forward with . . . direct, circumstantial, or statistical evidence that age was a factor in his termination in order to establish a prima facie case." *LaGrant, 748 F.2d at 1091.* Hooper contends that the record supports the inference that Cargill fired him because of his age. Although Hooper offers some evidence to substantiate his claim, he fails to "eliminate[] the most common non-discriminatory explanations" for his firing. *Allen v. Diebold, Inc., 33 F.3d 674, 678 (6th Cir. 1994).* Little evidence suggests that Cargill considered Hooper's age, and Hooper certainly did not "present evidence of actions taken by the employer which, if unexplained, are more likely than not based on consideration of impermissible factors." *Ibid.* Hooper admits that Cargill suffered economic problems and had to fire someone, he just wishes that Cargill had not fired him:

Question: Who do you think should have gone -- or do you think somebody else should have gone rather than you? Hooper: I think somebody [*9] else should have gone rather than me. Question: Anybody in specific, or just somebody other than you? Hooper: Just somebody other than me, sir. Question: Okay. But not anybody in particular? Hooper: No, sir.

(J.A. 100-01).

Hooper presents a variety of arguments to contend that he stated a prima facie case of age discrimination. Hooper's reasons fall loosely into several categories:

1. Termination of a Qualified Employee, and the Relative Qualifications of Hooper & Tigg

Hooper emphasizes his annual performance evaluations, contending that the reviews portray him as exceptionally qualified. As this court noted in *Brocklehurst v. PPG Industries, Inc., 123 F.3d 890 (6th Cir. 1997),* however, "the decision to discharge [in a reduction in force] a qualified, older employee is not inherently suspicious. . . . In a RIF, qualified employees are going to be discharged." *Id. at 896.* Further, Hooper cannot deny that his May 1996 evaluation suggested that his "overall current performance" "needs improvement," nor can he deny that, in May 1995, the new General Manager, Frank Gettys, asked managers to raise their expectations, and that Cargill's national [*10] Human Resources director agreed with Gettys. Instead, Hooper argues that Gettys did not provide managers with explicit standards. He also correctly observes that Tigg's July 1994 and October 1995 evaluations (both by Pittard) are almost identical to each other (implying that the performance standards were not raised for Tigg).

Tigg's high 1995 rankings, assigned six months before Gettys asked Pittard to prepare for a reduction in force, suggest that Tigg performed well, not that Pittard intended to sabotage Hooper's career, and Hooper offers no evidence to the contrary. After Gettys's arrival, other employees (in addition to Hooper) received ratings lower than those they had previously received. Hooper makes the remarkable, unevidenced claim that "all of the objective records, including evaluations and past performance history, show that Hooper was an exceptional employee who clearly was more qualified than the younger employee who replaced him." Hooper's "subjective determination that he was better qualified," *LaGrant, 748 F.2d at 1091,* does not satisfy the burdens of a prima facie case of age discrimination. Pittard believed that Tigg would perform better in the [*11] consolidated position than would Hooper; although the evidence could support a contrary conclusion (*e.g.,* Hooper had far more supervisory experience than did Tigg), the record shows that Pittard could reasonably consider Tigg more qualified. n2

n2 An internal memo sent within Cargill's national Human Resources Department states that Hooper's many previous laudatory performance reviews represented a "potential problem," although the memo explains that increased performance expectations resulted in Hooper's lower 1996 evaluation. The memo does not permit the inference of age discrimination, however: merely because the company realized that an enterprising attorney might attempt to use the performance reviews as evidence does not, without more, render either the reviews or the evaluation of potential legal problems probative of discriminatory intent.

2. Hooper's Seniority, Drake's Comment About Hooper's Salary, & "Statistics"

The documents in the joint appendix contain no direct evidence of age discrimination. [*12] Hooper believes that an inference of discrimination arises from his seniority, his relatively high salary, and from Russell Drake's alleged comment that Cargill fired Hooper because he "earned too much." n3 Hooper admits that Cargill does not have a seniority system regarding salaried employees that required it first to fire the least-senior employees. He also agrees that he did not receive raises merely because of his age. Thus, even if Cargill targeted Hooper because of his seniority and salary, it did not violate the ADEA: "Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is

incorrect to say that a decision based on years of service is necessarily 'age based.'" *Hazen Paper Co. v. Biggins, 507 U.S. 604, 611, 123 L. Ed. 2d 338, 113 S. Ct. 1701 (1993); see also Allen v. Diebold, Inc., 33 F.3d 674, 677 (6th Cir. 1994)* ("Plaintiffs must allege that Diebold discriminated against them because they were old, not because they were expensive.").

n3 Drake, the Production Manager, served as Hooper's immediate supervisor. Cargill observes that Drake testified that Gettys and Pittard did not discuss Hooper's salary with Drake--strong evidence that, if Drake made the comment to Hooper, Drake relied on his subjective judgment, and not on the expressed judgment of Cargill's decisionmakers.

[*13]

Hooper also refers to "statistics" to prove his case: "Here the average age of defendant's two production supervisors [Hooper and Allen] before the reorganization was 50 and after the reorganization was 32 [Tigg and Patterson]. When the comparison is to all salaried employees, before the reorganization the average age was 39.8 and the average age for the four salaried employees terminated was 45."

Hooper's first statement misleads. Cargill reconfigured the jobs, so Tigg and Patterson do not hold the same jobs--they merely assumed some of the duties. Hooper cannot prove age discrimination merely by showing that Cargill retained younger employees in jobs that Hooper could have performed. *See, e.g., Barnes, 896 F.2d at 1465.* Further, Cargill did not fire Allen (then 54). Instead, it permitted him to stay on salary until he reached age 55 and qualified for early retirement; even after reaching 55, he continued to work as an hourly employee (and, as of December 1997, he still worked at Cargill). Additionally, if Pittard could reasonably find Tigg superior to Hooper, Cargill's alleged discrimination against Allen would not bolster Hooper's age discrimination claim. [*14] *See, e.g., Barnes, 896 F.2d at 1475.*

As for Hooper's second statement (concerning average age), the extremely small sample size reduces the probativeness of the averages. *See, e.g., Brocklehurst, 123 F.3d at 897* (questioning the strength of discrimination claims based on small samples of employees); *Black v. City of Akron, 831 F.2d 131, 134 (6th Cir. 1987).* Cargill fired eight employees in the reduction in force, and appears to have fired only three salaried employees, as it permitted Allen to stay: Maria Burkett (then 36), Durenda Hood (then 45) and Hooper (then 46)--resulting in an average age of 42.33, not 45,

for the terminated salaried employees. Further, Burkett, Hood, Hooper, and Allen appear to have held low-ranking salaried positions, which suggests that Cargill released them because they did not hold vital positions, and not because of their age.

3. Cargill's Approach to the RIF: Pittard's Rankings and Refusal to Permit Transfer

Pittard bore responsibility for much of the planning of the reduction in force: he wrote a May 13, 1996 draft proposal reorganizing the plant's management structure and suggesting that Cargill [*15] fire six salaried employees, including Hooper; he prepared the May 30 or 31, 1996 evaluations of five employees to decide who would fill the position eventually assigned to Tigg; he presided over Drake's May 31, 1996 performance review of Hooper; and he spoke with Hooper when he fired him. Hooper complains about the chronology of the first three events, pointing out that, as of May 13, Pittard found him dispensable. Although Pittard could not remember many of the factors that influenced him when he compared the five employees in late May, Hooper has not shown that Pittard sought to justify his May 13 recommendation by doctoring the comparisons or by pressuring Drake to give a negative review. As Gettys commented, "You don't go in the day of a RIF and throw something to the wall and see if it sticks. You have to start planning . . . ." Even if we infer that Pittard made a decision in May 13 and later acted to justify the decision, the inference does not suggest that Pittard targeted Hooper because of his age.

A dispute persists regarding Pittard's failure to offer Hooper the ability to transfer to another plant. In his deposition, Hooper testified that, "When I went to Mr. Pittard's [*16] office on June 27th to get terminated, I asked him at that point was there any option for transfer, and he told me no." In his affidavit, Hooper declares that Pittard did not offer a transfer and that, had Pittard offered, Hooper would have accepted. On appeal, Hooper states without citation that Cargill "had a *policy* of transferring employees if they were caught in a reduction in force" (emphasis added).

Cargill does not appear to have a policy of transferring employees, however, Pittard testified that, in 1986, the Nashville plant implemented a reduction in force and that, to his knowledge, Cargill did not offer transfers. When questioned about the 1996 reduction in force, Pittard testified that Dave Lewis, Cargill's national Human Resources manager, told him that transfers "would not be an option." Although the joint appendix contains only portions of Lewis's deposition, the joint appendix reprints segments in which he suggests that Cargill "would try to accommodate" employees if they wished to transfer, "an opening was available and also the employee possessed the technical skills and competencies to in essence fill the vacancy, yes, that would be considered." He testified [*17] that he did not remember if anyone in the Nashville plant asked him about transferring the fired employees, and that he did not remember if he "approached the issue of transferring."

Hooper presents no evidence that Cargill gave any fired Nashville employee the option to transfer. Lewis's comments suggest that Cargill permits transfers only when convenient, and not as policy, and Pittard testified that Lewis told him that transfers "would not be an option." Especially in the absence of a company policy permitting or encouraging transfers in case of a reduction in force, Cargill's behavior does not support an inference of discrimination. "This Circuit has clearly established that an employer has no duty under ADEA to permit an employee to transfer to another position or to displace workers with less seniority when the employee's position is eliminated as part of a work force reduction." *Barnes, 896 F.2d at 1469.*

III

Hooper presents no substantial arguments that the district court did not address in its opinion. Faced with pressing financial difficulties, Cargill had to fire someone; although Hooper understandably wishes that Cargill had fired someone else, he does [*18] not show that Cargill chose to fire him because of his age. For the reasons given above, the judgment of the district court is AFFIRMED.

LEXSEE 1986 US DIST LEXIS 26531

**ROBERT J. RUTH, Plaintiff v. ALLIS-CHALMERS CORPORATION d/b/a AMERICAN AIR FILTER COMPANY, Defendant**

No. C 83-0360-L(B)

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY**

*1986 U.S. Dist. LEXIS 26531; 40 Fair Empl. Prac. Cas. (BNA) 1227; 40 Empl. Prac. Dec. (CCH) P36,349*

**April 18, 1986, Decided and Entered**

**LexisNexis(R) Headnotes**

**OPINIONBY:** [*1]

BALLANTINE, JR.

**OPINION:**

MEMORANDUM

THOMAS A. BALLANTINE, JR., UNITED STATES DISTRICT JUDGE

This case is before the Court on motion of the defendant, Allis-Chalmers Corporation, d/b/a American Air Filter Company (AAF), for summary judgment. The complaint against defendant was brought pursuant to the Age Discrimination in Employment Act of 1967 (ADEA), as amended, *29 U.S.C. § 621* et seq., and the Kentucky Civil Rights laws, *Ky.Rev.Stat. 344.010*, et seq.

A summary of the background of plaintiff's employment history with the defendant is set out in the Court's memorandum and order of February 11, 1985. The thrust of plaintiff's complaints about AAF is that after his position was eliminated in November of 1981, defendant should have considered him for a position as a Regional Sales Manager. In addition to requiring the duties performed by plaintiff in his position as Manager of Field Office Administration, the Regional Sales Manager positions required recent familiarity with the product line of the company.

Defendant's position is that plaintiff was not considered for one of the positions as Regional Sales Manager because of lack of recent product familiarity and because [*2] the company did not want to bear the expense of his relocation from Louisville to assume the position. It is undisputed that plaintiff's job was eliminated in the two major reorganizations occurring in 1980 and 1981 and that at that time plaintiff did not protest the elimination of his job or request consideration as a candidate for a Regional Sales Manager position. Plaintiff, did, however, indicate on a form which was part of a progress review, a career goal as Sales Manager or Marketing Manager of a Division.

Defendant alleges in its motion for summary judgment that plaintiff has failed to produce any evidence whatsoever of any discrimination by American Air Filter on the basis of age. The major issue before the Court at this time is whether plaintiff has presented a prima facie case sufficient to withstand defendant's motion for summary judgment.

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual . . . because of [his] age . . . ." *29 U.S.C. § 623*(a)(1). The statute was enacted for the purpose of protecting the older worker, for whom no protection was offered under Title VII of



EXHIBIT

B

1986 U.S. Dist. LEXIS 26531, *; 40 Fair Empl. Prac. Cas. (BNA) 1227;
40 Empl. Prac. Dec. (CCH) P36,349

the Civil Rights Act of 1964, *42 U.S.C. § 2000e* [*3]  et seq. The ADEA prohibits discrimination against those employees who are between the ages of forty and seventy. Its purpose is not to guarantee a job to the older worker or to secure his employment at the expense of younger workers, but only to assure that his age is afforded a neutral status in the decision whether to retain or terminate him. Because of the inevitability of the aging process and the frequency with which discharged employees will be replaced by others younger than they, an age discrimination analysis does not lend itself to automatic assumptions based upon the replacement of a worker by one who is younger. *Laugesen v. Anaconda Company, 510 F.2d 307, 313 n. 4 (6th Cir. 1975).*

Nevertheless, the case of *McDonnell Douglas v. Green, 411 U.S. 792 (1973),* is often used as a point of departure for establishing the elements of age discrimination. McDonnell Douglas outlined the elements of racial discrimination which, when modified to fit age discrimination cases, would require a plaintiff to prove that: (1) he was a member of the protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person. *Ackerman* [*4]  *v. Diamond Shamrock Corp., 670 F.2d 66, 69 (6th Cir. 1982).*

However, when applied to a reduction in forces within a company or to a corporate reorganization, the Ackerman guidelines will not allow the plaintiff to establish a prima facie case. In the instance of a corporate reorganization, a plaintiff is generally not able to show that he was replaced by a younger person, and he is unable to satisfy the elements of a prima facie case without this showing. *LaGrant v. Gulf & Western Mfg. Co., Inc., 748 F.2d 1087, 1090 (6th Cir. 1984); Sahadi v. Reynolds Chemical, 636 F.2d 1116 (6th Cir. 1980).* In a reorganization case, where the plaintiff was not directly replaced by a younger employee, the plaintiff is required to come forward with additional direct, circumstantial, or statistical evidence that age was a factor in his termination. *LaGrant, 748 F.2d at 1091; Williams v. General Motos Corp., 656 F.2d 120 (5th Cir. 1981),* cert. denied, *455 U.S. 943 (1982).*

Whether in the typical discrimination case or in one involving a corporate reorganization, this circuit has espoused a case-by-case approach for analysis. *Sahadi, 636 F.2d at 1118 n.* [*5]  *3.* The ultimate issue is whether age was a determining factor in an employee's discharge. Use of the McDonnell Douglas criteria is neither required nor prohibited, but the criteria are not to be automatically applied. See, e.g., *Blackwell v. Sun Electric Corporation, 696 F.2d 1176, 1179 (6th Cir. 1983).*

In addition to the McDonnell Douglas guidelines, further proof of a prima facie case in an age discrimination action was required in *Rose v. National Cash Register Corp., 703 F.2d 225 (6th Cir. 1983).* In that case the Court stated that plaintiff had failed to present a prima facie case if there were no reasonable inference to suggest that he was discriminated against because of his age. *Id.* at 227, citing *Sahadi, 636 F.2d at 1117.* Hence, a prima facie case is established only when plaintiff presents some evidence that age was a factor in his discharge. A prima facie age discrimination case is one sufficient to withstand a motion for summary judgment or a motion for directed verdict. *Rose, 703 F.2d at 227; LaGrant, 748 F.2d at 1090.*

With the McDonnell Douglas formula as a general guideline, we find that insufficient evidence [*6]  in this case has been presented to establish a prima facie case of age discrimination. Mr. Ruth was a member of the protected class, being 62 years old at the time his employment with the defendant was terminated. He was discharged from his position. However, we find that he has not been able to demonstrate that he was qualified for the new position which he sought to fill, that of Regional Manager or Branch Manager. In addition, we find that plaintiff has presented insufficient direct or circumstantial evidence which would indicate that age was a factor in his discharge.

The primary area of disagreement between the parties concerns plaintiff's ability to fill the Regional Manager or Branch Manager positions which were filled by other employees. In arguing the point that he was qualified for these positions, plaintiff stated that in his own opinion the product line of American Air Filter had not substantially changed over the decades and that he could easily update himself to assume the responsibilities of a Regional Manager. The testimony of Frank Carroll established that in his opinion plaintiff with a six-month refresher course could become competent for any job within the [*7]  company, and he believed plaintiff would have been qualified as a Branch Manager in 1980 to 1982.

Despite the contentions of plaintiff and Mr. Carroll that only a limited training period would render plaintiff able to assume a Regional Manager position, it is admitted by all parties that at least some period of training would have been required before plaintiff could handle the new position. Plaintiff's belief is undoubtedly true, also, that $ 10,000 would be a small price to pay to relocate him when considering his years of service with the company. However, the company's lack of willingness to expend money to train him has no bearing in his age discrimination claim. These two circumstances do not in themselves give rise to the necessary inference that age discrimination was a determining factor in

1986 U.S. Dist. LEXIS 26531, *; 40 Fair Empl. Prac. Cas. (BNA) 1227;
40 Empl. Prac. Dec. (CCH) P36,349

plaintiff's discharge. Instead, they go to the business decisions exercised by the company during its two major reorganizations.

In Ackerman, the Court stated that the ADEA "was not intended as a vehicle for judicial review of business decisions." *Id., 670 F.2d at 70*, citing *Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir. 1980)*. Although Ackerman [*8] involved the voluntary retirement of an employee who later brought a claim under the ADEA, its holding is nonetheless applicable here. There is no question that plaintiff's job was eliminated, as he himself states in his deposition. The plaintiff may have arrived at personal suspicions and conclusions concerning the company's motivation to eliminate him from his position, but no evidence has been produced that would lead a reasonable jury to find that he was discharged, or that he was not offered a Regional Manager or Branch Manager position, because of his age. *Rose, 703 F.2d at 227*.

On a motion for summary judgment, the movant has the burden of showing conclusively that no genuine issue of material fact exists. *Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598 (1970); Fitzke v. Shappell, 468 F.2d 1072, 1077 (6th Cir. 1972)*. Generally, a case involving elements of motive or intent is not suited to disposition on summary judgment. *Smith v. Hudson, 600 F.2d 60, 66 (6th Cir. 1979)*. However, this principle is not unvarying, and a summary judgment is sometimes appropriate even in motive or intent cases. In Ackerman, the court said, "While summary judgment [*9] often is inappropriate to dispose of cases involving issues of intent and motive, the moving party has a right to judgment without the expense of a trial where there are no issues of fact left for the trier of fact to determine." *Id., 670 F.2d at 69*.

We find that there are no genuine issues of fact remaining in this case which would preclude the granting of summary judgment. Plaintiff alleges material issues of fact concerning the qualifications for the Regional Manager or Branch Manager positions and the length of time it would take to train plaintiff for one of these positions. As stated above, there is no dispute that some training for these positions would be required. The amount of time required would go toward the soundness of the business judgment of defendant in retaining or eliminating its employees rather than being a material issue of fact tending to prove the existence of age discrimination.

The record is replete with testimony that plaintiff was thought well of by his co-workers and was efficient in handling his duties. It is not the function of the Court to second-guess the business decisions made by defendant or to judge whether plaintiff's position should

[*10] have been eliminated or whether the company treated him fairly by not offering him another position. The question is not whether plaintiff was treated fairly, but whether he was discriminated against on the basis of his age. *Sahadi, 636 F.2d at 1117*. Considering all the information contained in the record, we find that plaintiff has presented no reasonable inference that can be drawn, without engaging in speculation, that his job was eliminated because of his age or that he was not considered for another position on the basis of his age.

Plaintiff also brought this action under the Kentucky Civil Rights laws, *Ky.Rev.Stat. 344.010* et seq. The Kentucky age discrimination statute is modeled after the federal age discrimination statute, and plaintiff is held to the same standard of proof under state law as under federal law. *Harker v. Federal Land Bank of Louisville, 679 S.W.2d 226, 229 (Ky. 1984)*. To prevail under Kentucky law against a motion for summary judgment, plaintiff must prove "cold hard facts creating an inference showing age discrimination was a determining factor" in his discharge. Id. Because plaintiff did not meet this standard of proof, defendant is entitled [*11] to summary judgment under the Kentucky statute as well.

There being no issue of material fact, the motion of defendant for summary judgment will be granted, and an appropriate order has been entered this 18th day of April, 1986.

ORDER

For the reasons set forth in the memorandum filed this date,

IT IS ORDERED that the motion of the defendant, Allis-Chalmers Corporation, d/b/a American Air Filter Company, for summary judgment on the claim of the plaintiff, Robert J. Ruth, against it be and it is hereby granted, and this action is hereby dismissed with prejudice.

It is further ORDERED that the motion of plaintiff to compel discovery of documents is denied, as the Court is of the opinion the documents sought could produce no facts supportive of plaintiff's age discrimination claim which would change the results of the summary judgment.

It is further ORDERED that plaintiff's motion to amend the complaint under Rule 15(b) is denied, as it seeks to assert causes of action occurring after plaintiff's termination by the defendant.

There is no just reason for delay, and this is a final and appealable order.

This 18th day of April, 1986.