```
 1              UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF OHIO
 2                    WESTERN DIVISION

 3

 4   BARBARA LODER HILDEBRANDT,       )
                                      )
 5          Plaintiff,                )
                                      ) Case No.
 6      vs.                           ) C-1-02-0003
                                      )
 7   HYATT CORPORATION, et al.,       )
                                      )
 8          Defendants.               )

 9

10            Videotaped Deposition of

11   EDWARD W. RABIN, taken before JANYCE W. BOOTH,

12   CSR, RMR, CRR, and Notary Public, pursuant to the

13   Federal Rules of Civil Procedure for the United

14   States District Courts pertaining to the taking of

15   depositions, at 140 South Dearborn Street, Suite

16   420, Chicago, Illinois, commencing at 2:07 p.m. on

17   the 21st day of April, A.D., 2004.

18

19

20

21

22

23

24
```

EXHIBIT A

```
02:30:51   1    A    That would have been certainly on the
02:30:57   2    list where possible. Again, there's no universal
02:31:02   3    rule that necessarily applies.
02:31:08   4    Q    Do you recall anything specific that was
02:31:11   5    done or any statements that were issued that
02:31:13   6    related to restricting new hiring?
02:31:18   7    A    I think we -- we would have had I'm sure
02:31:23   8    any number of communications, both verbal and
02:31:28   9    written, that said no new hiring during this
02:31:34   10   period or new hiring should be kept to a minimum.
02:31:38   11   Q    Would that go out to your management
02:31:39   12   employees?
02:31:41   13   A    I'm -- absolutely.
02:31:46   14   Q    Including the national sales force?
02:31:49   15   A    It would -- I would think it may be a
02:31:51   16   little different there because they don't -- it's
02:31:54   17   not like new hiring. It's not a -- it's not a
02:31:56   18   function that is subject to a lot of open
02:32:00   19   positions. I think this is not -- it's a little
02:32:06   20   unique in that regard.
02:32:08   21   Q    All right. I want to ask you a couple
02:32:10   22   questions about Mr. Schnitz who's sitting here.
02:32:17   23   A    Should we excuse him?
02:32:18   24   Q    No. It's fine with me.
```

| | | |
|---|---|---|
| 02:32:21 | 1 | Were you involved in hiring Mr. Schnitz? |
| 02:32:24 | 2 | A    I believe I was part of the interview |
| 02:32:28 | 3 | process at some point.  The answer is yes.  I was. |
| 02:32:35 | 4 | Q    Okay.  Do you recall what his role was to |
| 02:32:37 | 5 | be when he joined the company? |
| 02:32:40 | 6 | A    His position was to fill a need in our |
| 02:32:46 | 7 | labor relations and principally in that area as a |
| 02:32:59 | 8 | key need of the company.  But his overall acumen |
| 02:33:08 | 9 | and understanding of the law invites him to |
| 02:33:11 | 10 | participate in a lot of other areas also.  So... |
| 02:33:14 | 11 | Q    And he had been a member of the Fisher & |
| 02:33:17 | 12 | Phillips law firm before he came with? |
| 02:33:21 | 13 | A    I -- I did not know that, no. |
| 02:33:23 | 14 | Q    So you don't know that today? |
| 02:33:24 | 15 | A    I know that now, yes. |
| 02:33:26 | 16 | Q    Okay.  Was part of Mr. Schnitz's role to |
| 02:33:32 | 17 | help develop a plan for eliminating positions at |
| 02:33:37 | 18 | Hyatt? |
| 02:33:40 | 19 | A    Upon joining the organization or in |
| 02:33:42 | 20 | conjunction with joining the organization? |
| 02:33:44 | 21 | Q    Yes. |
| 02:33:44 | 22 | A    If it were, it was only coincidental that |
| 02:33:49 | 23 | that was his first assignment.  And, again, I |
| 02:33:52 | 24 | don't know timing wise. |

*LEGALINK - CHICAGO         (312) 263-3524*

```
02:33:54   1            I'm sorry, Rob.  I don't even recall when
02:33:57   2   you joined the organization.
02:33:59   3            But... certainly that would have been --
02:34:04   4   we would have asked for that assistance from the
02:34:07   5   legal department in the event we found it
02:34:09   6   necessary to do so.
02:34:12   7       Q    Did you feel he had some expertise in
02:34:14   8   that area of the law?
02:34:17   9       A    I believe he was represented to have
02:34:20  10   such, and that was his responsibility, so...
02:34:29  11       Q    Now, after the events of September 11th,
02:34:33  12   is it correct that Hyatt engaged in a -- what's
02:34:37  13   called a reduction in force?
02:34:42  14       A    Yes.
02:34:44  15       Q    Okay.  And do you recall the company
02:34:49  16   having done that before in the past at any time?
02:34:56  17       A    I think over the years -- and I'm dating
02:35:00  18   myself -- we have done that from time to time,
02:35:02  19   given the --
02:35:04  20       Q    Do you recall whether there was a
02:35:05  21   reduction in force at about the time of the Gulf
02:35:10  22   War in around '91 or '92?
02:35:14  23       A    There -- there was.
02:35:15  24       Q    Okay.  Do you remember that?
```

```
                                                                    1
 1              UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF OHIO
 2                   WESTERN DIVISION
 3

 4   BARBARA LODER HILDEBRANDT,  )
                                 )
 5           Plaintiff,          )
                                 )
 6       -vs-                    )  No.  C-1-02-0003
                                 )
 7   HYATT CORPORATION, et al.,  )
                                 )
 8           Defendants.         )
 9
10            Deposition of ROBERT SCHNITZ, taken before
11   KAREN R. SHALES, C.S.R., R.P.R., and Notary Public,
12   pursuant to the Federal Rules of Civil Procedure for
13   the United States Courts pertaining to the taking of
14   depositions for the purpose of discovery, at 420, 140
15   South Dearborn Street, Chicago, Illinois, commencing
16   at 8:44 a.m., on the 22nd day of April, 2004.
17
18
19
20
21
22
23
24
```

EXHIBIT B

7

1   of me. And then in '96, I believe, I may be off a
2   year or two there, but I became a partner at the firm
3   and was performing whatever duties were appropriate
4   at that level.
5       Q   Did you specialize in any particular area of
6   the law?
7       A   Yes, and I will -- because that word
8   sometimes means something under a different state law
9   specialized, but our Fisher & Phillips law firm is a
10  firm that focuses on the labor and employment law.
11  All of the attorneys do it, and that was my area that
12  I focused on while I was working there.
13      Q   Okay. And at that time during 1991 to 2001,
14  were you involved in representing Hyatt Corporation?
15      A   No, not at all.
16      Q   Okay. Did you focus your work as a partner
17  on any particular aspect of employment law?
18      A   I was involved in a very wide spectrum of
19  issues under the field of labor employment law. If I
20  had to single one out more than the others, it would
21  be in the area of wage and hour law.
22      Q   Did you handle cases involving reductions in
23  force?
24      A   I did. I was involved in a number of those,

LEGALINK- CHICAGO
(312) 263-3524

11

1  held the position prior to me.

2  Q  Did you know whether Mary Catherine Sexton
3  was terminated?

4  A  No, I do not.

5  Q  You have never learned that?

6  A  No.

7  Q  Okay. Did you -- when you came to work at
8  Hyatt, did you learn whether or not Hyatt was in the
9  process of reducing its work force?

10  A  At the time I started working there?

11  Q  Yes.

12  A  No, I don't believe that was the case.

13  Q  Okay. You were present yesterday at Mr.
14  Rabin's deposition, weren't you?

15  A  Yes.

16  Q  Do you retain any affiliation with Fisher &
17  Phillips?

18  A  I'm not a member of the firm in any sort of
19  way or perform any services for the firm, but the law
20  firm of Fisher & Phillips still is engaged as outside
21  counsel to represent Hyatt in labor and employment
22  matters, and I believe have been for a number of
23  years prior to my arrival.

24  Q  For example, are you on a leave of absence

1   Q   Did someone request you to write this
2   document or was it your own idea to do that?
3   A   I was -- I'm not positive at that time, but
4   it would not have been unusual for me to simply put
5   together such a memo as part of my duty, as part of
6   my job to provide legal counsel.
7   Q   So you're not sure?
8   A   I'm not positive, but I believe it was
9   something I did on my own.
10  Q   Okay. I take it from your earlier testimony
11  that you didn't play any role in the decision to
12  terminate Ms. Hildebrandt, that you made no approval
13  of the reasons given to you?
14  MS. GALLION: Object to the form of the question.
15  Witness may answer if he understands.
16  THE WITNESS: It's a little difficult to answer
17  the question the way it's posed, but no, I would not
18  have -- that was not my job to perform that task, to
19  either approve or disapprove of the reasons.
20  BY MR. STEINBERG:
21  Q   Okay. Did Mr. Patrick and Mr. Helms provide
22  you with the reason at the same time or did you speak
23  to them separately?
24  A   At the same time.

1     MS. GALLION: I'm instructing him not to answer
2  that question asking him what did his internal
3  clients tell him which was the basis of their seeking
4  advice, which is clearly, by all the case law,
5  protected. They asked for his legal opinion and gave
6  him facts.
7     MR. STEINBERG: Ms. Gallion, aside from your
8  statements into the record, and you're not a witness,
9  there is no evidence that anyone asked for a legal
10 opinion. And Mr. Schnitz I believe has said he
11 didn't give approval, but I'm leaving it there.
12    MS. GALLION: Approval is not a legal opinion.
13 It may be the inaccuracy or faultiness of your
14 questions, but that would be up to you.
15 BY MR. STEINBERG:
16    Q  Mr. Schnitz, do you recall having discussions
17 with any other Hyatt officials besides Patrick and
18 Helms about the termination of Ms. Hildebrandt?
19    MS. GALLION: And I want to object to that
20 question because it is absent any time frame, and if
21 you -- I would ask respectfully that you clarify
22 whether it's before or after the litigation.
23    MR. STEINBERG: My question covers any time
24 frame, and it's a yes or no question. Are you

1  where you max out. Basically your maximum amount of
2  severance pay, but someone who has been with the
3  company 20 years versus 15 years, I don't know if
4  that would make a difference one way or the other.
5     Q  Do you recall whether ten years is a breaking
6  point?
7     A  I don't recall.
8     Q  Okay. This will determine whether I have any
9  additional questions. Is it true or not that the
10 only advice you have given Hyatt officials about the
11 reduction in force is legal advice?
12    A  Yes, except with respect to my department.
13    Q  Right.
14    A  As I was mentioning before.
15    Q  Okay.
16    MR. STEINBERG: I think we have come to the end
17 of the road then. Thanks.
18    MS. GALLION: I have just a few questions, Mr.
19 Schnitz.
20              FURTHER EXAMINATION
21              BY MS. GALLION:
22    Q  I would like to go back to the beginning of
23 your relationship with Hyatt. During any of your
24 interviews or discussions with senior management then

1    at Hyatt while you were still working for the Fisher
2    & Phillips law firm, did anyone at that company
3    indicate that one of the purposes of your hire was to
4    direct or to participate in any kind of reduction in
5    force?
6        A   No.
7        Q   During the first few months that you were
8    there, May, June, July, and August of 2001, are you
9    aware of any reduction in force within the company
10   that occurred anywhere?
11       A   No.
12       Q   Did you give advice for any reduction in
13   force anywhere?
14       A   In --
15       Q   Prior to September of 2001?
16       A   No.
17       Q   Did anyone at Hyatt ask you to pay attention
18   to or to look into or give advice concerning any
19   reduction in force prior to the date that you have
20   testified in approximately mid September of 2001?
21       A   No.
22       Q   I believe you were here yesterday for Mr.
23   Rabin's deposition; is that correct?
24       A   That's correct.