UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BARBARA LODER HILDEBRANDT,　　:
　　　　　　　　　　　　　　　　:
　　　　　Plaintiff　　　　　　　　:
　　　　　　　　　　　　　　　　:　CASE NO.　C-1-02-0003
　　vs.　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:　Judge Beckwith
HYATT CORPORATION, *et al.*,　　:　Magistrate Judge Black
　　　　　　　　　　　　　　　　:
　　　　　Defendants　　　　　　　:
　　　　　　　　　　　　　　　　:

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
NUMEROUS MOTIONS IN LIMINE**

Defendants have filed six motions in limine with numerous sub-motions included. Many are frivolous and have no authority cited for support. Nor have they cited the proper authority for granting a motion in limine; instead, they have cited authority relating to relevant evidence. As the Court knows, most decisions about relevant evidence are decided during the trial.

The correct standard for deciding a motion in limine is as follows. As a general rule, unless the evidence at issue is inadmissible on all potential grounds, the trial judge should defer her evidentiary ruling until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context of the evidence in the record at that time. Motions in limine should be granted only to eliminate evidence that is clearly inadmissible on all potential grounds. *See Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984); *Jonasson v. Lutheran Child and Family Serv.,* 115 F.3d 436, 440 (7th Cir.1997). Denial of a motion in limine does not necessarily mean that all evidence challenged by the motion will be admitted at trial. Denial merely means that without the

context of trial, the court is unable to determine whether the evidence in question should be excluded. *See United States v. Connelly,* 874 F.2d 412, 416 (7th Cir.1989) (citing *Luce,* 469 U.S. at 41). *See also Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398, 1400-01 (N.D.Ill.1993).

I.      **Defendants' Motion To Exclude Reference To Treatment Of Other (sic) Current Or Former Hyatt Employees**

This motion includes several sub-motions:

   A.     **Motion to Bar Evidence Relating to Mary Catherine Sexton**

Plaintiff does not intend to introduce any evidence related to Mary Catherine Sexton, a former Hyatt attorney. Therefore, Defendant's motion to exclude all such evidence is moot.

   B.     **Motion to Bar Evidence Related to Preferential Treatment of Younger Employees of the National Sales Force**

This motion should be denied because it contains no citation of supporting legal authorities, as required by Local Rule 7.2(a)(1). In the event the Court will consider the merits of a motion filed without supporting authority, Plaintiff presents the following response.

Defendant alleges that all evidence relating to preferential treatment of younger employees in the National Sales Force should be excluded as "collateral." The pertinent case law dictates the opposite. A plaintiff in a RIF case can establish a prima facie case by demonstrating that a comparable non-protected person was treated better than she. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir.1992)). With regard to comparable persons, both the federal and Ohio courts have held that it is not necessary to compare the plaintiff

to someone under 40 years of age, so long as the comparator person is similarly situated and substantially younger than the plaintiff. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996); *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St. 3d. 175 (2004).

This motion in limine is designed to strip Plaintiff's case of its most compelling evidence: favoritism toward similarly situated younger employees. Plaintiff's primary allegation in this case is that she was terminated due to favoritism toward younger employees. Eliminating this evidence is equivalent to directing a verdict.

There is no question that Plaintiff is similarly situated to these employees, because it is documented that the Defendants considered them all together when determining who would be terminated during the September 2001 reduction in force.[1] These employees are the subjects of statistical analyses the Defendants intend to offer into evidence. Therefore, evidence that shows favoritism by Defendants to certain substantially younger of these employees can explain why they were not chosen for termination and why Plaintiff was chosen.

In the Central Sales Office, Jack Horne placed Barbara Loder Hildebrandt, Loretta Venezia, and Mary Patton in the C category, marked for termination.[2] For Mary Patton, the one terminated employee who was under age 40 (age 39), Horne applied an objective, legitimate termination criterion: seniority; i.e., length of service with Hyatt.[3] However, when it came to 50-year old Barbara Hildebrandt and 42-year old Loretta Venezia, Horne did not consider seniority to be a factor for these long-term employees;[4]

---

1  Exs. 38g, 199, p. 2, 38f; 38i.
2  Ex. 38f; Horne Dep., pp. 97-106.
3  Ex. 38f; Horne Dep., pp.99-100.
4  Horne Dep., p. 100.

instead his subjectivity prevailed. The written reason Horne set forth for eliminating Barbara Hildebrandt was that 34-year-old Barbara Hale, operating out of a satellite office in Michigan, would be given Barbara Hildebrandt's accounts.[5] Horne admitted he did this so that Hale, who was assigned to non-productive automotive accounts, could take over Barbara Hildebrandt's productive association accounts "so that she [Hale] would be more balanced during unfortunate recession times."[6] This would help Hale "diversify her account load when the automotive market was down," and increase her production.[7] This is an admission of Horne's favoritism toward this younger worker. Fifty-year-old Barbara Hildebrandt, whose long-term accounts were productive for the company, was fired so that 34-year-old Barbara Hale, whose accounts were not productive, could take over Mrs. Hildebrandt's accounts and improve her situation. Hale was relatively new to the NSF, having joined it in September 1998.[8] She had only become a Director of National Accounts the previous year, in March 2000.[9] Barbara Hildebrandt, on the other hand, had been an NSF member since 1993.

Another Horne favorite, 33-year-old Molly Crompton, was also assigned Barbara Hildebrant's productive accounts. An examination of Crompton's employment history with Hyatt demonstrates Horne's bias toward this younger employee to the disadvantage of Barbara Hildebrandt. During 2000 and 2001, Horne and Helms approved $20,500 in raises for Crompton as well as over $12,000 in relocation expenses.[10] In addition, Crompton received substantial bonuses from accounts she inherited from terminated

---

[5]  Ex. 38f; Horne Dep., pp. 100-101
[6]  Id., p. 101.
[7]  Id.
[8]  Ex. 155
[9]  Id.
[10] Ex. 86;

National Sales Force sales managers, including Barbara Hildebrandt. In early 2000, Horne and Helms authorized Crompton's promotion to the Eastern National Sales Office and a 21.5% raise of $8,500.[11] Crompton was assigned to the Central Sales Office in Chicago (the regional office to which Plaintiff was assigned) on March 1, 2001,[12] less than a year after she had been promoted to the Eastern National Sales Office in Washington. Despite the severe economic decline Hyatt was experiencing at this time, Hyatt paid her substantial relocation expenses back to Chicago.[13] Also on March 1, 2001, although Crompton had less than one year's experience in the NSF, Horne and Helms promoted her to the position of Director of National Accounts and gave her another raise of $9,000.[14]

After terminating Plaintiff's employment, Horne divided her accounts primarily among his favored younger workers. Barbara Hildebrandt's most productive accounts were given to three substantially younger workers outside the protected age group: Barbara Hale of Dearborn, Michigan, who was 34 years old and had been appointed Director of National Accounts the preceding year; Molly Crompton of Chicago, Illinois, who was 33 years old and had been appointed Director of National Accounts in 2001; and Jennifer Roman of Atlanta, Georgia, who had just turned 33 years of age and had been hired into the company as a Director of National Accounts only four months before Mrs. Hildebrandt's termination.[15]

Hale had worked in the NSF for three years when she inherited Mrs. Hildebrandt's accounts. Crompton had worked in the NSF for less than two years when

---

[11] Exs. 86; 88; 89; 92.
[12] Ex. 86.
[13] Id., p. 55.
[14] Ex. 86, 87,
[15] Ex. 39; *See* summary chart, Ex. 199; Helms Dep., p. 189; Horne Dep., pp. 63, 65, 68-69;

she inherited Mrs. Hildebrandt's accounts. Roman had worked in the NSF for four months when she inherited Ms. Hildebrandt's accounts. Barbara Hildebrandt was and remains equally or more qualified than Hale, Crompton and Roman for the Director of National Accounts position. Mrs. Hildebrandt has far more experience than either of the three. She worked for many years at the "property level" as a director of sales, both in the Hyatt Regency Hotel in Savannah, Georgia and the Hyatt Regency Hotel in Cincinnati, Ohio.[16] Neither Hale nor Crompton nor Roman worked at the property level as a Hyatt Director of Sales. Hale, Crompton, and Roman received the benefit of additional millions of dollars of annual sales from accounts Ms. Hildebrandt worked many years to develop and maintain.[17] Horne has given no legitimate reason why Barbara Hildebrandt could not have remained employed and taken over the accounts of Crompton, Hale, or Roman, or all three. He admitted that anyone in the NSF could handle the accounts of anyone else in the NSF in any geographic location, and he acknowledged that Barbara Hildebrandt was clearly capable of handling any of those accounts.[18] The jury is certainly entitled to hear this evidence of Defendants' favoritism toward the three young women to whom Plaintiff's valuable accounts were assigned when she was terminated. Numerous other examples of favoritism to similarly situated younger workers may be introduced.

    **C.    Motion To Exclude Evidenced Of Age Discrimination "Unrelated" To The Reduction In Force**

The title of this motion begs the question. Evidence of favoritism toward similarly situated younger employees is not "unrelated" to the RIF. Such evidence is

---

[16] Hildebrandt Dep., p. 232.
[17] Ex. 156.
[18] Horne Dep., pp. 10, 105.

relevant to prove that discrimination is a company's standard operating procedure. *McLeod v. Parsons Corp.*, 73 Fed. Appx. 846, 854 (6th Cir. 2003) (cited by Defendants). The facts of *McLeod* are inapposite, because there the Plaintiff attempted to introduce evidence of other lawsuits against the Defendant and because the employees were not similarly situated.

Defendant relies on *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365 (6th Cir. 1999). In *Godfredson* the court found that the plaintiff was not similarly situated to the employee he compared himself to because the other employee was not terminated during the same RIF, was not Plaintiff's age, and the contract governing his employment was not similar to Plaintiff's employment contract. *Id.* at 375. *Godfredson* has no application to this case, where the documentary evidence establishes the employees who are similarly situated to Plaintiff - they had the same job duties, and were all considered in the RIF.

**II.    Motion In Limine To Bar Evidence Of Defendant Horne's "Dinosaur" Remark.**

Defendant's motion does not recite the entire "remark" or the context in which it was give. The parties have stipulated the comment in question as follows:

"Dawn Beagle, if called at trial would testify as follows:

> 'She was a Director of National Sales and a member of Hyatt's National Sales Force during 2001. At about the time Brian Cassidy resigned from the company after many years with the company, Dawn Beagle had a telephone conversation with Jack Horne. She told Jack Horne that she was surprised that Cassidy had actually left. Mr. Horne responded that there were other dinosaurs in the National Sales Force that he would not mind seeing go, also, that they had just been around too long.'

Plaintiff will introduce evidence that this statement about Brian Cassidy, a member of the National Sales Force then in his 50's who was leaving Hyatt employment, was made several months before the RIF, during a relevant time period when Defendants

were planning terminations of older workers and hiring younger workers. Defendant Horne, the person who made the primary termination decisions, made the statement. The remark was clearly directed at other older members of the NSF. Considered in the context of the other evidence in the case, the statement is circumstantial evidence of Horne's motivation to discriminate due to age.

Defendant incorrectly refers to this comment as a stray remark. To the contrary, the context in which the statement was made suggests that it was directed at Plaintiff and other older members of the NSF, and its meaning was sufficiently clear for the jury to infer an age animus. It also establishes the existence of a discriminatory atmosphere that serves as circumstantial evidence of his motivation to discriminate against older workers, and "individualized discrimination directed at plaintiff." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998).

The statement is relevant because it was made shortly before the RIF. In *Ercegovich*, the court found that an ageist remark made 14 months prior to the plaintiff's termination was not too attenuated to support a finding that age bias motivated differential treatment. *Id.* at 357. Horne's remark is also relevant to show that he favored younger employees over "dinosaurs" (older workers).

Second, Horne's remark was directed at Plaintiff because she was one of the "dinosaurs" in the NSF. There are few members of the NSF who had "been around" (worked for Hyatt) longer than Plaintiff's 22-year job history. The failure to mention Plaintiff by name does not automatically negate the statement's relevancy. *Id.* at 355, See also, *La Pointe v. United Autoworkers Local 600*, 8 F.3d 376, 380 (6th Cir. 1993) (supervisor's ageist remarks about "old timers" are relevant evidence of age animus

although statement was not specifically addressed to or made about plaintiff.) Such a statement should not be considered in isolation, but in connection with other pretext evidence; thus it supports an inference that Defendants harbor age bias or age animus. *Ercegovich*, 154 F.3d 344, 356. In *Johnson v. The Kroger Co.*, 319 F.3d 858 (6th Cir. 2002), the court found that the tolerance of racial jokes and slurs made by lower-level employees and not specifically directed at plaintiff were relevant to show that management harbored a racial bias. Similarly, evidence of a discriminatory statement by a management-level employee suggests an ageist attitude among management that influences the decision-making process. *Id.* at 356. Thus, Horne's "dinosaur" statement is relevant, circumstantial evidence of Defendants' intention to remove older workers from the NSF.

Third, Horne's statement is not too ambiguous to raise a reasonable inference of age animus. When a statement strongly suggests that the defendant harbors an age animus, the remark is not ambiguous or abstract. *Ercegovich*, 154 F.3d at 355. The statement should not be considered in a vacuum, but instead should be considered in conjunction with other available evidence. *Id.* at 356. For example, in *Ecergovich*, the court found that a statement made by a Director of Finance during a budget meeting that "there were some people losing their jobs and they will – but they will be replaced by younger college grads at less money" was not ambiguous when considered along with other evidence of age discrimination. *Id.* Similarly, Horne's remark unambiguously indicates a discriminatory motivation to root out older members of the NSF, when considered in context. Long before September 2001 Hyatt's business had slowed beyond

company expectations.[19] President Edward Rabin began to receive plans devised by management in various departments for cost-saving measures as early as March or April of 2001.[20] Despite the efforts to cut costs, the company was not recovering.[21] A few short months later, knowing that Hyatt needed to cut costs and lay off personnel, Horne expressed his belief that certain members of the NSF were "dinosaurs" and had been around too long. Thus, a jury could reasonably infer that Horne intended to cut costs by terminating the "dinosaurs" in the NSF.

Defendants cite *Wilson v. Wells Aluminum Corp.*, 107 F.3d 12 (6th Cir. 1997) for the proposition that the term "dinosaur," when used to refer to a particular employee, means "out of date" or "old-fashioned." This misstates the holding in *Wilson*. The court did not state that "dinosaur" meant "out of date." It simply noted that because Wilson's replacement *interpreted* the term "dinosaur" to mean "out of date," the term was ambiguous.

*Wilson* demonstrates that Horne's remark is admissible because a reasonable jury could find that the term "dinosaur" is an age-related remark referring to older members of the NSF. Horne did not just refer to members of the National Sales Force as "dinosaurs." He ensured that he was not misinterpreted when he added, "they had just been around too long," thereby eliminating any chance of ambiguity. Furthermore, when considered in the context of Horne terminating 10 people, 80% of whom were in the protected age group, the meaning is clear. Accordingly, Horne's statement is not ambiguous. The Court should not deprive Plaintiff of this important circumstantial evidence of Defendants' motivation.

---

[19] Rabin Dep., pp. 28-29.
[20] Rabin Dep., pp. 32-33.
[21] Rabin Dep., pp. 28.

### III.  Motion In Limine To Exclude Witnesses And Documents Relating To Plaintiff's Effort To Mitigate Damages

Defendant moves to exclude witnesses who assisted Plaintiff in her job search and certain documents reflecting her job search on the basis that the witnesses and documents were not identified in earlier responses to discovery requests, although the witnesses and documents were identified to Defendants in Plaintiff's pretrial listings as possible rebuttal evidence. Defendant argues it was unaware of the witnesses. This is not correct. When Plaintiff was terminated, Defendant provided an employment service, Lee Hecht Harrison, to assist Plaintiff in her job search. Witnesses Friel and Madden were employees of Lee Hecht Harrison, which was unable to locate a similar job for Plaintiff despite many months of effort. Defendants were well aware that Lee Hecht Harrison was unable to locate a job for Plaintiff and that she had located a position as Development Director of the Cincinnati Horticulture Society. Similarly, during Plaintiff's deposition, she was asked whether she looked for other employment after being employed at the Horticulture Society. (Hildebrandt Deposition, pp. 292, 294). She testified to other opportunities she considered. (Id., pp. 294-299). While Defendants' statement in its motion that Plaintiff failed to identify Friel or Madden during this deposition is true, it is also true that she was not asked any questions about who assisted her in her job search.

Plaintiff's inability to locate a similar job was because, as Defendants' expert has reported, the upper upscale hotel industry was in the midst of a dramatic decline from March 2001 through September 2003, which continued through the date of his deposition in May2004. (Berins Report, pp. 2-9; Berins Deposition, p. 37). In view of this report, Plaintiff did not expect Defendants to argue that Plaintiff would be able to secure a similar job during that period.

Plaintiff's counsel have determined that they would possibly, but not likely, call witnesses Friel and Madden in the event Defendant attempts to contradict Plaintiff's testimony about their efforts to assist her locate a job. If Defendant does not attempt to contradict that testimony, they will not be called.

As regards the job search documents, Plaintiff produced a substantial amount of job search documents during discovery. However, she erroneously failed to produce the additional material that is the subject of this motion. Rule 26(e)(2) is designed to prevent knowing concealment by a party or attorney. *See* Advisory Notes to Rule 26. There is no evidence or allegation of knowing concealment. Rule 37(c)(1) provides the District Court with several sanctions that may be imposed when a party violates Rule 26. However, Rule 37(c)(1) does not mandate that the court impose total exclusion of the evidence. Normally, the aggrieved party has the burden to show that substantial prejudice has occurred. *US v. Rapanos*, 2004 WL 164356 (6th Cir. (Mich.); *Lewis Refrigeration Co. v. Sawyer Fruit*, 709 F.2d 427, 434 (6th Cir. 1983).

In any event, Plaintiff has not marked these documents as trial exhibits and did not intend to offer them into evidence. She simply complied with her duty to furnish them to Defendants when she became aware that she had failed to so. Since the will not be offered into evidence, the motion is moot.

In the event Plaintiff is unable to recall the complete details of her job search, she may refer to the documents in question to refresh her recollection pursuant to Fed. R. Evid. 612. "Documents need not be admitted or admissible in evidence in order to be used to refresh the recollection of the witness." *US v. Faulkner*, 538 F.2d 724, 727 (6th Cir. 1976). *US v. Lawrence*, 1989 WL 153161 (6th Cir. 1989).

### IV. Motion In Limine To Exclude Evidence That Defendants Hired Attorney Robert Schnitz To Help Conduct A Reduction In Force

Defendants argue that Plaintiff should be prohibited from introducing evidence that Mr. Schnitz was hired to help conduct a RIF because, as they argue, he was not hired for that reason. The source of Plaintiff's evidence that attorney Schnitz was hired to help conduct a RIF is the deposition testimony of Schnitz himself and the deposition testimony of Hyatt President Edward Rabin. If the testimony of these two Hyatt executives does not establish the fact asserted by Plaintiff, as Hyatt argues, there could be no harm to Hyatt in admitting it. Their statements are admissible in this case as admissions of a party opponent. Fed. R. Evid. 801(d)(2). Thus, the motion makes no sense.[22]

The evidence is relevant to refute Hyatt's contention that it did not contemplate a RIF until after September 11, 2001. There is substantial other evidence Plaintiff will produce on this point, including Mr. Rabin's testimony that Hyatt was probably terminating people before September 2001.

### IV. Defendant's Motion In Limine Regarding Plaintiff's Cashing In Her Savings Plan

Defendants ask the Court to exclude all evidence relating to the financial consequences of Plaintiff's having to cash out her Matched Savings Plan when she was terminated. Hyatt rules required Plaintiff to do so, and she was so informed in writing. It is Plaintiff's contention that she would have incurred tax liability at some point in the future even if she had not been terminated in October of 2001 and the relative worth of

---

[22] If the Court desires, Plaintiff will provide the detailed testimony of the two Hyatt executives. However, Plaintiff's counsel does not wish to waste further valuable trial preparation time responding to this nonsensical motion.

the plan and tax consequences can not be predicted. Defendants incorrectly contend that the damages are speculative.

Defendants cite no authority for their proposition that the Court should precipitously exclude all evidence without listening to the foundation that will be laid for this evidence by Plaintiff's expert, Harvey Rosen. Local Rule 7.2 (a)(1) permits the Court to deny all motions that fail to provide authority for the party's motion.

More important, the motion should be denied on its merits. There is no question that lost wages and ***related benefits*** are elements of damages in employment discrimination cases. Plaintiff's expert will lay the appropriate foundation for his calculation of this loss when his testimony is presented to the jury. Additionally, the financial strain caused by the need to cash in her only pension savings plan and the loss of the employer's matching contributions goes directly to the issue of emotional distress. As demonstrated above, trial courts should wait until it hears such foundation evidence and the context in which the evidence is presented, before ruling on admissibility. *Luce*, 469 U.S. at 41, n. 4; *and see, Jonasson*, 113 F.3d at 440. The motion should, therefore, be denied.

## V. Defendants' Motion In Limine Regarding All References To Plaintiff's Husband As Judge

Defendants ask the Court to exclude all references to Lee Hildebrandt's position as a Judge on the Hamilton County Court of Appeals. Once again, Defendant's fail to cite any authority for this position. Their motion should be denied . Lee Hildebrandt is Plaintiff's husband. Defendants contend that "[t]he fact that Plaintiff's husband is a judge has no relevance in this case." To the contrary, the employment and profession of any witness is highly relevant. The jury is the sole judge of credibility of a witness. Part

of the information on which a jury will base its judgment in this regard will necessarily be the background of each witness, including their current employment and profession. Factual information that identifies the witness with his community is always relevant to credibility of the witness. *Alford v. United States*, 382 U.S. 687, 688 (1931). "[I]nformation about a party's or a witness' background, *job* and education is certainly appropriate and admissible in every action. . . . such information gives background on the witness and a point of reference in assessing that individual's credibility. . . ." *Wilson v. Vermont Castings*, 977 F.Supp 691, 699 (E.D. Pa. 1997). (Emphasis added).

A witness does not testify in a vacuum. By their motion, Defendants would deny to Plaintiff an opportunity to inform the jury of facts relating to her witness's credibility. In contrast, each of Defendants' witnesses will be permitted to enlighten the jury regarding his/her employment and professional background. Plaintiff would be in the awkward position of not informing the jury of her husband's profession and employment. The jury would be left to wonder why a party's husband would not disclose his employment like the other witnesses. Furthermore, Plaintiff is entitled to inquire during voire dire whether any juror may have come in contact with Judge Hildebrandt and possibly harbor a bias or prejudice as a result.

If Defendants' faulty logic is applied consistently, it could be argued that a doctor who testifies as a lay witness in a case cannot disclose his professional background or be addressed as Doctor. Nor could a priest or minister disclose his/her religious affiliation or be referred to as "Reverend" or "Father." Indeed, such logic would prevent the disclosure of the employment history of a police officer or a teacher, given the high regard those professions typically carry.

**VI.    Motion In Limine To Exclude Evidence That Supported Claims Dismissed By The Court**

Yet again, Defendants submit a motion sans any legal authority. For this reason alone, it should be denied.

Defendants seek to exclude, among other evidence, the key testimony of Plaintiff's supervisor Brian Booth, simply because Booth was dismissed as a defendant. This does not disqualify Booth as a fact witness. As footnoted by Defendants, Plaintiffs have gone to great lengths to cooperate in a stipulation that no evidence about discrimination in promotions, Booth's poor qualifications for his job, and many other matters not relevant to the age discrimination claim, will be offered. Plaintiff has advised Defendants' counsel that she is offering no evidence relating to allegations that Booth's promotion was discriminatory. However, facts that do relate to an age claim, such as Booth's age, his inability to understand Horne's reason for terminating Plaintiff, his testimony about her outstanding performance and awards, is all highly relevant. Also very relevant is that fact that 33-year-old Molly Crompton, who was given many of Plaintiff's valuable accounts when Plaintiff was fired, was promoted by Jack Horne less that one year after she began in the NSF and transferred to Chicago at great cost to Hyatt. This is evidence of favoritism toward younger workers. This evidence is in the deposition of Molly Crompton and the testimony of Jack Horne. Booth is a primary witness in Plaintiff's case, and the Court should not exclude his highly relevant testimony, especially where Defendants have cited no authority to do so.

It would be extremely prejudicial to Plaintiff were the court to carve out large blocks of evidence that goes to establish age discrimination. For all these reasons, Plaintiff respectfully requests the Court to deny Defendants numerous motions in limine.

Respectfully submitted,

s/Robert A. Steinberg
Stanley M. Chesley (0000852)
Robert A. Steinberg (0032932)
    (Trial Attorney)
**WAITE, SCHNEIDER, BAYLESS**
 **& CHESLEY CO., L.P.A.**
1513 Fourth and Vine Tower
Cincinnati, OH  45202
513-621-0267
bobsteinberg@wsbclaw.cc

and

Michael J. O'Hara (0014966)
**O'HARA, RUBERG, TAYLOR, SLOAN**
 **& SERGENT**
209 Thomas More Park, Suite C
P.O. Box 17411
Covington, Kentucky 41017-0411
(606) 331-2000
mohara@ortlaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Notice was served by electronic filing via the CM/ECF System to Theresa M. Gallion, Esq. and Nadine Abrahams, Esq. this 4th day of August, 2004.

s/Robert A. Steinberg
Robert A. Steinberg