Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 1
2002 WL 32175199 (D.Conn.)
**(Cite as: 2002 WL 32175199 (D.Conn.))**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.

Gary CERASO, Plaintiff,
v.
MOTIVA ENTERPRISES, L.L.C., Star Enterprises, Inc., Star Enterprise, Texaco, Inc., Defendants.

No. Civ. 3:01CV193 PCD.

May 28, 2002.

*RULING ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES*

DORSEY, J.

***1** Plaintiff moves for attorneys' fees and costs pursuant to 15 U.S.C. § 2805(d)(1)(C). The motion is granted in part.

I. BACKGROUND

Plaintiff, a franchisee as that term is defined in the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801(4), alleged that defendants' termination of his franchise violated the Petroleum Marketing Practices Act (PMPA), 92 Stat. 322, 15 U.S.C. § 2801 *et seq.* Defendant Motiva is a franchisor, *see* 15 U.S.C. § 2801(3), and defendant Texaco is a refiner, *see* 15 U.S.C. § 2801(5). One of the underlying issues in the PMPA violation was a zoning dispute before the town of Fairfield Zoning Board of Appeals (ZBA), in which plaintiff was represented by Attorney John Fallon. Defendants were found to have violated 15 U.S.C. § 2802(b) in terminating his franchise and were enjoined from terminating or non-renewing plaintiff's franchise or affecting plaintiff's occupation and/or use of the premises in which he operated his franchise. Having prevailed in the underlying action, plaintiff now moves for attorneys' fees and costs.

II. JURISDICTION

Defendants filed a notice of appeal as to the merits of the underlying judgment. Such notice usually divests a District Court of jurisdiction over the aspects of the case on appeal. *See Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). However, a claim for attorneys' fees is collateral to the merits of the underlying judgment. *See White v. N.H. Dep't of Employment Sec.,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). There thus is jurisdiction over the present issue of an award of attorneys' fees.

III. DISCUSSION

Plaintiff argues that he is entitled to an award of attorneys' fees and costs of $93,908.73 and provides his time records in support of his motion. Defendants respond that the amount sought is unreasonable because it includes claims for time spent by Fallon, who is not an attorney in the present case, and time spent by a non-attorney Michael Fox. Defendants also respond that the time records are not sufficiently detailed to justify an award.

"If the franchisee prevails ..., such franchisee shall be entitled ... to reasonable attorney and expert witness fees to be paid by the franchisor." [FN1] 15 U.S.C. § 2805(d)(1)(C). [FN2] *See Jones v. Crew Distrib. Co., Inc.,* 984 F.2d 405, 407 (11th Cir.1993)("a prevailing party ... must be able to point to a resolution of the dispute which changes the legal relationship between [him]self and the defendant"). As PMPA is a fee shifting statute, reasonable attorneys' fees are determined using the lodestar method. [FN3] *See Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir.1999)(applying lodestar method in Title VII claim); *see also Zacharias v. Shell Oil Co.,* 627 F.Supp. 31, 33-34 (E.D.N.Y.1984)(applying lodestar method to PMPA attorneys' fees claim). In calculating the lodestar, excessive, redundant or otherwise unnecessary hours are excluded, in addition to those hours spent dedicated to severable unsuccessful claims. *See Quaratino,* 166 F .3d at 425.

>   FN1. 15 U.S.C. § 2805(d)(1)(C) provides for an award of attorneys' fees against a franchisor, thus the award is by definition limited to Motiva.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



> FN2. There is no dispute that plaintiff is a prevailing party for purposes of 15 U.S.C. § 2805(d)(1)(C).

> FN3. The twelve factors articulated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), provide a useful guide for determining the appropriate lodestar figure. Those factors include (1) time and labor required; (2) novelty and difficulty of the questions; (3) skill requisite to perform the legal services properly; (4) preclusion of employment as a result of accepting the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the relationship with the client; and (12) awards in similar cases.

**\*2** Mindful of the aforementioned standard, the relevant determinations for purposes of this ruling are (1) the time spent on the case, (2) the appropriate hourly rate by which fees will be computed and (3) the claim for costs involved in the case.

A. Time Spent on the Case

Before quantifying the reasonable time spent on the case, it is first necessary to establish whose time may be factored into the determination. Defendants take issue with the inclusion of time spent by Fallon on the proceedings before the ZBA and Fox in an award of attorneys' fees.

Fallon has filed no appearance for plaintiff in the present case, and plaintiff has provided no evidence that his involvement was more than incidental to his representation in litigation before the ZBA. Plaintiff replies "that a large portion of Mr. Fallon's time was dedicated solely to resolving matters for purposes of this litigation" or that "there was extensive negotiation, litigation and discussion about the admissibility of the settlement with the Town, Motiva's bad faith refusal to participate in that agreement and the effect of those two facts on the present litigation." This does not establish his entitlement to attorneys' fees under the PMPA. The franchisee "is only entitled to the attorney and expert witness fees that relate to his PMPA claim." *Jones,* 984 F.2d at 409. Time spent by an attorney involved in a state proceeding may not be characterized as relating to the PMPA claim and will not be included in an award of attorneys' fees.

Fox provided non-lawyer support services to Attorneys Barr and Morgan, apparently in the capacity of legal assistant or paralegal. Time spent by non-lawyers may be included in an award of attorneys' fees. *See U.S. Football League v. Nat'l Football League,* 887 F.2d 408, 416 (2d Cir.1989). It is of no moment that the non-lawyer support was provided by an outside service rather than a non-lawyer employed by the firm.

The fact that Mr. Fox's services may be includable does not require that they be included. The documentation of hours must adequately support an award of fees. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The documentation provided by Fox in support of the award for attorneys' fees states "As requested, my best review of the file is that a total of $16,610.00 was billed up to November 30, 2001.... I have concluded that a total of $11,750.00 is directly related from the time of termination." Attached thereto is a consulting service agreement for services rendered in the present case and monthly invoices from December 2000 to November 2001. The monthly invoices include a prominent disclaimer stating that "[t]his invoice is a compiled list of what was done during the month and is not intended to be an itemized, day-by-day accounting. The total hours at the end represent the entire time spent during the month as to all work performed." The claimed entitlement for fees during the period is 151.1 hours. A monthly summary is not of sufficient specificity to permit an assessment of the work done. The only invoices that are deemed sufficiently specific account for 9.1 hours, specifically those invoices limited to one or two entries with a sufficiently detailed description to justify the time expenditure claimed.

**\*3** Proceeding to a review of the hours claimed by Attorneys Albert Barr and John Morgan, the time sheets are of sufficient specificity, notwithstanding redactions, to grant the hours requested as claimed. The total hours spent are reasonable for a PMPA and the underlying zoning issue. Attorney Barr is found to have spent 36.7 hours in the present litigation.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



1996 WL 148435 Page 3
1996 WL 148435 (S.D.N.Y.)
**(Cite as: 1996 WL 148435 (S.D.N.Y.))**

Attorney Morgan has spent 271.9 hours on the present litigation.

B. Appropriate Hourly Rate

Having determined the reasonable hours expended on the litigation, it is next necessary to determine the applicable rate. Fee applicants must "produce satisfactory evidence - in addition to the attorneys' own affidavits - that the requested rates are in line with those prevailing in the community for similar lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895-96 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The award may be based in part on knowledge of hourly rates charged in a community and is not limited to the submitted evidence. *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir.1987). There is no substantiation of the hourly rates requested. Rates therefore will be assigned based on knowledge of rates charged by counsel in this District. *See Smart SMR of N.Y., Inc., v. Zoning Comm'n of Stratford,* 9 F.Supp.2d 143, 150 (D.Conn.1998); *Evans v. Conn.,* 967 F.Supp. 673, 691-92 (D.Conn.1997). Thus, the Court finds the following rates to be reasonable: Attorney Barr--$225.00/hour; Attorney Morgan--$150.00/hour and Mr. Fox--$75.00/hour. Applying the rates to the time spent on the present litigation, plaintiff is entitled to an award of $49,725.

C. Costs

Plaintiff argues that he is entitled to $5,901.65 in costs in addition to his attorneys' fees. Plaintiff filed a bill of costs with the Court, which was denied for failure to specify costs claimed. Plaintiff filed a second bill of costs, which was again denied without prejudice to refiling pending resolution of the appeal.

The present motion was submitted in addition to the bill of costs. The costs claimed are duplicative of the costs claimed through the bill of costs. D. CONN. L. CIV. R. 17(a) provides that

> [a]ny party who seeks costs in the District Court shall, within ten (10) days after the District Court judgment becomes final due to the expiration of the appeal period, as defined by Fed. R.App. P. Rule 4, or within ten (10) days after the issuance of a mandate by the federal appellate court, file with the Clerk and serve on all other parties a verified bill of costs ... setting forth each item of cost that is claimed.

The present motion does not meet the requirements of D. CONN. L. CIV. R. 17(a). Plaintiff's motion for attorneys' fees does not constitute a verified bill of costs. It is also premature as the appeal is pending before the Court of Appeals, thus no mandate has issued to date. The motion for costs is denied.

IV. CONCLUSION

**\*4** Plaintiff's Motion for Attorneys' Fees (Doc. 55) is granted in part. Defendant Motiva is ordered to pay $49,725 in attorneys' fees.

SO ORDERED.

2002 WL 32175199 (D.Conn.)

Motions, Pleadings and Filings (Back to top)

• 3:01CV00193 (Docket) (Feb. 06, 2001)

END OF DOCUMENT

Westlaw.

1996 WL 148435                                                                                                          Page 4
1996 WL 148435 (S.D.N.Y.)
**(Cite as: 1996 WL 148435 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

JULIE RESEARCH LABORATORIES, INC.
Plaintiff,
v.
SELECT PHOTOGRAPHIC ENGINEERING, INC.,
Philip Boettger, Sandra Boettger, Neil
Darrish, Jim Linford, and Pli Photo Lab, Inc.,
Defendants.

No. 92 Civ. 0613 (RLC).

April 2, 1996.

Martin J. Arbus, Oakhurst, NJ, for Plaintiff Julie Research Laboratories, Inc.

Philip Boettger and Sandra Boettger Glendale, AZ, Pro Se Defendants.

OPINION

ROBERT L. CARTER, District Judge.

**\*1** Defendants Philip and Sandra Boettger, proceeding *pro se,* move to amend their bill of costs against plaintiff Julie Research Laboratories, Inc. ("Julie Research").

I.

The lengthy and complex factual and procedural history to this lawsuit is set forth in *Julie Research Laboratories, Inc. v. Select Photographic Engineering, Inc.,* 810 F. Supp. 513 (S.D.N.Y. 1992) (Carter, J.), *aff'd in part, vacated in part, Julie Research Laboratories, Inc. v. Select Photographic Engineering, Inc.,* 998 F.2d 65 (2d Cir. 1993); *Julie Research Laboratories, Inc. v. Select Photographic Engineering, Inc.,* No. 92 Civ. 613, slip op. of July 27, 1994 (opinion on remand), *aff'd without op.,* 71 F.3d 404 (2d Cir. 1995); *Julie Research Laboratories, Inc. v. Select Photographic Engineering, Inc.,* No. 92 Civ. 613, slip op. of Oct. 18, 1994. Familiarity with these opinions is assumed. A brief overview of the background is necessary to provide context for the present motion. Plaintiff, the designer of an electronic photographic retouching and imaging system called the JRL Diamond, hired the Boettgers and their company, Select Photographic Engineering, Inc. ("Select"), to market the Diamond. After extensive disagreements over the marketing strategies employed by Select, Julie Research terminated their agency relationship. Julie Research subsequently filed suit against Select, the Boettgers, and Neil Darish and Jim Linford, employees of Select (together, "the Select defendants"), for appropriation of trade secrets--namely, the JRL Diamond. Plaintiff also sued PLI Photo Lab, Inc. ("PLI") over funds and equipment connected with the sale to PLI of a work station and peripherals.

After a trial on the merits, the court concluded that Julie Research had failed to show any trade secret in which it had a protectable interest and that no fiduciary relationship existed between plaintiff and Select to justify protection of the JRL Diamond design. All claims against the Select defendants were dismissed. On the claim against PLI, however, the court found that PLI owed plaintiff a balance of $37,910 plus interest, and required plaintiff to return to PLI its benchmark. *Julie Research Laboratories, Inc.,* 810 F. Supp. 513.

The court's decision was appealed, and in an opinion of June 29, 1993, the Second Circuit Court of Appeals affirmed in part, vacated in part, and remanded certain issues. [FN1] *Julie Research Laboratories, Inc.,* 998 F.2d 65. The opinion on remand was appealed by both parties, and in a decision dated October 4, 1995, the Second Circuit affirmed the opinion. A final mandate was subsequently docketed on November 21, 1995.

II.

The Boettgers now move to amend the bill of costs. Rule 54(d)(1), F.R. Civ. P., states that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." A bill of costs must be filed within 30 days of the final judgment or, in the case of an appeal, within thirty days of the mandate. Rule 11(a), Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"). "Costs will not be taxed during the pendency of any appeal." *Id.* Once costs are taxed, however, they are subject to modification by the court on a

1996 WL 148435                                                                                           Page 2
1996 WL 148435 (S.D.N.Y.)
**(Cite as: 1996 WL 148435 (S.D.N.Y.))**

motion filed within five days of the taxation. Rule 54(d), F.R. Civ. P.; Rule 11(b), Local Rules.

### III.

**\*2** Plaintiff's counsel responds to the present motion in a letter dated December 12, 1994, arguing that the Boettgers are out of time on their motion and, furthermore, that they have repeatedly attempted to amend their bill of costs and have been denied by this court or by the Second Circuit Court of Appeals each time. According to plaintiff's counsel, because this court stated in its Endorsement of November 15, 1994, that "this Court has nothing further before it in this case," and directed parties to the Court of Appeals for further issues, the motion is improper. [FN2]

Plaintiff's counsel misreads the court's previous treatment of the Boettgers' proposal to amend the bill of costs. The present motion comes before the court with a complicated procedural history. During the course of the several appeals described above, correspondence was exchanged among the court and parties concerning this motion. In a letter dated October 12, 1994, the Boettgers' counsel requested leave to amend the bill of costs. [FN3] The court responded in a letter of October 24, 1994, indicating that a proposed motion to amend the bill of costs "should now be interposed after disposition of the appeal of the current rulings of the court." The appeal was decided on October 4, 1995, and the final mandate in this case docketed on November 21, 1995. Under the court's previous admonition and the dictates of both the Local Rules and the Federal Rules of Civil Procedure that a bill of costs be filed within 30 days of the final mandate, the Boettgers' motion, filed on December 12, 1994, was, if anything, premature.

However, it appears that costs were already taxed in this action. The present motion is one to *amend* a previous bill of costs docketed and taxed on December 22, 1992. A motion to amend would come under the provisions of Local Rule 11(b); the parties have only 5 days from the original taxation of costs to move for the court's reconsideration.

However, given the requirement of Rule 11(a) of the Local Rules that a bill of costs not be taxed during the pendency of an appeal, the bill of costs actually taxed in 1992 was premature. [FN4] Had this error not been made, the present motion to amend the bill of costs could have been filed as an original bill of costs with the Clerk of the Court within 30 days of the final mandate of the Court of Appeals, docketed November 21, 1995.

Because the history of the bill of costs in this action is rife with procedural irregularities, the court chooses to exercise its discretion now to award the Boettgers those of their costs that are properly documented and that fit within the statutory constraints. This decision is well within the court's discretion. *See, e.g.,* Rule 6(b)(2), F.R. Civ. P. (the court may, with cause, address an untimely motion "where the failure to act was the result of excusable neglect"); *Davidson v. Keenan,* 740 F.2d 129, 132 (2d Cir. 1984) (the determination of "excusable neglect" is left to the discretion of the trial court). Such an action is warranted particularly since the Boettgers proceed *pro se* in this action and since the costs awarded, as described below, are relatively small. Furthermore, this grant of costs comes before the court at the proper time--*i.e.,* following the final mandate of the Court of Appeals-- and therefore does not cause undue prejudice to plaintiff.

### IV.

**\*3** The Boettgers request costs for expert witnesses, attorneys' fees, and transcripts. Allowable costs are set forth in 28 U.S.C. § § 1920 and 1821 and Standing Order M-10-468 of the Southern District of New York, filed on April 20, 1990 ("Standing Order").

Witness fees may be obtained in the amount of $40 per day of attendance. 28 U.S.C. § 1821(b). Reasonable travel costs may be reimbursed, on the submission of "a receipt or other evidence of actual cost," 28 U.S.C. § 1821(c)(1), and subsistence may also be recovered "if it is not practical for the witness to return to his or her residence from day to day during the trial." Standing Order at 2-3.

Under these guidelines, the court grants the Boettgers witness fees and expenses in the amount of $2,608, according to the following figures:

```
         Eric Sandel:       $  40.00           testimony

                            $785.00 [FN5]      airfare
```

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1996 WL 148435                                                                                                                Page 3
1996 WL 148435 (S.D.N.Y.)
**(Cite as: 1996 WL 148435 (S.D.N.Y.))**

```
     Jack Torgerson:    $ 40.00        testimony

                        $660.00        airfare

     David Gmach:       $ 40.00        testimony

                        $785.00        airfare

                        $218.00        subsistence (two days) [FN6]

     Donald Carli:      $ 40.00        testimony

     TOTAL:             $2,608.00

                        --------------
```

The Boettgers have supplied adequate documentation to account for these charges.

The Boettgers also claim expert witness fees above the ordinary witness allowances. Expert witness fees are, however, not taxable unless the witnesses were court-appointed or authorized in advance by the court. *See* Standing Order at 3. Only the standard witness fees may be recovered in this case.

Finally, the Boettgers request $433,811.56 in attorneys's fees. Attorneys' fees are generally not a recoverable cost of litigation, absent express statutory authorization. *Key Tronic Corp. v. United States,* --- U.S. ----, 114 S. Ct. 1960, 1965 (1994). There are certain exceptions, however: courts have awarded fees to the prevailing party when the litigation benefits an ascertainable class and the costs may be spread among those class members. *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores,* 54 F.3d 69, 71 (2d Cir. 1995). Courts have also assessed attorneys' fees as sanctions against a party acting in willful violation of a court order or in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991) (citations omitted); *see also Hirschfeld v. Board of Elections,* 984 F.2d 35, 40 (2d Cir. 1992) (citing cases). The Boettgers appear to make their argument under the latter exceptions, arguing that Julie Research acted in bad faith, abused the legal process, and attempted to defraud the court. I am not persuaded that they have met this standard. Plaintiff's suit against Select and the Boettgers was unsuccessful and the arguments put forward by Julie Research often without merit. I do not believe that plaintiff's actions were so egregious as to merit fee shifting, however. Attorneys' fees will not be granted.

*Conclusion*

The motion to amend the bill of costs is granted in part. The bill of costs is hereby amended to include $2,608 in witness fees, in addition to the $5,994.20 previously taxed. [FN7]

**\*4** IT IS SO ORDERED.

>    FN1.  The case was remanded for the court to recalculate damages and to make findings on Julie Research's claim against Select for improper use of the JRL Diamond sales leads.

>    FN2.  Plaintiff's counsel also argues that "[t]his issue was raised by defendants before the Appellate Court which rejected their claim for an amended Bill of Costs." The court is not aware of an appeal to the Second Circuit over the bill of costs relating to activities in the Southern District of New York. Obviously, any costs relating to the appellate process would be dealt with by the appellate court.

>    FN3.  Apparently, the Boettgers appear *pro se* in some matters and have occasional attorney representation in others. This motion has been filed *pro se.*

>    FN4.  A bill of costs was taxed in favor of Select against Julie Research in the amount of $5,994.20 on December 22, 1992. Julie

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp. Page 2
1991 WL 278668 (E.D.Mo.)
**(Cite as: 1991 WL 278668 (E.D.Mo.))**

Research filed its notice of appeal from the judgment on the same day. According to the Clerk of the Court, the bill of costs would not have been taxed if the notice of appeal had been previously docketed or if the clerk's office had been aware that an appeal would be filed.

FN5.  The Boettgers request $1431 for airfare from California. This amount does not appear to be "the most economical rate reasonably available." 28 U.S.C. § 1821(c)(1). Accordingly, the court will apply to Eric Sandel the cost of the airfare sought for David Gmach, who also flew round trip from California.

FN6.  The Boettgers request $417: $186 for hotel charges and $231 for meals and miscellaneous expenses. However, the maximum lodging amount allowed in New York City is $142; the maximum allowance for meals and incidental expenses is $38 per day. *See* 28 U.S.C. § 1821(d)(2); 5 U.S.C. § 5702(a); 41 C.F.R. § 301, App. A.

FN7.  The court notes that the Boettgers ask for the original bill of costs to be reaffirmed, since it has not been paid. They are advised to seek assistance from the Clerk of the Court in filing a writ of execution for this sum.

1996 WL 148435 (S.D.N.Y.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
1991 WL 278668 (E.D.Mo.)
**(Cite as: 1991 WL 278668 (E.D.Mo.))**

Page 3

Only the Westlaw citation is currently available.

United States District Court, E.D. Missouri, Eastern Division.

John CZAJKA and Diann Czajka, Plaintiffs,
v.
Paul CASPARI, et al., Defendants.

**No. 88-2225C(6).**

Dec. 19, 1991.

Kenneth Barnhouse c/o HBE Corporation St. Louis, Mo., for plaintiffs.

Kathi Chestnut, Special Asst. Atty. General, Evans & Dixon, St. Louis, Mo., for defendants.

*ORDER*

GUNN, District Judge.

**\*1** Pursuant to the memorandum filed on this date herein, IT IS HEREBY ORDERED that plaintiffs' motion for new trial shall be and it is denied.

IT IS FURTHER ORDERED that plaintiffs' motion for partial new trial shall be and it is denied.

IT IS FURTHER ORDERED that plaintiffs' motion to alter or amend judgment shall be and it is denied.

IT IS FURTHER ORDERED that plaintiffs' motion to extend time to file notice of appeal shall be and it is granted. IT IS FURTHER ORDERED that plaintiffs are granted leave to file their notice of appeal no later than ten (10) days from the date of this order.

IT IS FURTHER ORDERED that defendants' motion for judgment notwithstanding the verdict shall be and ity is denied.

IT IS FURTHER ORDERED that plaintiffs' motion for payment of its bill of costs shall be and it is denied without prejudice to refiling at such time as the Court of Appeals issues its mandate in this matter.

IT IS FURTHER ORDERED that plaintiffs' motion for an award of attorneys' fees shall be and it is granted in part and denied in part. Accordingly, IT IS FURTHER ORDERED that plaintiffs' attorney shall recover an award of $7,516.50.

*MEMORANDUM*

This matter is before the Court on several post trial motions filed by both parties.

Plaintiffs John Czajka and Diann Czajka brought suit against Paul Caspari, Janet Schneider, Paul Irish, Jerry Brown, Dick Moore and George Lombardi, employees of the Missouri Department of Corrections and Human Resources, alleging constitutional violations arising out of a conduct violation issued against plaintiff John Czajka following an incident of alleged sexual misconduct in the visiting room of the Missouri Eastern Correctional Center.

The somewhat involved procedural history of this matter in its early stages is set forth at *Czajka v. Moore,* 708 F.Supp. 253 (E.D.Mo.1989). Prior to trial this Court granted summary judgment with respect to liability on Count IV of plaintiff John Czajka's third amended complaint and the parties consented to the voluntary dismissal of Counts I and VIII. On August 6, 1990 the Court dismissed Counts II, III and VI of plaintiff's complaint for failure to state a claim upon which relief may be granted. Plaintiff John Czajka proceeded to trial on three claims: Count V, a due process claim alleging that he was denied the assistance of counsel substitute at the hearing of May 25, 1989; Count VII, a due process claim alleging that he was denied the right to a fair and impartial hearing on May 25, 1989; and the damage portion of Count IV, involving allegations that he was denied the right to a fair and impartial decision with respect to the November 10, 1988 hearing. The jury returned a verdict on August 7, 1990 and the Court entered judgment on that date in the amount of $250 against defendant Paul Caspari on Count V and in the amount of $500 against defendants Paul Irish and Janet Schneider on Count IV. The jury also returned a verdict against plaintiff on the remaining claim and judgment was entered thereon on August 7, 1990.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2002 WL 32175199 (D.Conn.)  
**(Cite as: 2002 WL 32175199 (D.Conn.))**

Page 2

*Plaintiff's Motions for New Trial and Partial New Trial and to Alter or Amend Judgment*

 **\*2** The Court must first address the timeliness of plaintiffs' motions for new trial, partial new trial and to alter or amend judgment. Pursuant to Federal Rules of Civil Procedure 59(b) and (e), such motions shall be served not later than ten days after the entry of the judgment. The aforementioned motions were filed with the Court on August 17, 1990, ten days after the entry of judgment. Plaintiffs' attorney also placed the motions in the United States mails on August 13, 1990, but they were not addressed to the attorney of record for defendants in this matter nor to any attorney associated with her firm. Pursuant to Rule 59, the date of service rather than the date of filing of these motions is determinative of timeliness. See Peake v. First Nat'l Bank & Trust Co. of Marquette, 717 F.2d 1016, 1019 n. 5 (6th Cir.1983). Although the motions were placed in the mails in a timely fashion, they were not addressed to the attorney of record. The Court file reflects that service on the attorney of record was not completed until August 28, 1990, twenty-one days after the entry of judgment. Because Rules 59(b) and 59(e) make reference to the date of service rather than the date of filing, plaintiff's motions for new trial, partial new trial and to alter or amend judgment are untimely. See 11 C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d § 2812 at 83*.

 The Court is without authority to enlarge the time for the filing of a motion for new trial, partial new trial or to alter or amend judgment. See Fed.R.Civ.P. 6(b); Fairway Center Corp. v. V.I.P. Corp., 491 F.2d 1092, 1093 & n. 1 (8th Cir.1974); 11 C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d § 2812 at 83-84 (1973)*. Therefore, plaintiff's motions for new trial, partial new trial and to alter or amend judgment must be denied. *Motion for Leave to File Notice of Appeal*

 In a motion filed on September 14, 1990, thirty-eight days after the entry of judgment, plaintiffs also seek leave to file a notice of appeal out of time. Defendants have no objection to this request. Although the Court is without discretion to enlarge the time for the filing of motions under Rule 59, the Court may, pursuant to Fed.R.App.P. 4(a)(5), extend the time for the filing of a notice of appeal due to excusable neglect. See Fairway Center Corp. v. V.I.P. Corp., 491 F.2d at 1093 n. 1. The Court finds that in this instance plaintiff's failure to properly serve defendants with post-trial motions coupled with timely filing of the same motions constitutes

excusable neglect. Having entertained defendants' response to the request to extend the time for filing the notice of appeal and finding that defendants have no objection thereto, the Court will grant plaintiffs leave to file a notice of appeal in this matter. Pursuant to Fed.R.App.P. 4(a)(5), plaintiffs are granted leave to file their notice of appeal no later than ten days from the date of this order. The Court notes that because it is without authority to grant a further extension of time for the filing of the notice of appeal, plaintiffs must file their notice of appeal within this time period.

*Defendants' Motion for Judgment Notwithstanding the Verdict*

 **\*3** Also before the Court is defendants' motion for judgment notwithstanding the verdict with respect to plaintiff John Czajka's claim of denial of assistance of inmate counsel substitute. When reviewing a motion for judgment notwithstanding the verdict, the court should view the evidence in a light most favorable to the prevailing party. However, the court can enter a judgment notwithstanding the verdict where all of the evidence "points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." See Charles Woods Television v. Capitol Cities/ABC, Inc., 869 F.2d 1155, 1160 (8th Cir.1989) (quoting Sunkyong International, Inc. v. Anderson Land & Livestock Co., 828 F.2d 1245, 1248 (8th Cir.1987)). See also Gilkerson v. Toastmaster, Inc., 770 F.2d 133, 136 (8th Cir.1985).

 In support of their motion defendants contend that the evidence failed to establish the existence of each of the essential elements of plaintiff's claim. Specifically, defendants contend that there is no constitutionally protected interest in the assistance of inmate counsel substitute because the prison regulations governing the appointment of inmate counsel substitutes do not contain the mandatory predicates necessary to give rise to such an entitlement. Plaintiff contends that the policy and procedure manual governing the participation of inmate counsel substitutes contains mandatory predicates which give rise to plaintiff's entitlement.

 The regulations relevant to the Court's determination are set forth in defendants' Exhibit K. Upon review of the regulations, the Court concludes that in this instance they give rise to a constitutionally protected interest in the assistance of inmate counsel substitute. The regulations clearly vest th einitial decision to appoint inmate counsel substitute with the discretion

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

of prison officials. *See* Missouri Department of Corrections Regulations § 20- 117.030.05(E). Once such a decision has been taken, the guidelines provide in mandatory terms that "[hearings] will only be delayed if an inmate counsel substitute is not available through no fault of the requesting inmate." *Standard Operating Procedure* S8-1.3 E6. It is clear, however, that the guidelines do not require an indefinite delay. In this case prison officials initially allowed plaintiff the assistance of inmate counsel substitute. At the time of hearing, however, plaintiff's inmate counsel substitute could not be located. Following a brief, unsuccessful attempt to find plaintiff's inmate counsel substitute, prison officials allowed the hearing to proceed in the absence of inmate counsel substitute. [FN1] The Court's review of the regulations persuades it that they mandate a delay of the hearing where the inmate counsel substitute is absent due to factors beyond plaintiff's control. Although the question is a close one, the jury could have and did in fact conclude, on the basis of the evidence presented, that plaintiff was constitutionally entitled to a more substantial delay of the hearing beyond the brief interlude allowed if the absence of inmate counsel substitute occurred through no fault of the plaintiff.

**\*4** The Court has reviewed defendants' remaining contentions concerning plaintiff's claim for relief and finds them to be without merit. At the very least, plaintiff is entitled to recover nominal damages on a claim for the deprivation of due process. *See Carey v. Piphus,* 435 U.S. 247, 90 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Therefore defendants' assertion that plaintiff has failed to establish the damages element of his claim is without merit. In addition, the Court agrees with plaintiff's contention that defendants' assertion of qualified immunity must be rejected because it was not raised in defendants' motion for directed verdict. On the basis of the foregoing, the Court concludes that defendants' motion for judgment notwithstanding the verdict should be denied.

*Bill of Costs*

Also before the Court is plaintiffs' bill of costs. The Court notes that plaintiff sought leave to file a notice of appeal in this matter. Pursuant to Local Rule 24(c), the Court finds that it would be premature to consider the pending bill of costs in light of the Court's grant of plaintiffs' request for leave to file a notice of appeal. *Cf.* Local Rule 24(C)(1) (providing that the bill of costs must be filed within a specified of time after entry of judgment or after issuance of the mandate of the appellate court, "whichever is later"). Accordingly, the Court concludes that plaintiffs' pending bill of costs shall be dismissed without prejudice to refiling at such time as the Eighth Circuit Court of Appeals issues its mandate in this action.

*Attorneys' Fees*

Plaintiffs John and Diane Czajka also seek an award of attorneys' fees in the amount of $15,518.75 pursuant to 42 U.S.C. § 1988. The award sought represents 169.25 hours of attorney time billed at $85 per hour and 24.00 hours of paralegal time. Pursuant to 42 U.S.C. § 1988, the Court may in its discretion approve an award of attorneys' fees to a prevailing party in a § 1983 action.

At the outset, the Court notes that plaintiff Diane Czajka was not a prevailing party in this action because she voluntarily dismissed one of her claims prior to trial and the Court dismissed her other claim with prejudice prior to trial. Therefore, the award sought by plaintiffs will be reduced to reflect only the time expended on the claims of John Czajka. In his itemization of time expended on the case, plaintiffs' attorney did not identify which tasks were related to particular claims. Therefore since Diann Czajka's claims represent two of the nine counts contained in the third amended complaint, the Court will reduce the award of attorney time by a factor of 2/9 to reflect her failure to prevail on these claims. *Fast v. School Dist. of Ladue,* 728 F.2d 1030, 1035 (8th Cir.1984).

Defendants have filed various objections to plaintiffs' request for an award of attorneys' fee contending that the hourly rate requested by plaintiffs' attorney is excessive given the experience of plaintiffs' attorney, charges billed for similar work by other attorneys in the community and the difficulty of the case. Defendants also contend that the award should be substantially reduced because plaintiff John Czajka prevailed on only one of his seven claims against the defendants. Defendants further contend that the amount of time spent on certain of the itemized tasks was excessive.

**\*5** The Court agrees with all of these contentions. Upon review of plaintiffs' request and defendants' objections, the Court concludes that the hourly rate charged by plaintiffs' attorney should be reduced to $70 per hour to reflect the experience of plaintiffs' attorney and the lack of complexity of the case. *See Davis v. Charleston,* 635 F.Supp. 197, 200 (E.D.Mo.1986). In the absence of any objection or guidance as to an appropriate rate, the Court will not

Not Reported in F.Supp.2d                                                                                                                                          Page 4
2002 WL 32175199 (D.Conn.)
**(Cite as: 2002 WL 32175199 (D.Conn.))**

reduce the hourly rate billed or the time expended by paralegals on this case. The award also will be reduced by one third to reflect plaintiff John Czajka's limited success in this matter. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Finally, the Court's review of the time sheets submitted persuades it that in a few isolated incidents the time expended by plaintiffs' attorney on certain tasks was excessive or inappropriate. The award will be reduced by .5 hour to reflect a discussion between plaintiffs' attorney and John Czajka concerning an unrelated "medical" case. Plaintiffs' attorney will be awarded fees for three hours of work rather than the 6.2 hours billed for the scheduling of and preparation for the deposition of David Roessler. The Court finds this reduction warranted because Roessler was a relatively minor fact witness whose knowledge related only to the initial hearing. On the basis of the foregoing, the Court concludes that plaintiffs' attorney is entitled to an award of 91.2 hours of attorney time at $70 per hour and 24.0 hours of paralegal time at the rate specified by plaintiffs' attorney for a total of $7,516.50.

> FN1. The recess was only about 1 to 1 1/2 hours while a search was made for the inmate counsel substitute, primarily by public address system.

1991 WL 278668 (E.D.Mo.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.