

**H**

Only the Westlaw citation is currently available.

United States District Court, S.D. Ohio.

Richard C. ROONEY, M.D., et al., Plaintiffs,
v.
MEDICAL CENTER HOSPITAL OF
CHILLICOTHE, et al., Defendants.

**C2-91-1100.**

March 8, 1995.

Michael John Fusco, Fusco Smith & Matthews,
Westerville, OH, for plaintiffs.

Richard Douglas Wrightsel, John Patrick Gartland,
Arter & Hadden, Columbus, OH, for Medical Center
Hosp. of Chillicothe Ohio, Alice M O'Brien, Medical
Center Hosp., Debbie Barrington, Gordon Langley,
Bob Barada, Ray Barber, Joanne Campbell, David
Stitt, John (NMI) White, Don Berling, John Degnan,
Everett Slaughter, William F. Neal, Ralph Boyer,
Dave M. Phillips, Catharine Evanoff.

Richard Douglas Wrightsel, John Patrick Gartland,
Arter & Hadden, Karen Krisher Rosenberg,
Columbus, OH, for Holmes Surgical Associates, Inc.

Alan Troy Radnor, Vorys Sater Seymour & Pease,
Columbus, OH, for Byron Smith, Jack Berno, David
Smith, defendant A Dixon Weatherhead.

*MEMORANDUM AND ORDER*

BECKWITH, District Judge.

**\*1** This matter comes before the Court on
Defendants' Motion for Costs and Attorneys' Fees
pursuant to Rule 54(d)(2) of the Federal Rules of
Civil Procedure and Rule 54.2 of the Local Rules of
the United States District Court for the Southern
District of Ohio, Plaintiffs' Memorandum Contra and
Defendants' Supplemental Authority in Support.

*Background*

On March 30, 1994, this Court granted summary
judgment to Defendants [FN1] on all of the Plaintiffs'
[FN2] federal claims. Plaintiffs had claimed that
Defendants had engaged in a conspiracy to diminish
Plaintiff Rooney's surgical practice by revoking his
staff privileges at Medical Center Hospital in
violation of the Sherman and Clayton Antitrust Acts.

Defendant's motion for summary judgment was
based upon the immunity granted to physicians peer
review participants by the Health Care Quality
Improvement Act of 1986, 42 U.S.C. § 11101 *et seq.,*
("the Act"). The record before the Court did not
support so much as an inference of a conspiracy to
diminish competition in the relevant market. On the
contrary, the record amply supports Defendants'
contention that the professional review action taken
by Defendants was solely in response to concerns
about the quality of health care at Medical Center
Hospital. The record is replete with instances of
Plaintiff Rooney's abusive and unprofessional
behavior toward patients, patients' families and
hospital staff. Plaintiff Rooney does not deny these
instances of highly inappropriate behavior.
Additionally, Plaintiff Rooney refused to provide
charitable medical care in contravention of the long-
standing tradition of Medical Center Hospital. Over a
period of at least ten years, Medical Center Hospital
attempted, through its various peer review
procedures, to assist Plaintiff Rooney in coming to
grips with his uncontrollable temper. The record
documents a sequence of warnings, probationary
periods, involuntary referrals to behavioral specialists
and even regular attendance at meetings to discuss
his unacceptable behaviors. Nothing accomplished
the desired behavior modification. Finally, the
Medical Center Hospital, out of concern for the
quality of patient care, was forced to terminate
Plaintiff Rooney's staff privileges.

*Applicable Law*

Defendants seek their costs and attorneys' fees
incurred in the defense of this action under 42 U.S.C.
§ 11113, which provides in pertinent part, that:

> In any suit brought against a defendant, to the
> extent that a defendant has met the standards set
> forth under section 11112(a) of this title and the
> defendant substantially prevails, the court shall, at
> the conclusion of the action, award to a
> substantially prevailing party defending against any
> such claim the cost of the suit attributable to such
> claim, including a reasonable attorneys' fee, if the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT

A

claim, or the claimant's conduct during the litigation of the claim, was *frivolous, unreasonable, without foundation, or in bad faith.* (Emphasis added)

In order to establish their entitlement to the recovery of their costs and attorneys' fee, the Defendants must show:
**\*2** 1. that they are among the persons covered by the Act;
2. that the standards set forth in § 11112(a) were followed;
3. that they substantially prevailed; and
4. that Plaintiff Rooney's claims or conduct during the litigation were frivolous, unreasonable, without foundation or in bad faith. [FN3]

The purpose of the Act is to eliminate the threat of liability under federal law which might inhibit or discourage "physicians from participating in effective professional peer review." 42 U.S.C. § 11101(4). Congress found that there was an overriding national need to provide incentive and protection for physicians engaging in peer review. 42 U.S.C. § 11101(5).

The Defendants are among the persons covered by the Act. Section 11111(a)(1) of the Act defines the persons covered by the Act as a professional review body, members and staff of that body and "any person who participates with or assists the body with respect to the action." Section 11151(11) of the Act specifies that a professional review body is a health care entity, including its governing body and staff physicians, which conducts professional peer review procedures.

Section 11112(a) of the Act sets the standards which a peer review action must meet in order to qualify for the immunity protection of the Act. It requires that the professional review action be taken:
1. in the reasonable belief that the action was in the furtherance of quality health care;
2. after a reasonable effort to obtain the facts of the matter;
3. after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
4. in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain the facts and after meeting the requirements of paragraph (3).

The standards are presumptively met unless rebutted

by a preponderance of the evidence. *Id.* This Court has previously found that the standards were met and nothing has disturbed that conclusion. (*See* Memorandum and Order of March 30, 1994).

The Defendants have not only substantially prevailed, but indeed have totally prevailed in light of the Court's grant *in toto* of Defendants' motion for summary judgment on all of Plaintiffs' federal claims.

The Plaintiffs have failed to produce a scintilla of evidence to warrant their claims under Section 1 of the Sherman Act. Requisite to such a claim is a demonstration that Defendants contracted, combined or conspired amongst themselves to accomplish anti-competitive effects which directly harmed Plaintiffs. The evidence may be either direct or indirect, [FN4] but it must point to "a conscious commitment to a common scheme designed to achieve an unlawful objective" on the part of the Defendants. [FN5] The record is devoid of any such proof. Indeed, in this Circuit, a legal entity such as Medical Center Hospital is incapable of conspiring with its own medical staff. [FN6]

**\*3** Plaintiffs' claims under Section 2 of the Sherman Act are likewise built upon sand. Monopolization is the thrust of this section and Plaintiffs must show that Defendants unfairly attained or maintained a monopoly power. [FN7] In order to do so, Plaintiffs must show that Defendants were Plaintiffs' direct competitors, providing the relevant product, i.e. thoracic surgery. Clearly, neither the Medical Center Hospital nor its staff had the power to monopolize the market for thoracic surgery, since they are not providers of this product. [FN8] Moreover, the record is devoid of any evidence of market share of the providers in the relevant market or evidence of monopolization.

The Court concludes that Plaintiffs' claims in this action are merely a continuation of Plaintiff Rooney's abusive, harassing and intimidating behaviors toward his colleagues, co-workers and patients. This is precisely the sort of abusive misuse of the Court which Congress intended to curb by the immunity provision of the Act. The record fully supports a finding that Plaintiffs conduct in filing and pursuing this litigation was "frivolous, unreasonable, without foundation ... [and] in bad faith." 42 U.S.C. § 11113.

Plaintiffs' response focuses on the limited issues raised in Defendants' motion for summary judgment. Plaintiffs complain that their discovery was directed only to Defendants' entitlement to immunity under

the Act and Plaintiffs' standing to bring the antitrust claims and, therefore, they had not progressed to discovery of the merits of their antitrust claims. The fatal flaw in this argument is that a plaintiff who cannot even meet the threshold requirements for bringing such claims is even more reckless than the plaintiff who meets the threshold requirements but fails in his proof on the merits. The Plaintiffs have had a full year of discovery, during which they have produced nothing to contradict the Defendants' version of the facts. Indeed, they have failed to even establish standing to bring these actions. Additionally, Plaintiffs have wholly failed to produce any tidbit of evidence which might militate against Defendants' right to immunity under the Act. Plaintiff Rooney's contention that he was not aware of the justification for the Defendants' action against him until after he had completed discovery is disingenuous in the extreme and does not in any way constitute a defect in the peer review process that would disqualify Defendants from the immunity afforded them under the Act.

Plaintiffs argue in the alternative that this Court should stay its ruling on Defendants' motion pending the resolution of Plaintiffs' appeal to the United States Court of Appeals for the Sixth Circuit. Under less clear-cut circumstances the Court might be inclined to agree with Plaintiffs. However, the Court is satisfied that there is no advantage to delay in this matter. The matter is entrusted to the sound discretion of the trial court. The Court declines to stay its ruling in this matter. [FN9]

### Conclusion

*4 The Court GRANTS Defendants' Motion for Costs and Attorneys' Fees and DENIES Plaintiffs' Motion For Stay Pending Appeal. Attorneys for the Defendants are DIRECTED to file the appropriate affidavits and documentation regarding their fees earned in this matter with the Clerk of this Court within thirty (30) days from the date of this Order. [FN10] Attorneys for both Plaintiffs and Defendants are DIRECTED to confer with each other in an effort to resolve by agreement the amount of Defendants' proper costs. Should that effort fail, the attorneys for both Plaintiffs and Defendants shall promptly schedule a costs conference with the Clerk of this Court in order to resolve any disputes regarding costs.

The Attorneys for both Plaintiffs and Defendants are DIRECTED to confer with one another in an effort to reach consensus as to Defendants' reasonable

attorneys' fees herein. The amount of the award will be established by a supplemental order.

IT IS SO ORDERED.

FN1.  Defendants are the Medical Center Hospital of Chillicothe, Inc., its individual trustees and others involved in the peer review of Plaintiff, Richard C. Rooney, M.D.

FN2.  Plaintiffs are Richard C. Rooney, M.D. and his professional corporation, Surgical Specialists, Inc.

FN3.  *Wei v. Bodner,* 1992 W.L. 165860 (D.N.J. Apr. 8, 1992); *see also, Smith v. Hicks,* 31 F.3d 1478 (9th Cir. 1994).

FN4.  *Sweeny & Sons, Inc. v. Texaco, Inc.,* 637 F.2d 105, 111 (3d Cir. 1980); *cert. denied,* 451 U.S. 911 (1981).

FN5.  *Monsanto Co. v. Spray-Rite Service Corp.,* 465 U.S. 752, 764 (1984).

FN6.  *Nurse Midwifery Assoc. v. Hibbett,* 918 F.2d 605, 614 (6th Cir. 1990) ("the intracorporate conspiracy doctrine prevents a finding of conspiracy between a hospital and its medical staff...").

FN7.  *United States v. Grinnell Corp.,* 384 U.S. 563, 570-71 (1966).

FN8.  *See Wei, supra* at 3.

FN9.  *See White v. New Hampshire Department of Employment,* 455 U.S. 445 (1982); *Jerket v. Lund,* 623 F.2d 29 (7th Cir. 1980).

FN10.  Defendants' attorneys are advised that the Court has established a standard format for applications for attorneys fees

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1995 WL 437548                                                    Page 4
1995 WL 437548 (S.D.Ohio)
**(Cite as: 1995 WL 437548 (S.D.Ohio))**

and costs. A copy of this Court's requirements for attorneys' fees and costs applications is appended to this order for the benefit of the attorneys.

1995 WL 437548 (S.D.Ohio)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.



2001 WL 363933
2001 WL 363933 (E.D.Mich.), 49 Fed.R.Serv.3d 45
**(Cite as: 2001 WL 363933 (E.D.Mich.))**

**H**

United States District Court, E.D. Michigan,
Southern Division.

EPCON GAS SYSTEMS and Norman Loren,
Plaintiffs,
v.
BAUER COMPRESSORS, INC., Defendant.

**No. CIV.A. 98-CV-75392.**

March 28, 2001.

REPORT AND RECOMMENDATION

TARNOW.

I. *RECOMMENDATION:*

**\*1** This cause comes before the Court on "Plaintiffs'
Motion for Review of Taxation of the Bill of Cost
and Stay Pending Appeal"; "Defendants' Opposition
to Plaintiffs' Motion for Review of Taxation of the
Bill of Cost and Stay Pending Appeal"; and Plaintiffs'
Reply. For the reasons stated herein, I recommend
that Plaintiffs' Motion for Stay be DENIED, that their
Motion for Review be GRANTED, and that Bauer be
awarded $9,166.13 in costs.

II. *REPORT:*

A.    *FACTUAL    AND    PROCEDURAL
BACKGROUND*

This is a patent infringement action. On February 28,
2000, the District Court held a *Markman* hearing
concerning the interpretation of two claims of a
patent held by Plaintiff Epcon Gas Systems.
Defendant Bauer Compressors Inc. filed a "Motion
For Summary Judgment That it Does Not Infringe
U.S. Patent No. 5,118,455 and Request To Have This
Case Declared Exceptional". It also file a "Motion for
Summary Judgment that U.S. Patent No. 5,118,455 is
Invalid As In Public Use or On Sale Under 35 U.S.C.
§ 102(b)". The District Court heard oral argument on
the motions on June 21, 2000. On September 19,
2000, the Court entered an order interpreting the two
disputed claims of the patent, granted Bauer's Motion
for summary judgment on the issue of
noninfringement, denied its motion to declare the
case exceptional, and declined to rule on the motion

for summary judgment on the issue of invalidity.
Both Epcon and Bauer appealed the District Court's
decision. Their appeals are now pending in the Court
of Appeals for the Federal Circuit.

On October 18, 2000, Bauer filed an "Itemization of
Bauer's Bill of Costs", seeking costs of $21,222.84. It
is undisputed that Bauer neglected to serve Epcon
with a copy of its Bill of Costs at that time. On
February 6, 2001, the Clerk of the Court issued a
Taxed Bill of Costs awarding Bauer $10,456.13 in
costs.

Epcon now seeks a stay of the award of costs
pending the outcome of the appeal. Alternatively, it
seeks a review of the award of costs. Epcon argues
that Bauer should not recover any costs because it
failed to serve Epcon with an itemized Bill of Costs,
that Bauer's itemized Bill of Costs includes court
reporter fees that are not taxable, and that it includes
certain nontaxable fees for service in connection with
documents sought by third parties.

B. *DISCUSSION AND ANALYSIS*

1. *STAY PENDING APPEAL*

Epcon first argues that the Court should stay the Bill
of Costs pending the outcome of the appeal in the
Federal Circuit. The Court has discretion to issue a
stay or to award costs where a case is pending on
appeal. While there is always the possibility that the
Court of Appeals may disagree with the District
Court's judgment, it is in the interest of judicial
economy to resolve all of the remaining issues in this
case at this time. Accordingly, I recommend that
Plaintiff's motion for a stay be denied, and that the
Court review the Clerk's Taxed Bill of Costs.

2. *SERVICE OF BILL OF COSTS*

**\*2** Epcon next contends that Bauer's Bill of Costs
should be disallowed because Bauer failed to serve a
copy of the Bill on Epcon at the time they filed it
with the Court. Bauer admits that it inadvertently
failed to serve Epcon with a copy of the Bill of Costs
at the time it filed the Bill with the Court, but it did
serve them with a copy the day after the Clerk
entered its Taxed Bill of Costs. Bauer contends that
Epcon did not suffer prejudice, as Epcon had no right
to object or respond to Bauer's Bill of Costs. Epcon
counters that it was prejudiced because it lost more

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT

B

2001 WL 363933
2001 WL 363933 (E.D.Mich.), 49 Fed.R.Serv.3d 45
**(Cite as: 2001 WL 363933 (E.D.Mich.))**

than three months that it could have had to review each of the itemized costs, and that it was forced to investigate, research, and prepare its motion for review in four days.

Epcon did lose time that could have been utilized to review Bauer's Bill of Costs. However, as Bauer notes, Epcon was not entitled to file a response or objections to the Bill of Costs until the Clerk filed the Taxed Bill of Costs. Until that time, Epcon could not know what costs the Clerk would allow. Once the Taxed Bill of Costs was filed, Epcon was afforded the full prescribed period of time within which to file its Motion for Review. Accordingly, I do not find that it suffered prejudice such that Bauer's entire request for fees be disallowed.

### 3. TRANSCRIPTS

Bauer seeks reimbursement for costs of the *Markman* hearing transcripts, and for the deposition transcripts of Paul Dier, Richard Goralski, Norman Loren, John Watters, Art Apkarian, Helmut Eckhardt, Andrew McKraig, Michael Lynch, Jon Erikson, Leslie Rhue, William Weaver, and William Nelson.

Epcon argues that Bauer was not ordered by the Court to obtain copies of the *Markman* hearing transcript, as it represented in its Bill of Costs. Rather, the Court set the post-hearing briefing schedule based upon the date that the transcript would be available. Title 28 U.S.C. § 1920(2) provides that costs may be taxed for "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." Judge Tarnow, at the *Markman* hearing, in setting a briefing schedule for supplemental briefs, stated, "How much time do you need? Well, first of all, let's make it a certain number of days after the transcript is made." (Transcript of *Markman* Hearing, February 28, 2000, p. 198). Regardless of whether Judge Tarnow's comments can be interpreted as an order of the court, it is clear that the transcripts were necessarily obtained for use in preparing the supplemental briefs that were ordered by the Judge. Since both parties required the transcript to complete their supplemental briefs, I recommend that each party bear fifty percent of the total cost of the transcript. Accordingly, I recommend that Epcon be taxed $250.00 for the *Markman* transcript.

With respect to the deposition transcripts, Epcon contends that because Bauer only prevailed on the noninfringement summary judgment motion, its recovery of costs should be limited to those

deposition transcripts used in support of that motion. In that motion, Bauer referenced only seven pages of the testimony of Jon Erikson. Epcon asserts that recovery for the remaining deposition transcripts should be disallowed. Bauer responds that the Clerk properly taxed the costs of the depositions transcripts that it used in one or more of its motions.

**\*3** The fee statute does not require that the deposition transcripts that the prevailing party seeks to tax as costs be used in the "winning motion". Bauer used the depositions of Eckhardt and Loren in its motion for summary judgment on the issue of invalidity. Although the Court ultimately declined to rule on that motion, the motion was not improvidently filed. Since those depositions were used to support that motion, the costs of the transcripts are compensable. Bauer also used the deposition transcripts of Erikson and Watters in its motion for summary judgment on the issue of noninfringement. The cost of those transcripts are clearly compensable.

In its Bill of Costs, Bauer contends that Epcon used the deposition of Paul Dier in opposition to the noninfringement motion. To assess Epcon's Opposition and to prepare a reply, it was necessary for Bauer to obtain that transcript. Therefore, it may be taxed as costs. The same rationale applies to the transcript of the deposition of Richard Goralski. I find no specific explanation in the Bill of Costs for the necessity of the deposition transcripts of Lynch, Rhue, Weaver, and Nelson. Accordingly, I recommend that the Court tax costs for the deposition transcripts of Erikson, Loren, Watters, Dier and Goralski.

### 4. SERVICE FEES

Finally, Epcon contends that the Clerk incorrectly taxed $58.00 for service fees in connection with documents sought from third parties and used during the *Markman* proceeding. Epcon argues that Bauer did not prevail at the *Markman* proceeding and, therefore, the service fees are not recoverable. In addition, they argue that the Bill of Costs Handbook forbids recovery for services fees for discovery subpoenas. Bauer claims that it is entitled to the award as the prevailing party in this case. In addition, it asserts, in its Opposition, that some of the subpoenaed documents were attached to its motion for summary judgment and therefore are recoverable. Bauer states, in its Bill of Costs, that the subpoenas were served to obtain documents that it used in its *Markman* brief.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

2001 WL 363933                                                                                                Page 3
2001 WL 363933 (E.D.Mich.), 49 Fed.R.Serv.3d 45
**(Cite as: 2001 WL 363933 (E.D.Mich.))**

Although Bauer has offered an explanation for the need for the subpoenas, the Bill of Costs Handbook clearly states that service fees for discovery subpoenas will not be taxable. Accordingly, I recommend that the Court not permit recovery for those suppoenas.

C. *CONCLUSION*

For the reasons stated above, I recommend that Plaintiff's Motion for a Stay be DENIED, that Plaintiff's Motion for Review be GRANTED, and that Bauer be awarded $9,166.13 in costs. [FN1]

> FN1. The award amount includes $1,257.50 for the "agreed upon other costs" in Item G of the Itemization of Bill of Costs, and $7,909.13 in deposition costs.

III.    *NOTICE    TO    PARTIES    REGARDING OBJECTIONS*

The party to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). *Thomas v. Arn,* 474 U.S. 140 (1985), *Howard v. Secretary of Health and Human Services,* 932 F.2d 505 (6th Cir.1991). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Federation of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987), *Willis v. Secretary of Health and Human Services,* 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection is to be served upon this Magistrate Judge.

**\*4** Within ten (10) days of service of any objecting party's timely filed objection, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

2001 WL 363933 (E.D.Mich.), 49 Fed.R.Serv.3d 45

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1999 WL 395377                                                        Page 1
1999 WL 395377 (N.D.N.Y.), 15 NDLR P 242
**(Cite as: 1999 WL 395377 (N.D.N.Y.))**

**H**

United States District Court, N.D. New York.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Plaintiff,
v.
ALLIED SYSTEMS, INC., Defendant.

**No. 97-CV-1396.**

June 9, 1999.

Equal Employment, Opportunity Commission, New
York District Office, New York, NY, for Plaintiff,
Michael B. Ranis, of Counsel.

Nixon Hargrave Law Firm, Albany, NY, for
Defendant, Daniel J. Hureau, of counsel.

Alston Bird Law Firm, Atlanta, GA, for Defendant,
Forrest W. Hunter, of counsel.

MEMORANDUM-DECISION & ORDER

MCAVOY, Chief J.

**\*1** Plaintiff brought this action against defendant
claiming violations of the Americans with
Disabilities Act ("ADA"). 42 U.S.C. § 12101 et seq.
By Memorandum-Decision & Order dated February
19th, 1999, familiarity with which is assumed, this
Court entered summary judgment in favor of
defendant. See E.E.O.C. v. Allied Systems, Inc., 36
F.Supp.2d. 515 (1999). Defendant now moves
pursuant to 28 U.S.C. § 1920 (§ 1920) and Fed. R.
Civ. P. 54(d) for costs other than attorney's fees.
Defendant filed a timely Bill of Costs in the amount
of $3,787.27 on March 22, 1999, in accordance with
N.D.N.Y. L.R. 54.1(a). Plaintiff filed a response to
defendant's Bill of Costs on April 7, 1999. On May 3,
1999, defendant filed an apparent "amended" Bill of
Costs in the amount of $3,540.57 comprised as
follows: $3,169.25 for court reporter fees, $246.54
for photocopies, and $124.78 in costs for document
delivery.

Plaintiff's opposition to defendant's Bill of Costs
requests that the Court stay any action on defendant's
motion pending the outcome of plaintiff's appeal.
Plaintiff also requests that, in the event that this Court
prefers to resolve the cost issue at this time, it be

granted further opportunity to present arguments in
opposition to defendant's motion. Aside from this
request, plaintiff's only direct response to defendant's
motion for costs is that it brought this action in good
faith to enforce the ADA, and that an award of costs
in these circumstances would be inappropriate.

Under Fed. R. Civ. P. 54(d), an award of costs "shall
be allowed as of course to the prevailing party...."
Generally speaking, this equally applies where costs
are sought from the United States or an agency of the
United States. See 28 U.S.C. § 2412(a). The District
Court "must provide a valid reason for not awarding
costs to a prevailing party." Cantrell v. International
B'hood of Elec. Workers, AFL-CIO, Local 2021, 69
F.3d. 456, 459 (10th Cir.1995) (citing Serna v.
Manzano, 616 F.2d. 1165, 1167 (10th Cir.1980)).
Here, plaintiff fails to demonstrate good reason for
the Court to exercise its discretion to delay an award
of costs pending an appeal. See Deering, Milliken &
Co. v. Temp-Resisto Corp., 169 F.Supp. 453, 456
(S.D.N.Y.1959). Further, plaintiff will not be
permitted to present additional opposition to
defendant's motion for costs. Plaintiff had ample
opportunity to raise any objections it had in its
responsive papers. Challenges to the amounts taxed
must be made at the time of taxation in order to be
considered by the Court. See Calloway v. Marvel
Entertainment Group, 111 F.R.D. 637, 652
(S.D.N.Y.1986), rev'd in part on other grounds,
Pavelic & LeFlore v. Marvel Entertainment Group,
493 U.S. 120 (1989). Accordingly, the court will now
address defendant's motion for costs.

Section 1920 permits costs to be awarded for "[f]ees
of the court reporter for all or any part of the [ ]
transcript necessarily obtained for use in the case," as
well as "[f]ees for exemplification and copies of
papers necessarily obtained for use in the case."

**\*2** Defendant submitted copies of invoices for fees
incurred in obtaining portions of the transcript
necessarily obtained for use in the case with its
amended Bill of Costs. These fees totaled $3,169.25
and will be awarded to the defendant.

Defendant's amended Bill of Costs also identified
1761 pages of photocopies necessarily obtained for
use in the case for which it claims to have paid
fourteen cents per page. However, defendant's
memorandum in support of the initial Bill of Costs
states that it paid ten cents per page, but gives no

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT
C

detail regarding what documents were copied. Because defendant gives no explanation for this discrepancy in cost per page and offers no proof that fourteen cents was the actual amount paid, the Court will tax the cost of copies at the rate of ten cents per page for 1761 pages, for a total of $176.10.

Defendant further seeks $124.78 for document delivery to the plaintiff and the Court. Section 1920 makes no provision for the taxation of this type of cost and courts have generally held that fees of this type are not compensable. *See Massachusetts Fair Share v. Law Enforcement Assistance Administration, 776 F.2d 1066, 1069 (D.C.Cir.1985); Martin v. United States, 12 Cl.Ct. 223, 230 (Cl.Ct.1987), vacated in part on other grounds, Martin v. United States, 852 F.2d 1292 (Fed.Cir.1988).* Accordingly, defendant may not reclaim these costs.

For the foregoing reasons, plaintiff's request for a stay is DENIED and defendant's request for costs is GRANTED in the amount of $3,345.35. Defendant's motion is DENIED in all other respects.

IT IS SO ORDERED.

1999 WL 395377 (N.D.N.Y.), 15 NDLR P 242

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

1997 WL 97384                                                   Page 1
1997 WL 97384 (N.D.Ill.)
**(Cite as: 1997 WL 97384 (N.D.Ill.))**

**H**

Only the Westlaw citation is currently available.


United States District Court, N.D. Illinois, Eastern
Division.

Janet ZIEMACK, et al., Plaintiffs,
v.
CENTEL CORPORATION, et al., Defendants.

**No. 92 C 3551.**

Feb. 27, 1997.


*MEMORANDUM AND ORDER*

MORAN, Senior District Judge.

**\*1** Having prevailed on their motion for summary
judgment, defendants now seek $71,944.63 in costs.
That amount consists of $20,443.09 for court reporter
charges and $51,501.54 for copies of exhibits and
other documents. Plaintiffs object to the amount
requested, contending that it is excessive.

 Plaintiffs urge us to stay consideration of the bill of
costs pending appeal. Since the matter has been fully
briefed, the only imposition is upon the court, and we
think we should go ahead.

 The transcript costs relate to 36 depositions, 27
noticed by plaintiffs and 9 by defendants.
Defendants seek the transcript cost of an original,
with 11 at expedited rates, plus 18 cents per page for
reproducing copies for each of the three principal
attorneys on the case. The copying costs relate to
two sets of documents produced during discovery, for
a total of $47,905.68, up to six copies of various
pleadings, for a total of $3,301.38; and up to six
copies of various discovery documents, for a total of
$294.48. Much of the copying was by outside
services at 11 or 13 cents a page. Much of it was
copied internally by defendants at 18 cents per page,
or the documents were obtained from others, who
charged up to 18 cents per page. Plaintiffs object to
the number of transcripts obtained, the number of
copies, the page charge for copies, the expedited
transcript charges, the second copy of exhibits, any
charges for pleadings and discovery documents, and

the page charge for many of the copies.

 We begin by recognizing that this dispute, while it
involves a substantial monetary amount, has an aura
of unreality to it. In litigations of this magnitude the
number of copies of various documents proliferates
well beyond the number for which reimbursement is
being sought here. Nevertheless, we must make a
reasonable allocation between covered costs incurred
as necessary to the defense of this action and those
more appropriately viewed as incurred for the
defendants' own convenience. We make that
allocation by categories, leaving to the parties the
mechanical calculation of the final cost figure. We
allocate as follows:

 1. We are persuaded that the depositions (and most
certainly the transcripts of depositions) of name
plaintiffs taken after the February 22, 1996, letter
were not necessary, and their costs are not
recoverable.

 2. We conclude that the ordering of expedited
transcripts of the eleven depositions was necessary in
the circumstances. Whatever scheduling difficulties
there may have been earlier, there came a time when
Judge Duff's scheduling orders resulted in a new
urgency and an accelerated effort.

 3. Given the magnitude of this case, we believe that
taxing as costs the reproduction of three copies of
depositions is justified. We do not, however,
approve 18 cents per page. Defendants may choose
to use that figure for their own internal purposes, but
they cannot saddle plaintiffs with that decision. We
accept 13 cents per page, the higher of the outside
service charges, as the outer limit of permissible
charges when defendant had control over copying
costs.

 **\*2** 4. We have no quarrel with defendants obtaining
a backup copy of all documents in discovery, and
defendants are entitled to recover their actual costs in
obtaining the first copy. We believe, however, that
13 cents per page for the backup copy is the
maximum for those documents as well.

 5. We think up to four copies of the various
pleadings and discovery documents can be justified,
at a maximum of 13 cents per page. The remainder
is not approved.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.


EXHIBIT
D

1997 WL 97384
1997 WL 97384 (N.D.Ill.)
**(Cite as: 1997 WL 97384 (N.D.Ill.))**

Counsel for defendants should submit a draft costs order, based on the above, by March 11, 1997.

1997 WL 97384 (N.D.Ill.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.