# EXHIBIT A

LEXSEE 2005 US APP. LEXIS 28671

ROBERT L. HUNTER, Plaintiff-Appellee, v. GENERAL MOTORS CORPORATION, Defendant-Appellant.

No. 03-3883

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

05a1005n.06;

2005 U.S. App. LEXIS 28671

December 22, 2005, Filed

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO. *Hunter v. GMC, 2005 U.S. App. LEXIS 18323 (6th Cir. Ohio, Aug. 24, 2005)*

**COUNSEL:** For ROBERT L. HUNTER, Plaintiff - Appellee: Shelbra Haggins, Oakwood Village, OH.

For GENERAL MOTORS CORPORATION, Defendant - Appellant: David A. Kadela, Margaret C. Bettendorf, Littler Mendelson, Columbus, OH.

**JUDGES:** Before: NORRIS and DAUGHTREY, Circuit Judges; MARBLEY,* District Judge.

* The Hon. Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

**OPINION:**

PER CURIAM. In our previous opinion in this case, *Hunter v. GMC, 2005 U.S. App. LEXIS 18323, No. 03-3797 (6th Cir. August 24, 2005)*, we affirmed the district court's judgment memorializing the jury verdict entered in favor of the defendant, General Motors Corporation (GMC). In this separate appeal by the defendant, [*2] we are asked to reverse the district court's denial of GMC's motion, as the prevailing party, for an award of costs pursuant to *Federal Rule of Civil Procedure 54*. Upon review, we find that the district court erred in determining that the case was so "close and difficult" that a denial of costs was justified.

The plaintiff, Robert Hunter, sued his employer, GMC, claiming that he had been the victim of race and age discrimination when he was denied admission to a training program that, upon successful completion, would have qualified Hunter for a new position with the company at a higher hourly wage. The problem Hunter had in attempting to establish a case of discrimination at trial was that he was one of 85 applicants for the training program and that, out of the 27 finalists, he scored the lowest of all those actually interviewed during the selection process. Reduced to its essentials, the case simply was no more complicated than that. As we noted in our prior opinion, there was "overwhelming evidence" to support the jury's verdict in favor of the employer. In reviewing the legal sufficiency of the evidence, we held that "the plaintiff's own [*3] lack of qualifications, not improper racial animus on the part of the defendants, prevented him from attaining the position he desired."

As the district court noted in ruling on the defendant's motion for costs, *Rule 54(d)* creates a presumption in favor of awarding costs to the prevailing party ("costs . . . shall be allowed as of course to the prevailing party unless the court otherwise directs"). In this case the court did direct otherwise, exercising its discretion to deny costs based on our opinion in *White & White, Inc. v. American Hospital Supply Corp., 786 F.2d 728 (6th Cir. 1986)*. There we held that it may be appropriate to deny costs in cases that are "close and difficult." *Id.* at 730 (quoting *United States Plywood Corp. v. Gen. Plywood Corp., 370 F.2d 500 (6th Cir. 1966))*. But, as we also noted in *White & White*, the exercise of discretion au-

thorized by *Rule 54(d)* is "intended to take care of a situation where, although a litigant was the successful party, it would be inequitable *under all the circumstances in the case* to put the burden of costs upon the losing party." *Id.* (quoting *Lichter Found., Inc. v. Welch,* 269 F.2d 142, 146 (6th Cir. 1954) [*4] (emphasis in original). Moreover, "the exercise of such discretion is not beyond review . . . ." *Id.*

We respectfully disagree with the district court's description of this case as a "close and difficult" one. Indeed, comparing the altogether straightforward issues litigated in this action with the complexity of the antitrust dispute that was involved in *White & White* makes this point abundantly clear. The latter case "required protracted litigation" that "consumed 80 trial days, requiring 43 witnesses, produced 800 exhibits, generated almost 15,000 pages of transcript, and begat a 95 page opinion" by the district judge. *Id. at 732.* The district court characterized this case as involving "close factual questions" meriting denial of the defendant's motion for summary judgment and observed that "nothing since that time has changed the way this Court would characterize the facts of this case." However, the standard used to determine whether to grant summary judgment is simply not appropriate in determining whether the losing party has presented sufficient grounds to overcome the presumption in favor of an award to costs under *Rule 54(d)*. We conclude that the use of the summary [*5] judgment standard to deny the defendant's *Rule 54* motion in this case constituted an abuse of discretion on the part of the district court.

For this reason, the district court's order denying the defendant's *Rule 54* motion for costs is VACATED, and the case is REMANDED to the district court for a determination of allowable costs to be awarded to the defendant.

# EXHIBIT B

LEXSEE 2005 US DIST LEXIS 15246

**LESLIE D. FERRERO, Plaintiff, vs. WILLIAM J. HENDERSON, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE, Defendant.**

Case No. 3:00CV00462

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

*2005 U.S. Dist. LEXIS 15246; 16 Am. Disabilities Cas. (BNA) 1877*

July 28, 2005, Decided
July 28, 2005, Filed

**PRIOR HISTORY:** *Ferrero v. Henderson, 341 F. Supp. 2d 873, 2004 U.S. Dist. LEXIS 23222 (S.D. Ohio, 2004)*

**DISPOSITION:** [*1]

**COUNSEL:** For Leslie D Ferrero, Plaintiff: Lee Hornberger, Traverse City, MI.

For US Postal Service, William J. Henderson Postmaster General, Defendant: Pamela M Stanek, United States Attorney's Office, Dayton, OH.

**JUDGES:** Sharon L. Ovington, United States Magistrate Judge.

**OPINIONBY:** Sharon L. Ovington

**OPINION:**

ORDER

**I. INTRODUCTION**

On September 14, 2004, after a trial to the bench, the Court filed an Order finding merit in Plaintiff Leslie D. Ferrero's claim that Defendant retaliated against her in violation of her rights under the Rehabilitation Act of the 1973, *29 U.S.C. §§ 791, et seq.* The Court further determined that Ferrero's remaining claims lacked merit. These included her claims that Defendant violated her rights under the Rehabilitation Act by engaging in retaliatory harassment, by treating her differently than similarly situated persons not under a disability, by failing to reasonably accommodate her disability, by failing [*2] to engage in an interactive process concerning reasonable accommodations, and by harassing her due to her disability. (Doc. # 127). The Court also rejected as meritless Ferrero's retaliatory harassment claim under the Family and Medical Leave Act of 1993 ("FMLA"), *29 U.S.C. §§ 2601, et seq.*, although sanctions were imposed upon Defendant due to its attorney's bad faith discovery conduct. *Id.*

This case is before the Court upon Ferrero's Motion for Award of Attorney Fees and Costs (Doc. # 129), Ferrero's Motion for Prejudgment Interest (Doc. # 130), Defendant's Motion to Reconsider and Withdraw Bad Faith Finding (Doc. # 139), the parties' related Memoranda in Opposition and Replies to these Motions, and the record as a whole.

**II. THE PARTIES' ATTORNEY-FEE CONTENTIONS**

Ferrero seeks an award of attorney fees and costs totaling $ 290,300.00. She calculates this by multiplying an attorney fee rate of $ 300 per hour times a net total of 623 hours equaling a rounded-off (in Defendant's favor) lodestar amount of $ 184,000.00. Ferrero then applies a fifty percent multiplier and adds $ 14,300.00 in expenses. (Doc. # 138 at 10).

Defendant contends that [*3] Ferrero's Motion for Attorney Fees should be denied and/or reduced because (1) the number of hours is excessive; (2) the rate of $ 300 per hour is excessive for Dayton, Ohio; (3) the total amount should be reduced by at least 40% to reflect that Ferrero only prevailed on one of her claims; and (4) her request for a 50% multiplier should be denied.

Defendant does not challenge Ferrero's status as a prevailing party and her resulting statutory right to an award of reasonable attorney fees. *See* Doc. # 135 at 7-8, 16-31; *see also 29 U.S.C. § 794a(a)(1).*

**III. DISCUSSION**

**A. Attorney Fees**

Case 1:02-cv-00003-SSB-TSB    Document 166-2    Filed 03/03/2006    Page 6 of 10

Page 2
2005 U.S. Dist. LEXIS 15246, *; 16 Am. Disabilities Cas. (BNA) 1877

"The primary concern in an attorney fee case is that the fee award be reasonable. A reasonable fee is 'one that is adequate to attract competent counsel, but ... [does] not produce windfalls to attorneys." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995). "Hourly rates should not exceed what is necessary to encourage competent lawyers within the relevant community to undertake legal representation." *Id. at 535-36.*

"The first step in determining a reasonable fee in a lodestar case is to multiply the number of hours [*4] reasonably expended on the litigation by a reasonable hourly rate. Once the lodestar figure is established, the trial court is permitted to consider other factors, and to adjust the award upward or downward to achieve a reasonable result." *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004). An adjustment is made based on consideration of the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (citation omitted); *see Paschal v. Flagstar Bank*, 297 F.3d 431, 433 (6th Cir. 2002).

### B. Number of Hours

Defendant first seeks to exclude work Ferrero's [*5] attorney performed that is not adequately described in his billing records. Defendant lists, as an example, several entries totaling 7.7 hours. (Doc. # 135 at 18-19). Ferrero contends that she is entitled to attorney fees for all requested hours.

"The Supreme Court has advised that counsel 'is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures.'" *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005)(quoting in part *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983)).

A review of the attorney billing records at issue, including the few entries specifically challenged by Defendant, *see* Doc. # 135 at 18-19, reveals adequately detailed descriptions of the work performed, even though some of the entries were not described in detail. To require more detail than is present in the billing records would go beyond the Supreme Court's instruction that attorneys need to identify the general subject matter of their work without supporting each entry with great detail. *See McCombs*, 395 F.3d at 360 (quoting in part *Hensley*, 461 U.S. at 437 n.12). [*6] Although more detail would certainly have avoided Defendant's present arguments, mandating additional detail than is present in the billing records, which succeed in identifying the work performed and the time spent performing it, is sufficient under *McCombs*, 395 F.3d at 360 and *Hensley*, 461 U.S. at 437 n.12.

Defendant next contends that the number of hours should be reduced by at least one hundred hours for unnecessary work including over one hundred hours of legal research, consultation, and clerical work. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. 'In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.'" *Hensley*, 461 U.S. at 434 (internal citation omitted)(italics in original).

A review of the challenged hours listed [*7] by Defendant, *see* Doc. # 135 at 20-22, does not reveal excessive, redundant, or otherwise unnecessary work. The work described in these entries was reasonably related to, and necessary in, the instant case. *See id.* The time it took to perform such work was likewise reasonable. *See id.* Defendant's challenge to these entries relies in part on Ferrero's attorney's claim to a high hourly rate based on his high level of experience. The focus with regard to the number of hours is not on the hourly rate charged by the attorney, which properly accounts for the attorney's skill and experience. As long as the work performed is neither redundant, excessive, nor unnecessary in light of the demands of the case, an otherwise reasonable number of hours should not be reduced based on the attorney's hourly rate, skill, and experience. In addition, contrary to Defendant's further challenge, there is no indication in the billing records challenged by Defendant that Ferrero's attorney performed mere background work or charged for time he spent learning the law. Instead, the cases he reviewed were pertinent to his work in this case. *See* Doc. # 135 at 20-22 (and billing entries listed therein). [*8]

Case 1:02-cv-00003-SSB-TSB    Document 166-2    Filed 03/03/2006    Page 7 of 10

Page 3
2005 U.S. Dist. LEXIS 15246, *; 16 Am. Disabilities Cas. (BNA) 1877

Defendant next seeks to exclude the hours Ferrero's attorney billed for certain clerical work he performed at the rate of $ 300 per hour. Such work should not be billed at the attorney-fee rate claimed by Ferrero's attorney, since an award of attorney fees is by definition compensation for legal work -- not clerical work -- performed by an attorney. *See, e.g., Missouri v. Jenkins, 491 U.S. 274, 288 n.10, 105 L. Ed. 2d 229, 109 S. Ct. 2463 (1989).* Consequently, Defendant's challenged entries totaling 7.5 hours for non-legal, clerical work will be excluded. *See* Doc. # 135 at 22-23.

Defendant contends that the total number of hours charged by Ferrero's attorney is excessive because it includes certain entries related to consultations with an attorney in Dayton without identifying the attorney or the subject matter. This contention lacks merit because the billing information provided is sufficiently specific to support the relatively small amount of time charged for these consultations. *See* Doc. # 135 at 24; *see also Glover v. Johnson, 138 F.3d 229, 252 (6th Cir. 1998).*

In sum, Ferrero's total net hours -- 623.00 hours -- must be reduced by 7.5 hours for non-legal, clerical work. [*9] Ferrero has therefore established that her attorney reasonably expended a total of 615.50 hours in this case.

### C. Reasonable Hourly Rate

Ferrero seeks to recover attorney fees at the rate of $ 300 per hour. In support of this rate, Ferrero submits, among many assertions, the declarations or affidavits of three attorneys. (Doc. # 117 (Declarations attached); Doc. # 118). Attorney Konrad Kuzak's affidavit is representative. He states in part, "As recently as the summer of June, 2002, Affiant attempted to locate and retain a skilled advocate to represent a close family member in a Merit Systems/Civil Service matter when it was determined that Mr. Hornberger [Ferrero's attorney] was unavailable and affiant discovered that the prevailing market rate for lawyers skilled in such matters ranged from $ 300 to $ 450 per hour." (Doc. # 118).

Defendant contends that $ 300 per hour does not accurately reflect the market rate in the Dayton community. In support of this contention, Defendant submits the affidavit of attorney Elaine S. Bernstein, who states that ninety-five percent of her legal practice involves civil rights actions involving claims of discrimination and retaliation; [*10] that she has practiced law in federal court since 1989; and that her current (October 2004) billing rate is $ 195 per hour.

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004).*

A review of the parties' dueling affidavits and declarations reveals that neither party has proposed a reasonable hourly rate that lawyers of skill and experience comparable to Ferrero's attorney can expect to obtain in the prevailing Dayton, Ohio market. Ferrero's requested rate of $ 300 per hour is excessive in light of the affidavit submitted by attorney Bernstein. To hold otherwise would require completely ignoring attorney Bernstein's affidavit and completely accepting attorney Kuzak's affidavit as well as the other declarations upon which Ferrero relies. This is not warranted since attorney Bernstein had approximately fourteen years of litigation experience in the pertinent area of law, in federal court, and in the Dayton, Ohio legal market. Such evidence [*11] must therefore be credited as probative of the prevailing market rate in this area. Attorney Bernstein's affidavit, however, is not dispositive because she has many years less experience than Ferrero's trial attorney, who has much more extensive experience and is therefore able to obtain a higher fee rate than $ 195 per hour. The Court therefore finds that a reasonable fee rate in this case is $ 250.00, the near mid-point between the dueling rates each party seeks. This constitutes the rate that lawyers of skill and experience comparable to Ferrero's attorney can reasonably expect to command within the venue of this Court. *See Geier, 372 F.3d at 791; see also Wolff v. Moore, 104 F.Supp.2d 892, 905 (S.D. Ohio 2000)*($ 225 reasonable hourly rate in prisoner civil rights litigation); n1 *Morrison v. Davis, 88 F.Supp.2d 799, 809 (S.D. Ohio 2000)*($ 250 reasonable hourly rate in prisoner civil rights litigation); *cf. DPL Inc. Securities Litigation, 307 F.Supp.2d 947, 953-54 (S.D. Ohio 2004)*($ 350 per hour "an overly generous rate for this part of the world....").

n1 vacated on other grounds, *234 F.3d 1271, 2000 WL 1679503 (6th Cir. 2000).*

[*12]

Accordingly, a reasonable rate for work performed by Ferrero's attorney is $ 250 per hour.

### D. Adjustment

Ferrero seeks an upward adjustment of the lodestar by applying a fifty percent multiplier due to her attorney's success and quality of representation. Ferrero contends that this was not an average Rehabilitation Act case. She maintains, "This was a case where the Plaintiff had to work through years of the Defendant inappropriately utilizing discovery and other litigation tactics which were inconsistent with the way that things should have been." (Doc. # 129 at 12).

Case 1:02-cv-00003-SSB-TSB   Document 166-2   Filed 03/03/2006   Page 8 of 10

Page 4

2005 U.S. Dist. LEXIS 15246, *; 16 Am. Disabilities Cas. (BNA) 1877

Defendant contends that not only is an upward adjustment unwarranted, a downward adjustment of forty percent is warranted to reflect Ferrero's lack of success with all but her retaliation claim.

"The Supreme Court has emphasized that although application of the [twelve] ... factors is limited, upward adjustments are permissible in certain 'rare' and 'exceptional' cases." *Geier, 372 F.3d at 793*. This is not such a case, contrary to Ferrero's contentions. While this case was without a doubt extremely important to both parties, there was little novel in the legal and factual issues presented. [*13] The delay in discovery and Defendant's litigation tactics, upon which Ferrero relies, do no warrant an upward adjustment since these matters were previously addressed by sanctions, including the assessment of attorney fees against Defendant.

Ferrero's success on a single claim does not, in contrast to Defendant's contentions, warrant a downward adjustment because a mathematical apportionment or ratio of successful versus unsuccessful claims may not be the basis for reducing an otherwise reasonable attorney fee. *See Moore v. Freeman, 355 F.3d 558, 565-66 (6th Cir. 2004)*. In addition, "litigants often raise alternative grounds and that rejection of some of those grounds should not lead to a reduced fee if the plaintiff has been successful." *Moore, 355 F.3d at 565-66*.

None of the twelve applicable factors, either alone or in combination, drives upward or downward the attorney fees in this case. Instead, this case involved no circumstances that would warrant a departure from the lodestar amount of attorney fees.

### E. Costs

Defendant seeks to exclude $ 1,675.00 in fees for a communications consultant, which Ferrero incurred in preparation for [*14] trial. Defendant argues that Ferrero has cited no case, and Defendant is aware of no case, supporting the payment by Defendant for a communication consultant.

Ferrero in Reply cites *In re AremisSoft Corp. Sec. Litigation, 210 F.R.D. 109 (D.N.J. 2002)*, which recognized, "witness fees and costs associated with expert witnesses and consultants are often deemed incidental to litigation." *210 F.R.D. at 135* (citations omitted). The consultant at issue is Professor Lisa Newman. She performed 16 3/4 hours of consultation, and she billed at $ 100 per hour. (Doc. # 129, Exhibit 4). A review of Professor Newman's billing records does not reveal an unreasonable amount of work or an unreasonable hourly fee rate and shows that the work she performed was reasonably necessary to assist Ferrero's attorney, who is a sole practitioner, with his trial preparation. *See id.*

Accordingly, Defendant's request to exclude the consultation fee charged by Professor Newman is denied.

### F. Calculation

Ferrero is entitled to an award of reasonable attorney fees and costs in the total amount of $ 168,175.00. This is properly calculated as follows:

| | |
|---|---|
| NET HOURS (see Doc. # 135 at 10) | 623.00 |
| minus | -- |
| Hours for non-legal, clerical work | 7.5 |
| | |
| TOTAL NET HOURS: | 615.50 |
| times | x |
| REASONABLE HOURLY RATE | $ 250 |
| | |
| LODESTAR | $ 153,875.00 |
| plus | + |
| COSTS | $ 14,300.00 |
| | |
| TOTAL | $ 168,175.00 |

[*15]

### IV. PREJUDGMENT INTEREST

Ferrero seeks an award of prejudgment interest from May 29, 1999, *see* Doc. # 127 at 57, the date of her discriminatory discharge, up to the date Judgment is entered. Defendant contends that an award of prejudgment interest is inappropriate because Ferrero failed to mitigate her damages.

Prejudgment interest is usually appropriate to make a discrimination plaintiff whole and is often applied to awards of back pay. *United States v. City of Warren,*

Case 1:02-cv-00003-SSB-TSB    Document 166-2    Filed 03/03/2006    Page 9 of 10

Page 5
2005 U.S. Dist. LEXIS 15246, *; 16 Am. Disabilities Cas. (BNA) 1877

*Mich., 138 F.3d 1083, 1096 (6th Cir. 1998)*. The purpose of awarding prejudgment interest is to compensate victims of discrimination both for the time value of the lost back pay as well as for the effects of inflation. *Id.* (citing *EEOC v. O'Grady, 857 F.2d 383, 392 (7th Cir.1988)).* "Moreover, victims of discrimination should not be penalized for delays in the judicial process, and discriminating employers should not benefit from such delays." *City of Warren, 138 F.3d at 1096* (citations omitted). "The award or denial of prejudgment interest is within the sound discretion of the trial judge." *Id.* (citations omitted).

Ferrero is not entitled to [*16] prejudgment interest because of her failure to mitigate her damages. The Court previously declined to award Ferrero any front pay damages due to her failure to mitigate. (Doc. # 127 at 58-59). Defendant correctly points out that a backpay award may likewise be reduced due to a plaintiff's failure to mitigate. *See Thurman v. Yellow Freight Systems, Inc., 90 F.3d 1160, 1168 (6th Cir. 1996)*. Such a reduction may be warranted here because Ferrero acknowledged during her testimony that she did not search for any jobs after Defendant terminated her employment. *See* Doc. # 127 at 58-59. In light of this testimony, declining prejudgment interest on her backpay award and declining an award of front pay sufficiently accounts for her failure to mitigate while also providing her with a backpay award that makes her whole. This is so because the time value of the backpay Ferrero lost as a result of Defendant's retaliation is adequately reflected in a full award of backpay, which has not been reduced even though Ferrero failed to mitigate.

Accordingly, Ferrero's Motion for Prejudgment interest is denied.

## V. DEFENDANT'S MOTION TO RECONSIDER AND WITHDRAW BAD FAITH FINDING [*17]

Defendant's attorney seeks reconsideration of the Court's prior Order finding that she engaged in bad faith by evading her duty to conduct a reasonable inquiry in response to Ferrero's discovery requests. The circumstances and reasons for Court's bad faith finding are described in its prior Order. *See* Doc. # 127 at 59-64. The parties have settled the amount of attorney fees involved in this sanction, and consequently, only the finding of bad faith is presently at issue. (Doc. # 139 at 1; *see* Doc. # 131). n2

---

n2 The parties' settlement agreement concerning this sanction provides that although Defendant reserves the right to seek further judicial review of any and all factual findings and/or legal conclusions regarding the discovery misconduct at issue, "the results of any such judicial review sought by the United States Postal Service shall not affect the obligation of the United States Postal Service to pay the settlement sum in conformity with the terms of the Settlement Agreement...." (Doc. # 131 at 2).

[*18]

Defendant's attorney contends that she conducted a reasonable investigation, and therefore did not act in bad faith, because she did much more than the Court suggested was necessary -- *i.e.,* she did much more than make one or two phone calls to Thomas Lang, Defendant's Manager of Human Resources, or to Defendant's Human Resources Office. (Doc. # 139 at 8). Defendant's attorney states, "Tom Lang and his subordinate in the Human Resources office, Steve Goebel, were called many times by Defendant's counsel and her paralegal yet despite numerous contacts, the payroll records were not provided to Defendant's counsel until the first morning of trial." (Doc. # 139 at 8).

The present explanation by Defendant's attorney squarely places the blame on Lang and Goebel for the failure to produce certain FMLA-related discovery until the first day of trial. The present record reveals that Defendant's attorney made at least some effort to reasonably investigate by contacting Lang and Goebel. Although it also appears that Defendant's attorney could have personally done more to obtain the records at issue, the Court cannot conclude based on the present record that Defendant's attorney acted in [*19] bad faith when she decided to rely on Lang and Goebel. *See* Doc. # 139 at 10-11. This is not to say that Defendant acted in accordance with its obligations under *Fed. R. Civ. P. 26*. The point Defendant's attorney overlooks, one not emphasized in the Court's prior Order, is that the successful defense to Ferrero's FMLA claim hinged on records Defendant did not produce until the first day of trial. It remains true on the present record that Defendant did not produce these records until it perceived an advantage to its defense against Ferrero's FMLA claim. On the present record, however, this was not due to a failure to reasonably investigate by Defendant's attorney; this was instead due to Lang and Goebel's as yet unexplained failure to produce these documents in response to its attorney's repeated requests.

Accordingly, the bad faith finding in the Court's prior Order, *see* Doc. # 127 at 64, is reconsidered and withdrawn.

**IT IS THEREFORE ORDERED THAT:**

Case 1:02-cv-00003-SSB-TSB    Document 166-2    Filed 03/03/2006    Page 10 of 10

Page 6
2005 U.S. Dist. LEXIS 15246, *; 16 Am. Disabilities Cas. (BNA) 1877

1. Plaintiff's Motion for Award of Attorney Fees and Costs (Doc. # 129) is GRANTED, and Defendant shall forthwith pay Plaintiff Leslie D. Ferrero her attorney fees and costs [*20] in the total amount of $ 168,175.00;

2. Plaintiff's Motion for Prejudgment Interest (Doc. # 130) is DENIED;

3. Defendant's Motion to Reconsider and Withdraw Bad Faith Finding (Doc. # 139) is GRANTED, and the Court's prior finding that Defendant's attorney engaged in bad faith conduct, *see* Doc. # 127 at 64, is RECONSIDERED and WITHDRAWN; and

4. The case is terminated on the docket of this Court.

July 28, 2005

Sharon L. Ovington

United States Magistrate Judge