**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Barbara Loder Hildebrandt, | ) | Case No. 1:02-CV-0003 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Hyatt Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |

O R D E R

This matter is before the Court on Plaintiff Barbara Loder Hildebrandt's motion for

review of the Clerk of Court's January 12, 2006 Memorandum On Costs (Doc. 162).  For the

reasons set forth below, Defendants motion for Bill of Costs (Doc. 139) is GRANTED in the

amount of $27, 751.63.

I.  BACKGROUND

Plaintiff filed suit against Defendant Hyatt Corporation and some of its individual

executives, Defendants Ty Helms, Jack Horne, and Brian Booth (collectively referred to herein

as "Hyatt") alleging that Defendants used an economic recession and the terrorist attacks of

September 11, 2001 as a pretext to divest itself of older employees.  Plaintiff also alleged that

during her employment with Hyatt Corporation, she was denied promotional opportunities

because of her age and gender.

On February 15, 2002, Plaintiff filed a complaint of discrimination with the EEOC which

alleged that Hyatt terminated her employment and denied her promotional opportunities because

of her age and gender.  See Case No. C-1-02-464, Complaint ¶ 24.  Plaintiff received a right to

sue letter from the EEOC on March 28, 2002.  Id.

In the interim, on November 29, 2001, Plaintiff filed suit against Defendants in the

Hamilton County, Ohio Court of Common Pleas.  This complaint asserted claims of age and

gender discrimination regarding her termination pursuant to the Ohio Civil Rights Act, Ohio

Rev. Code §4112.01, et seq.  The complaint also asserted that Hyatt discharged her in violation

of Ohio public policy.  On January 2, 2002, Defendants removed Plaintiff's complaint to this

Court pursuant to 28 U.S.C. §§1441 and 1446.  See Doc. 1.  The basis for this Court's subject

matter jurisdiction was diversity jurisdiction pursuant to 28 U.S.C. §1332 in that the parties are

citizens of different states and the amount in controversy was in excess of $75,000.

On June 25, 2002, Plaintiff filed a new lawsuit against Hyatt Corporation and Jack Horne

in federal court.  This complaint was given case number C-1-02-464 and assigned to Judge

Weber.  The complaint in this case asserted claims against Hyatt for age and gender

discrimination with respect to Plaintiff's termination and denial of promotions pursuant to the

federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and Title

VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., respectively.  The complaint also

asserted claims for age and gender discrimination against Defendant Horne pursuant to the Ohio

Civil Rights Act.  Plaintiff also filed a claim for violation of Ohio public policy because of age

and gender discrimination against Defendant Horne.  On motion of the Plaintiff, the Court

consolidated the two cases.

On March 1, 2004, Defendants moved for summary judgment on each of Plaintiff's

claims.  See Doc. 63.  In response, Plaintiff clarified her complaints and thus had the following

claims: 1) an ADEA claim against Hyatt regarding the termination of her employment; 2) state law age discrimination claims against Hyatt, Helms, Horne, and Booth regarding the termination of her employment; 3) [1] state law age and gender discrimination claims against Hyatt, Helms, Horne and Booth regarding denial of promotions; and 4) breach of public policy claims against Hyatt, Helms, Horne, and Booth for age and gender discrimination. See Doc. 85.

This Court granted summary judgment in Defendants' favor on the following claims: 1) Defendants' motion for summary judgment as to Plaintiff's claims against Defendant Booth; 2) Defendants' motion for summary judgment on Plaintiff's state law breach of public policy claim; and 3) Defendants' motion for summary judgment on Plaintiff's failure to promote claims. Defendants' motion for summary judgment regarding Plaintiff's age discrimination claims against Defendants Hyatt Corporation and Helms and Horne in their individual capacities was denied (Doc. 85).

The remaining age discrimination claim was tried to a jury over a period of seven days. The jury returned a verdict in favor of Defendants which was subsequently affirmed on appeal. Hildebrandt v. Hyatt Corp., 154 Fed. Appx. 484 (6th Cir. 2005). On August 24, 2004, Defendants filed a Bill of Costs pursuant to Fed. R. Civ. P. 54(d) (Doc.139). On January 12, 2006, the Clerk taxed costs in this case in the amount of $83,765.18, the full amount submitted by Defendants. Plaintiff filed objections to Defendants' Bill of Costs (Doc. 165) within the time period set by this Court (Notation Order to Doc. 163).

Plaintiff has asked this Court to exercise the discretion granted under Fed. R. Civ. P

---

[1] Under Ohio law, Helms, Horne, and Booth, as managers and supervisors, may be held individually liable for their own acts of discrimination. Genaro v. Central Transport, Inc., 703 N.E.2d 752, 785 (Ohio 1999).

54(d)(1) and deny as inequitable Defendants' request for Bill of Costs under the circumstances

of her case.  In the alternative, Plaintiff has asked this Court to deny Defendants' request for

expert fees, consulting fees and costs associated with expert preparation of demonstrative

exhibits totaling $59,588.55.

## II.  DISCUSSION

Rule 54(d)(1) states in pertinent part, "Except when express provision therefor is made

either in a statute of the United States or in these rules, costs other than attorney's fees shall be

allowed as of course to the prevailing party unless the court otherwise directs."  Fed. R. Civ. P.

54(d)(1).  In Goosetree v. State of Tennessee, 796 F.2d 854 (6th Cir. 1986), the Sixth Circuit

interpreted this language as establishing the taxation of costs against the losing party as the

normal course of action.  Therefore, the burden is placed on the unsuccessful party to

demonstrate to the Court that the presumption in favor of awarding costs does not apply and why

the Court should exercise its discretion not to award costs.  Furthermore, since the language of

Rule 54(d)(1) is mandatory, the Court is more limited in its exercise of discretion than it would

be if the Rule were discretionary.  See id. at 863.  The Sixth Circuit has ruled that costs may

properly be denied where:  1) taxable expenditures by the prevailing party are unnecessary or

unreasonably large; 2) the prevailing party should be penalized for unnecessarily prolonging trial

or for injecting unmeritorious issues; or 3) the case is "close and difficult."  Id. at 864.  The good

faith of an unsuccessful litigant is a relevant consideration in Rule 54(d) deliberations, but good

faith alone is an insufficient basis for denying costs to a prevailing party.  Id.

Plaintiff has asked this Court to deny as inequitable Defendants' request for Bill of Costs

in toto on the grounds that:  1) the case was close and difficult; 2) Defendants have submitted

requests for reimbursement of costs that are both unnecessary and unreasonably large; and 3) she

4

pursued her claim in good faith (Doc. 165). For the reasons stated below, Plaintiff's objections are not well taken and DENIED.

## A.  PLAINTIFF'S OBJECTIONS TO COSTS *IN TOTO*

The Sixth Circuit has approved a denial of costs in several close and difficult cases involving numerous parties, exhibits, transcript pages, and lengthy opinions. In Goosetree, the Sixth Circuit held that, "the closeness of a case is judged not by whether one party clearly prevails over another, but by the refinement of perception required to recognize, sift through and organize relevant evidence, and by the difficulty of discerning the law of the case." See Goosetree, 769 F.2d at 864. The Court applied this standard in White & White, Inc. v. American Hospital and Supply Corp., 786 F.2d 728 (6th Cir. 1986). In White & White, the prevailing party, American Hospital Supply Corp,. filed a motion for Bill of Costs in the amount of $126, 820.58. The Sixth Circuit affirmed the decision of the district court which ordered each party to bear its own trial costs. Id. White & White involved a complex antitrust action that "consumed 80 trial days, required 43 witnesses, produced 800 exhibits, generated almost 15,000 pages of transcript and begat a 95 page opinion." Id. at 732.

In another case, U.S. ex rel. Pickens v. GLR Constructors, Inc., 196 F.R.D. 69 (S.D. Ohio 2000), the court declined to tax costs against the losing party. Pickens involved an action brought under the False Claims Act. The case was tried to a jury over a five week period. The court described Pickens as "a close, competitive, hard fought, and difficult case" that 'involved complex legal and factual issues requiring protracted litigation over a five-year period." Id. at 76. The jury in Pickens was required to sift through "voluminous factual evidence," "numerous trial binders with exhibits," and "thousands of pages of trial transcripts of numerous witnesses." Id. Under such circumstances, each party was ordered to bear its own litigation costs. Id at 78.

5

In McDonald v. Petree & Hudspeth, 409 F.3d 724 (6th Cir. 2005), the Sixth Circuit affirmed an award costs to the prevailing defendants. In McDonald, plaintiffs filed negligence claims against two defendants following a car accident. The district court granted summary judgment in favor of one defendant, thereby dismissing her from the suit, and a jury's verdict was entered in favor of the other defendant. The plaintiffs appealed the award of costs to the prevailing defendants on the grounds that: 1) the case was close and difficult, and 2) the plaintiffs acted in good faith and with propriety in pursuing the claim. The Sixth Circuit rejected plaintiffs' argument that the issues surrounding the grant of summary judgment as well as the question of whether certain evidence could be presented to the jury were sufficient to render the case "close and difficult." Id. at 732. The plaintiffs' good faith and propriety, standing alone, were insufficient to overcome the presumption of Fed. R. Civ. P. 54(d). Id.

In this case, Plaintiff contends that, "the length of the jury deliberation and the questions it addressed to the Court in the course of those deliberations, in itself, demonstrates both the closeness of the case and the good faith of the Plaintiff." (Doc. 165) This Court respectfully disagrees that this case should be characterized as "close and difficult."

The length of time the jury deliberated in this case is hardly indicative of a "close and difficult case." The jury deliberated from approximately 1:01pm on Friday, August 13, 2004 until the verdict was announced at approximately 2:14 pm on August 16, 2004. The law of this Circuit is clear that the district court's discretion pursuant to Rule 54(d)(1) is "more limited than it would be if the rule were nondirective." Id. (quoting Coyne-Delany, 717 F.2d 385, 392 (7th Cir. 1983)). In Smith v. Rosenthal, Collins Group, LLC, 2006 U.S. Dist. LEXIS 29585 (S.D. Ohio May 4, 2006), the court rejected the unsuccessful litigant's argument that costs should be denied to the prevailing party on the grounds that the case was "close and difficult." The court

6

found that, "The trial lasted only four days and involved nine witnesses and 76 exhibits." <u>Id</u>. at

*6.  Similarly, in this case, the jury trial lasted approximately 5 days, the jury deliberated for

approximately one day (although deliberation occurred over a two day period), 16 witnesses were

called, and 44 exhibits were produced.  A comparison of the facts of this case with the facts of the

<u>Rosenthal</u> case indicate that this case, like <u>Rosenthal</u>, was not close and difficult.  In addition, the

Court's observations of the trial proceedings indicate that the Defense presented credible

witnesses to support their reasons for terminating Plaintiff's employment and that the case was

not particularly close and difficult.

Nor is this Court persuaded by Plaintiff's argument that the two questions submitted to

the Court during jury deliberations indicate a "close and difficult"case (Doc. 85).  One question

submitted by the jury merely requested a calculator and a flip chart; a request granted by the

Court without objection from either party.  (Doc. 160).  This Court does not find that such a

request indicates an increase in the "refinement of perception required to recognize, sift through,

and organize relevant evidence."  <u>See</u> <u>White & White,</u>786 F.2d at 732.

The second question submitted to the Court was a written request to review a book of

exhibits provided by the Defense and a chart showing the number of persons who remained in an

National Sales Force.  (Doc.160).  Noting an objection by Defendants, the Court responded as

follows:  "Demonstrative exhibits that are part of an attorney's opening statement and/or closing

argument are not evidence and have not been admitted to evidence; therefore, they cannot be

provided to you."  <u>Id.</u>  Because the Court held that the requested items were not "evidence," the

second question submitted to the Court is irrelevant with regard to the "refinement of perception

required to recognize, sift through, and organize relevant evidence."  <u>Id.</u>

In <u>McDonald</u>, the Sixth Circuit affirmed an award of costs despite plaintiffs' argument

7

that the question whether certain evidence could be presented to the jury was sufficient evidence of a close and difficult case[2].  In this case, Plaintiff contends that the jury's request to see certain items was sufficient evidence of a "close and difficult case."  Following the decision of the Sixth Circuit in McDonald, this Court disagrees with Plaintiff.  For all of the reasons stated above, Plaintiff's objection to the taxation of costs against her on the grounds that this was a "close and difficult case" is not well taken and DENIED.

Plaintiff has also asked this Court to exercise its discretion pursuant to Rule 54(d)(1) on the grounds that Defendants submitted requests for reimbursement of costs that are both unnecessary and unreasonably large.  (Doc. 165).  In White & White, the Sixth Circuit held that, "Although the court may deny unnecessary costs, unnecessary costs are not a reason for denying all costs."  See White & White 786 F.2d at 732.  Furthermore, the Sixth Circuit has stressed that a district court's ultimate award of costs must be supported by factual findings.  Pickens v. GLR Constructors, Inc., 196 F.R.D. at 73; see also Phelan v. Bell 8 F.3d 369, 375 (6th Cir. 1993);  P. Mastrippolito & Sons, Inc. V. Joseph, 692 F.2d 1384, 1388 (3d Cir. 1982) (stating that a district court may not deny costs to a prevailing party without an explanation).  However, in Pickens, the court expressed that, "The United States Supreme Court does not read Fed. R. Civ. P. 54(d) as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of this case."  See Pickens, 196 F.R.D. 69 at 73.

In light of the strong presumption pursuant to Fed. R. Civ. P. 54(d) that costs are to be awarded as a matter of course, this Court is not persuaded by Plaintiff's argument that costs

---

[2] The plaintiffs argued that "the issues surrounding the grant of summary judgment to Hudspeth as well as the question of whether evidence of Hudspeth's negligence could be presented to the jury" were sufficient to render the case "close and difficult."  See McDonald, 409 F.3d 724 at 732.

should be denied *in toto* on the grounds that Defendants seek reimbursement of costs that are both unnecessary and unreasonably large. (Doc. 165). Rather, this Court will address any unreasonable or unnecessary costs in Section B of this document, "Plaintiff's Objections To Individual Costs." This method is proper where the Court has limited discretion and is required to support any denial of costs with factual findings. See Pickens, 196 F.R.D. at 73

Finally, Plaintiff contends that costs should not be awarded to Defendants because she pursued her claim in good faith. (Doc. 165). The good faith of an unsuccessful litigant is a relevant consideration in Rule 54(d) deliberations, but good faith alone is an insufficient basis for denying costs to a prevailing party. See Goosetree, 769 F.2d at 864. This Court cannot weigh the good faith of the Plaintiff in its decision to tax costs because none of the other circumstances that would allow a Court to deny costs under Rule 54(d)(1) are present. For all of the reasons stated above, Plaintiff's request that this Court deny as inequitable Hyatt's request for costs is not well taken and DENIED.

## B. PLAINTIFF'S OBJECTIONS TO INDIVIDUAL COSTS

Plaintiff objects to four general types of expenses Hyatt seeks to tax in this case. The Court will address each seriatim. At the outset, however, it is important to reiterate the presumption that "costs other than attorney's fees shall be allowed as a matter of course to the prevailing party." Fed. R. Civ. P. 54(d). Accordingly, Plaintiff bears the burden of proving that the imposition of any of the particular costs taxed by the Clerk was improper. See, e.g., BDT Prods. v. Lexmark Int'l, Inc., 405 F.3d 415, 420 (6th Cir. 2005); White & White, 786 F.2d 728, 732. While what constitutes as a taxable "cost" is circumscribed by 28 U.S.C. §1920[3] and the

---

[3]Title 28 U.S.C. §1920 provides that, "A judge or any clerk of any court of the United States may tax as costs the following: 1) fees of the clerk and marshal; 2) fees for the court

amount awarded thereunder is also limited to what is reasonable, see e.g., Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987), "it is generally recognized that courts may interpret the meaning of items listed in the statutory provision." BDT Products, 405 F.3d at 419. Further, a district court's final award of costs must be supported by factual findings. Pickens, 196 F.R.D. 69 at 73; see also Phelan v. Bell, 8 F.3d 369, 375 (6th Cir. 1993); P. Mastrippolito & Sons, Inc. v. Joseph, 692 F.2d 1384, 1388 (3rd Cir.1982) (stating that a district court may not deny costs to a prevailing party without explanation). The Court will now address Plaintiff's objections seriatim.


### 1. EXPERT WITNESS FEES PAID TO DAVID BERINS

Plaintiff objects to the taxation of costs against her for fees paid to Hyatt's testifying expert, David Berins, totaling $29,089.94. (Doc. 165). Plaintiff relies on Farmer v. Arabian American Oil Company, 379 U.S. 227 (1964), where the Supreme Court held that "the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute. Such restrained administration of the rule is in harmony with our national policy of reducing insofar as possible the burdensome cost of litigation." Id. at 235.

Plaintiff also relies on Crawford Fitting, where the Supreme Court denied the prevailing party's request for expert fees in an employment discrimination case. In its decision, the Court addressed the interrelation between 28 U.S.C. §§1920 and 1821 as follows: "We think that the inescapable effect of these sections in combination is that the federal court may tax expert fees in

---

reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; 3) fees and disbursements for printing and witnesses; 4) fees for exemplification and copies of papers necessarily obtained for use in the case; 5) docket fees under §1923 of this title; and 6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under §1828 of this title."

excess of the $30.00-per-day limit set out in §1821(b)[4] only when the witness is court appointed."
Id., 482 U.S. at 442.

In addition, Plaintiff relies on West Virginia University Hospitals v. Casey, 499 U.S. 83,
86 (1991) where the Court addressed the question whether fees for services rendered by experts in
civil rights litigation may be shifted to the losing party pursuant to 42 U.S.C. §1988, which
permits the award of "a reasonable attorney's fee." The Casey Court reaffirmed the interrelation
between 28 U.S.C. §§1920 and 1821 discussed in Crawford Fitting.

At the time that Casey was decided, however, 42 U.S.C. §2000e-5(k) provided only for
the award of a reasonable attorney's fee in Title VII actions. It made no mention of expert
witness costs. In the Civil Rights Act of 1991, however, Congress rejected the notion that
successful litigants should not be granted expert fees in Title VII suits. It amended §2000e-5(k)
to provide explicitly for the award of "a reasonable attorney's fee (including expert fees) as part
of the costs." Pub.L. No. 102-166, Title 1 §113(b), 105 Stat. 1075, 1079 (1991). However, it is
clear that an award of expert fees pursuant to §1988(C) is part of an award for attorney's fees.[5]
Because attorney's fees are not at issue in this case, the amendment to 42 U.S.C. §1988(C) is
irrelevant.

In response to Plaintiff's argument, Hyatt contends that Trepel v. Roadway Express, Inc.,

---

[4]Title 28 U.S.C. §1821(b) limits the witness fees authorized by §1920(3) as follows: "A witness shall be paid an attendance fee of $30.00 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance..." Section 1821(b) has since been amended to increase the allowable per diem from $30 to $40. See Judicial Improvements Act of 1990, Pub.L. 101-650, §314.

[5]42 U.S.C. §1988(C) states that, "In awarding an attorney's fees under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981(a) of this title, the court, in its discretion , may include expert fees as part of the attorney's fee."

11

266 F.3d 418 (6th Cir. 2001), makes clear that Fed. R. Civ. P. 26[6] provides an independent basis

for recovery of expert fees incurred as part of discovery.  Id.  According to Hyatt, Berins

expended 76 hours on an important component of its defense - its need to "cut costs in the wake

of the tragic events of September 11th and their resulting impact upon the hospitality industry."

(Doc. 166).  Defendants argue that, at minimum, they are entitled to recover fees paid to Berins

for the time he spent in May 2004 preparing for and being deposed by Plaintiff's counsel (9.0

hours), fees paid for the time he spent preparing his expert report (29.0 hours) and the statutory

per diem rate for his trial testimony.  Id.

Defendants' reliance on Fed. R. Civ. Pro. 26 is misplaced.  Fed. R. Civ. P. 26(b)(4)(C)

provides that, "Unless manifest injustice would result, (i) the court shall require that the party

seeking discovery pay the expert a reasonable fee for time spent responding to discovery under

this subdivision; and (ii) with respect to discovery obtained under subdivision (b)(4)(B) of this

rule the court shall require the party seeking discovery to pay the other party a fair portion of the

fees and expenses reasonably incurred by the later party in obtaining facts and opinions from the

expert."  Fed. R. Civ Pro. 26(b)(4)(B) addresses a situation where an expert retained by a party is

not intended to be called as a trial witness and is therefore irrelevant to this discussion because

Berins was retained to testify at trial.

Accordingly, Fed. R. Civ. P. 26(b)(4)(C)(i) requires a party to pay the expert a reasonable

fee for the time spent responding to discovery under this subdivision.  However, the only time

---

[6]Fed. R. Civ Pro. 26(b)(4)(B) states that, "A party may, through interrogatories or
deposition, discover facts known or opinions held by an expert who has been retained or
specially employed by another party in anticipation of litigation or preparation for trial and who
is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a
showing of exceptional circumstances under with it is impractical for the party seeking discovery
to obtain facts or opinions on the same subject by other means."

Berins expended in response to a discovery request made by Plaintiff concerns the May 18, 2004 deposition. See Itemization, Section I, p.2. Berins billed 9.0 hours for this time (Exh. 22) and, at an hourly rate of $375.00 (Exh. 23), Defendants incurred costs in the amount of $3,375.00.

Defendants also seek reimbursement for the 29.0 hours Berins spent preparing his expert report (Doc. 166). Rule 26(b)(4)(C)(i) permits a prevailing party to recover fees paid to an expert witness where the expert was responding to a discovery request made by another party. However, Berins was required to produce an expert report pursuant to Fed. R. Civ. P. 26(a)(2)(B)[5]. Therefore, Defendants are not entitled to recover fees associated with the production of Berins' report because the report was mandatory under Fed. R. Civ. P. 26(a)(2)(B) rather than a discovery request made by Plaintiffs. For the reasons stated above, this Court will tax costs against Plaintiff for fees associated with the May 18, 2004 deposition taken by Plaintiff's counsel as well as the statutory per-diem rate of $40.00 per day for Berins' trial testimony. All other requests for reimbursement associated with the expert fees paid to Berins are DENIED.

## 2. TRAVEL COSTS FOR HYATT'S OUT-OF-STATE TRIAL WITNESSES

Plaintiff also objects to Hyatt's request for reimbursement of costs associated with the trial testimony of out-of-state witnesses Douglas Patrick, Mark Henry, Bruce Small, and David Berins totaling $4,521.85. (Doc. 165). Before addressing Plaintiff's argument, at the outset it is important to recognize that 28 U.S.C. §1821(a)(1) establishes that a witness shall be paid fees

---

[5]Fed. R. Civ. P. 26(a)(2)(B) provides that, "Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specifically employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness." The "disclosure" mentioned at the outset of 26(a)(2)(B) refers to the requirement that a party shall disclose to other parties the identity of any person who may be used at trial to present evidence provided by Fed. R. Civ. P. 26(a)(2)(A).

pursuant to the allowances of §1821,[6] where §1821(c)(4) specifically provides that, "All normal

travel expenses within and outside the judicial district shall be taxable as costs pursuant to section

1920 of this title [28 U.S.C. §1920]."  The law is clear that costs incurred in relation to travel

expenses for witnesses who travel beyond 100 miles from where the trial is held need not be

approved in advance, but because such a request appeals to the court's discretion, parties who

obtain a witness from outside the 100-mile limit without advance approval do so at their peril.

Fleet Investment Co., Inc., v. Rogers, 620 F.2d 792, 794 (10th Cir.1980).  Plaintiff relies on

Farmer v. Arabian American Oil Co., 379 U.S. 230 (1964) in support of her objection to the

taxation of travel costs for Hyatt's out-of-state witnesses.  In Farmer, the prevailing party

requested costs associated with flying numerous witnesses from Saudi Arabia to the United

States.  Id. at 235.  The Court ruled that Fed. R. Civ. P. 54(d) vested the district court with enough

discretionary power to deny these expenses.  Id. at 233.  In its decision, the Court alluded to the

"100-mile rule."  As set out in Fed. R. Civ. P. 45(e), with some exceptions not relevant here,

subpoenas requiring the attendance of witnesses cannot be served outside the judicial district

more than100 miles from the place of trial.  Many decisions of the district courts and courts of

appeals have held that since those witnesses cannot be compelled under this rule to travel more

than100 miles, a party who so persuades them to do so by paying their transportation expenses

cannot have those expenses taxed as costs against his adversary.  See Farmer, 379 U.S. at 231.

Because costs were denied in Farmer, the Court declined to set out specific circumstances under

---

[6] Title 28 U.S.C. §1821(a)(1) provides that, "Except as otherwise provided by law, a
witness in attendance at any court of the United States, or before a United States Magistrate
[United States Magistrate Judge], or before any person authorized to take his deposition pursuant
to any rule or order of a court of the United States, shall be paid the fees and allowances
provided by this section."

which expenses for transporting witnesses more than 100 miles could be taxed as costs.

However, in Soberay Machine Equipment Co. v. MRF Limited, Inc., 181 F.3d 759 (6th Cir. 1999), the Sixth Circuit discussed the "100-mile rule" as follows:  "In exercising its discretion in taxing witness fees, the 100-mile rule is a proper and necessary consideration on the part of the district court."  In considering whether to allow expenses for traveling in excess of 100 miles, the court should consider the length of the journey, the necessity of the testimony, and the possibility of averting the travel expense.  See e.g., West Wind Africa Line v. Corpus Christi Marine Services Co., 834 F.2d 1232, 1237 (5th Cir. 1988); Green Constr. Co. v. Kansas Power and Light Co., 153 F.R.D. 670, 680 (D. Kan. 1994).

In Soberay, the Court affirmed an award of costs to the prevailing party for travel expenses of witnesses who traveled from India to Ohio.  Soberay, 181 F.3d at 771.  The Court found no abuse of discretion by the district court in awarding such costs for the witnesses' entire stay, where the defendant was forced to travel from India to Ohio to defend itself despite its efforts to dismiss the action for lack of jurisdiction and forum non-conveniens, and where the witnesses were necessary in that they were Defendant's corporate employees.  Id.  Accordingly, the district court awarded costs associated with the expenses of the out-of-state witnesses for days both prior to and following the trial.  The Sixth Circuit ruled that, "Allowances for witnesses are not restricted to the days the witness actually testifies, but may also be awarded for each day the witness necessarily attends trial, time spent during delays and temporary adjournments, and the time necessary for travel to and from the place of attendance."  Id. at 772.  See also Mastrapas v. New York Life Ins. Co., 93 F.R.D. 401, 405-406 (E.D. Mich. 1982).  Although the Sixth Circuit found that some allowance may have been required for the extensive time necessary to travel from India, the Court refused to tax costs associated specifically for the witnesses' trial

15

preparation. Soberay, 181 F.3d at 772.

In this case, Plaintiff's reliance on Farmer is misplaced. Specifically, Hyatt's out-of-state witnesses Patrick, Small, and Henry traveled from Hyatt's corporate headquarters in Chicago to Ohio, and witness Berins traveled from Dallas to Ohio (Doc. 166). Costs associated with flying these witnesses to Cincinnati from Chicago and Dallas are significantly less than the costs associated with flying numerous witnesses from Saudi Arabia to Ohio. Farmer, 379 U.S. at 231. In addition to this distinction, Hyatt maintains that the testimony of witnesses Patrick, Small, and Henry, all Hyatt employees, was important to its defense, as was the testimony of Berins, Hyatt's expert witness. Id. The Court in Soberay acknowledged that the out-of-state witnesses called to testify in that case were "necessary witnesses in that they were Defendant's corporate employees." Soberay,181 F.3d at 772.

In this case, Hyatt has asked to be reimbursed for costs associated with the per diem fees paid to its witnesses pursuant to §1821(b) which states that, "A witness shall be paid an attendance fee of $40.00 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance." Hyatt requested a total of $560.00 for per-diem fees paid to witnesses Patrick, Henry, and Small. See Itemization, Section VI. The per-diem fees paid to David Berins were calculated into the professional service fees listed in Itemization, Section III. Plaintiff does not object to the per diem fees paid to witnesses Patrick, Small, and Henry. Although Plaintiff objects to other fees paid to Berins, she does not object to the per-diem fees authorized by §1821(b) (Doc.165). Accordingly, Defendants' request for per-diem fees paid to its four witnesses, totaling $760.00, is GRANTED.

16

Hyatt also requests to be reimbursed for the airfare of its four out-of-state witnesses totaling $2265.92 (Doc. 166). Section 1821(c)(1) provides that, "A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished." Defendants' Itemization Exhibits 43-46 indicate that the amount requested by Hyatt for reimbursement of airfare costs in the amount of $2265.92 is reasonable and normal under the language of §1821(c)(1) and is GRANTED.

Hyatt also seeks reimbursement for costs associated with subsistence allowance given to the out of state witnesses in the amount of $131.00 per day, totaling $1,048.00. Section 1821(d)(1) provides that, "[a] subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day." Hyatt's witnesses were flown from Dallas and Chicago. It would have been impractical for these individuals to travel back and forth from day to day. Accordingly, this Court finds that Hyatt's request for $131.00 per day for each of its four out-of-state witnesses, totaling $1,048.00, is reasonable and is GRANTED.

Hyatt also requests reimbursement for miscellaneous costs, such as cab fare, totaling $159.93. Section 1821(c)(3) provides that, "Toll charges for toll roads, bridges, tunnels and ferries, taxicab fares between places of lodging and carrier terminals, and parking fees (upon presentation of valid parking receipt), shall be paid in full to a witness incurring such expenses." After reviewing Defendants' Itemization Exhibits 43-46, this Court finds that Defendants' request for $159.93 associated with such miscellaneous costs is reasonable and is GRANTED.

For the reasons stated above, this Court finds that the travel expenses of Hyatt's out-of-state witnesses are reasonable and should be taxed as costs against the Plaintiff pursuant to 28 U.S.C. § 1920 and §1821.   Therefore, taxation of costs associated with the travel expenses of Defendants' out-of-state witnesses in the amount of $5,281.85 is GRANTED.

3.  FEES PAID FOR THE PREPARATION AND PRODUCTION OF TRIAL EXHIBITS

Plaintiff objects to the taxation of costs fees associated with the preparation and production of various trial exhibits totaling $18, 207.61 (Doc. 165).  This includes fees paid to the Zagnoli consulting firm in the amount of $15,411.50 (Exh. 39), as well as copying charges for trial exhibits that were incurred by an outside service, The Presentation Group, in the amount of $2,588.97 (Exh. 38), and charges for copies of trial documents from CXA, Inc., in the amount of $207.14.  See Itemization, Section IV(B).

Plaintiff relies on EEOC v. W&O Inc., 213 F.3d 600, 623 (11th Cir. 2000), where the Eleventh Circuit denied the prevailing Defendants' request to tax exhibit costs on the grounds that such costs were not authorized by statute.  Id.  In response, Hyatt contends that W&O is not binding on this Court, and that other Circuits have allowed trial exhibit costs under the authority provided by 28 U.S.C. §1920(4), which permits taxation of "fees for exemplification and copies of papers necessarily obtained for use in the case" (Doc. 166).

In Williams v. General Electric Company, 2006 U.S. Dist. LEXIS 29384 (S.D. Ohio May 15, 2006) the district court agreed with the Clerk's decision to deny the prevailing defendant $5,627.10 for costs associated with various exhibit boards.  The defendant argued that such costs were reasonable according to past precedent.  See Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, 729 F.2d 1530, 1533 (5th Cir. 1984) (finding $3,264 in costs of photocopies, including "blow-ups" of documents were properly taxed to defendant, at least where parties had agreed to

the use of enlarged copies in trial of the case.); Soler v. McHenry, 771 F.Supp. 252, 256 (N.D. Ill. 1991) (awarding defendant cost of enlarging plaintiff's police "mug shot").  However, the district court found both cases factually distinguishable from defendant's case.  Unlike the parties in Nissho-Iwai, the parties in Williams had no agreement concerning the use of enlarged photocopies  and the defendant used the exhibits as demonstrative without submitting them to the jury. Id. at 10.  Further, in Soler, defendant was entitled to the costs associated with the enlargement of plaintiff's police "mug shot" because the photo was direct evidence in regard to plaintiff's claim that a defendant police officer used excessive force in arresting plaintiff.  Id. at 11.  Based on these distinctions, the Williams court denied defendant's request for exhibit costs.

In this case, Defendants' request reimbursement for costs associated with the creation and production of trial exhibits totaling $18,207.61.  See Itemization, Section IV(B).  Defendants' Itemization indicates that The Presentation Group assisted Hyatt in the "Production of Demonstrative Exhibits" as well as "Demonstrative Exhibit Graphic Development/Revisions." Id. at No. 2 and 3.  As in Williams, this Court will not tax costs against Plaintiff for the production of demonstrative trial exhibits in the absence of proof of an agreement to use such exhibits prior to trial.  See Nissho-Iwai Co., 729 F.2d at 1533.  The remaining costs enumerated in Itemization, Section IV(B), No.1 and 4, indicate similar costs incurred for various exhibits.  This Court agrees with the Eleventh Circuit that taxation for exhibit costs is not authorized by 28 U.S.C. §1920(4).

Hyatt contends that, at minimum, exhibit books were needed for Hyatt's counsel, opposing counsel, and the Court and that such a need in itself accounts for the number of pages copied by The Presentation Group totaling $2,588.97 (Doc. 166) (citing Exh. 38).  However, Defendants' argument is an attempt to persuade this Court that the fees paid to outside agencies

who prepared and produced its trial exhibits should be classified as "copying costs."  However,

Itemization, Section IV(B) clearly indicates that the Zagnoli firm was used to prepare and

produce "Demonstrative Exhibits."  For the reasons stated above, the taxation of exhibit costs

requested under Itemization Section IV(B) in the amount of $18,207.61 is DENIED.

### 4.    FEES FOR HYATT'S NON-TESTIFYING CONSULTING EXPERTS

Plaintiff objects to costs taxed against her for the fees paid to the firm of Zagnoli McEvoy

Foley LLC, who served as trial consultants and created the demonstrative exhibits used at trial, as

well as fees paid for services of Dr. Samuel Kursh, who served as a consulting expert with respect

to cross-examination of Plaintiff's expert, Dr. Harvey Rosen (Doc. 165).  Hyatt requests a total of

$12,291.00 for such expenses.  See Itemization, Section V.  Plaintiff contends that these costs are

not taxable because they are not authorized by statute. (Doc. 165) (citing Farmer, 379 U.S. 227,

235; Crawford Fitting, 482 U.S. 437, 442; Casey, 499 U.S. 83, 86).  Plaintiff also relies on

Moreland v. Speybrock, 2005 WL 2347271 (N.D. Ind. 2005), where a district court rejected an

award of costs for a defense expert finding that, "Rule 54(d) expressly states that we are only

allowed to tax costs that are authorized by statute.  28 U.S.C. §1920 does not provide for an

award of expert fees in excess of the $40.00-per-day witness fee."  Id. at *5.

In response, Hyatt contends that the services of Dr. Kursh were reasonable and necessary

in that he was involved in reviewing Dr. Rosen's deposition and advising Hyatt on a potential

Daubert motion in May 2004, as well as assisting Hyatt's counsel with cross examination topics

at the trial in August 2004.  See Itemization, Exh. 41, p.3 and Exh. 42 p.3.  Hyatt relies on Ferrero

v. Henderson, 2005 U.S. Dist. LEXIS 15246, *14 (S.D. Ohio July 28, 2005), where this Court

upheld a prevailing party's request for reimbursement of fees charged by a communications

consultant where those fees were deemed reasonably necessary to assist the attorney, a sole

practitioner, with his trial preparation. Hyatt's reliance is misplaced. In <u>Ferrero</u>, the communications consultant expended approximately 16 hours and billed at a rate of $100.00 an hour, totaling approximately $1600. <u>Id</u>. Unlike <u>Ferrero,</u> Defendants' counsel is a team of attorneys rather than a sole practitioner. Defendants request for consultant costs are significantly greater than the $1600 requested in <u>Ferrero.</u>

In <u>Soberay Machine & Equipment Co. v. MRF Ltd., Inc.</u>, 181 F.3d 759 (6th Cir. 1999), the Sixth Circuit taxed costs associated with the travel fees of two witnesses, but specifically declined to tax costs against the plaintiff for expenses incurred by the witnesses in preparation for the trial totaling $7,945.86. The court held that, "although fees may be taxed in favor of a corporation that prevails for the appearance of its corporate officers and directors, such costs are limited to days spent in transit, testifying, or waiting to testify and not in advising counsel." <u>See Soberay,</u> 181 F.3d at 771.

In <u>Soberay</u>, the Court refused to award costs associated with trial preparation of *testifying* witnesses. In this case, Hyatt seeks reimbursement for fees paid to *non-testifying* consultants who assisted Defendants in trial preparation. However, following the Sixth Circuit's decision in <u>Soberay,</u> this Court finds that it is improper to allow taxation of expenses incurred for trial preparation services rendered by non-testifying witnesses. Further, what constitutes as a taxable "cost" is circumscribed by 28 U.S.C. §1920[7] and the amount awarded thereunder is also limited to

---

[7]Title 28 U.S.C. §1920 provides that, "A judge or any clerk of any court of the United States may tax as costs the following: 1) fees of the clerk and marshal; 2) fees for the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; 3) fees and disbursements for printing and witnesses; 4) fees for exemplification and copies of papers necessarily obtained for use in the case; 5) docket fees under §1923 of this title; and 6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under §1828 of this title."

what is *reasonable*.  See e.g., Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445

(1987).  This Court finds that an award of $12,291.00 for consultant fees is unreasonable and

excessive.  Based on the reasons above, taxation for costs under Itemization, Section V for

"Consultant Fees" in the amount of $12,291.00 is DENIED.

     The language of Rule 54(d) has been interpreted as establishing the taxation of costs

against the losing party as the normal course of action.  See Goosetree, 796 F.2d 854.  Thus, the

costs requested by Hyatt and not individually objected to by Plaintiff (beyond the *in toto*

argument to deny all costs to Defendants) will be awarded to Hyatt so long as they are authorized

pursuant to 28 U.S.C. §1920.

     Hyatt requested costs associated with "Deposition Materials" including "Court Reporter

Appearance/Transcript Fees" and "Videography" in the amount of $11, 474.26.  See Itemization,

Section I.  Hyatt also requested $1,141.80 for "Official Court Transcripts."  See Itemization,

Section II.  Title 28 U.S.C. §1920 authorizes a court to tax as costs, "Fees for the court reporter

for all or any part of the stenographic transcript necessarily obtained for use in the case."

Pursuant to such authorization, the amount of $11,474.26 requested for "Deposition Materials," as

well as the amount of $1,141.80 requested for "Official Court Transcripts" is GRANTED to

Hyatt.  In addition, Hyatt requested $6, 478.72 for "Photocopying Fees."  See Itemization, Section

IV.  According to §1920, this Court is authorized to tax costs for "Fees and disbursements for

printing and witnesses."  Pursuant to such authority, Hyatt's request for "Photocopying Fees"

totaling $6,478.72 is GRANTED.

### III. CONCLUSION

     Based on the findings of this Court, the following costs will be awarded to Hyatt:

I.  Deposition Materials

A.  Court Reporter Appearance/Transcript Fees: $11,229.26

B.  Videography: $245.00

Sub-Total (for Deposition Materials):   $11,474.26

II.  Official Court Transcripts

Sub-Total (for Official Court Transcripts): $1,141.80

III.  Expert Witness Fees

9.0 hours for May 18, 2004 Deposition at $375.00 per hour: $3,375.00

Sub-Total (for Expert Witness Fees): $3,375.00

IV.  Photocopying Fees

Document Production: $6, 478.72

Sub-Total (for Photocopying Fees for Document

Productions and Creation and Duplication of Trial Exhibits

and Demonstrative Aids):  $6,478.72

V.  Consultant Fees

Sub-Total (for Consultant Fees): $0.00

VI.  Witness Fees

A.  Douglas Patrick: $1,326.04

B.  Mark Henry: $976.41

C.  Bruce Small: $1,106.70

D.  David Berins: $1,672.70

+ $200.00 per diem rate for Berins not included in Itemization Section VI

Sub-Total (for Witness Fees): $5,281.85

VII.  TOTAL:   $27,751.63

Accordingly, pursuant to Fed. R. Civ. P. 54(d), the Court awards Defendants costs in the amount of $27,751.63.

**IT IS SO ORDERED**

Date  August 24, 2006                              s/Sandra S. Beckwith
                                                   Sandra S. Beckwith, Chief Judge
                                                   United States District Court